**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

RAMON VILLANUEVA-BAZALDUA,  )
individually and on behalf of others similarly,  )
situated,  )
          Plaintiff,  )
     v.  )
                       )
TRUGREEN LIMITED PARTNERS and,  )
TRUGREEN, INC. d/b/a TRUGREEN  )
CHEMLAWN  )
                       )
          Defendant  )

**C.A.: 06-185-GMS**

**CLASS ACTION**

**APPENDIX**
**TO**
**PLAINTIFF'S EXPEDITED**
**MOTION TO CONDITIONALLY CERTIFY**
**FLSA COLLECTIVE ACTION**

Vivian L. Rapposelli
DE Bar No. 3204
Rapposelli, Castro & Gonzales
916 Union St., Suite 2
Wilmington, Delaware 19805
Tel: 302-652-8711

Edward Tuddenham
TX Bar No. 20282300
272 W. 107th St. #20A
New York, New York 10025
Tel: 212-866-6026

ATTORNEYS FOR PLAINTIFF

TABLE OF CONTENTS

STATEMENT OF FACTS IN SUPPORT OF MOTION FOR
    CONDITIONAL CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

PROPOSED NOTICE TO CLASS MEMBERS . . . . . . . . . . . . . . . . . . . . . . . . . 8

Affidavit of Plaintiff Ramon Villanueva . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    with attached documents:

    Employer Disclosure Affidavit (TruGreen Chemlawn) dated 2.20.04 . . . . . . . . . 16

    Acuerdo Sobre Condiciones Laborales (and translation) . . . . . . . . . . . . . . . . . 17

TruGreen Form ETA-750 for H-2B workers to work in Delaware in 2004
    dated January 20, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Tru Green Form ETA-750 for H-2B workers to work in Maryland in 2004
    dated February 24, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Affidavit of Edward Tuddenham . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Affidavit of Gregory Schell . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Department of Labor web site:

    http://workforcesecurity.doleta.gov/foreign/h-2b.asp . . . . . . . . . . . . . . . . . . . 33

Department of State web site:

    http://usembassy.state.gov/posts/mx2/wwwhnivh2b.html . . . . . . . . . . . . . . . . 35

Bureau of Citizenship and Immigration Services web site:

    http://uscis.gov/graphics/formsfee/forms/index.htm . . . . . . . . . . . . . . . . . . . 39

Unpublished Cases:

*Bailey v. Ameriquest Mortgage Co.*, 2002 WL 100388 (D. Minn. 2002) .......... 49

*Blake v. Colonial Savings*, 2004 WL 1925535 (S.D. Tex. 2004) .......... 61

*Bosley v. Chubb Corp.*, 2005 WL 1334565 (E.D. Pa. 2005) .......... 64

*De La Rosa Ortiz v. Rain King, Inc.*, 2003 WL 23741409 (S.D. Tex. 2003) .......... 69

*Geer v. Challenge Finance Investors Corp.*, 2005 WL 2648054 (D. Kan. 2005) .......... 73

*Goldman v. Radioshack Corp.*, 2003 WL 21250571 (W.D. Pa. 2003) .......... 79

*Rivera v. Brickman Group*, Ca. No. 05-1518 (E.D. Pa. Magistrate Report 11.10.05) .......... 89

*Rivera v. Brickman Group*, Ca. No. 05-1518 (E.D. Pa. Order 12.22.05) .......... 102

*Rivera v. Brickman Group*, Ca. No. 05-1518 (E.D. Pa. Order 3.13.06) .......... 106

*Salinas-Rodriguez v. Alpha Services, LLC*, 2005 WL 3557178 (S.D. Miss. 2005) .......... 111

*Smith v. Sovereign Bancorp, Inc.*, 2003 WL 22701017 (E.D. Pa. 2001) .......... 116

*Trotter v. Perdue Farms, Inc.*, 2001 WL 1002448 (D. Del. 2001) .......... 120

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RAMON VILLANUEVA-BAZALDUA, individually and on behalf of others similarly, situated, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | **C.A.: 06-185-GMS** |
| TRUGREEN LIMITED PARTNERS and, TRUGREEN, INC. d/b/a TRUGREEN CHEMLAWN | ) ) ) | **CLASS ACTION** |
| Defendant. | ) ) ) | |

## PLAINTIFF'S STATEMENT OF FACTS
## AND EVIDENCE
## IN SUPPORT OF CONDITIONAL CERTIFICATION
## OF FLSA COLLECTIVE ACTION

NOW COMES PLAINTIFF, through his undersigned attorneys, and submits the following statement of facts and evidence in support of his motion to conditionally certify this action as an FLSA collective action:

1.     Defendant TruGreen Limited Partnership (hereafter referred to as "TruGreen") is a limited partnership organized under the laws of the State of Delaware. *Answer* ¶ *7 (D.I. 8)*[1] Defendant TruGreen Inc, a corporation organized under the laws of the State of Delaware is the general partner of TruGreen Limited Partnership *Answer* ¶*7 (D.I. 8).* TruGreen Limited Partnership, doing business as TruGreen Chemlawn, provides landscaping services to customers in Delaware, Pennsylvania, New Jersey and other states. *Answer: ¶11 (D.I. 8).*

---

[1]    Documents in the record are referred to with their docket number, abbreviated "D.I.___." Documents supporting this statement of the facts which are contained in this Appendix are referred to by the page number of the Appendix where they appear, abbreviated "A-___."

2.      In each of the years 2003 through 2006, TruGreen filed petitions with the Bureau

of Citizenship and Immigration Services to employ non-immigrant workers on a temporary basis

pursuant to the federal government's H-2B visa program.[2] *Ans* ¶¶ 12, 13 (D.I. 8).  These

applications were filed on forms ETA-750 and I-129. *Answer* ¶¶ 13, 15 (D.I. 8). Copies of

TruGreen's approved ETA 750 forms for 2004 for the States of Delaware, and Maryland are

attached hereto as A-20 and A-23. The process for obtaining H-2B visas is described in the U.S.

Department of Labor's ("DOL") web site: http://workforcesecurity.doleta.gov/foreign/h-2b.asp.

(visited 4.25.06) (A-33) *See generally, Daylily Farms, Inc. v. Chao*, 57 F.Supp.2d 356

(D.Mass.,2005) (describing H-2B procedures).

3.      In each of the years at issue, 2003-2006, U.S. law required foreign workers to

incur the following expenses to obtain an H-2B visa and enter the United States:

   a. $100 Visa application fee;
   b. $100 Visa issuance/reciprocity fee;
   c. $6 I-94 fee;
   d. a valid Mexican passport;
   e. a color photograph

*See* http://usembassy.state.gov/posts/mx2/wwwhnivh.html (discussing visa application fee, visa

reciprocity fee, passport and photograph requirement) (visited 4.25.06) (A-35- 38);

http://uscis.gov/graphics/formsfee/forms/index.htm ($6 I-94 fee paid at port of entry) (visited

4.25.06) (A-39- 48).

4.      In 2004 Plaintiff was recruited to work for TruGreen by a Mexican company, LLS

S de CV de RL. *Affidavit of Ramon Villanueva* ¶ 2 (A- 12); *Answer* ¶17 (D.I. 8). At the time of

his recruitment Plaintiff was given a document indicating that he would have to pay $155 for

---

[2] The H-2B program derives its name from the statutory authorization for the program at
8 U.S.C. 1101(a)(15)(H)(ii)(b).

administrative services related to the visa issuance, a $100 visa application fee, a $100 for his visa issuance fee, and approximately $200 for transportation to Delaware. *Affidavit of R. Villanueva* ¶ 3 (A-13). A copy of this disclosure document is attached to the *Affidavit of R Villanueva* at document RV-0002 (A-16).

5.    Other H-2B workers recruited to work for TruGreen in 2004 received similar disclosures and paid similar fees. *Affidavit of R. Villanueva* ¶ 5 (A-13).

6.    When Plaintiff left his employment with TruGreen, TruGreen required Plaintiff to pay for his own return transportation to Mexico. *Affidavit of R. Villanueva* ¶ 8 (A-13).

7.    TruGreen did not pay for or reimburse any of the pre-employment expenses outlined in paragraphs 4 above, *Affidavit of R. Villanueva* ¶¶ 6-8 (A-13). Inasmuch as TruGreen states that it lacks knowledge or information regarding these expenses, it follows that it could not have paid for them or reimbursed them. *Answer* ¶¶19, 20 (D.I. 8).

8.    TruGreen did not take the pre-employment expenses outlined in paragraphs 4 into account in determining whether its H-2B landscape workers earned the FLSA minimum wage or the FLSA mandated overtime premium during the first work week. *Affidavit of R Villanueva* ¶¶ 6-8 (A-13). Since TruGreen admits that it lacks knowledge or information regarding these expenses, it could not have taken them into account. *Answer* ¶¶ 19, 20 (D.I. 8).

9.    If the visa, processing, and transportation costs incurred by Plaintiff and other H-2B workers are considered deductions from their first week's wages, Plaintiff and other H-2B workers did not earn the minimum wage or overtime mandated by the Fair Labor Standards Act. *Affidavit of R. Villanueva* ¶¶ 6, 8 (A-13)

10.    Plaintiff's attorneys are competent to prosecute class actions. *See affidavit of Edward Tuddenham* (A-26).

A-6

11.    Defendants' agent, LLS, who assisted with recruiting and moving H-2B workers, *Answer* ¶ 17 (D.I. 8), maintains a computer database of worker names, addresses, telephone numbers and alternate telephone numbers. *Affidavit of Edward Tuddenham* ¶6, (A-26).

12.    Mail delivery to Mexico is not reliable, *see Affidavit of Greg Schell*, necessitating a longer opt-in period. (A-29).


                                        Respectfully submitted,


                                        Vivian L. Rapposelli
                                        DE Bar No. 3204
                                        Rapposelli, Castro & Gonzales
                                        916 Union St., Suite 2
                                        Wilmington, Delaware 19805
                                        Tel: 302-652-8711

                                        Edward Tuddenham
                                        TX Bar No. 20282300
                                        272 W. 107th St. #20A
                                        New York, New York 10025
                                        Tel: 212-866-6026

                                        ATTORNEYS FOR PLAINTIFF

A-7

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RAMON VILLANUEVA-BAZALDUA,           ) <br> individually and on behalf of others similarly, ) <br> situated,                                                         ) <br>              Plaintiff,                                 ) <br> v.                                                               ) <br>                             ) <br> TRUGREEN LIMITED PARTNERS and,    ) <br> TRUGREEN, INC. d/b/a TRUGREEN         ) <br> CHEMLAWN                                               ) <br>                             ) <br>             Defendant.                            ) | **C.A.: 06-185-GMS** <br><br> **CLASS ACTION** |

**NOTICE OF LAWSUIT WITH OPPORTUNITY TO JOIN**

TO:    All persons who received H-2B visas to work for TruGreen
           Limited Partnership during 2003, 2004, 2005 or 2006.

The purpose of this Notice is to inform you of the existence of a lawsuit that may affect

your rights and to instruct you on the procedure for participating in this lawsuit, if you wish to do

so.

**1. WHAT THE LAWSUIT IS ABOUT**

The lawsuit at issue was filed in March 2006 by a Mexican worker named Ramon

Villanueva Bazaldua. Mr. Villanueva received an H-2B visa to work as a landscaper for

TruGreen Limited Partnership in 2004. He claims that he, and other H-2B workers incurred

certain expenses getting from Mexico to the United States to work for TruGreen, including visa

application fees (Banemex fees) visa issuance fees, processing fees, and transportation costs from

Mexico to the United States. He also claims that he incurred transportation expenses returning

to Mexico. Ramon Villanueva claims that he and other H-2B workers did not receive the lawful

A-8

minimum wage and overtime payments mandated by federal law when these expenses are taken into account. The lawsuit asks TruGreen to pay for workers' visa, transportation, and processing expenses to the extent those expenses brought their wages below the required minimum wage and/or overtime. Mr. Villanueva is also asking TruGreen to pay an equal amount of liquidated damages, costs of court and attorney's fees. TruGreen denies Plaintiff's allegations and denies that it is liable to the Plaintiff or other H-2B workers for any of the back pay or liquidated damages sought.

## 2.    YOUR RIGHT TO PARTICIPATE IN THE LAWSUIT

Plaintiff Ramon Villanueva Bazaldua brings this lawsuit on behalf of himself and on behalf of all other persons who received H-2B visas to work for TruGreen in any of the years 2003, 2004, 2005, or 2006. If you received an H-2B visa to work for TruGreen in one or more of those years, you have a right to participate in this lawsuit. You may do so by completing and mailing the attached "Consent to Become Party Plaintiff" form to the Plaintiff's counsel at the following address:

> Vivian L. Rapposelli
> Rapposelli, Castro & Gonzales
> 916 Union St., Suite 2
> Wilmington, Delaware 19805

The form must be sent to the above address within 180 days from the date of this Notice. If you fail to return the "Consent to Become Party Plaintiff" form within that time, you may not participate in this lawsuit. Although you have 180 days to send the form in, you should send it in as quickly as possible. Under the law, the time period for which you may claim back wages is determined by the date when your "Consent to Become Party Plaintiff" form is received. The sooner it is received, the further back in time you can claim back wages.

A-9

3.     **EFFECT OF JOINING THIS CASE**

If you choose to join in this case you will become a plaintiff and you will be bound by any judgment, whether it is favorable or unfavorable.

4.     **TO STAY OUT OF THE LAWSUIT**

If you do not wish to be part of the lawsuit, you do not need to do anything. If you do not join the lawsuit, you will not be part of the case in any way and you will not be bound by or affected by the result (whether favorable or unfavorable). Your decision not to join this case will not affect your right to bring a similar case on your own at a future time. However, claims for minimum wage or overtime must be brought in court (either by filing a consent to become a party plaintiff or by filing your own lawsuit) within 2 years of the date the claim accrues, unless the employer's violation of the law was "willful," in which case the claim must be brought within 3 years.

5.     **YOUR LEGAL REPRESENTATION IF YOU JOIN**

If you choose to join this suit your attorney in this action will be:

Vivian Rapposelli                    Edward Tuddenham
Rapposelli, Castro & Gonzales        272 W. 107th St. #20A
916 Union St. Suite 2                New York, New York 10025
Wilmington, Delaware 19802           Tel: (212) 866-6026
Tel: (302) 652-8711                  Fax: (212) 866-6026
Fax: (302) 652-8712

If these attorneys are successful in obtaining money for the H-2B workers who join the suit, they may ask the court for their fees and expenses. You won't have to pay these fees and expenses. If the Court grants the attorneys' request, the fees and expenses would either be deducted from any money won for the H-2B workers or paid separately by TruGreen.

You also have the right to join this lawsuit and be represented by counsel of your own

A-10

choosing. If you do so, your attorney must file an "opt-in" consent form with the Court within

180 days of the date of this Notice

**6.**    **NO RETALIATION PERMITTED**

Federal law prohibits TruGreen from discharging or in any other manner discriminating

against you including refusing to re-employ you, because you send in the "Consent to be Party

Plaintiff" form, or have in any other way exercised your rights to claim minimum wage or

overtime under the Fair Labor Standards Act.

**7.**    **FURTHER INFORMATION**

Further information about this Notice, the deadline for filing a Consent to Become Party

Plaintiff, or answers to questions concerning this lawsuit may be obtained by writing,

telephoning or e-mailing the Plaintiff's counsel Vivian Rapposelli at:

> Vivian L. Rapposelli
> Rapposelli, Castro & Gonzales
> 916 Union St., Suite 2
> Wilmington, Delaware 19805
> Tel: 302-652-8711
> Fax: 302-652-8712
> Email: classaction@rcglaw.com

Dated:

Vivian L. Rapposelli                        Edward Tuddenham
Rapposelli, Castro & Gonzales      272 W. 107th St. #20A
916 Union St., Suite 2                    New York, New York 10025
Wilmington, Delaware 19805        Tel. 212-866-6026
Tel: 302-652-8711
                 Attorneys for Plaintiff

**THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE FEDERAL
DISTRICT COURT. THE COURT HAS TAKEN NO POSITION IN THIS CASE
REGARDING THE MERITS OF THE PLAINTIFF'S CLAIMS OR OF THE
DEFENDANTS' DEFENSES**

A – 11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RAMON VILLANUEVA-BAZALDUA, <br> individually and on behalf of others similarly, <br> situated, <br><br> Plaintiff, <br><br> v. <br><br> TRUGREEN LIMITED PARTNERS and, <br> TRUGREEN, INC. d/b/a TRUGREEN <br> CHEMLAWN <br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **C.A.: 06-185-GMS**<br><br>**CLASS ACTION** |

### CONSENT TO SUE

I, hereby consent to be a plaintiff in this Fair Labor Standards Act lawsuit. I hereby consent to the bringing of any claims I may have for unpaid overtime, liquidated damages, attorney's fees, costs and other relief against the defendant TruGreen Limited Partnership.

Dated: _____

Signature: _____

Name: _____

Address: _____

_____

Phone: _____

Email: _____

IF YOU WISH TO JOIN THIS LAWSUIT YOU MUST RETURN THIS FORM WITHIN 180 DAYS, TO:

Vivian L. Rapposelli
Rapposelli, Castro & Gonzales
916 Union St., Suite 2
Wilmington, Delaware 19805
Tel: 302-652-8711
Fax: 302-652-8712

A-12

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RAMON VILLANUEVA-BAZALDUA
individually and on behalf of others similarly
situated,

      Plaintiff

v.

TRUGREEN LIMITED PARTNERS and
TRUGREEN, INC.

      Defendants

---

## DECLARATION OF RAMON VILLANUEVA-BAZALDUA

1. My name is Ramon Villanueva-Bazaldua. I am over the age of 18 and fully competent to make this declaration. I am the plaintiff in the above encaptioned lawsuit against the companies doing business as TruGreen Chemlawn.

2. In 2004 I was recruited in Mexico by a company called LLS to come to work for TruGreen Chemlawn in Delaware. I worked for TruGreen from March until July 2004.

3. In order to get to Delaware to work for TruGreen Chemlawn, LLS informed me that I had to obtain a Mexican passport, and photographs for my H-2B visa. LLS also informed me that I would have to had to pay $200 for my visa, as well as a $155 fee to LLS for assisting me in filling out the visa application forms. These charges were listed on a disclosure document that I received from LLS at the time I was recruited. A true and correct copy of that document is attached hereto as RV-0002. LLS also provided me with an Employer Disclosure Affidavit which is attached hereto as RV-0001.

4. In addition to paying the expenses listed above I also had to pay for bus transportation from Guanajuato, Mexico where I was recruited to Monterrey, Nuevo Leon, Mexico and then from Monterrey to the TruGreen work site in Delaware. I also had to pay a $6 fee to the immigration service in order to cross the border.

5. When I arrived in Monterrey I met other groups of Mexican workers who were going to work for TruGreen. LLS was processing all of our visas in Monterrey. Other Mexican workers who were recruited to work for TruGreen in 2004 received disclosure statements from LLS similar to the ones that I received and had to pay fees for passports, visas, and transportation just like I did. I know this because I saw other workers carrying the disclosure statements and because I discussed the contents of these disclosures with other TruGreen workers while we were in Monterrey and while we were traveling to the work site in the United States.

6. The visa, visa processing, and transportation expenses I incurred in getting to the United States to work for TruGreen far exceeded the wages I was paid during the first work week with TruGreen.

7. TruGreen did not reimburse me any portion of the expenses I incurred in coming to the United States to work for TruGreen either during the first work week or at any other time.

8. Based on my conversations with other workers, their visa, processing, and transportation costs exceeded their first week's wages and they were not reimbursed for those expenses by TruGreen.

9. TruGreen asked me if I would return to Mexico in July 2004. TruGreen withheld my last paycheck and charged me an additional $75 to pay for the costs of my transportation home.

A-14

I declare under penalty of perjury of the laws of the United States that the foregoing

statements are true and correct

Dated: 4/21/2006

Ramon Villanueva

**Ramon Villanueva-Bazaldua**

A-15

# Employer Disclosure Affidavit
## for Company: Tru-Green Chemlawn (Newport)
## Order Dated:  9/29/2003 9:52:52 AM

view premium rates
view Spanish form
close this window

| | |
|---|---|
| Name of Sponsoring H-2B company | Tru-Green Chemlawn (Newport) |
| Address: | 1350 1st State Blvd., Newport, DE 19804 |
| Office Phone: | 302-992-9680 |
| Fax Phone: | 302-633-9428 |
| Mobile Phone: | 302-420-8335 |
| Home or Other Phone: | 302-376-8186 |
| Contact Name: | Mike A. Matejik |
| Contact Title: | Branch Manager |

# Work Information

Occupation Title:    Pesticide Handlers, Sprayers, and Applicators, Vegetation

Occupation Description:
Apply pesticides, herbicides, fungicides, or insecticides to lawns using sprayers, seeders, spreaders, aerators

Employment Start Date:    3/16/2004   End Date: 11/15/2004

List the tasks and skills
needed to perform the work.

Education: none

Experience: lawn fertilization very helpful

Skills: valid driver's license; bilingual

| | |
|---|---|
| Starting wage offered (if different from prevailing wage): | $11 34  O.T. Rate: $17 01 |
| Average hours of work per week: | 40 |
| Rent and utilities per month: | 373 |
| Transportation charge per month (if applicable): | 32 |
| Other charges to worker per month (if any): | |
| Comments/Instructions for worker: | Workers will receive commission based on production level |
| Day and place paycheck is distributed: | Friday |

Will the employer guarantee to supply training if the employee does not have the required skills? YES

Signature of Employee: _Ramon Villanueva_    Date: _02/20/04_

A-16

RV-0001

## ACUERDO SOBRE CONDICIONES LABORALES

1) Las condiciones laborales que las compañías norteamericanas contratantes (Patrones) proporcionan a los trabajadores tienen como fin proteger al empleado y al patrón. En base a las condiciones laborales, el patrón esta legalmente obligado a pagar lo estipulado en dicho documento, si el empleado no es remunerado de acuerdo a lo acordado, el o ella deberán de comunicarse a **L.L.S. International (81) 8040-7575 y 77** a fin de informar de esta situación.

2) El número de horas trabajadas a la semana es solamente una estimación, por lo tanto, cada trabajador debe tener en cuenta, que las condiciones climatológicas y otros eventos imprevistos pueden afectar el total de horas trabajadas a la semana y por lo tanto su ingreso. Todos los desacuerdos deben ser discutidos con el patrón que les contrató **L.L.S. NO ES EL PATRON, favor de no comunicarse para tales asuntos.**

3) En el caso de que la Compañía Americana que lo contrató determine que por cuestiones climáticas o de fuerza mayor no puede seguir proporcionando trabajo al empleado durante el período que abarque su visa de trabajo; esta deberá cubrir los gastos del empleado a su lugar de origen, ya que el empleado no puede trabajar en otra Compañía en la que no este autorizada en su visa de trabajo. Esta situación será estrictamente responsabilidad de la empresa contratante.

4) El trabajador solo puede dejar su trabajo por causa de una emergencia, en dado caso el trabajador esta obligado a avisarle al patrón y pedir permiso por escrito. En caso de no ser así, o que el trabajador renuncie, o se vaya del lugar de trabajo sin avisar, se le avisará al I.N.S. y al Consulado Americano, el trabajador será considerado como ilegal y pierde toda protección dada por la visa de trabajo, esto resultará en la cancelación de su visa y el trabajador perderá la posibilidad de regresar el año entrante mediante el programa de visas H2B

5) El trabajador esta de acuerdo y entiende que el servicio que presta **L.L.S. International** consiste estrictamente en el trámite de su visa de trabajo ante el Consulado Americano con su consentimiento y a petición de las Compañias Americanas contratantes Asimismo entiende que la obtención de la visa de trabajo no depende sino estrictamente del Consulado Americano, por lo que en caso de ser rechazada su solicitud, **L.L.S. International** no tiene responsabilidad alguna ni compromiso de indemnizar al solicitante, únicamente a reembolsarle el importe de 100 dólares por la tramitación de su visa.

6) Los reembolsos solo proceden en los siguientes casos:
   * Cuando es rechazada su solicitud de visa en el consulado, en este caso se le regresarán 100 DÓLARES.
   * Cuando por parte de la empresa solicitante no se llegue a realizar el trabajo estando todavia en México, se procederá a colocar al trabajador en otra empresa, en caso de no ser posible se le regresarán 255 DÓLARES
   **NOTA: En todos los demás casos NO PROCEDERA REEMBOLSO ALGUNO**

7) El servicio de L.L.S. International, tiene un costo de:
   * 155 dólares (USD) para L.L.S. por gastos Administrativos
   Los siguientes pagos es lo que cobra el Consuldo Americano:
   * 100 dólares (USD) por la tramitación de la visa en el Consulado
   * 100 dólares (USD) para el pago de derecho de visa en el Consulado.
   Transporte:
   * 200 dólares (USD) aproximadamente de trasporte para su traslado via terrestre
   **NOTA: Estos pagos se realizan hasta que la persona haya sido seleccionada, la persona haya aceptado el trabajo y tengan un lugar seguro en alguna Compañía.**

8) L.L.S. International o la compañía contratante en Estados Unidos no serán responsables de pagar y/o devolver sus gastos de viaje, ni los que se deriven del proceso de la visa en el Consulado Americano, **ESTA ES UNICAMENTE RESPONSABILIDAD DEL TRABAJADOR**

Este documento no asegura la obtención de trabajo.

_Ramón Villanueva Bazaldua_
Firma del Trabajador

_20-Febrero-2004_
Fecha

A-17

LLS International (Monterrey)
Ocampo No. 427 Poniente
Entre Rayon y Aldama
C.P. 64000
Tels : (81) 8040 7575 / 8040 7577

RV-0002

# Labor Agreement Conditions

1) The labor conditions that the North American Contracting Companies (bosses) provide to the workers having the goal to protect the employee and the employer. Based on the labor conditions, the employer is legally bound to pay what is agreed in such document, if the employee is not paid in accordance to what it has been agreed upon, he/she must contact **L.L.S. International** (81) 8040-7575 and 77 with the purpose to inform about this situation.

2) The number of weekly work hours is only estimated; therefore each worker must take into account that the weather conditions and other unforeseen events may affect the total number of hours worked in a week and therefore his/her income. All of the disputes must be discussed with the employer that hired them **L.L.S. is not the employer; please do not contact them for such issues.**

3) In case that the North American Contracting Company determines that because of the weather or unforeseen events could not continue providing work to the employee during the period of him/her work visa; this should cover the expenses of the employee to return to his/her place of origin because the employee can no longer work for any other company in which it is not authorized in his/her work visa. This situation will be strictly responsible by the hiring company.

4) The employee can leave his/her job only in case of an emergency, in such a case the worker is obligated to notify his/her employer and must ask to be excused in writing. In case of this not happening as it should or that the worker resigns or walks away from the job without notification, the **I.N.S.** will be contacted as well as the American Consulate, the worker will be considered to be illegal and will lose all the protection given by the work visa, this will bring about the cancellation of his/her visa and the worker will lose the possibility of returning the following year through the program of **H2B** visas.

5) The worker agrees and understands that the service rendered by **L.L.S. International** consists strictly in the process of the work visa before the American Consulate with his/her consent and because of a petition of the North American Contracting Companies, likewise he/she understands that the issuance of the work visa depends strictly on the American Consulate, or in case of his/her application being rejected, **L.L.S. International** is not liable whatsoever nor can give any restitution to the applicant, only to pay back $100.00 for the visa process.

6) The reimbursements can be processed only in the following cases.
   - When his/she visa application is rejected at the Consulate, in this case $100.00 will be reimbursed
   - When by the requesting company the work is not performed, when he/she is still in Mexico, the worker will be placed in another company and in case of this not being possible $255.00 will be reimbursed.
   **Note: In all the other cases THERE WILL NOT BE REIMBURSEMENT WHATSOEVER.**

7) The L.L.S. International Services has a purchase price of:
   - $155 (USD) for administrative expenses of LLS
   The following payments are American Consulate charges:
   - $100.00 (USD) for the processing of the visa in the Consulate charges:
   - $100 (USD) as a payment for the Right of a visa and the Consulate
   Transportation:
   - Approximately $200.00 (USD) for his/her road traveling transportation
   **Note:  These payments will take place when the person has been selected, the person has accepted the work and he or she has a secured place in any company.**

8) **L.L.S. International** or the American Contracting Company in the Untied States will not be liable for paying and/or reimbursing travel expenses nor those that are derived from the visa process at the American Consulate; **this is the worker's responsibility only.**

**This document does not insure the obtaining of a Job.**

<u>Ramon Villanueva Bazaldua</u>
Worker's Signature

<u>February 20th, 2004</u>
Date

[seal]

---
**L.L.S. International (Monterrey)**
**Ocampo No. 427 Poniente**
**Between Rayon and Aldama**
**C.P. 64000**
**Tel.: (81)-8040 7575/ 8040 7577**
---

A-19

**U.S. DEPARTMENT OF LABOR**
**EMPLOYMENT AND TRAINING ADMINISTRATION**
**The Curtis Center**
**170 S. Independence Mall West**
**Suite 825 East**
**Philadelphia, Pennsylvania 19106-3315**



**FINAL DETERMINATION**

T2004-DE-03401677

In reply refer to: MIR

January 20, 2004

No. of aliens: <u>14</u>
Occupation: <u>Lawn Service Worker</u>

TRUGREEN CHEMLAWN
Tracy Drus
P O Box 646
Pinckney, MI 48169

<u>October 24, 2003</u>
Date of acceptance for processing

<u>March 1, 2004 - November 30, 2004</u>
Period of Certification

The Department of Labor has made a final determination on your application for certification of temporary alien employment pursuant to Title 20, Code of Federal Regulations, 655 Subpart A.

<u>The Application for Alien Employment Certification, Form ETA 750A, **has been certified** and is enclosed</u>. All enclosures should be submitted to the Immigration and Naturalization Service, U.S. Department of Justice, Eastern Service Center, 75 Lower Welden Street, St. Albans, Vermont 05479-0001 for consideration with your petition (Form I-129H).

Sincerely,

STEPHEN W. STEFANKO
Certifying Officer

cc:   State ES Agency-Delaware
      TRUGREEN CHEMLAWN

Attachments: ETA 750A

RV-0028

ETA 7145TA(REV MAR., 1990)

A-20

12



OMB Approval No. 44-R1301

U.S. DEPARTMENT OF LABOR
Employment and Training Administration

APPLICATION
FOR
ALIEN EMPLOYMENT CERTIFICATION

**IMPORTANT: READ CAREFULLY BEFORE COMPLETING THIS FORM**
PRINT legibly in ink or use a typewriter. If you need more space to answer questions in this form, use a separate sheet. Identify each answer with the number of the corresponding question. SIGN AND DATE each sheet in original signature

To knowingly furnish any false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a felony punishable by $10,000 fine or 5 years in the penitentiary or both (18 U.S.C. 1001)

| PART A. OFFER OF EMPLOYMENT |
|---|

**1 Name of Alien**      (Family name in capital letter First Middle Maiden)

(14) Unnamed H-2B Workers/Aliens

**2 Present Address of Alien**      (Number Street City and Town, State ZIP code or Province, Country)

N/A

**3 Type of Visa**      (If in U S)

N/A

The following information is submitted as an offer of employment.

**4 Name of Employer**      (Full name of Organization)

TruGreen Chemlawn

**5 Telephone**

302-992-9680

**6. Address**      (Number, Street, City and Town, State ZIP code)

1350 1st State Blvd.
Newport, DE 19804

**7. Address Where Alien Will Work**      (if different from item 6)

New Castle County

| 8 Nature of Employer's Business Activity | 9. Name of Job Title | 10. Total Hours Per Week | | 11. Work Schedule (Hourly) | 12. Rate of Pay | |
|---|---|---|---|---|---|---|
| | | a. Basic | b. Overtime | | a. Basic | b Overtime |
| Lawn maintenance | Lawn care applicator | 40 | 0 | 7:00 a.m. 5:00 p.m. | $ 10.00 per hour | $ 15 00 per hour |

**13** Describe Fully the job to be Performed      (Duties)

Apply pesticides, herbicides, fungicides, or insecticides to lawns using sprayers, seeders, spreaders aerators  Entry level position

| 14 State in detail the MINIMUM education, training, and experience for a worker to perform satisfactorily the job duties described in Item 13 above. | | | | **15. Other Special Requirements** |
|---|---|---|---|---|
| EDU-CATION (Enter number of years) | Grade School | High School | College | None . |
| | 0 | 0 | 0 | College Degree Required      (specify) N/A    Major Field of Study N/A |
| TRAIN-ING | No Yrs. 0 | | No. Mos. 0 | Type of Training N/A |
| EXPERI-ENCE | Job Offered Yrs 0 | Number Mos 0 | Related Occupation Yrs 0    Mos 0 | Related Occupation      (specify) N/A |

**16.** Occupational Title of Person Who Will Be Alien's Immediate Supervisor  ➤  Field Manager

**17. Number of Employees Alien Will Supervise**  ➤  0

ENDORSEMENTS      (Make no entry in section - for Government use only)

| Date Forms Received | |
|---|---|
| L.O. 10/24/03 | S.O. 10/24/03 |
| R.O. 1/13/04 | N.O. |
| Ind. Code 0782 | Occ. Code 408.684-010 |
| Occ. Title 1awn Service Workers | |

03401677



| 18. COMPLETE ITEMS ONLY IF JOB IS TEMPORARY | | | 19. IF JOB IS UNIONIZED (Complete) | | |
|---|---|---|---|---|---|
| a. No. of Openings To Be Filled By Aliens Under Job Offer | b. Exact Dates You Expect To Employ Alien | | a. Number of Local | b. Name of Local | |
| | From | To | | | |
| 14 | 3/1/2004 | 11/30/2004 | | c. City and State | |

| 20. STATEMENT FOR LIVE-AT-WORK JOB OFFERS (Complete for Private Household ONLY) | | | | | | | |
|---|---|---|---|---|---|---|---|
| a. Description of Residence | b. No. Persons residing at Place of Employment | | | | c. Will free board and private room not shared with any-one be provided? | | ("X" one) |
| ("X" one) | Number of Rooms | Adults | Children | | Ages | | |
| ☐ House | | | BOYS | | | ☐ YES | ☐ NO |
| ☐ Apartment | | | GIRLS | | | | |

21. DESCRIBE EFFORTS TO RECRUIT U.S. WORKERS AND THE RESULTS (Specify Sources of Recruitment by Name)

- Newspaper/Classified Ads
- Employee Referrals
These efforts have all been unsuccessful in recruiting U.S. workers

22. Applications require various types of documentation. Please read Part II of the instructions to assure that appropriate supporting documentation is included with your application.

### 23. EMPLOYER CERTIFICATIONS

By virtue of my signature below, I HEREBY CERTIFY the following conditions of employment

a. I have enough funds available to pay the wage or salary offered the alien.

b. The wage offered equals or exceeds the prevailing wage and I guarantee that if a labor certification is granted, the wage paid to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work

c. The wage offered is not based on commissions bonuses, or other incentives, unless I guarantee a wage paid on a weekly, bi-weekly, or monthly basis

d. I will be able to place the alien on the payroll on or before the date of the alien's proposed entrance into the United States

e. The job opportunity does not involve unlawful discrimination by race, creed, color, national origin, age, sex, religion, handicap, or citizenship

f. The job opportunity is not:

(1) Vacant because the former occupant is on strike or is being locked out in the course of a labor dispute involving a work stoppage

(2) At issue in a labor dispute involving a work stoppage

g. The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law

h. The job opportunity has been and is clearly open to any qualified U.S. worker.

### 24. DECLARATIONS

DECLARATION OF EMPLOYER ➤ Pursuant to 28 U.S.C. 1746 I declare under penalty of perjury the foregoing is true and correct

| SIGNATURE | DATE |
|---|---|
| *[signature]* | 10/30/2003 |

| NAME (Type or Print) | TITLE |
|---|---|
| James A. Vacchiano | Region People Services Manager |

AUTHORIZATION OF AGENT OF EMPLOYER ➤ I HEREBY DESIGNATE the agent below to represent me for the purposes of labor certification and I TAKE FULL RESPONSIBILITY for accuracy of any representations made by my agent

| SIGNATURE OF AGENT OF EMPLOYER | DATE |
|---|---|
| *[signature]* | 10/30/2003 |

| NAME OF AGENT (Type or Print) | ADDRESS OF AGENT (Number Street City State ZIP code) |
|---|---|
| Great Lakes Labor | PO Box 646 Pinckney, MI 48169 |

A-22

RV-0030

U.S. DEPARTMENT OF LABOR
EMPLOYMENT AND TRAINING ADMINISTRATION
The Curtis Center
170 S. Independence Mall West
Suite 825 East
Philadelphia, Pennsylvania 19106-3315

FINAL DETERMINATION

T2004-MD-03401542

In reply refer to: MIR

February 24, 2004

No. of aliens: <u>10</u>
Occupation: <u>Lawn Service Worker</u>

TruGreen Chemlawn
Tracy Drus
Post Office Box 646
Pinckney, MI  48169

<u>October 27, 2003</u>
Date of acceptance for processing

<u>February 24, 2004 - November 30, 2004</u>
Period of Certification

The Department of Labor has made a final determination on your application for certification of temporary alien employment pursuant to Title 20, Code of Federal Regulations, 655 Subpart A.

<u>The Application for Alien Employment Certification, Form ETA 750A, **has been certified** and is enclosed</u>. All enclosures should be submitted to the Immigration and Naturalization Service, U.S. Department of Justice, Eastern Service Center, 75 Lower Welden Street, St. Albans, Vermont 05479-0001 for consideration with your petition (Form I-129H)

Sincerely,

STEPHEN W. STEFANKO
Certifying Officer

cc:    State ES Agency-Maryland
       TruGreen Chemlawn

Attachments: ETA 750A

*A-23*
RV-0031

ETA 7145IA (REV. MAR , 1990)

*14*

 

OMB Approval No. 44-R1301

U.S. DEPARTMENT OF LABOR
Employment and Training Administration

APPLICATION
FOR
ALIEN EMPLOYMENT CERTIFICATION

> **IMPORTANT: READ CAREFULLY BEFORE COMPLETING THIS FORM**
> *PRINT* legibly in ink or use a typewriter. If you need more space to answer questions in this form, use a separate sheet. Identify each answer with the number of the corresponding question. SIGN AND DATE each sheet in original signature.
> To knowingly furnish any false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a felony punishable by $10,000 fine or 5 years in the penitentiary, or both (18 U.S.C. 1001)

**PART A. OFFER OF EMPLOYMENT**

| | |
|---|---|
| 1 Name of Alien  (Family name in capital letter First Middle Maiden) | |
| (10) Unnamed H-2B Workers/Aliens | |
| 2 Present Address of Alien  (Number, Street, City and Town State ZIP code or Province, Country) | 3 Type of Visa  (If in U S) |
| N/A | N/A |

The following information is submitted as an offer of employment.

| 4 Name of Employer  (Full name of Organization) | 5 Telephone |
|---|---|
| TruGreen Chemlawn | 301-840-8090 |

6 Address  (Number, Street, City and Town, State ZIP code)
18910 Woodfield Rd.
Gaithersburg, MD 20879

7 Address Where Alien Will Work  (If different from item 6)
Montgomery County

| 8 Nature of Employer's Business Activity | 9 Name of Job Title | 10 Total Hours Per Week | | 11 Work Schedule | 12 Rate of Pay | |
|---|---|---|---|---|---|---|
| | | a Basic | b Overtime | | a Basic | b Overtime |
| lawn maintenance | lawn care applicator | 40 | 0 | (Hourly) 7:00 am 3:00 p.m. | $ 10 00 per hour | $ 15 00 per hour |

13 Describe Fully the job to be Performed       (Duties)

Apply pesticides, herbicides, fungicides, or insecticides to lawns using sprayers, seeders, spreaders aerators Entry level position.

| 14 State in detail the MINIMUM education, training, and experience for a worker to perform satisfactorily the job duties described in Item 13 above. | | | | | 15. Other Special Requirements |
|---|---|---|---|---|---|
| EDU-CATION (Enter number of years) | Grade School | High School | College | College Degree Required  (specify) | NONE |
| | 0 | 0 | 0 | N/A | |
| | | | | Major Field of Study | |
| | | | | N/A | |
| TRAIN-ING | No. Yrs | | No. Mos. | Type of Training | |
| | 0 | | 0 | | |
| EXPERI-ENCE | Job Offered | | Related Occupation | Related Occupation  (specify) | |
| | Number | | | N/A | |
| | Yrs | Mos | Yrs | Mos | |
| | 0 | 0 | 0 | 0 | |

| 16. Occupational Title of Person Who Will Be Alien's Immediate Supervisor | ➤ ➤ Field Manager | 17. Number of Employees Alien Will Supervise ➤ 0 |
|---|---|---|

◄── ENDORSEMENTS  (Make no entry in section - for Government use only)

Date Forms Received

| L.O 10/27/03 | S.O 10/27/03 |
|---|---|
| R.O 1/13/04 | N.O. |
| Ind. Code 0782 | Occ. Code 408.684-010 |

*[signature]*

03401542

Replaces MA 7-50A B and C (Apr 1970 edition) which is obsolete

ETA 750 (Oct 1979)

A-24

15

| 18. COMPLETE ITEMS ONLY IF JOB IS TEMPORARY | | | 19. IF JOB IS UNIONIZED (Complete) | |
|---|---|---|---|---|
| a. No. of Openings To Be Filled By Aliens Under Job Offer | b. Exact Dates You Expect To Employ Alien | | a. Number of Local | b. Name of Local |
| | From | To | | |
| 10 | 2/24/2004 | 11/30/2004 | c. City and State | |

| 20. STATEMENT FOR LIVE-AT-WORK JOB OFFERS (Complete for Private Household ONLY) | | | | | | | |
|---|---|---|---|---|---|---|---|
| a. Description of Residence | | b. No. Persons residing at Place of Employment | | | | c. Will free board and private room not shared with anyone be provided? | ("X" one) |
| ("X" one) ☐ House ☐ Apartment | Number of Rooms | Adults | Children | Ages | | | ☐ YES  ☐ NO |
| | | | BOYS | | | | |
| | | | GIRLS | | | | |

21. DESCRIBE EFFORTS TO RECRUIT U S WORKERS AND THE RESULTS (Specify Sources of Recruitment by Name)

- Newspaper/Classified Ads
- Employee Referrals
These efforts have all been unsuccessful in recruiting U.S. workers

22. Applications require various types of documentation. Please read Part II of the instructions to assure that appropriate supporting documentation is included with your application.

### 23. EMPLOYER CERTIFICATIONS

By virtue of my signature below, I HEREBY CERTIFY the following conditions of employment

a.  I have enough funds available to pay the wage or salary offered the alien

b.  The wage offered equals or exceeds the prevailing wage and I guarantee that if a labor certification is granted, the wage paid to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work

c.  The wage offered is not based on commissions bonuses or other incentives, unless I guarantee a wage paid on a weekly bi-weekly or monthly basis

d.  I will be able to place the alien on the payroll on or before the date of the alien's proposed entrance into the United States

e.  The job opportunity does not involve unlawful discrimination by race creed color national origin age sex religion handicap or citizenship

f.  The job opportunity is not:

    (1)  Vacant because the former occupant is on strike or is being locked out in the course of a labor dispute involving a work stoppage

    (2)  At issue in a labor dispute involving a work stoppage

g.  The job opportunity's terms conditions and occupational environment are not contrary to Federal State or local law

h.  The job opportunity has been and is clearly open to any qualified U.S. worker.

### 24. DECLARATIONS

DECLARATION OF EMPLOYER ➤ Pursuant to 28 U S C 1746, I declare under penalty of perjury the foregoing is true and correct.

| SIGNATURE  *James A. Vacchiano* | DATE 10/22/2003 |
|---|---|
| NAME (Type or Print)  James A. Vacchiano | TITLE  Region People Services Manager |

AUTHORIZATION OF AGENT OF EMPLOYER ➤ I HEREBY DESIGNATE the agent below to represent me for the purposes of labor certification and I TAKE FULL RESPONSIBILITY for accuracy of any representations made by my agent.

| SIGNATURE OF EMPLOYER  *James A. Vacchiano* | DATE 10/22/2003 |
|---|---|
| NAME OF AGENT (Type or Print)  Great Lakes Labor | ADDRESS OF AGENT (Number Street City State ZIP code)  PO Box 646  Pinckney, MI 48169 |

A-25

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RAMON VILLANUEVA-BAZALDUA
**individually and on behalf of others similarly
situated,**

           **Plaintiff**

v.

**TRUGREEN LIMITED PARTNERS and
TRUGREEN, INC.**

           **Defendants.**

CA 1:06-cv-00185-GMS

**Class Action**

---

## AFFIDAVIT OF EDWARD TUDDENHAM

NOW COMES Edward Tuddenham and states that were he called as a witness in this action he would testify under oath as follows:

1.    I am an attorney licensed to practice law in the State of Texas and have been so licensed since May of 1979. My business address is 272 W. 107th St. #20A, New York, New York 10025.

2.    I am one of the attorneys of record for Plaintiff Ramon Villanueva-Bazaldua in the above referenced action.

3.    I am admitted to practice before the United States Supreme Court, the Court of Appeals for the Fifth, Eleventh and D.C. Circuits, and the United States District Courts for the Eastern, Western, and Northern Districts of Texas.

4.    I graduated from Harvard University Law School in 1978. From 1978 until 1985 I was employed by Texas Rural Legal Aid, Inc. in Hereford, Texas to represent migrant workers in

civil rights and labor matters. From 1985 until 1989 I was employed by the Migrant Legal Action Program, Washington, D.C. to litigate employment matters on behalf of U.S. and foreign farm workers. From 1989 until the present I have been in private practice. First with the firm of Wiseman, Durst, Tuddenham & Owen in Austin, Texas and more recently as a solo practitioner. Since 1989 my practice has concentrated on plaintiff employment litigation.

5.     I am experienced in representing large classes of employees in wage claims. In 1996 I was lead counsel in *Rivera v. Monfort*, No. 2-96-CV-441 (N.D. Tex.), an FLSA action that was certified by Judge Mary Lou Robinson as a representative action on behalf of approximately 3000 workers employed in meat packing plants located in five different states. More recently I represented an FLSA opt-in class of off-shore surveyors employed in Texas and Louisiana in *Dyer v. Thales GeoSolutions, Inc.*, H-04-2582 (S.D. Tex.), and I am currently representing an opt-in class of landscape workers employed throughout the country in *Rivera v. Brickman Group, Ltd.*, 2:05-CV-01518-LP (E.D. Pa.). In addition I have been lead counsel in numerous class actions for back wages certified under Rule 23 or state law equivalents of Rule 23, including, among others, *Rainbow Group, Ltd. v. Johnson*, 990 S.W.2d 351 (Tex. App. — Austin 1999) (wage claim for class of 400 haircutters); *Sharifi v. Young Brothers Const.*, No. 89-3626-3(Tex. 74th Jud. Dist.) (prevailing wage claim for 200 truck drivers); *Bygrave v. Sugar Cane Growers Cooperative of Florida*, CL 89-8690-AD (Fla. Cir. Ct. -- Palm Beach) (wage claim on behalf of 15,000 sugar cane cutters); *Frederick County Fruit Growers Assn. v. Mclaughlin*, 703 F. Supp. 1021 (D.D.C. 1989) (wage claim on behalf of approximately 10,000 apple harvest workers); *Salazar v. Presidio Valley Farmers Assn.*, 863 F.2d 369 (5th Cir. 1989) (wage claim on behalf of 800 vegetable harvest workers).

6. I have personal knowledge that LLS Intl., Inc. maintains a database of H-2B workers that it processes for its clients. This database includes information regarding the Mexican addresses, telephone numbers, and alternative telephone numbers of H-2B workers.

7. I declare under penalty of perjury that the foregoing statements are true and correct.

Date: _4·25·2006_

Edward Tuddenham
Tx. Bar No. 20282300

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

JUAN JAVIER RIVERA, and
JOSE PABLO LEMUS, individually and
on behalf of others similarly situated,

        Plaintiffs,

    v.                          Civil Action No. 2:05-CV-01518-LP

THE BRICKMAN GROUP, LTD,

        Defendant.

---

## DECLARATION OF GREGORY S. SCHELL

Gregory S. Schell declares and says:

1. I submit this declaration as to my experience with communication with persons in collective and class actions in Mexico and with problems as to the effectiveness of communication by mail with persons in Mexico.

2. I am managing attorney of the Migrant Farmworker Justice Project. The Migrant Farmworker Justice Project provides free legal assistance in employment-related matters to migrant farmworkers throughout the state of Florida. My office is located at 508 Lucerne Avenue, Lake Worth, Florida 33460.

3. For the past 26 years, my practice has consisted exclusively of representing migrant and seasonal farmworkers in employment-related litigation. The majority of these cases are on behalf of Mexican nationals, and many are class actions. The vast majority of my cases involve claims of unpaid wages and several have been collective actions under the Fair Labor Standards Act. Over the past decade, I have represented well over 5,000 Mexican nationals, the majority of whom maintained their permanent homes in Mexico.

A-29

9. Most low income individuals, particularly those in rural areas, receive little or no mail during the course of a year. Purchases are made in cash, so no bills are mailed. Almost no advertisers use the mails to contact lower-income Mexicans. Because they rarely if ever receive mail, most low income individuals do not routinely check the nearest municipality seat for letters. This is especially true of farmers and others in rural areas, who often live hours away from the municipality seat.

10. Where telephone numbers are available to contact clients in Mexico this is the most reliable means for actually getting in touch even if the phone number is a phone number of a neighbor, family member, or other persons nearby.

11. My clients themselves recognize the unreliability of mail delivery in Mexico. When sending money home to their families in Mexico, my clients without exception rely on alternative means. In a limited number of areas, private "express services" will deliver letters to Mexico. However, these express services do not serve most rural areas. In such situations, my clients rely on Western Union and other telegraphic services to transmit money to their families after making arrangements with family members to expect the money.

12. Our firm has developed considerable expertise in transmitting money to Mexico. When we are successful in class action and other litigation on behalf of Mexican workers, we contact the workers by telephone and ask them to select a means of having their share of the judgment or settlement proceeds sent to them. One option is to have the funds mailed to them via registered mail, at no cost to the worker. The alternative is to send the money through an express service or by Western Union, with the cost of such services deducted from the worker's recovery. Over 95 percent of our clients choose to have their recoveries sent to them by means

4. In the course of representing my Mexico-based clients, I have needed to maintain contact with them for purposes of advising them as to developments in the litigation or to obtain their assistance in completing discovery responses.

5. Maintaining contact with my clients in Mexico has proven an extremely difficult task. This is primarily because mail service in Mexico is entirely unreliable. With the exception of a few major cities, home delivery of mail is not available. Instead, letters are sent to central post offices to which area residents must travel to request their mail.

6. Because of this, most of my clients, and virtually all of those who reside in areas other than Mexico's half dozen largest cities, do not have mailing addresses similar to those used in the United States. Instead, my clients' "mailing addresses" are usually limited to the name of the local community in which they reside and the name of the municipality and state in which the local community is situated. Mail is held for these individuals in the municipality seat and unless the recipient travels there, the letter is returned to the sender. No notice is sent to the recipient of the mail that mail is waiting for him or her and mail is not delivered to the recipient unless the recipient happens to ask for the mail.

7. In many cases mailing addresses which appear to be more complete are actually handled in the same manner as described in paragraph 6. Even when there is something that looks like a complete address (i.e. name, street number, and town) that often is a general store or some other location operating as an unofficial post office where people have their mail delivered – but it's the same problem – they do not know that there is mail waiting for them unless they check.

8. The problems described in Paragraph 5-7 are further complicated by the limited use of the mails for business transactions by low income individuals in Mexico.

other than registered mail, *i.e.*, by express services (in those communities served by such firms) or via Western Union.

13. Because of the limitations of mail service in Mexico, I rarely use the mails to distribute class action notices in my litigation on behalf of Mexico-based workers. Instead, we have been forced to use alternative means of notice, such as telephone where numbers are available, radio advertisements and holding meetings where direct contact is possible. On the one occasion we used the mail to distribute a class notice, we learned that less than 20 percent of the class members ever received the notice.

14. Direct contact through telephone and meetings is also the preferable means of communicating class notice to low-wage Mexican workers because of the high rate of illiteracy among those workers.

I declare and verify under penalty of perjury that the foregoing statements by me are true and correct.

Dated: November 18, 2005

Gregory S. Schell

A-32



# U.S. Department of Labor
## Employment & Training Administration

# H-2B Certification for Temporary Nonagricultural Work

The H-2B nonimmigrant program permits employers to hire foreign workers to come to the U.S. and perform temporary nonagricultural work, which may be one-time, seasonal, peak load or intermittent. There is a 66,000 per year limit on the number of foreign workers who may receive H-2B status during each USCIS fiscal year (October through September). The process for obtaining H-2B certification is similar to, but less extensive and time consuming, than permanent certification.

### On This Page

- Qualifying Criteria
- Process for Filing
- Forms & Instructions
- Program Regulations & FAQs

In the case of the H-2B certification, the DOL decision is only an advisory to USCIS. The certification request is made by the employer using Form ETA 750, and multiple openings of the same job and rate of pay may be on the same application. The certification is issued to the employer, not the worker, and is not transferable from one employer to another or from one worker to another. To allow time for processing delays and correction of application errors, the employer should file for H-2B at least 60 days, but not more than 120 days before the worker is needed.

## Qualifying Criteria

- The job and the employer's need must be one time, seasonal, peak load or intermittent;
- the job must be for less than one year; and
- there must be no qualified and willing U.S. workers available for the job.

## Process for Filing

1. The prospective employer files a completed Form ETA 750 in duplicate to the local State Workforce Agency (SWA) serving the area of proposed employment.

2. The SWA instructs the employer on recruitment requirements, appropriateness of the wages and working conditions offered and refers qualified candidates to the employer for interviews.

3. The employer prepares a recruitment report summarizing the results of the effort. This recruitment report includes names and addresses of applicants and lawful reasons for not hiring the interviewees.

4. When evaluated, applications for certification shall be forwarded by the local SWA to the appropriate National Processing Center (NPC).

5. The DOL NPC certifying officer will grant certification if he/she finds that qualified persons in the United States are not available and that the terms of employment will not adversely affect the wages and working conditions of

A-33

workers in the United States similarly employed.

6. The certification or notice of denial thereof is to be used by the employer to support its visa petition filed with the district director of the USCIS. To obtain the H-2B work visa, the employer uses the USCIS Form I-129, Petition for Nonimmigrant Worker. The Labor Certification Determination and the Form I-129 are submitted to the USCIS along with filing fees.

7. Because the DOL decision is only an advisory to USCIS, there is no appeal process within the DOL for denial for H-2B applications. Such appeals must be filed with the USCIS.

8. A candidate outside the U.S. must apply for a visa at the U.S. Consulate and the employer must provide copies of the above forms to the local USCIS service center.

## Forms & Instructions

Form ETA 750
Instructions for Form ETA 750

## Program Regulations & FAQs

20 CFR 655.200 - .499
FAQS

**Employment and Training Administration**
U.S. Department of Labor
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

1-877-US-2JOBS
**Contact Us**
**Pagemaster** (Page content/style questions)
**Webmaster** (Technical issues)

A-34

Case 1:06-cv-00185-GMS Document 16 Filed 04/28/2006 Page 35 of 48



**U.S. CONSULATE GENERAL**
**CIUDAD JUAREZ, MEXICO**

## Procedure to process an H2B Temporary or Seasonal Non-Agricultural Workers visa

Home   Back

Before filing the petition (Form I-129) with the USCIS Service Center having jurisdiction over the area where the employment will take place, the prospective employer of the applicant is required to file a labor condition application with the Department of Labor concerning the terms and conditions of the contract of employment. The USCIS will forward the approved petition Notice of Action/Approval "form I-797" to the employer. The employer will then forward the "Notice of Action/Approval" form I-797 to applicant. An I-797 approval notice is not a visa. You must obtain a visa at a U.S. Embassy or Consulate to enter the U.S.

> **Internet links that provide information about the process:**
>
> **U.S. Department of Labor**
> http://workforcesecurity.doleta.gov/foreign
>
> **United States Citizenship and Immigration Services (U.S. CIS)**
> http://uscis.gov
>
> **U.S. Department of State**
> http://www.travel.state.gov

**Note:** For a fee, the USCIS offers a Premium Processing Service which expedites the processing of a nonimmigrant visa petition.

### H2B Visa Application Instruction for U.S. Consulate in Ciudad Juarez

If your petition has been approved, the U.S. company (U.S. employer/petitioner) needs to submit documentation at least 48 hours in advance to this Consulate by fax or email for preliminary processing in order to obtain an appointment.

Fax number: 011 52 656 611 53 50 or 011 52 656 611 38 60

E-mail: CDJNIVS@State.gov

**The documentation should consist of the following:**

- **Copy of the I-797 form, "Notice of Action/Approval"**
- **Copy of the I-129 petition**
- **Company letter (must be on a letterhead paper and must include information regarding all the following):**
  - Petitioner's company name
  - Petition number
  - Owner's name
  - Company taxpayer number
  - Date company founded
  - Request number of appointment slots
  - Preferred date

*A-35*

o Name of representative or agent (if is being used)
o Contact person: Name and telephone number
o E-mail address or fax number to receive notification when the company is ready for appointment
o A brief statement describing the workers' duties (specify number of hours per week and proposed wages per hour/week) or contract.
o Company owner's signature

- **List of applicants in alphabetical order by last name**.

  **Note:** The list should name only applicants coming on the appointment date.
  o Last name(s), first name(s)
  o Date and place of birth
  o Passport number (if available)
  o Specify the applicants who are substitutions, if any. Please include complete name(s) and date(s) of birth of the applicant(s) listed on I-797 who will be deleted from the list and the name(s) and date(s) of birth of the replacement worker(s).
  o Specify the applicants who are "returning workers," if any.

**IMPORTANT NOTE:** Only the employer can make substitutions; an agent or the workers cannot make substitutions. Beneficiaries may be substituted in an H-2B petition approved on behalf of a group when the job offer does not require any education, training, and/or experience.

After documentation has been received and reviewed, the employer will be notified by the Consulate to request an appointment from our call center. All applicants must have an appointment; walk-in applicants will not be accepted.

*NOTE: Only the employer or the authorized representative is able to make the appointment*

**How to contact our call center:**

Phone: From the U S.- 011-52-477-788-7000, ext. 86268 or 87072

From Mexico- 01 –477-7887000, ext 86268 or 87072

E-mail: bloques.embassy@teletech.com

**APPOINTMENT DATE**

On the day of the appointment, applicants must report to the Consulate for enrollment at 2:00 p.m. with their complete DS-156. Male applicants between the ages of 16 and 45 inclusive must also complete the supplemental form, DS-157. These forms can be downloaded from the State Department website in English or Spanish at: http://evisaforms.stat.gov. All information requested on the application must be completed on-line. This online form contains a barcode, which allows the electronic transfer of data and therefore reduces waiting time during the visa application process. If they have not already completed the application forms, we will be unable to accept their applications. The following morning, the applicants must report to the Consulate at 7:00 a.m. for individual interviews, and approved applicants will normally be granted multiple-entry visas that same day at 3:00 p.m.

A-36

## REQUIRED DOCUMENTS ON THE APPOINTMENT DATE

1. **Original** of the I-797 form, Notice of Action/Approval.
2. A properly completed **DS-156** form and supplement **DS-157** for all males between the ages of 16 and 45, inclusive. The forms are available at the links above.
3. Receipt for the nonrefundable $100 MRV application processing fee paid at any BANAMEX in Mexico. Bulk receipts for multiple applicants will be accepted as long as the total equals $100 dollars per applicant.
4. A valid Mexican passport
5. Evidence of all previously issued visas
6. One recent, color photograph (taken within the past six months), 2x2 inches (5x5 cm). It must show a front view, full face, on plain light (white or off-white) background **Please click here**

### Visa Fee

For each applicant that is approved, an additional $100 visa reciprocity fee is required. This is to be paid at the Consulate by credit card or in cash (dollars or pesos). This may also be paid in bulk format.

### Fingerprints

In some cases because of similar names and dates of birth, we are required by the Department of State to request fingerprint checks. We usually receive the fingerprint results in one or two days. The cost of fingerprint processing is $85. All applicants should be prepared for this possibility.

**NOTE:** Applicants who have entered/lived in the U.S. without inspection or permission will most likely not qualify for a visa. False declarations on the visa application form or verbally may result in permanent ineligibility for visas and other immigration benefits.

## EVIDENCE OF SOCIAL AND ECONOMIC TIES IN MEXICO

H2B applicants are subject to the US Immigration and Naturalization Act (INA), as amended. Section 214(b) of the INA states that "every alien shall be presumed to be an immigrant until he establishes to the satisfaction of the consular officer, at the time of application for a visa that he is entitled to a non-immigrant status." The law requires that non-immigrant visa applicants overcome the presumption that they intend to immigrate to the United States. They can achieve this by showing strong family, social, and economic ties in Mexico.

H2B applicants generally do not have employment or strong economic solvency in Mexico. The only evidence of their economic ties may be a home in Mexico where their close family members continue to live. Applicants that have lived in the Unites States illegally, or have attempted to enter the United States illegally, are often ineligible for H2B visas and should not apply.

### Dependents

Principal members of an applicant's family can also apply, but the majority of these cases are denied because of the lack of future family ties in Mexico.

### Duration of Stay

A-37

Applicants may enter the United States up to ten days before the validity period of the petition begins. They may only work during the validity period of the visa.

**NOTE:** Companies must inform this Consulate of any worker who does not complete his period of employment for whatever reason.

### Extension of stay

Those temporary workers who wish to stay beyond the time indicated on their form I-94 must contact USCIS to request Form I-539, Application to Extend Status. The decision to grant or deny a request for extension of stay is made solely by the USCIS.

---

Home | Back

A-38

U. S. Citizenship and Immigration Services

TEXT ONLY   HOME   WHAT'S NEW   FAQS   SEARCH   GLOSSARY   FEEDBACK   PRINTPAGE

Immigration Forms,
Fees and Fingerprints

**Forms and Fees**

Forms by Mail
e-Filing USCIS forms

Fingerprints

# Forms and Fees

This page provides you with access to immigration forms. Providing forms or
most used feature of the USCIS Website

**NOTE: Effective 4/01/06, the filing addresses for Forms I-129, I-140, I-48**
**765, and I-907 will change. Address information will be available from e**
**document's Forms Entry Page, linked below. For additional information**
**review our News Release and Fact Sheet on these filing changes.**

**NOTE: Form I-539 Instructions in Russian, Vietnamese, Spanish and K**
**as Form I-765 Instructions in Vietnamese and Korean, are temporarily (**
**pending translation of updated forms.**

**NOTE: Fees for certain USCIS forms have changed effective October 2**
**These fees are shown on this page and on the G-1055, Fee Schedule (P**

**Fingerprints: Where instructed, you must pay a $70 biometric fee for el**
**capturing fingerprints, in addition to the base filing fee.**

Fees should be made payable to **Department of Homeland Security** or **U.S**
**and Immigration Services**.

Please take the time to read our General Directions on Immigration Forms, a
and Fee Waiver Information. You may also wish to read about paying immig
fees after March 1, 2003.

Note: Not all immigration-related forms are produced by USCIS. These ager
issue forms that may be useful to you:

- Department of Labor (Employment and Training Administration)
- Department of State (for forms beginning with "DS")
- Executive Office for Immigration Review/Immigration Court
   EOIR-29, Notice of Appeal to the Board of Immigration Appeals fr(
   of an INS Officer

Forms with a  icon are *Fillable Forms* and may be filled out on your com
see our instructions regarding these forms. Note that a fillable form is not the
electronic filing.

Some forms may be available for electronic filing. These are marked with a

For information regarding proposed changes to USCIS forms, please see ou
Reduction Act Resource Center.

**Warning!** Many non-USCIS websites offer Immigration forms. Some will all(
download them for a fee. These sites are *not* affiliated with USCIS, and thes
not have the latest official versions of forms. In some circumstances, use of
may result in your application or petition being denied or delayed. Changes

A-39

Immigration forms are always noted under What's New in Forms and reflecte
Forms Entry Page (FEP) for that form.

| Form Number | Title | Filing Fee | Where to File |
|---|---|---|---|
| AR-11 | Change of Address Form | None | See instructions on form entry page |
| AR-11SR | Change of Address Form - **Special Registration** | None | See Form. |
| G-14 | Information Form | None | See Form |
| G-28 | Notice of Entry of Appearance as Attorney or Representative | None | See Form |
| G-325 | Biographic Information | None | See Form |
| G-325A | Biographic Information | None | See Form |
| G-325B | Biographic Information | None | See Form |
| G-325C | Biographic Information | None | See Form |
| G-639 | Freedom of Information/Privacy Act Request | Varies  See Form Instructions | District/Sub-Office, Service Center |
| G-731 | Inquiry About Status of I-551 Alien Registration Card | None | Service Center |
| G-845 | Verification Request (Non-SAVE Agencies) | None | District/Sub-Office |
| G-845S | Verification Request (SAVE Agencies) | None | District/Sub-Office |
| G-884 | Return of Original Documents | None | See Form |
| G-1020 | H-1B Specialty Occupation Data Collection | None | District/Sub-Office |
| I-9 | Employment Eligibility Verification | None | See Form |

A-40

| I-68 | Canadian Border Boat Landing Permit | $16 | Port-of-Entry |
|---|---|---|---|
| I-90 | Application to Replace Permanent Resident Card 𝓮 📑 | $190 base fee plus $70 biometrics fee | See details, Electronic Filing |
| I-94 | Arrival-Departure Record | $6 | Port-of-Entry |
| I-94W | Nonimmigrant Visa Waiver Arrival-Departure Record | $6 | Port-of-Entry |
| I-102 | Application for Replacement/Initial Nonimmigrant Arrival/Departure Record 📑 | $160 | District/Sub-Office or Service Center |
| I-129 | Petition for A Nonimmigrant Worker 𝓮 | $190 Other fees may apply; see details. | Service Center, Electronic Filing, NOTE: Effective 4/1/06, the filing address for this form has changed |
| I-129F | Petition for Alien Fiance (e) 📑 | $170 | See Form |
| I-129S | Nonimmigrant Petition Based on Blanket L Petition 📑 𝓮 | None | Service Center, Electronic Filing |
| I-130 | Petition for Alien Relative | $190 | See Details |
| I-131 | Application for Travel Document 𝓮 | $170 | Electronic Filing, See Details |
| I-134 | Affidavit of Support | None | See Form |
| I-140 | Immigrant Petition for Alien Worker 𝓮 📑 | $195 | Service Center, Electronic Filing. NOTE: Effective 4/1/06, the filing address for Form I-140 as changed. |

A-41

| | | | |
|---|---|---|---|
| I-175 | Application for Nonresident Alien's Canadian Border Crossing Card | $30 | Port-of-Entry |
| I-190 | Application for Nonresident Alien Mexican Border Crossing Card | $26 | Port-of-Entry |
| I-191 | Application for Permission to Return to an Unrelinquished Domicile | $265 | District/Sub-Office |
| I-192 | Application for Advance Permission to Enter as Nonimmigrant | $265* | District/Sub-Office |
| I-193 | Application for Waiver of Passport and/or Visa | $265 | District/Sub-Office |
| I-212 | Application for Permission to Reapply for Admission into the U.S. After Deportation or Removal | $265 | District/Sub-Office |
| I-246 | Application for Stay of Deportation or Removal | $155 | District/Sub-Office |
| I-290B | Notice of Appeal to the Administrative Appeals Unit (AAU) | $385 | See Form |
| I-352 | Immigration Bond | None | District/Sub-Office |
| I-360 | Petition for Amerasian, Widow(er), or Special Immigrant | $190 (except there is no fee for Amerasians) | See Form |
| I-361 | Affidavit of Financial Support and Intent to Petition for Legal Custody | None | With I-360 |
| I-395 | Affidavit In Lieu of Lost Receipt of United States INS for Collateral Accepted As Security | None | See Form |
| | Application to Pay Off or Discharge Alien Crew | | District/Sub- |

A-42

| I-408 | 📄 | None | Office |
|---|---|---|---|
| I-485 | Application to Register Permanent Residence or to Adjust Status 📄 | $325* 14 years and older. $225* under 14 years of age. | See Details, Service Center. NOTE: Effective 4/1/06, the filing address for Form I-485 has changed. |
| I-485 Supplement A | Supplement A to Form I-485, Application to Register Permanent Residence | $1,000 | See Form |
| I-485 Supplement B | Form I-485 Instructions for NACARA | No additional Fee | Texas Service Center |
| I-485 Supplement C | Instructions to Supplement C to Form I-485 (HRIFA) | No additional fee | Nebraska Service Center |
| I-508 | Waiver of Rights, Privileges, Exemptions and Immunities (Under Section 247(b) of the INA) | None | Local office or Nebraska Service Center |
| I-526 | Immigrant Petition By Alien Entrepreneur 📄 | $480 | Service Center, See Form |
| I-538 | Certification by Designated School Official 📄 | None | See Form |
| I-539 | Application to Extend/Change Nonimmigrant Status 🌐 📄 | $200 | NOTE: Effective 4/1/06, the filing address for Form I-539 has changed. Service Center, Electronic Filing |
| I-539 Supplement A | Filing Instructions for V Nonimmigrant Status | None | See Form |
| I-566 | I-566, Interagency Record of Request -- A, G or NATO Dependent Employment Authorization or Change/Adjustment to/from A, G or NATO Status 📄 | None | See Form |

A-43

| I-589 | Application for Asylum | None* | Service Center |
|---|---|---|---|
| I-600 | Petition to Classify Orphan as an Immediate Relative 📄📎 | $545* No fee if based on an approved I-600A | District/Sub-Office |
| I-600A | Application for Advance Processing of Orphan Petition 📄📎 | $545* | District/Sub-Office |
| I-601 | Application for Waiver of Grounds of Excludability 📄📎 | $265 | District/Sub-Office |
| I-602 | Application By Refugee For Waiver of Grounds of Excludability 📄📎 | None | With I-590 |
| I-612 | Application for Waiver of the Foreign Residence Requirement 📄📎 | $265 | Service Center |
| I-643 | Health and Human Services Statistical Data for Refugee/Asylee Adjusting Status 📄📎 | None | District/Sub-Office |
| I-687 | Application for Status as a Temporary Resident Under Section 245A of the Immigration and Nationality Act 📄📎 | $255 | See Form |
| I-690 | Application for Waiver of Excludability 📄📎 | $95 | Service Center |
| I-693 | Medical Examination of Aliens Seeking Adjustment of Status | None | See Form |
| I-694 | Notice of Appeal of Decision 📄📎 | $110 | See details. |
| I-698 | Application to Adjust Status From Temporary to Permanent Resident | If filed within 31 months after temporary residence granted:$140* per person with $420 | U.S. Citizenship and Immigration Services P.O. Box 80587( |

A-44

| | | family cap. If filed later, $180* per person with $540 family cap | Chicago, IL 60680-4120 |
|---|---|---|---|
| I-730 | Refugee/Asylee Relative Petition | None | Nebraska Service Center |
| I-751 | Petition to Remove the Conditions on Residence | $205 | Service Center |
| I-765 | Application for Employment Authorization | $180 | NOTE: Effective 4/1/06, the filing address for Form I-765 has changed District/Sub-Office, Service Center, Electronic Filing |
| I-765D | Liberian Deferred Enforced Departure Supplement to I-765 | No additional fee.* Applicants must submit I-765 at the same time | District/Sub-Office |
| I-817 | Application for Family Unity Benefits | $200* | See Form |
| I-821 | Application for Temporary Protected Status | $50* | See Form, District/Sub-Office Service Center, Electronic Filing |
| I-823 | Application - Inspections Facilitation Program | SENTRI: $129  PACE: $25 | Port-of-Entry |
| I-824 | Application for Action on an Approved Application or Petition | $200 | See Details |
| I-829 | Petition by Entrepreneur to Remove Conditions | $475 | Service Center |
| I-847 | Report of Complaint | None | See Form |
| | | | See Form, |

*A-45*

| I-864 | Affidavit of Support | None | District/Sub-Office Service Center |
|---|---|---|---|
| I-864A | Affidavit of Support Contract Between Sponsor and Household Member | None | See Form, District/Sub-Office Service Center |
| I-864P | Poverty Guidelines | None | N/A |
| I-864 Package | I-864, I-864A and I-865 | None | See Form, District/Sub-Office Service Center |
| I-865 | Sponsor's Notice of Change of Address 📄🔒 | None | Not applicable. |
| I-866 | Application Checkpoint Pre-enrolled Access Lane 📄🔒 | None | See Form |
| I-876 | Election Form to Participate in Employment Eligibility Confirmation Pilot Programs 📄🔒 | None | See Form |
| I-881 | NACARA - Suspension of Deportation or Application for Special Rule Cancellation of Removal 📄🔒 | Base fee of $285 per person with a base fee family cap of $570* | Either California Service Center or Vermont Service Center, See Form |
| I-905 | Application for Authorization to Issue Certification for Health Care Workers | $230 | Nebraska Service Center PO Box 87140 Lincoln, NE 68501-7140 |
| I-907 | Request for Premium Processing Service ℯ | $1000, in addition to regular fees | Electronic Filing, Note: Effective 4/1/06, the filing address for Form I-907 has changed |
| I-914 | Application for T Nonimmigrant Status 📄🔒 | $270 base fee, plus $120 for each immediate family member filing concurrently with a family cap of $540 * | Vermont Service Center |

A-46

| | | | |
|---|---|---|---|
| | | See form | |
| N-4 | Monthly Report Naturalization Papers 📄🖱 | None | District or Sub-Office |
| N-300 | Application to File Declaration of Intention 📄🖱 | $120 | District/Sub-Office |
| N-336 | Request for Hearing on a Decision in Naturalization Proceedings Under Section 336 of the INA 📄🖱 | $265 | District/Sub-Office |
| N-400 | Application for Naturalization 📄🖱 | $330* | Service Center |
| N-410 | Application for Motion for Amendment of Petition | $50 | District/Sub-Office |
| N-426 | Request for Certification of Military or Naval Service | None | District/Sub-Office |
| N-455 | Application for Transfer of Petition for Naturalization | $90 | District/Sub-Office |
| N-470 | Application to Preserve Residence for Naturalization Purposes 📄🖱 | $155 | District/Sub-Office |
| N-565 | Application for Replacement Naturalization Citizenship Document 📄🖱 | $220 | District/Sub-Office |
| N-600 | Application for Certification of Citizenship 📄🖱 | $255. If filing on behalf of an adopted minor child, $215 | District/Sub-Office |
| N-600K | Application for Citizenship and Issuance of Certificate under Section 322 📄🖱 | $255  If filing on behalf of an adopted minor child, $215. | District/Sub-Office |
| N-644 | Application for | $80 | Service Center |

| | Posthumous Citizenship | | |
|---|---|---|---|
| N-648 | Medical Certification for Disability Exceptions | None | Service Center |

\* A $70 per person fee for biometrics may also be required when the applica
the United States.

*Last Modified 04/20/2006*

A-48

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 100388 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Minnesota.
Halver BAILEY, Levi R. Libra and Allen Lecuyer,
on behalf of themselves and other past and present
employees similarly situated, Plaintiffs,
v.
AMERIQUEST MORTGAGE COMPANY,
Defendant.
**No. CIV. 01-545(JRT FLN).**

Jan. 23, 2002.

Don Nichols, Nichols Kaster & Anderson,
Minneapolis, for plaintiffs.
Robert Reinhart, Dorsey & Whitney, Minneapolis,
Arthur Chinski, Ruth Seroussi, Elizabeth Murphy,
Buchalter Nemer Fields & Younger, Los Angeles,
California, 90017, for defendant

ORDER AFFIRMING ORDER OF
MAGISTRATE JUDGE

TUNHEIM, District J.
*1 Plaintiffs, a group of account executives, bring
this collective action under the Fair Labor
Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.,*
against defendant Ameriquest Mortgage Company
to recover unpaid overtime compensation. This
matter is before the Court on defendant's appeal
from an order of United States Magistrate Judge
Franklin L. Noel dated September 19, 2001
compelling discovery of the names and addresses of
other account executives during the relevant time
period.

The standard of review of a Magistrate Judge's
order on nondispositive pretrial matter is clearly
erroneous or contrary to law. 28 U.S.C. §
636(b)(1)(a); Fed.R.Civ.P. 72(a); D. Minn. LR 72
1(b)(2). Upon review of the parties' submissions
and the files, records and proceedings, the Court

affirms the order of the Magistrate Judge.

> FN1 On October 12, 2001, defendant
> submitted a reply brief in support of its
> appeal from the Magistrate Judge Shortly
> thereafter, plaintiffs moved to strike this
> pleading on the basis that Local Rule
> 72.1(b)(2) does not permit a reply brief.
> The Court agrees with plaintiffs' reading of
> 72.1(b)(2) and accordingly grants
> plaintiffs' motion to strike defendant's
> reply brief

BACKGROUND

Plaintiffs are current and former account executives
employed by defendant at its 190 branch offices
nationwide. Account executives are responsible for
soliciting loans from its customers. Their general
job duties include making telephone "cold calls"
and taking applications from interested customers
Despite routinely working more than 40 hours per
week to meet defendant's mandatory performance
goals, plaintiffs allege that they were not paid for
these overtime hours. In an effort to recover these
unpaid wages, plaintiffs filed this lawsuit against
defendant under the FLSA

Defendant responded to plaintiffs' complaint with a
motion to compel arbitration. At the Rule 16
pretrial conference, the Magistrate Judge granted
plaintiffs' request to proceed with limited discovery
"directed to identifying potential participants in a
collective action" while defendant's motion was
pending. Pursuant to this ruling, plaintiff served the
following interrogatory on defendant, to which the
defendant responded:
1 Identify by name, last known address, telephone
number, branch location and dates of employment,
all persons employed by you as account executives
from July 1, 1998 to present
RESPONSE: Defendant objects to this
interrogatory on the grounds that plaintiffs freely,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt Works.

A-49

Not Reported in F Supp 2d                                                                    Page 2

Not Reported in F Supp 2d, 2002 WL 100388 (D Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

knowingly, and voluntarily contracted to arbitrate claims of the kind they assert in this action and to conduct all discovery relative to such claim in the arbitration forum, not this court. Defendant further objects to this interrogatory on the grounds that it seeks information neither relevant nor likely to lead to the discovery of information relevant to the claims asserted by Plaintiffs in this action, since those claims turn exclusively on the duties assigned to and work performed by Plaintiffs themselves. Defendant further objects to this interrogatory on the grounds that it is unreasonably overbroad, seeking facts and details entirely remote in time, distance and subject matter form any claim asserted in this action.

Upon receipt of defendant's response, plaintiffs brought a motion to compel an answer to this interrogatory. By order dated September 19, 2001, the Magistrate Judge granted plaintiffs' motion to compel answers to Interrogatory No. 1

### ANALYSIS

**\*2** The FLSA permits employees to pool their resources and proceed collectively with other similarly situated individuals. 29 U.S.C. § 216(b) ( " An action to recover the liability prescribed in [section 207] may be maintained against any employer in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). In an effort to utilize this important procedural mechanism for bringing claims for overtime wages under the FLSA, plaintiffs requested disclosure of all account executives that were employed by defendant during the relevant time period so that these potential class members may be notified of the pending case.

Defendant objects to the Magistrate Judge's order on three grounds, none of which the Court finds satisfies the clearly erroneous or contrary to law standard for overturning the Magistrate Judge. Defendant first objects on the basis that discovery is inappropriate while a motion to compel arbitration is pending. This argument is now moot in light of the Court's order denying defendant's motion to

compel arbitration.

> FN2. The Court would not overturn the Magistrate Judge on this basis even if defendant's motion were still pending. *Minnesota Odd Fellows Home Found. v Engler & Budd Co.,* 630 F.Supp. 797, 800-01 (D.Minn.1986) (permitting discovery while motion to compel arbitration was pending).

Defendant next objects to this discovery on the basis that the Court must first find the potential class members are similarly situated before ordering disclosure of the names and addresses of the account executives This argument is misplaced. In *Hoffman-La Roche Inc. v Sperling,* 493 U.S. 165 (1989), the Supreme Court did not require a " similarly situated" analysis prior to production of the list. Rather, it first ruled that production of the list of co-workers was proper in FLSA cases, and then turned to the issue of whether the co-workers were sufficiently "similarly situated" to justify judicial notice of the action. *Id* at 170 ("The District Court was correct to permit discovery of the names and addresses of the discharged employees." ). The Court reasoned that notice to potential class members was the remedial purpose of the FLSA: to effectuate judicial economy by avoiding multiple lawsuits by individual members of the class.

Defendant's final objection is that court-ordered disclosure of contact information for potential class members constitutes an unwarranted and unreasonable invasion of the privacy of those persons. Again, defendant's argument is misplaced Attorney solicitation of potential clients through direct mail is protected speech under the First Amendment. *Shapero v. Kentucky Bar Ass'n,* 486 U.S. 466 (1988).

For the foregoing reasons, the Court concludes that the Magistrate Judge's order compelling discovery of the names and addresses of other account executives is not clearly erroneous or contrary to law. Eleven plaintiffs allege that they worked hours of unpaid overtime. Plaintiffs are entitled to discover if there are additional plaintiffs who are

© 2006 Thomson/West. No Claim to Orig. U.S Govt. Works.

A-50

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 100388 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

similarly situated. Accordingly, the order of the
Magistrate Judge is affirmed.

### ORDER

Based on the files, records, and proceedings herein,
IT IS HEREBY ORDERED that:

**\*3** 1. Plaintiff's letter request to strike defendant's
reply in support of appeal from Magistrate Judge's
Order [Docket No. 32] is GRANTED. Defendant's
reply in support of appeal from Magistrate Judge's
Order [Docket No. 31] is STRICKEN.

2. The Order of the Magistrate Judge [Docket No.
27] is AFFIRMED

D.Minn.,2002
Bailey v. Ameriquest Mortg. Co.
Not Reported in F.Supp.2d, 2002 WL 100388
(D.Minn.)

Briefs and Other Related Documents (Back to top)

• 2003 WL 23538006 (Verdict and Settlement
Summary) (Dec. 19, 2003)
• 2003 WL 23527783 (Trial Motion, Memorandum
and Affidavit) Memorandum in Support of Joint
Motion for Final Approval of Settlement and Entry
of Judgment (Dec. 17, 2003)
• 2003 WL 23527790 (Trial Pleading) Amended
Complaint (Jury Trial Demanded) (Oct. 16, 2003)
• 0:01cv00545 (Docket) (Mar. 28, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

A-60

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1

Not Reported in F.Supp.2d, 2004 WL 1925535 (S.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. Texas, Houston
Division.
Barbara BLAKE, et al., Plaintiff(s)
v.
COLONIAL SAVINGS, F.A. d/b/a CU Members
Mortgage, Defendant(s)
**No. Civ.A. H-04-0944.**

Aug. 16, 2004.

Richard J. Burch, Bruckner Burch PLLC, Houston,
TX, J. Derek Braziel, Edwards & George LLP,
Dallas, TX, for Plaintiff.
Fraser A. McAlpine, Akin Gump et al, Houston,
TX, for Defendants.

*MEMORANDUM AND ORDER*

HARMON, J.
*1 Pending before the Court in this Fair Labor
Standards Act ("FLSA") case is Plaintiff Barbara
Blake's motion for notice to potential plaintiffs and
for limited expedited discovery (Doc. 11).
Defendant Colonial Savings, F.A. has responded
(Doc. 13) and Plaintiff has replied (Doc. 15). For
the reasons set forth below, the Court ORDERS that
Plaintiff's motion is GRANTED.

I. BACKGROUND AND RELEVANT FACTS

Plaintiff Barbara Blake ("Blake") brings this action
on behalf of herself and others similarly situated to
recover unpaid overtime compensation under §
16(b) of FLSA. Defendant Colonial Savings, F.A. (
"Colonial") is a multi-service financial institution.
CU Members Mortgage ("CU Members") is a
division of Colonial that focuses on residential
home loans. Blake was employed as a Loan Officer
in Colonial's CU Members division from October

2002 through November 2003. Colonial
acknowledges that its Loan Officers are non-exempt
employees under FLSA. Blake claims that Colonial
had a "work overtime but do not report it" policy at
the CU Members division. Specifically, Blake
claims that she and other loan officers were
expected to work at least fifty hours per week, but
were instructed not to report more than forty hours
per week. Blake believes that there are
approximately seventeen individuals currently
employed as Loan Officers within the CU Members
division, and notes that to date three other Loan
Officers have filed notices of consent to join this
suit.

> FN1. 29 U.S.C. § 216(b).

> FN2. *Original Answer* (Doc. 10) ¶ 10.

> FN3. *Motion for Notice to Potential Class Members* (Doc. 11) at 3.

> FN4. Declaration of Barbara Blake, Doc. 11 Ex. 1.

> FN5. *See Notice of Consent of Terri Range O'Dell,* Doc. 3; *Notice of Consent of Deobarh Ann Alspaugh,* Doc. 7; and *Notice of Consent of Desiree Dyer,* Doc. 9.

Colonial contends that court-facilitated notice is not
proper in this case. Colonial argues that Blake has
failed to offer adequate evidence that other potential
class members wish to join the lawsuit or that
potential class members are similarly situated.
Specifically, Colonial points out that its CU
Members loan officers are stationed in different
offices throughout Texas: one group is stationed in
Colonial's Dallas office (the "Dallas Loan Officers"
) and the rest work in host credit unions throughout
the state (the "Remote Loan Officers"). According
to Colonial, its Dallas Loan Officers (1) use "
E-Time Cards" to electronically record their time;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-61

Not Reported in F Supp 2d                                                     Page 2

Not Reported in F Supp.2d, 2004 WL 1925535 (S.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

(2) are not restricted in the number of hours they can work, because Colonial controls the Dallas facility and employees therefore have access to the building outside of regular business hours; and (3) they therefore "regularly work, record, and are paid for overtime hours" In contrast, the Remote Loan Officers use paper timesheets and work in facilities that are not controlled by Colonial. Because the Remote Loan Officers' facilities are not typically open beyond business hours Colonial contends that these employees "do not normally work overtime." According to Colonial, these differences render court-facilitated notice to potential class members inappropriate.

FN6 Doc 13 at 9.

FN7. *Id.* at 10.

## II. LEGAL STANDARD

Section 16(b) of FLSA provides that a person may maintain an action on "behalf of himself ... and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." A representative action brought pursuant to this provision follows an "opt-in" rather than an "opt-out" procedure District courts have the discretion to implement the collective action procedure by facilitating notice to potential plaintiffs Such a notice should be "timely, accurate, and informative "

FN8. 29 U.S.C. § 216(b).

FN9. *See Mooney v. Aramco Services Co*, 54 F.3d 1207, 1212 (5th Cir.1995). Although *Mooney* was litigation under the ADEA, it applies here because the ADEA explicitly incorporates § 16(b) of the FLSA. *Mooney,* 54 F 3d at 1212

FN10 *See Hoffmann-La Roche Inc v. Sperling,* 493 U.S. 165, 110 S.Ct 482, 107 L.Ed.2d 480 (1989)

FN11. *Id* at 172.

**\*2** In determining whether employees are sufficiently "similarly situated," most courts employ the "two-stage class certification" method originally set out in *Lusardi v. Xerox Corp*, 118 F.R.D. 351 (D.N.J.1987). Under this methodology, "the trial court approaches the 'similarly situated' inquiry via a two-step analysis." The first determination is made at the "notice stage." At the notice stage, "the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members." Because the court has minimal evidence, "this determination is usually made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." If the district court conditionally certifies the class, "potential class members are given notice and the opportunity to ' opt-in." ' The second stage is typically precipitated by a motion for "decertification" by the defendant after discovery is largely complete If the additional claimants are similarly situated, the district court allows the representative action to proceed If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice

FN12. *See Villatoro v Kim Son Restaurant, L P.,* 286 F Supp.2d 807 (S.D.Tex.2003) (following *Lusardi* ).

FN13 *Mooney,* 54 F.3d at 1213.

FN14. *Id* at 1213-14

FN15. *Id* at 1214.

FN16. *Id*

FN17. *Id*

## III. ANALYSIS

The Court concludes that facilitated notice is appropriate in this case Blake has demonstrated that the potential class of approximately seventeen

© 2006 Thomson/West No Claim to Orig. U.S. Govt. Works.

A-62

Not Reported in F.Supp.2d                                                Page 3

Not Reported in F.Supp.2d, 2004 WL 1925535 (S.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

Loan Officers are sufficiently "similarly situated" to at least merit notice of this action, if not actual class certification. All of the employees worked as loan officers in the same division of the employer; all of the loan officers are admittedly non-exempt; and all of the loan officers are alleged to have been subjected to the same "work overtime but do not report it" policy. The fact that some of these employees record(ed) their time electronically while others record(ed) their time on paper does not persuade this Court that notice is inappropriate. Indeed, while Blake herself worked at one of Colonial's remote office locations and used paper timesheets, two of the three potential class members who have filed notices of consent in this suit worked at the Dallas office and filed their time electronically, indicating that the allegedly unlawful overtime policy applied irrespective of where employees worked or how they recorded their time. Moreover, the fact that three of the approximately seventeen potential class members have already expressed their desire to participate in this suit is further indication that the potential class members are similarly situated and that court-facilitated notice is appropriate.

### IV. CONCLUSION

Accordingly, the Court ORDERS that the motion for facilitated notice and expedited discovery (Doc. 11) is GRANTED Colonial is to provide Plaintiffs' counsel with a computer-readable data file containing the names, addresses, phone numbers and social security numbers of all non-exempt Loan Officers employed in the CU Members division of Colonial during the period 09 March 2001 to the present by no later than TEN DAYS from the entry of this Order Plaintiffs' counsel are then authorized to furnish their proposed notice, which the Court has reviewed and finds to be appropriate, to all potential class members. Blake's motion to strike (Doc. 14) is DENIED as moot.

S.D.Tex.,2004.
Blake v Colonia Savings, F.A
Not Reported in F.Supp.2d, 2004 WL 1925535 (S.D.Tex.)

Briefs and Other Related Documents (Back to top)

• 4:04cv00944 (Docket) (Mar. 09, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-63

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1

Not Reported in F.Supp.2d, 2005 WL 1334565 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

**c**
Briefs and Other Related Documents
Only the Westlaw citation is currently available
United States District Court,E.D. Pennsylvania.
Leonard BOSLEY, et al.
v.
CHUBB CORPORATION, et al.
**No. Civ.A. 04CV4598.**

June 3, 2005.

Alice W. Ballard, Law Office of Alice W. Ballard, PC, Philadelphia, PA, for Leonard Bosley, Todd German and Angela Kleckner on behalf of all similarly situated current and former employees.
James G. Fannon, Drinker Biddle & Reath LLP, Philadelphia, PA, for Chubb Corporation and The Chubb Institute, Inc.

*MEMORANDUM & ORDER*
SURRICK, J.
*1 Presently before the Court is Plaintiffs' Memorandum Of Law In Support Of Renewed And Amended Motion To Proceed As A Collective Action And For Approval And Facilitation Of Notice (Doc. No. 24), Defendant The Chubb Institute, Inc. ("TCI")'s Memorandum Of Law In Opposition To Plaintiffs' Renewed And Amended Motion To Certify A Collective Class Of Persons " Similarly Situated" Pursuant To 29 U.S.C § 216(b) And For Approval And Facilitation Of Notice (Doc. No. 25), and Defendant Chubb Corporation's (" Chubb") Memorandum Of Law In Support Of Its Cross-Motion To Dismiss The Complaint Filed By Plaintiffs And In Opposition To Plaintiff's Renewed And Amended Motion To Certify A Collective Action And For Approval And Facilitation Of Notice (Doc. No. 26). For the following reasons, Plaintiffs' Motion will be granted in part and denied in part and Defendant Chubb Corporation's Motion will be granted.

FN1. The Chubb Institute's name has been changed to TCI Education, Inc. Defendant refers to itself as TCI throughout its Response

I BACKGROUND

Plaintiffs, former employees of TCI, worked for TCI's Springfield, Pennsylvania campus as Admissions Representatives. (Doc. No. 16 at 1.) Plaintiffs assert claims for unpaid overtime premiums under the Fair Labor Standards Act of 1938 ("FLSA") and the Pennsylvania Minimum Wage Act of 1968 ("PMWA"). (*Id*) Plaintiffs allege that Defendants misclassified them as " exempt" from the FLSA's and PMWA's overtime provisions and consequently Plaintiffs claim entitlement to overtime compensation for hours worked over forty (40) in certain workweeks. (*Id*) Plaintiffs assert that Defendants employed them as inside salepersons and that such employees are non-exempt from the FLSA and PMWA overtime provisions. (*Id*) TCI asserts that Plaintiffs were exempt employees by virtue of the duties each Plaintiff performed as an Admissions Representative. (*Id* at 2) Defendant Chubb asserts that it is not a proper party to this action because it did not employ any or all of the Plaintiffs at any time. (*Id*)

On January 13, 2004, Plaintiffs filed a Motion To Certify A Collective Class Of Persons "Similarly Situated" Pursuant To 29 U.S.C. § 216(b) And For Approval And Facilitation Of Notice. (Doc. No. 13.) After a conference with counsel on March 1, 2005, we entered an Order dated March 2, 2005, denying Plaintiffs' motion without prejudice (Doc No. 18), and directing Plaintiffs to conduct discovery by April 5, 2005, on matters related to preliminary certification (*Id*) On April 21, 2005, Plaintiffs filed the instant Motion On May 9, 2005, Defendant TCI filed its Memorandum of Law in opposition to Plaintiffs' Motion, and Defendant Chubb filed its Cross-Motion To Dismiss The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

A-64

Complaint Filed By Plaintiff And In Opposition To
Plaintiffs' Renewed And Amended Motion To
Certify A Collective Action And For Approval And
Facilitation of Notice (Doc. No. 26)


## II. LEGAL STANDARD

The FLSA's collective action procedure provides:
An action to recover the liability prescribed [by the
FLSA] may be maintained against any employer ...
by any one of more employees for and in behalf of
himself or themselves and other employees
similarly situated. No employee shall be a party
plaintiff to any such action unless he gives his
consent in writing to become such a party and such
consent is filed in the court in which such action is
brought.

**\*2** 29 U.S.C. § 216(b) (2000). There are two
requirements for FLSA group plaintiffs: (1) all
plaintiffs must be "similarly situated;" and (2) all
plaintiffs must consent in writing to taking part in
the suit. *Id.* The FLSA does not define the term "
similarly situated." *See Briggs v. United States,* 54
Fed. Cl. 205, 206 (2002) ("The term 'similarly
situated' is defined neither in the FLSA nor in its
implementing regulations.") The FLSA also does
not provide specific procedures by which claimants
may opt-in. The Supreme Court has stated that "
district courts have discretion ... to implement [§
216(b) ] ... by facilitating notice to potential
plaintiffs." *Hoffman La-Roche, Inc. v. Sperling,* 493
U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480
(1989).

In the absence of guidance from the Supreme Court
and the Third Circuit, district courts have developed
a two-tiered test to determine whether FLSA
claimants are "similarly situated" for the purposes
of § 216(b). *Smith v. Sovereign Bancorp, Inc.,* No.
03-2420, 2003 U.S. Dist. LEXIS 21010, at \*4
(E.D.Pa. Nov. 13, 2003); *see also Goldman v.
RadioShack Corp.,* No. 03-CV-0032, 2003 U.S.
Dist. LEXIS 7611, at \*19 (E.D.Pa. Apr. 16, 2003);
*Felix de Ascencio v. Tyson Foods, Inc.,* 130
F.Supp.2d 660, 663 (E.D.Pa.2001). The first step in
this test is conducted early in the litigation process,
when the court has minimal evidence. This step is a

preliminary inquiry into whether the plaintiff's
proposed class is constituted of similarly-situated
employees. *Felix de Ascencio,* 130 F.Supp.2d at
663. At this stage, the court grants only conditional
certification of the class for the purpose of notice
and discovery, and this is done under a
comparatively liberal standard. *Mueller v. CBS, Inc.,*
201 F.R.D. 425, 428 (W.D.Pa.2001); *Goldman,*
2003 U.S. Dist. LEXIS 7611, at \*19. The second
step is usually conducted after the completion of
class-related discovery. *Mueller,* 201 F.R.D. at 428.
During the second step, the court conducts a
specific factual analysis of each employee's claim to
ensure that each claimant is an appropriate party. *Id.*
Plaintiffs bear the burden of showing they are
similarly situated to the remainder of the proposed
class. *Morisky v. Pub. Serv. Elec. & Gas Co.,* 111
F.Supp.2d 493, 496 (D.N.J.2000). The instant
Motion concerns the first step of the procedure.


## III. DISCUSSION

Plaintiffs assert that they and other inside sales
employees are similarly situated for notice stage
purposes because they were employed in the same
corporate department (the Admissions Department
of TCI), they performed the same duties (inside
sales), and they were victims of a single decision,
policy, or plan (the misclassification of inside sales
personnel). (Doc. No. 24 at 4-7.) Defendants
respond that Plaintiffs' Motion should be denied
because each Plaintiff's claim would require a
highly fact-specific analysis of the duties that he or
she actually performed; because Plaintiffs have not
presented evidence that the other proposed class
members worked in the same corporate department,
division and location; and because Plaintiffs have
not presented evidence that the other proposed class
members performed the same duties or acted with
the same level of discretion and independent
judgment as the named Plaintiffs. (Doc. No 25 at
4-8.)

**\*3** While it appears that all of our courts apply the
two-tier framework in determining whether
potential class members are "similarly situated,"
courts differ in the level of proof necessary in the
first step of the inquiry. Some courts have

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F Supp 2d                                                                                                 Page 3

Not Reported in F.Supp.2d, 2005 WL 1334565 (E D Pa.)
(Cite as: Not Reported in F.Supp.2d)

determined that plaintiffs need merely allege that the putative class members were injured as a result of a single policy of a defendant employer. *See Goldman*, 2003 U S Dist. LEXIS 7611, at *27 (" During this first-tier inquiry, we ask only whether the plaintiff and the proposed representative class members allegedly suffered from the same scheme." ); *Felix de Ascencio*, 130 F Supp.2d at 663 (" Courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan."); *Sperling v. Hoffman-La Roche*, 118 F.R.D. 392, 407 (D.N.J 1988) (same), *aff'd on other grounds*, 862 F 2d 439 (3d Cir.1988), *aff'd*, 493 U.S. 165, 110 S.Ct. 482, 107 L Ed.2d 480 (1989).

Other courts have applied a stricter, although still lenient, test that requires the plaintiff to make a " modest factual showing" that the similarly-situated requirement is satisfied *See Dybach v Fla Dep't of Corr*, 942 F.2d 1562, 1567-78 (11th Cir.1991) (" Before determining to exercise [its] power [to approve notice to potential plaintiffs], the district court should satisfy itself that there are other employees ... who desire to 'opt-in' and who are ' similarly situated'... "); *Mueller*, 201 F R.D. at 428 (requiring plaintiff to provide "a sufficient factual basis on which a reasonable inference could be made " that potential plaintiffs are similarly situated); *Harper v Lovett's Buffet, Inc*, 185 F.R.D. 358, 362 (M.D.Ala 1999) ( "Plaintiffs have the burden of demonstrating that a reasonable basis for crediting their assertions that aggrieved individuals exist in the broad class that they propose."); *Jackson v. New York*, 163 F.R.D. 429, 431 (S.D.N.Y 1995) (" Plaintiffs need merely provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist."); *Briggs*, 54 Fed Cl. at 207 (requiring "modest factual showing that [plaintiffs] are similarly-situated with other, unnamed potential plaintiffs").

In the case of *Smith v Sovereign Bancorp, Inc*, the court pointed out that under the "mere allegation" approach of *Goldman* and *Felix de Ascencio*, preliminary certification is rendered automatic "as long as the Complaint contains the magic words: ' other employees similarly situated ' " *Smith*, 2003

U.S. Dist. LEXIS 21010, at *8. The court went on to observe:

> Under this rationale, any plaintiff who is denied overtime pay may file suit under FLSA and, as long as her complaint is well-pled, receive preliminary class certification and send court-approved notice forms to every one of her employer's hourly employees. This is, at best, an inefficient and overbroad application of the opt-in system, and at worst it places a substantial and expensive burden on a defendant to provide names and addresses of thousands of employees who would clearly be established as outside the class if the plaintiff were to conduct even minimal class-related discovery More importantly, automatic preliminary class certification is at odds with the Supreme Court's recommendation to "ascertain the contours of the [§ 216] action at the outset."

*\*4 Id.* (quoting *Hoffman La-Roche*, 493 U.S. at 171-72.) We find this rationale compelling. We also note that while Plaintiffs are required to provide some factual showing that the proposed recipients of opt-in notices are similarly situated to the named plaintiffs, this standard is still an "extremely lenient standard." *Id* at *10

In our Order of March 2, 2005, we denied Plaintiffs' original motion without prejudice because, even considering the lenient standard, Plaintiffs did not provide a sufficient factual showing that the proposed opt-in recipients are similarly situated (Doc. No 18.) In their original motion, Plaintiffs merely provided a Declaration from one of the three named Plaintiffs. (Doc. No. 13 Ex A.) *See Santelices v. Cable Wiring*, No. 98-7489, 2001 U.S. Dist. LEXIS 6787, at *4 (S.D Fl. Mar. 7, 2001) (" [Plaintiff] has submitted only his own affidavit, and thus has failed to meet the evidentiary burden required [to prevail on a motion for court notification to potential plaintiffs under § 216(b) ]" ). However, we permitted Plaintiffs to conduct limited discovery that would allow them to provide a more substantial factual basis In their renewed Motion, Plaintiffs have provided the following: Plaintiff Leonard Bosley's ("Bosley") Declaration stating that TCI trains its Admissions Representatives using a standard training program (Doc. No 24 Ex. A); a 2004 "Admission Rep Start

© 2006 Thomson/West No Claim to Orig. U.S. Govt. Works

A-66

Not Reported in F.Supp.2d, 2005 WL 1334565 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Report" entitled "THE FINISH LINE" showing that Plaintiffs Bosley and Angela Kleckner ("Kleckner") were two of a roughly thirty-person sales force in the Admissions Department of TCI (*id.* Ex. B); the Admissions Department's job description for Admissions Representatives (*id.* Ex. C); an August 10, 2004, email from Kevin Tice, Regional Director of Admissions of TCI, congratulating Plaintiffs Kleckner, Bosley, and other Admissions Representatives for the number of their enrollments ( *id.* Ex. D); a copy of the Admissions Sales Training Manual TCI uses to train all Admissions Representatives (*id.* Ex. E); a copy of the Admissions Board Reports, a TCI internal summary tracking the performance of Admissions Representatives (*id.* Ex. F); and a March 26, 2005, Internet job posting for the position of Admission Representative showing no distinction between the Admissions Representative openings at various campus locations (*id.* Ex. G).

FN2. Plaintiff Todd German is not listed.

Plaintiffs emphasize that the Admissions Training Manual provides that "[t]his manual is designed to maintain consistency in admission training." (*Id.* Ex. E at 1.) Furthermore, the Admissions Board Report uses the same criteria to evaluate the performance of Admissions Representatives (*Id.* Ex. F.)

Defendants submit three TCI employee Declarations in support of their contention that the proposed class members did not perform the same duties as the named Plaintiffs. (Doc. No. 25 Ex. 2.) While this evidence may be significant after discovery, and during step two of the process, at this stage, it does not compel us to deny preliminary certification. In *Felix de Ascencio,* the court stated:

FN3. Defendants also assert that cases involving challenges to "exempt" classification involve " 'a highly fact-specific analysis of each employee's job responsibilities" ' that are not appropriate for class treatment. (Doc. No. 25 at 5 (citing *Morisky,* 111 F.Supp.2d at

498 ("Exemption determinations are fact-intensive inquiries which frequently turn on the particular duties of specific employees ")))  Defendants neglect to point out that the court in *Morisky* did not conduct a step one analysis. *Morisky,* 111 F.Supp.2d at 498. Rather, the court pointed out:

This case is somewhat different. It is clearly beyond the first tier of the above analysis, as over 100 potential plaintiffs have already opted into this lawsuit. Further, pursuant to the most recent scheduling order ... discovery was to have been completed ... well before the present motion was filed. It is appropriate, therefore, for the Court to apply a stricter standard in its analysis of the question before it.

*Id.* at 497-98. In the instant case, in contrast, we do apply a first tier analysis. The fact-intensive inquiry applies during a second-tier analysis. *See Evans v. Berry,* No. 03-CV-0438, 2004 U.S. Dist. LEXIS 15716, at *10 (M.D. Pa. June 17, 2004) (" The Defendant argues that a particularized factual analysis is necessary as to each Plaintiff ... I wish to make it clear that I am not deciding that at this point in the proceedings that Defendant is wrong. It may well be that Defendant is right.").

**\*5** Defendant submits detailed declaration and information ... to show that the potential plaintiffs are not similarly situated to the representative Plaintiffs. While this information may play a more significant role after discovery and during an analysis of the second and final similarly situated tier, Plaintiffs have advanced sufficient evidence to meet their low burden at this first tier of the similarly situated question. At this stage of the proceedings, before discovery is completed, Plaintiffs cannot counter every assertion made by the Defendant.... [Forcing] Plaintiffs to counter every one of Defendant's assertions concerning the similarly situated question at this early stage of the action would "condemn any large class claim under the [FLSA] to a chicken-an-egg limbo."
130 F.Supp.2d at 663 (E.D.Pa.2001) (quoting

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-67

Not Reported in F.Supp.2d                                                          Page 5

Not Reported in F.Supp.2d, 2005 WL 1334565 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

*Sperling,* 118 F.R.D. at 406). Under all of the circumstances, we conclude that Plaintiffs have now satisfied the lenient first tier factual showing for pretrial certification.

### A. Notice Form

In our Order of March 2, 2005, we stated that " Counsel shall meet and confer with regard to the content of the proposed notice to be sent to potential plaintiffs." (Doc. No. 18.) Plaintiffs have included a proposed Notice with their Motion. Defendants state that "Plaintiffs' counsel have totally ignored the Court's instruction that they meet and confer with TCI counsel concerning the content of any revised Notice that Plaintiffs seek to provide to putative class members." (Doc. No. 25 at 4.) Our Order provided that Counsel shall meet and confer with regard to the proposed notice and then submit the proposed notice to the Court. When counsel have complied with our Order, we will consider the proposed notice.

### B. Defendant Chubb's Cross-Motion To Dismiss

Defendant Chubb has filed a Cross-Motion to Dismiss the Complaint in which it asserts that Plaintiffs were never employed by Chubb, and therefore Plaintiffs have improperly included Chubb as a Defendant. (*Id.*) During the March 1, 2004, Conference, we instructed Plaintiffs to determine whether Chubb is a viable Defendant in this case. Plaintiffs failed to even mention this issue in their Motion. Moreover, Plaintiffs have failed to respond to Defendant Chubb's Motion to Dismiss. Defendant Chubb's Motion will be granted as unopposed.

> FN4. We note that Defendants correctly state that a parent corporation is not, under normal circumstances, liable as the employer of its subsidiaries' employees. (Doc. No. 26 at 8 (citing *Marzano v. Computer Science Corp.,* 91 F.3d 497, 513 (3d Cir.1997) ("[W]hen a subsidiary hires employees, there is a strong presumption

that the subsidiary, not the parent company, is the employer " (citation omitted)).)

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion will be granted in part and denied in part and Defendant Chubb's Motion will be granted.

An appropriate Order follows.

### ORDER

AND NOW, this 3rd day of June, 2005, it is ORDERED as follows:
1. Plaintiffs' Motion To Proceed As A Collective Action And For Approval And Facilitation Of Notice (Doc. No. 24, No. 04-CV-4598) is GRANTED in part and DENIED in part.
2. Defendant Chubb Corporation's Cross-Motion To Dismiss The Complaint Filed By Plaintiffs And In Opposition To Plaintiff's Renewed And Amended Motion To Certify A Collective Action And For Approval And Facilitation Of Notice (Doc. No. 26, No. 04-CV-4598) is GRANTED
*6 3. Counsel shall meet and confer with regard to the content of the proposed notice to be sent to the potential plaintiffs and re-submit the proposed notice to the Court within twenty (20) days.

IT IS SO ORDERED.

E.D.Pa.,2005.
Bosley v. Chubb Corp.
Not Reported in F.Supp.2d, 2005 WL 1334565 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:04cv04598 (Docket) (Sep. 29, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

A-68

Westlaw.

Not Reported in F.Supp.2d                                                                     Page 1

Not Reported in F.Supp.2d, 2003 WL 23741409 (S.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. Texas, Houston
Division
Luis DE LA ROSA ORTIZ, individually and for all
others similarly situated, Plaintiffs
v.
RAIN KING, INC., Defendant
**No. Civ.A. H-02-4012.**

March 10, 2003.

Richard J. Burch, Bruckner Burch PLLC, Houston,
TX, for Plaintiff.
Glenn W. Patterson, Jr., Attorney at Law, Houston,
TX, for Defendants

*ORDER APPROVING NOTICE TO POTENTIAL
CLASS MEMBERS*

LAKE, Presiding J.
**\*1** The Court has considered Plaintiffs' Motion for
Notice to Potential Class Members and any
response filed by Defendant. The Court is of the
opinion that the Motion is well-taken and should be
granted. The Court therefore orders Defendant to
produce the full name, last known address and
telephone number, and dates and location(s) of
employment for all current and former hourly
employees of Rain King who at any time during the
time period of October 22, 1999 to present who
were paid at straight time rates for hours worked in
excess of forty in any given workweek. Defendant is
to produce a computer-readable data file containing
this information to Plaintiffs' counsel within five (5)
days of this order.

Further, the notice attached hereto as Exhibit A (in
English and in Spanish) shall be issued within ten
(10) days thereafter by Plaintiff's attorney to those
persons identified by Defendant. Such notice shall
be mailed by first class U.S. Mail, with a copy to

Defendant's counsel, all at Plaintiff's attorney's cost.
The mailing shall also include a Notice of Consent
and a return-addressed stamped envelope. The
potential plaintiffs shall be provided until the *25th*
day of *April,* 2003 to file their Notice of Consent "
opting-in" to this litigation as plaintiffs.

*NOTICE OF RIGHTS*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-69

Not Reported in F.Supp.2d                                                                                    Page 2

Not Reported in F.Supp.2d, 2003 WL 23741409 (S.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

To:

RE:

This case was filed by Luis de la Rosa Ortiz, a former employee of Rain King who alleges that he and other employees ("Plaintiffs") were denied overtime compensation time for each hour worked in excess of forty while working at Rain King. Plaintiffs claim they are entitled to additional compensation for every hour of overtime they have worked during the time October 22, 1999 to the present. For those unpaid hours worked in excess of forty in a particular workweek, plaintiffs seek this additional compensation at one and one-half their hourly rates, plus an additional equal amount as liquidated damages.

If you are among the persons to whom this notice is addressed and you wish to have your right to overtime pay litigated in this case, you should file your consent to be made a party plaintiff with the Clerk of the Court. You are eligible to participate in this case even if you signed an Agreement stating that you waived or released your claim for unpaid wages. You are eligible to participate in this case even if you do not have proper immigration papers. It is entirely your own decision whether or not to do so and, if you do elect to become a party plaintiff, whether you prefer to be represented by the present plaintiffs' attorney or by an attorney of your choosing. If you file a consent through a separate attorney, your Notice of Consent should be under the caption of the case as listed above, should contain your name, address, telephone number, date of birth, date of signing and signature, and should state: "I hereby consent to be a party plaintiff in this case."

FN1. Plaintiffs' attorneys are:
Richard J. Burch
Michael K. Burke
Bruckner Burch, PLLC

All current and former employees of Rain King at any time between October 22, 1999 and the present.
Fair Labor Standards Act ("FLSA") lawsuit against Rain King, Inc. ("Rain King")
        5847 San Felipe, Suite 3900
        Houston, Texas 77057
        (713) 877-8788

**\*2** If you wish plaintiffs' attorney, Richard J. Burch, to represent you, you should contact him directly at (713) 877-8788. You will have the opportunity to discuss with him in detail the nature of this case, including the terms by which he may represent you.

As already stated, you are not required to join in this case by filing your consent or to take any action unless you want to. However, your determination whether or not to take action should be made promptly. Unless a Notice of Consent is actually filed with the Court on or before April 25, 2003, you will not be permitted to join this case. A Notice of Consent is enclosed with a self-addressed stamped envelope.

If you do not file a consent form and join in this case, you will not receive any back wages for overtime or other relief from the case if the plaintiffs prevail here. Any such relief would be obtained by you only if you proceeded by bringing an independent action within the time provided by law. You must file a consent to join this action if you wish to recover unpaid overtime wages from this case.

If, however, you decide to join this case by filing your consent, you will be bound by the judgment of the Court on all issues of the case, whether it is favorable or unfavorable to you.

This notice is for the sole purpose of determining the identity of those persons who wish to be involved in this case. Although the Court has authorized the sending of this notice, there is no assurance at this time that the Court will grant any relief in this case.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*A-10*

Not Reported in F.Supp.2d, 2003 WL 23741409 (S.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

The FLSA prohibits anyone from discriminating or retaliating against you if you choose to take part in this case. This means you cannot be fired, demoted, have your pay cut, or be reported to the Immigration and Naturalization Service because you participate in this case.

This notice has been authorized by the Honorable Sim Lake, the Judge to whom the case has been assigned.

*AVISO DE DERECHOS*

DEMANDANTES, J.

Para:

Re:

Este caso fue presentado por Luis de la Rosa Ortiz, un ex-empleado de Rain King que alega que a ella y a otros empleados ("Demandantes") les fue negado pagar por el tiempo extra por cada hora trabajaba en exceso de cuarenta cuando trabajando para Rain King. Los Demandantes declaran que tienen derecho a compensación adicional para cada hora de trabajado en exceso de cuarenta en cada semana de trabajo en el periodo del 22 de Octobre de 1999 al presente. Los Demandantes buscan esta compensación adicional a una y media de cada hora de su pago por hora más una cantidad adiciinal igual por danos liquidados.

Si usted esta entre las personas a quien este aviso va dirigido y usted desea que su derecho para tiempo suplementario sea litigado en este caso, usted debe de registrar su consentimiento para hacerse participante demandante con el Clérigo de la Corte. Usted es elegible a participar en este caso aunque haya firmado un acuerdo indicando que usted renuncio o soltó su reclamo para pago por servicios no pagados. Usted es elegible a participa aunque tengas propio papeles de Inmigración. Es

Actuales y pasados empleados de Rain King, Inc. en el periodo del 22 de Octobre de 1999 al presente
Igualidad de Standard Acto "Fair Labor Standards Acto" ("FLSA") acción
Rain King.

enteramente su propia decisión si quieres or no quieres hacerlo y si usted elije hacerse un participante demandante, o si usted prefiere estar representado por el presente abogado de demandante or con un abogado que usted prefiere. Si usted llena un consentimiento con otro abogado, su Aviso de Consentimiento debe de tener el titulo del caso ya mencionado, su nombre, dirección, numero de teléfono, fecha de nacimiento, fecha de cuando firmo, y necesitas escribir "Yo por este medio consiento ser un participante demandante en este caso."

    FN1. Abogado de Demandante es:
    Richard J. Burch
    Bruckner Burch PLLC
    5847 San Felipe, Suite 3900
    Houston, Texas 77057
    (713) 877-8788-Telefono

*3 Si usted desea el abogado del demandante, Richard J. Burch, para representarlo, usted necesita llamarlo directamente al numero (713) 877-8788. Usted tendrá la oportunidad de hablar con el acerca

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*A-71*

Not Reported in F Supp.2d                                                         Page 4

Not Reported in F Supp.2d, 2003 WL 23741409 (S.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

de su caso, incluyendo las condiciones para que el
lo represente.

Como ya se dijo, usted no esta requerido a unirse en
este caso por llenando su consentimiento o tomar
algunas acciones si usted no quiere. Por lo tanto, su
determinación para tomaro no tomar acción debe de
ser pronto. A menos que, un Aviso de
Consentimiento sea llenado con la Corte o antes del
April 25, 2003, usted no va estar permitido unirse
en este caso. Un Aviso de Consentimiento esta
adjunto con un dirigido a si mismo sobre con
estampilla.

Si usted no completa y registra la forma de
consentimiento a unirse, usted no va a recibir su
compensación por salarios anteriores por cada hora
trabajada en exceso de cuarenta en cada semana de
trabajo u otras formas de alivio de este caso si los
demandantes prevalecen. Cualquier ayuda seria
obtenida solamente por usted, si procede a llevar
una acción independiente dentro de el tiempo
estipulado por la lay. Ud. necesita llenar su
consentimiento para participar en este caso, si Ud.
quiere recuperar salarios o sobre tiempo no pagado.

Si, por lo tanto, usted decide unirse en este caso,
llenando su consentimiento, usted va a estar ligado
por el juicio de la corte en todos pormenores del
caso, si sea favorable o des favorable a usted.

Esta aviso tiene el único proposito de determinar
laidentidad de las personas que desean estar
implicados en este caso. Aunque, la corte ha
autorizado enviar este aviso, no se esta seguro que
en este tiempo la corte va a conceder alivio en este
causo.

La FLSA prohibe cual quier descriminación o
represalia contra usted si usted desea participar en
este caso. Este quiere decir que no te pueden
despedir, bajar de categoria or reducir tu salario por
participar en este caso.

Este aviso fue autorizado por el honorable Sim
Lake, el juez adonde este caso esta asignado.

S.D.Tex.,2003
De La Rosa Ortiz v. Rain King, Inc.

Not Reported in F Supp.2d, 2003 WL 23741409
(S.D.Tex.)

Briefs and Other Related Documents (Back to top)

• 4:02CV04012 (Docket) (Oct. 22, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

A-72

Westlaw.

Slip Copy
Slip Copy, 2005 WL 2648054 (D.Kan.)
(Cite as: Slip Copy)

Page 1

Briefs and Other Related Documents
Only the Westlaw citation is currently available
United States District Court,D. Kansas.
Jeffrey A. GEER, et al. Plaintiff,
v
CHALLENGE FINANCIAL INVESTORS
CORPORATION d/b/a CFIC Home Mortgage and
Challenge Mortgage, et al. Defendants
No. 05-1109-JTM.

Oct. 17, 2005

Boyd A. Byers, Sophie K. Counts, Foulston Siefkin
LLP, Wichita, KS, for Plaintiff.
Donald N. Peterson, II, Withers, Gough, Pike, Pfaff
& Peterson LLC, Wichita, KS, for Defendants

MEMORANDUM AND ORDER
BOSTWICK, Magistrate J.
*1 Before the Court is Plaintiff's Motion to
Facilitate and Expedite Section 216(b) Notice
(Doc. 3.) Plaintiffs seek an order requiring
Defendants to provide the name, last known
address, and telephone number of each loan officer
employed by Challenge Financial Investors Corp. ("
CFIC") at any time from April 20, 2002 to the
present, and an order authorizing Plaintiffs to send
notice of this action to all such employees.
Defendant responded (Doc. 7), opposing any such
orders as inappropriate in this case. Plaintiffs filed a
reply (Doc. 13.)

> FN1. After this motion was filed, Plaintiff
> Gerald LaBouff joined the case as an
> opt-in plaintiff. Thus, the title of the
> motion contains a singular possessive "
> Plaintiff's" when in fact, the case now has
> two Plaintiffs. The remainder of this Order
> will use the plural "Plaintiffs" when
> referring to the moving parties.

> FN2. After briefs concerning this motion
> were filed, counsel asked the Court to
> withhold ruling until they had an
> opportunity to discuss resolution of certain
> matters. The Court now understands that
> no agreements have been reached by the
> parties and they seek a ruling on the
> pending motion.

BACKGROUND

Plaintiff Geer, on his behalf and on behalf of
similarly situated current and former CFIC
employees, sued CFIC for violation of the Fair
Labor Standards Act, 29 U.S.C. § 201 et seq., and
the Kansas Wage Payment Act, K.S.A. 44-312 et
seq. Plaintiff LaBouff, joined the case as an opt-in
Plaintiff on June 17, 2005. Plaintiffs, former loan
officers for CFIC, allege that they and other CFIC
loan officers were not paid minimum wage or
overtime as required by law. Under CFIC's
commission-only pay system, Plaintiffs allege that
they and other loan officers were not paid any
wages for weeks where they did not close any loans
and were paid inadequately for other weeks.
Defendants state that CFIC's loan officers are "
outside salesmen" exempt from the minimum wage
and overtime provisions of the FLSA. 29 U.S.C. §
213(a)(1).

Plaintiffs now seek to expedite and facilitate notice
to allegedly similarly situated current and former
CFIC loan officers pursuant to the FLSA. 29 U.S.C.
§ 216(b).

DISCUSSION

29 U.S.C. § 216(b) provides:
An action to recover the liability prescribed in
either of the preceding sentences may be maintained
against any employer (including a public agency) in
any Federal or State court of competent jurisdiction
by any one or more employees for and in behalf of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-73

Slip Copy, 2005 WL 2648054 (D Kan )
**(Cite as: Slip Copy)**

himself or themselves and other employees similarly situated No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought

The key inquiry is whether the opt-in plaintiffs are " similarly situated." The Tenth Circuit has adopted the *ad hoc* method for determining whether plaintiffs are similarly situated under § 216(b). *Thiessen v. GE Capital Corp.,* 267 F 3d 1095, 1105 (10th Cir 2001) Under this approach, the Court utilizes a two step process. At the initial "notice stage," the Court determines whether a collective action should be certified for purposes of sending notice of the action to potential opt-in plaintiffs *Brown v. Money Tree Mortgage, Inc ,* 222 F.R.D. 676, 679 (D.Kan 2004) At this stage, the court requires only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan " *Thiessen,* 267 F.3d at 1102 (citations and quotations omitted) The standard for certification at the notice stage is a lenient one that usually results in class certification. *Money Tree,* 222 F R D at 679

**\*2** At the conclusion of discovery (generally prompted by a motion to decertify), the court makes a second determination, utilizing a stricter standard of "similarly situated" and relying upon general principles of judicial economy and fairness. *Bayles v. American Medical Response of Colorado, Inc ,* 950 F.Supp 1053, 1066 (D.Colo 1996) During this analysis, the court reviews several factors, including (1) disparate factual and employment settings of plaintiffs, (2) various defenses available to defendants that appear to be individual to each plaintiff, (3) fairness and procedural considerations. *Money Tree,* 22 F R D at 679

This case is clearly at the notice stage. Therefore, the only issue before the Court is whether Plaintiffs have made substantial allegations that the putative class members were together the victims of a single decision, policy, or plan. In considering this issue, the Court will review Plaintiffs' allegations contained in the Complaint and the various

affidavits filed by Plaintiffs. *Id*

Defendants do not challenge Plaintiff's assertion that CFIC used the same compensation policy, *i e ,* commission-only salary, for all of its loan officers at all of its branch offices. Defendants do, however, claim that conditional certification is not proper in this case because (1) CFIC's current and former loan officers are not similarly situated with respect to their exempt status and (2) the size of the potential class makes it unmanageable

### A SIMILARLY SITUATED

Defendants' primary defense is that its loan officers are exempt from the minimum wage and overtime requirements of the FLSA as "outside salesmen " 29 U.S.C. § 213(a)(1) Department of Labor regulations define "outside salesman" as, among other requirements, one "[w]ho is customarily and regularly engaged away from the employer's place or places of business" in performing his sales duties

> FN3 Plaintiffs note, Doc 13 at 5, n 2, that the regulations which define an outside salesman were amended on April 20, 2004, and became effective on August 23, 2004. Plaintiff Geer began his employment with CFIC on January 14, 2005 (Gonzales Aff., Doc 7, Ex. B ¶ 3), and Plaintiff LaBouff began his employment with CFIC in November 2004 (LaBouff Aff., Doc 13 Ex. 1 ¶ 2). Therefore it appears that questions about whether they were outside salesmen would be governed by the newly amended regulations 29 C F R § 541 500. Other potential plaintiffs who might opt in may have been employed during the time that the older version of the regulation was in effect. The Court makes no determination at this time as to whether there is any significant difference between the definition of an outside salesmen in the older version of the regulations as compared to the amended version. The quoted language in the text above appears

© 2006 Thomson/West. No Claim to Orig. U.S Govt Works.

A - 74

Slip Copy, 2005 WL 2648054 (D.Kan.)
**(Cite as: Slip Copy)**

in both versions of the regulations.

Defendants claim that the putative plaintiffs are not similarly situated because sales methods "vary from branch to branch and among individual loan officers." (Weyburne Aff., Doc. 7, Ex. 1 ¶ 4.) Defendants further contend that much of the loan officers' time is spent outside the office and CFIC does not require its loan officers to work any specified number of hours or keep a record of such hours. (Doc. 7 at 3-5.)

In considering whether the putative plaintiffs are similarly situated, the Court will only consider the pleadings and affidavits filed by Plaintiff because, at this point, the Court is not prepared to weigh the evidence. *See Brown v. Money Tree Mortgage, Inc.,* 222 F.R.D. 676, 680 (D.Kan.2004) (considering only the amended complaint and affidavits submitted by plaintiff in deciding whether to conditionally certify at the notice stage); *see also Thiessen v. GE Capital Corp.,* 267 F.3d 1095, (10th Cir.2001) (reversing the district court's decision to decertify a class at the second stage because the district judge weighed the evidence and made factual findings, which "essentially deprived plaintiffs of their right to have the issues decided by a jury, or at least have the court determine under summary judgment standards, whether there was sufficient evidence to send the issue to the jury"); *but see Stubbs v. McDonald's Corp.,* Case No. 03-2093, 2004 WL 3322369, at *5 (D.Kan. Mar.4, 2004) (considering both plaintiff's and defendants' affidavits and holding that plaintiffs "own speculative allegations" were insufficient to sustain his burden to prove that he and the putative class members were similarly situated where defendant's supporting affidavits were specific and detailed)

*3 Plaintiffs' generally allege that CFIC's loan officers spend the majority of their time working in the office. In support of their allegations Plaintiffs offer their own affidavits and information from CFIC's website.

> FN4. Plaintiffs offer the affidavit of Sophie K. Counts, one of their attorneys, verifying the authenticity of the proposed website

information. (Counts Aff., Doc. 5, Ex. 1.) Plaintiffs further note that the website information regarding loan officers and branch managers was changed after the filing of this lawsuit, resulting in a reduction in the amount of information available. Plaintiffs' provide the Court with samples from the website before and after the changes *See* Counts Aff., Doc. 5, Ex. 1-A (CFIC website March 22, 2005) and 1-B (CFIC website May 11, 2005).

Plaintiff Geer's affidavits state that he was required to attend work while employed at CFIC's Wichita branch office, and he was once reprimanded for being late. Geer also states that he conducted substantially all of his work at the office, and that other employees of the Wichita branch office worked and were treated similarly.

> FN5. Geer provided two affidavits relating to this motion. The first affidavit was attached to the original motion. (Doc. 5, Ex. 2.) The second was attached to Plaintiffs' reply brief. (Doc. 13, Ex. 2.)

Plaintiff LaBouff's affidavit states that he had set work hours of 8 a.m. to 5 p.m. while employed by CFIC at its Houston, Texas branch office. LaBouff also states that he and other loan officers at the Houston office spent most of their time in the office pursuing leads that were always provided by CFIC.

Plaintiffs also provided frames from CFIC's website, which state that CFIC "prefer[s] that all of [its] branches operate out of professional office space ... clearly identified to the public, and staffed and equipped to deal with clients in a business like manner." (Doc 5, Ex. 1-A at 4.)

CFIC argues that its offices are somewhat autonomous and that loan officers in other branches do not necessarily spend most of their work time in the office. Defendants further argue that this lack of consistency would require the Court and the parties to inquire as to each loan officer's work habits to determine whether he or she is an exempt outside salesperson. In support of its position, CFIC cites

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*A-75*

Slip Copy, 2005 WL 2648054 (D.Kan.)
**(Cite as: Slip Copy)**

several factually similar cases *See Clausman v. Nortel Networks, Inc.,* Case No. 02-0400, 2003 WL 21314065, at *4-5 (S.D.Ind. May 1, 2003) (declining to conditionally certify a class because individual nature of the outside salesman exemption would require a separate factual inquiry into each plaintiff's work situation); *Pfaahler v. Consultants for Architects, Inc.,* Case No. 99-6700, 2000 WL 198888, at *2 (N.D.Ill. Feb.8, 2000) (holding that certification of a collective action under 216(b) was inappropriate where a fact-intensive inquiry of each potential plaintiff would be required to determine whether he was an exempt independent contractor).

The Court acknowledges that many courts have taken the position that where an individual inquiry will be required to determine whether each plaintiff is exempt from the FLSA, then the matter is not proper for a collective action under section 216(b). *See Mike v. Safeco Ins. Co. of America,* 274 F.Supp.2d 216, 220-221 (D.Conn.2003) (denying plaintiff's motion for conditional certification because the putative plaintiffs' claims would turn on the application of an exemption that would require a fact-specific inquiry as to each plaintiffs' day-to-day work activities). However, many courts have also refused to even consider the individualized nature of factual inquiries at the notice stage, holding that such evaluation is not appropriate until the second stage analysis. *See Pendlebury v. Starbucks Coffee Co.,* Case No. 04-80521, 2005 WL 84500, at *3 (S.D. Fla. Jan 3, 2005) (holding that factual matters regarding the applicability of exemptions to employees is not appropriate at the notice stage); *Leuthold v. Destination America, Inc.,* 224 F.R.D. 462, 467 (N.D.Cal.2004) (stating that factual determinations regarding disparate factual and employment settings of individual plaintiffs and various defenses available to defendants with respect to the individual plaintiffs are matters for second stage analysis); *Goldman v. RadioShack Corp.,* Case No. 03-0032, 2003 WL 21250571, at *8 (E.D.Pa. April 16, 2003) (stating that plaintiff's exempt status is irrelevant for conditional certification at the notice stage).

*4 Courts in the Tenth Circuit and the District of Kansas have sided with the latter group of courts, refusing to consider individual factual issues

regarding exemptions at the notice stage. *See* Thiessen v. GE Capital Corp., 267 F.3d 1095, 1103 (10th Cir.2001) (stating that disparate factual and employment settings of individual plaintiffs and various defenses available to defendant that are individual to each plaintiff are factors to be considered at the second stage analysis); *Brown v. Money Tree Mortgage, Inc.,* 222 F.R.D. 676, 682 (D.Kan.2004) (refusing to consider "legal and factual issues unique to each employee such as whether the employee was an exempt employee" for conditional certification at the notice stage); *see also Williams v. Sprint/United Mgmt. Co.,* 222 F.R.D. 483, 487 (D.Kan.2004) (holding that " differences between and among plaintiff and the opt-ins ... are simply not relevant at the notice stage when plaintiff .. has set forth substantial allegations that all plaintiffs were subjected to a pattern and practice of age discrimination")

Plaintiffs' allegations and affidavits are sufficient for this Court to find "substantial allegations" that other loan officers were victims of the same compensation scheme and mis-classification of non-exempt employees as the present party Plaintiffs.

*B MANAGEABLE CLASS*

CFIC argues that the potential class of 1300 current and past loan officers is unmanageable, especially in light of the individualistic nature of each potential plaintiff's claim. The Court disagrees.

The Court has already determined that consideration of any individualized exemptions is inappropriate at this stage. *See supra* Part A. Furthermore, the Court notes that the number of actual opt-in Plaintiffs may not be nearly as great as the number in the *potential* class. *See Scott v. Aetna Services, Inc.,* 210 F.R.D. 261, 266 (D.Conn.2002) (stating in that case 22 of 281, approximately 7.8 percent, potential class members opted-in); *Thiebes v. Wal-Mart Stores, Inc.,* Case No. 98-802, 2002 WL 479840, at *3 (D.Or. Jan 9, 2002) (noting in that case, only about 2.7 percent of the total potential class opted-in). In any event, the Court will be in a better position to determine the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-76

Slip Copy                                                                                              Page 5

Slip Copy, 2005 WL 2648054 (D Kan )
**(Cite as: Slip Copy)**

manageability at the second stage inquiry when all of the opt-in plaintiffs and their individual circumstances are known to the parties and the Court. *See Leuthold v. Destination America, Inc.,* 224 F.R.D. 462, 468 (N.D.Cal.2004) ( "The number and type of plaintiffs who choose to opt into the class may affect the court's second tier inquiry regarding the disparate factual and employment situations of the opt-in plaintiffs, as well as fairness and procedural issues.")

The Court also notes that CFIC has not directed the Court to any case suggesting that a class should not be certified because of its size alone. In fact, the Court's review of the case law reveals that Courts have repeatedly certified classes larger than the putative class in this case. *See Casas v. Conseco Finance Corp.,* Case No. 00-1512, 2002 WL 507059, *1-3 (D.Minn. Mar.31, 2002) (involving a collective action class of approximately 2900 people, despite the fact that the "sole issue is whether plaintiffs fall under one of the [FLSA] exemptions"); *Thiebes,* 2002 WL 479840, at *1 (noting that the court had conditionally certified a potential class of 15,507 past and present employees, despite the fact that the claims were " inherently individualistic, especially in regard to any determination of an employee's damages"). The Court agrees with Plaintiffs that the ends of justice would not be served by allowing employers to avoid "accountability for their pay practices simply because of the magnitude of their unlawful conduct " (Doc. 13 at 7.)

**\*5** Accordingly, the Court GRANTS Plaintiffs' motion to expedite and facilitate notice to the putative class of current and former loan officers and orders CFIC to disclose the name, last known address, and telephone number of each loan officer employed by Challenge Financial Investors Corp ("CFIC") at any time from April 20, 2002 to the present. Such disclosure shall be made in a data base, spreadsheet or other electronic format if it is maintained in that format by Defendants. Because the number of potential persons to be identified is substantial, Defendants are given until November 14, 2005 to provide the required information to Plaintiffs.

### C. NOTICE FORM

Plaintiffs provided a proposed Notice of Class Action Lawsuit to be sent to CFIC's current and former loan officers in the event that the Court granted their motion. However, CFIC failed to address the content or form of that notice in its responses, instead focusing on the reasons that the motion should be denied. Now that the Court has determined that such notice should be issued, it will provide CFIC with an additional opportunity to respond to Plaintiffs' proposed notice form.

If CFIC objects to the form or content of the notice, it may file a supplemental response, directed *solely* to Plaintiffs' proposed notice form or providing an alternate notice form for the Court's consideration. Any supplemental response shall be filed on or before November 1, 2005. Plaintiffs may, but are not required to, file a supplemental reply directed *solely* to issues concerning the form or content of any proposed notice. Any such supplemental reply shall be filed on or before November 14, 2005.

The Court withholds approval of a form of notice, including the amount of time by which any persons wishing to opt in shall be required to respond, pending receipt of any of the supplemental briefs allowed by this Order.

IT IS THEREFORE ORDERED that Plaintiffs' motion (Doc. 3) is GRANTED in part and TAKEN UNDER ADVISEMENT in part, consistent with the provisions of this Memorandum and Order.

D Kan.,2005.
Geer v Challenge Financial Investors Corp.
Slip Copy, 2005 WL 2648054 (D Kan.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 561375 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Support of Motion for Order Compelling Discovery (Jan. 18, 2006)
• 2005 WL 3623202 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendants' Motion to Reconsider the Court's Order Granting Plaintiffs' Motion to

© 2006 Thomson/West. No Claim to Orig. U.S Govt. Works.

A-77

Slip Copy

Slip Copy, 2005 WL 2648054 (D Kan.)
**(Cite as: Slip Copy)**

Expedite Section 216(B) Notice (Nov. 10, 2005)
• 2005 WL 3623283 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Memorandum in
Opposition to Defendants' Motion to Reconsider the
Court's Order Granting Plaintiffs' Motion to
Expedite Section 216(B) Notice (Nov. 10, 2005)
• 2005 WL 3172875 (Trial Motion, Memorandum
and Affidavit) Memorandum in Support of
Defendants' Motion to Reconsider the Court's Order
Granting Plaintiff's Motion to Expedite Section
216(b) Notice (Oct. 27, 2005)
• 2005 WL 1204743 (Trial Pleading) Complaint
(Jan. 01, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-78

Westlaw.

Not Reported in F Supp 2d                                                    Page 1

Not Reported in F. Supp 2d, 2003 WL 21250571 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
    United States District Court,E.D. Pennsylvania.
    Mark A. GOLDMAN Plaintiff,
                    v.
    RADIOSHACK CORPORATION Defendant.
        No. Civ.A. 2:03-CV-0032.

                April 16, 2003.

            *MEMORANDUM AND ORDER*
VANANTWERPEN, J.
**\*1** Presently before this court is Plaintiff Mark A.
Goldman's Motion for Conditional Certification of a
Federal Fair Labor Standards Act ("FLSA") Claim
and Facilitation of Notice Pursuant to 29 U.S.C. §
216(b), and for Class Certification of Pennsylvania
Minimum Wage Act ("MWA") and Wage Payment
and Collection Law ("WPCL") Claims Pursuant to
Fed. R. Civ. P. 23 filed on February 14, 2003
[Docket # 18]. Plaintiff's motion will be granted in
part and postponed in part. We will grant Plaintiff's
motion for conditional certification of the FLSA
claim. We also believe that the proposed state law
class action meets all the requirements of Fed. R.
Civ. P. 23(a) and the superiority requirement of
Fed. R. Civ. P. 23(b)(3), but we will postpone class
certification because further discovery is needed
regarding the predominance test of Fed. R. Civ. P.
23(b)(3). We will therefore refrain from a complete
Rule 23(a) and partial Rule 23(b)(3) inquiry until
we rule on the entire Rule 23(b)(3) motion.

        *I. Background & Procedural History*

Goldman brings a three count complaint against
Defendant RadioShack Corporation ("RadioShack"
) on behalf of himself and all other similarly
situated plaintiffs. He worked at RadioShack from
November 1985 to September 2001. Goldman
alleges that RadioShack violated federal and state

minimum wage laws because it did not pay its "Y"
Store Managers overtime wages when they worked
in excess of forty hours per week. RadioShack
claims that Store Managers are exempt from both
federal and Pennsylvania overtime pay requirements
because they are exempt executive personnel under
29 U.S.C. § 213(a)(1), or 29 C.F.R. §§ 541.1
-541.119. Goldman alleges that the Store Managers
were actually nothing more than sales associates
with a few extra tasks to preform. He alleges that
RadioShack merely put an executive sounding label
on the Store Managers to avoid paying overtime
wages. Goldman has filed affidavits of himself and
four other former "Y" Store Managers that describe
their day-to-day activities. Each affidavit and the
complaint alleges that Store Managers performed
sales associate tasks including: sales; restocking
shelves; and cleaning. Moreover, they do not have
the discretionary powers associated with executive
or managerial positions, including but not limited
to: merchandising; hiring or terminating employees;
determining employee salaries; controlling
inventory levels; setting store hours; training
employees; and designing store layout. Goldman
further alleges that Store Managers were required to
keep their managerial activities to less than 22% of
their work week through the RadioShack "7-1-1"
plan. The "7-1-1" plan required Store Managers to
work as sales associates for seven out of every nine
hours worked. The "1-1" in the plan refers to one
hour of paperwork and one hour of training per day.
*See* Pl.'s Motion for Conditional Certification: Exs.
6 & 7, filed on Feb. 14, 2003[# 18]. The plan also
required Store Managers to work at least 54 hours
per week without any overtime compensation.

                FN1. RadioShack "Y" stores are
                RadioShack locations that had over
                $500,000 in annual gross revenues in fiscal
                year 2000 and thereafter.

**\*2** In defense, RadioShack argues that the
percentage of time spent on managerial duties is not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*A-79*

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

the correct test for whether an employee is exempt from the overtime pay statutes; and that the Store Managers are exempt employees because they are actual managers.

Goldman filed his complaint against RadioShack in Court of Common Pleas of Philadelphia County on December 17, 2002. Defendant properly removed the complaint to this court in January 2003. Goldman now moves to conditionally certify an FLSA opt-in representative action, and moves to certify a Rule 23(b)(3) opt-out class action alleging violations of MWA and WPCL. The FLSA suit would therefore include only those plaintiffs who expressly decide to take part while conversely the state actions consist of "all persons who were employed by RadioShack as a "Y" Store Manager in Pennsylvania at any time on or after December 11, 1999." *See* Pl.'s Motion filed on Feb 14, 2003, at 2 [Docket # 18].

> FN2. Goldman's complaint defines both the FLSA and the MWA/WCPL classes as:
> All persons who were employed by RadioShack as a "Y" store manager in Pennsylvania at any time on or after December 11, 1999, and during at least one workweek during that period worked in excess of 40 hours without receiving compensation for the excess hours at a rate not less than one and one-half times the regular rate at which the person was employed.
> *See* Def.'s Notice of Removal Exhibit: Pl.'s Complaint filed on Jan. 3, 2003 [# 1].

## II. Jurisdiction

This case was properly removed to this court pursuant to 28 U.S.C. § 1441. We have original federal question jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331. We have supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because the MWA and WPCL claims form part of the same controversy between the parties as the FLSA claim. The FLSA and the MWA require overtime pay for each hour in excess of forty hours per week that the employee works. *Compare* 29 U.S.C. § 207(a); *with* Pa. Stat. Ann. tit. 43 § 104(c). The WPCL requires overtime compensation to be paid in the next period. *See* Pa. Stat. Ann. tit. 43 § 260.3. If the overtime wages are not timely paid, then the employer may be liable for liquidated damages under the WPCL. *See* Pa. Stat. Ann. tit. 43 § 260.10.
The FLSA, MWA and WPCL comprise the same case or controversy between Goldman, the proposed class and RadioShack.

RadioShack argues that we do not have jurisdiction over the state law claims brought on behalf of proposed class members who do not opt-into the FLSA representative action because in the absence of an accompanying individual federal claim we would not have original jurisdiction over their individual claims. RadioShack argues that the state law class should not encompass any proposed plaintiff that does not expressly opt-into the FLSA representative action. It argues that to exercise jurisdiction would be an impermissible and unauthorized use of so-called "pendent-plaintiff" jurisdiction. *See* Def.'s Mem. in Opp'n, at 44-45 filed on Feb. 2, 2003 [# 26-1].

In support, RadioShack cites two types of cases. First, RadioShack lists a series of cases decided before § 1367 was extensively altered in 1990. *See Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 411-14 (D.N.J.1988) (finding no pendent-party question because plaintiff voluntarily defined the Rule 23 state claims class as only those members in the opt-in ADEA representative class); *Robinson v. Sizes Unlimited, Inc.*, 685 F.Supp. 442, 444-49 (D.N.J.1988) (exercising discretion to refuse pendent-party jurisdiction over state law claims because court wanted to "effectively eliminate defendant's concerns" regarding the jurisdictional problems but not deciding the jurisdictional issues when the ADEA class and the New Jersey state law class have few overlapping plaintiffs); *Pirrone v. No. Hotel Assocs.*, 108 F.R.D. 78, 83-84 (E.D.Pa.1985) (exercising discretion to refuse pendent-party jurisdiction because Congress had not yet extended pendent-party jurisdiction beyond the scope of the FLSA); *Isaac v. Wm. H. Pflaumer & Sons, Inc.*, Civ. A. No. 90-1622, 1990 WL 102808 (E.D.Pa. July 17, 1990) (exercising discretion

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-80

Not Reported in F.Supp.2d                                                                                            Page 3

Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

pursuant to § 1441(c) to remand pendent-party class members to state court. In each of these four cases, the court declined to reach the issue of whether pendent-party jurisdiction existed. Instead, in three of the cases, court refrained from reaching the issue by exercising discretion pursuant to § 1441 or § 1367 to remand or refuse jurisdiction over the pendent-parties. In *Sperling,* the court did not face the question because the plaintiff did not move the court to exercise jurisdiction over non-opt-in potential class members. These cases are not analogous to the instant case.

**\*3** Moreover, these cases have no relevance since Congress altered § 1367 to overrule the Supreme Court's *Finley* decision. In *Finley,* the Supreme Court held that exercising pendent-party jurisdiction in federal question cases exceeded the statutory authority granted to the courts by Congress *See Finley v. United States,* 490 U.S. 545, 549 (1989) The 1990 amendments to § 1367 combined pendent and ancillary jurisdiction into supplemental jurisdiction, and allowed supplemental jurisdiction to extend to the full limits of Article III in federal question cases, thus overruling *Finley* Section 1367(a) states:

[I]n any civil action of which the district courts have original jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such jurisdiction shall include claims that involve the joinder or intervention of *additional parties.*

28 U.S.C. § 1367(a) (emphasis added)

The text of the statute does not limit the additional parties to defendants, as RadioShack argues. Instead, § 1367(a) expressly allows supplemental jurisdiction over "additional parties" which we believe would include related claims of any additional party. By creating a class of all Pennsylvania "Y" Store Managers under Rule 23, Goldman is seeking their joinder to this action as additional parties with claims that form part of the same case or controversy. *See Zahn v. International Paper Co.,* 414 U.S. 291, 296, 299-300 & n. 6 (comparing class action and joinder cases) (citations

omitted); *Snyder v. Harris,* 394 U.S. 332, 397 (1969) (same); 7A Charles Alan Wright et al., *Federal Practice and Procedure,* § 1752 (discussing history of Rule 23, spurious class actions and joinder) Goldman is properly using § 1367(a) The proposed opt-out class members are "additional parties" bringing "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C § 1367(a).

Second, RadioShack cites four post-1990 cases for the proposition that courts do not have supplemental jurisdiction over state law claims related to an FLSA representative action. *See Marquis v. Tecumseh Prods.,* 206 F.R.D. 132, 162-65 (E.D.Mich.2002) (exercising discretion to decline certifying state law class action which included pendent-parties, because the named plaintiffs failed to exhaust their administrative remedies regarding their Title VII claims that gave court original jurisdiction and state law issues predominated); *Zelaya v. J.M. Macias, Inc.,* 999 F.Supp. 788, 782-83 (E.D.N.C 1998) (questioning federal jurisdiction over pendent-plaintiffs and declining jurisdiction under the court's discretion pursuant to § 1367(a)); *Ballaris v. Wacker Siltronic Corp.,* No. Civ. 00-1627-KI, 2002 WL 926272, at \*3 (D.Or. Feb. 7, 2002) (noting absence of pendent-party issue because plaintiff intended to move for certification of a state law Rule 23 class that consisted of only the FLSA opt-in members); *De La Fuente v FPM Ipsen,* No. 02-C-50188, 2002 WL 31819226, at \*1-2 (N.D.Ill.Dec. 16, 2002) (declining to rule on class certification until the conclusion of discovery; not addressing jurisdictional concerns). *Zelaya* is the only case cited by Defendant that is on point, because the court in the other three cases did not reach the pendent-plaintiff jurisdictional issue We decline to follow *Zelaya*

**\*4** *Zelaya* was concerned with the risk that plaintiffs could manufacture original jurisdiction over the case in an attempt to gain federal jurisdiction over the tenuously related state law claims. *See Kelley v. SBC, Inc.,* [5 Wages-Hours] Lab. L. Rep.(BNA) 16, 1998 U.S. Dist. LEXIS 18643, at \*38 (N.D.Cal. Nov. 13, 1998) (exercising supplemental

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

A-81

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

jurisdiction over state law claims when original jurisdiction was founded upon FLSA claims and distinguishing *Zelaya* because *Kelley* was removed by the defendant). No such risk exists here because Goldman filed in state court and it was RadioShack which chose to remove this case to federal court. RadioShack had the option of litigating the claims in state court because the FLSA allows concurrent state and federal court jurisdiction *See* 29 U.S.C. § 216(b) ("An action ... may be maintained against an employer in any Federal or State court of competent jurisdiction ... ") (parenthetical omitted). If the case had remained in Pennsylvania state court, Goldman would have been able to maintain the FLSA opt-in representative action and bring the state law claims under Pennsylvania's opt-out class action mechanism. *See* Pa. R. Civ. P. 1702 & 1708 (listing requirements and factors to be considered for certifying a class). Goldman did not choose the federal forum to gain federal jurisdiction over tenuously related state claims.

We note also that *Zelaya* has not received a welcomed reception in federal courts. *See Ansoumana v. Gristede's Operating Corp*, 201 F.R.D. 81, 95-96 (S.D.N.Y.2001) (criticizing *Zelaya* and citing cases holding that supplemental jurisdiction is proper) (citations omitted); *Kelley,* 1998 U.S. Dist. LEXIS 18643, *38 (distinguishing *Zelaya* and exercising supplemental jurisdiction). *Zelaya* has not been followed. District Courts routinely exercise supplemental jurisdiction over related state labor law claims when the original jurisdiction is founded on 28 U.S.C. § 1331 and the plaintiffs are bringing an FLSA representative action. *See Scott v. Aetna Servs., Inc.,* 210 F.R.D. 261 (D.Conn.2002) (certifying FLSA opt-in and Rule 23 opt-out classes without limiting opt-out class to only opt-in members); *O'Brien v. Encotech Const Servs,* 203 F.R.D. 346, 350-53 (N.D.Ill.2001) (same); *Ansoumana,* 201 F.R.D. at 89-96 (providing an extensive history and discussion of the topic and exercising supplemental jurisdiction because § 1367(a) retained the pre-1990 restrictions only for cases where original jurisdiction was founded solely on § 1332 diversity jurisdiction); *Brychnalski v Unesco, Inc.,* 35 F.Supp.2d 351 (S.D.N.Y.1999) (same as *Scott,* 210 F.R.D. 261); *Ladegaard v. Hard Rock Concrete Cutters, Inc.,*

No. 00-C-5755, 2000 WL 1774091 (N.D.Ill.Dec 1, 2000) (same); *DeAsencio v. Tyson Foods, Inc.,* [8 Wages-Hours 2d] Lab. L. Rep. (BNA) 190, 2002 WL 1585580, at *5 (E.D.Pa. July 17, 2002) (exercising supplemental jurisdiction); *Kelley,* 1998 U.S. Dist. LEXIS 18643, at *38 (same); *cf Dunlop-McCullwn v Parham,* No. 97-Civ.-0195, 2002 WL 31521012, at * *9-10 (S.D.N.Y. Nov. 13, 2002) (exercising supplemental jurisdiction over state law claims when original jurisdiction was founded on §§ 1331 & 1337 when plaintiff brought a LMRDA case). The clear weight of authority is in favor of exercising supplemental jurisdiction.

**\*5** We find that § 1367(a) gives us the power to exercise supplemental jurisdiction over the opt-out plaintiffs who are not opt-in members of the FLSA action. The question remains as to whether we will exercise that power because § 1367 allows us to exercise our discretion and retain or remand these claims. We choose to retain these claims. It is prudent to try these related claims together in the interest of judicial economy. *See West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995) (" ' [C]onsiderations of judicial economy, convenience and fairness to litigants' weigh in favor of hearing the state law claims at the same time as the federal law claims.") (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966)). The FLSA and WPCL claims "are premised on the same events" and "parallel one another." *De Asencio,* 2002 WL 1585580, at *5. "It is likely that the two claims will either prevail or fail together." *Id.* If we were to remand certain class members, the two cases would be so related that any decision on the merits in one action would have preclusive effects on the other action. If the preclusive effects did not come to fruition, the cases may result in conflicting findings or judgments. Proceeding in both forums would needlessly increase litigation expenses for both parties.

> FN3   Judge Hellerstein stated the reasoning well:
> If the related FLSA and [state] Minimum Wage Act claims were to be litigated in parallel fashion, , there would be great potential for confusion of issues;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

considerable unnecessary costs, inefficiency and inconsistency of proceedings and results; and other problems inherent in parallel class action litigation . Congress enacted § 1367 to avoid such problems Defendants short-sightedly argue to reverse the Congressional wisdom. I decline to do so. *See Ansouman,* 201 F.R.D. at 96; *see De Asencio,* 2002 WL 1585580, at *5 (exercising discretion for the sake of judicial economy).

Moreover, we do not want to create incentives for defendant forum shopping This action could have easily been maintained in state court because the Pennsylvania courts have jurisdiction over the FLSA and state law claims. RadioShack choose this forum Defendants might be encouraged to remove to federal court, not because they are an out of state defendant, but because the federal forum's jurisdictional limitations would complicate plaintiffs' case and increase plaintiffs' litigation expenses.

Pursuant to § 1331, we have original jurisdiction over the opt-in FLSA representative class. For the reasons stated, we will exercise our discretion to assume supplemental jurisdiction pursuant to § 1367(a) over the related state law claims and the proposed Rule 23 opt-out class as well.

### III. FLSA Representative Class

#### A Applicable Law

Employers are required to pay time and a half for each hour in excess of forty hours that the employee works *See* 29 U.S.C. § 207(a) There are exceptions to the rule, including one which provides that employees who are employed in a bona fide executive capacity are not entitled to overtime wages. *See* 29 U.S.C. § 213(a)(1). An employee may bring an action on behalf of himself and other similarly situated employees pursuant to 29 U.S.C. § 216(b). FLSA claims are not subject to the usual Rule 23 class action requirements. Instead, 29

U.S.C. § 216(b) provides a special opt-in representative action mechanism for joining claims and plaintiffs. Each employee who wishes to join the action must affirmatively consent to be a member of the action by filing written consent to that effect. *See* 29 U.S.C. § 216(b); *Lusardi v Lechner,* 855 F.2d 1062, 1068 n. 8 (3d Cir 1988)

*6 Although the FLSA creates an opt-in mechanism, district courts nevertheless have wide discretion in managing joinder of parties and notice to parties. *See* Fed. R Civ P. 83(b) (allowing court discretion to manage cases when the rules are silent on an issue); *cited by Sperling,* 493 U.S at 170-72 (urging early trial court management of the notice process in § 216(b) opt-in actions to ensure that parties are made aware of the action's benefits and avoiding multiple lawsuits); *De Asencio v. Tyson Foods, Inc ,* 130 F Supp.2d 660, 662 (E.D.Pa 2001).

Before facilitating notice, we must first find that the action can proceed as an FLSA representative action. *See De Ansencio,* 130 F Supp.2d at 662 There are only two requirements under § 216(b) for an action to proceed as a representative action: (1) class members must be "similarly situated"; and (2) all members must affirmatively consent to join the action *See* 29 U.S.C. § 216(b); *Sperling,* 862 F.2d at 444, *aff'd* 493 U.S. 165; *De Ansencio,* 130 F.Supp.2d at 662 The statute does not provide an express test for determining who are "similarly situated" employees under § 216(b). In the absence of Third Circuit or Supreme Court guidance, a two-tiered test structure has developed among the district courts in the Third Circuit. *See De Ansencio,* 130 F.Supp.2d at 662-63; *Mueller,* 201 F.R.D. 425, 427-28 (W.D.Pa.2001); *Morisky v Public Serv. Elec. & Gas Co.,* 111 F.Supp.2d 493, 497 (D.N.J.2000); *Lusardi v. Xerox Corp ,* 118 F.R.D. 351 (D.N.J 1987), *modified* 122 F.R.D. 463 (D.N.J.1988) (decertifying class because representative action members not "similarly situated"); *Bunnion v Consol Rail Corp ,* [5 Wages-Hours 2d] Lab. L. Rep. (BNA) 717, 1998 WL 372644, at *17 (E.D.Pa. May 14, 1998); *see also Hipp v Liberty Nat. Life Ins. Co ,* 252 F.3d 1208 (11th Cir.2001) (adopting the two-tiered approach and citing *Lusardi,* 118 F.R.D. 351); *Mooney v. Aramco Servs Co ,* 54 F.3d 1207,

© 2006 Thomson/West No Claim to Orig U S Govt Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

1213-14 (5th Cir.1995) (adopting the *Lusardi*, 118 F.R.D. 351, two-tiered test).

The first tier of the test occurs at the beginning of the case when the court has minimal evidence. *See De Asencio*, 120 F.Supp.2d at 662-63. At this stage, the court may only conditionally certify the class so that the Plaintiff may send notice to the potential representative action members. *Id.*, *Mueller*, 201 F.R.D. at 428. "A court may conditionally certify the class for purpose of notice and discovery under a comparatively liberal standard, i.e., by determining that the members of the putative class 'were together the victims of a single decision, policy or plan.' " *Mueller*, 201 F.R.D. at 428 (quoting *Sperling*, 118 F.R.D at 407). The conditional certification is by no means final.

The second tier of the test occurs after all opt-in forms have been received and discovery has concluded. At that time, the court may make a more thorough finding regarding the "similarly situated" requirement. *Id.* The court will conduct a " fact-specific review of each class member who has opted-in, taking into account factors such as employment setting," variations in employment activities, employment oversight and instruction, and discretionary powers entrusted to individual opt-in plaintiffs. *See id.* If the court then decides that the plaintiffs are not "similarly situated," the FLSA representative action will be decertified and the plaintiffs will proceed with their individual claim s. *See De Asencio*, 130 F.Supp.2d at 663.

### B. RadioShack's Arguments Against Conditional Certification

*7 RadioShack argues that the first tier conditional certification is unwarranted in this case because: (1) there is a pending FLSA representative action in United States District Court for the Northern District of Illinois which has yet to be certified; (2) Goldman is not an appropriate representative because he is an exempt employee under the FLSA; and (3) the proposed representative action members are not "similarly situated." We do not find RadioShack's arguments persuasive.

### 1. The Illinois Action

Comity does not dictate that we postpone first tier conditional certification until certification of the FLSA representative action in Illinois is decided. RadioShack claims that Pennsylvania "Y" Store Managers could simply join the nationwide representative action in Illinois, rendering this action redundant. RadioShack's arguments fail for two reasons. First, we are dealing with two different *opt-in* actions. If the Illinois court was entertaining a motion to certify a nationwide *opt-out* class, then our proceeding with a Pennsylvania - wide action could well complicate and frustrate our sister court's jurisdiction. Creating two overlapping opt-out classes would create conflict. This is not the present situation. We are dealing with two *opt-in* actions. No plaintiff will be a member of both representative actions because they must choose one or the other.

> FN4. If RadioShack is dissatisfied with this result it may make a 28 U.S.C. § 1407 request for transfer to the Judicial Panel on Multidistrict Litigation to consolidate the two actions. *See* Manual for Complex Litigation § 31.13 (discussing multidistrict transfers under § 1407)

Second, while the two cases are similar, they provide different relief and benefits. The Illinois FLSA action does not include any state claims. Therefore, the opt-in plaintiffs will be entitled to two years of back overtime wages if they prevail. They could also recoup three years of back overtime wages but only if they prove RadioShack's alleged willfulness to the court. Damages under the FLSA are limited to "the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The FLSA statute of limitations is not tolled until the employee opts-in.

The Pennsylvania action in our case may allow greater relief to class members because Goldman filed a class action alleging violations of the MWA and the WPCL. Unlike the FLSA, the state statute of limitations is three years without the extra burden of proving willful conduct. Damages under the MWA and the WPCL amount to the unpaid wages,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.


Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

plus liquidated damages equal to the greater of $500 or 25% of the lost wages due, plus reasonable attorney's fees and costs. *See* Pa. Stat. Ann. tit. 43 §§ 260.10 & 333.113. Thus, the Pennsylvania action allows a longer period of recovery without the extra burden of proving willful conduct, but provides for lower liquidated damages. The Illinois case does not provide these extra opportunities for recovery.

Moreover, the opt-out nature of the potential Rule 23(b)(3) class allows potential class members to be included in the class without making a public declaration. Although the FLSA protects current workers from employer retribution, the reality is that some current employees may be hesitant to join a opt-in class out of fear of retribution. The opt-out class will allow current employees relief-albeit not identical relief-as the opt-in plaintiffs without the same concerns regarding retribution.

### 2 Goldman's Exempt Status Is Irrelevant At This Stage

**\*8** RadioShack argues that Goldman should not be allowed to pursue an FLSA representative action because he is an exempt employee who is not entitled to overtime wages. *See* Def.'s Memo. in Opp'n, at 19-31, filed on Mar. 21, 2003 [# 26]. We will not consider the substance of RadioShack's arguments on the merits at this stage because only a motion for conditional certification is presently before us. *See Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits "); *Ansoumana,* 201 F.R.D. at 85 (merits of the case are irrelevant to class certification); *Hoffman v. Sbarro, Inc.,* 982 F.Supp. 249, 262 (S.D.N.Y.1997) (merits of the case are irrelevant to "similarly situated" test); *Jackson v. New York Tel. Co.,* 163 F.R.D. 429, 432 (S.D.N.Y.1995) (merits of the case irrelevant to motion for authorization of notice). All of RadioShack's arguments on this issue go to the merits of Goldman's case. The conditional certification inquiry only focuses on the lenient first tier "similarly situated" test. At this stage, with little evidence before us, we believe that Goldman and

other "Y" Store Managers were similarly situated because they all had the same minimum weekly hours and did not receive overtime compensation. If Goldman is an exempt employee under the FLSA, it is likely that the other "Y" Store Managers are also exempt employees. However, the merits of the plaintiff's case are not at issue today because this is a motion for conditional certification and not a summary judgment motion.

> FN5. RadioShack's discussion of Department of Labor's newly proposed regulations, 68 Fed.Reg. 15560, governing exemptions to the FLSA's overtime requirements are not relevant. *See* Def.'s Supp. Br. in Opp'n filed on Apr. 8, 2003[# 31]; Def.'s Notice of Errata filed on Apr. 10, 2003 [# 32]. First, the regulations defining exempt employees go to the merits of the case which are not currently at issue. Second, the proposed regulations are just that, only proposed regulations and not actual regulations. If and when they are binding on this case which was filed before 68 Fed.Reg. 15560 was proposed, the new regulation will be relevant only when the merits of Goldman's case are at issue.

### 3 A Fact-Specific "Similarly Situated" Inquiry Is Premature

RadioShack contends that Goldman was a special " Y" Store Manager that was not similar to regular "Y " Store Managers because: (1) his store had fifteen employees instead of the normal two employees; (2) Goldman was trained three times to become a District Manager; and (3) Goldman was designated a "Hiring Manager" with the responsibility to hire employees at several locations; and (4) RadioShack labeled Goldman a "Team Captain."

This may or may not be the case, but we will not delve into a fact-specific "similarly situated" inquiry at this time. As discussed *supra* Section III.A., conditional certification requires a lax showing of "similarly situated." During this first-tier inquiry, we ask only whether the plaintiff

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-85

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

and the proposed representative class members allegedly suffered from the same scheme. A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant. Moreover, any class certification effort should not turn on the merits of the case even after the discovery period has closed *See Eisen,* 417 U.S. at 178; *Ansoumana,* 201 F.R.D. at 85; *Hoffman,* 982 F.Supp. at 262; *Jackson,* 163 F.R.D. at 432. It is simply premature to do so now because we lack sufficient evidence to conduct a more rigorous inquiry.

### C. Conditional Certification is Warranted

\*9 We find that the potential members of Goldman's FLSA representative action are " similarly situated" under the first tier test because they were all subjected to the same employment contract with RadioShack. They were all required to work at least 54 hours per week and all were denied overtime pay. We will conditionally certify the FLSA representative action at this time so that Goldman may send notification to potential opt-in plaintiffs. To this end, we will order RadioShack to produce the names and last known addresses of all potential members of the FLSA representative action. This potential group consists of all RadioShack "Y" Store Managers who worked at Pennsylvania RadioShack locations at any time on or after December 11, 1999.

> FN6. This group may be over inclusive after a more thorough analysis of the FLSA statute of limitations. For our present purposes, we would rather be over inclusive rather than under inclusive so that potential action members may state their claim and influence any future statute of limitations debate.

### IV. MWA and WCPL Rule 23(b)(3) Class Action

Unlike the FLSA claims, Pennsylvania's MWA and WCPL do not provide independent joinder mechanisms. Therefore, the proposed MWA and WCPL class actions are opt-out classes governed by

Fed.R.Civ.P. 23. In order to certify a class under Rule 23, the class representative must fully comply with the four requirements of Rule 23(a) and fulfill the requirements of either Rule 23(b)(1), 23(b)(2) or (b)(3). *See Monahan v. City of Wilmington,* 49 Fed. Appx. 383, 384 (3d Cir.2002). Goldman seeks to certify a Rule 23(b)(3) class of all Pennsylvania RadioShack "Y" employees who worked as Store Managers at any time on or after December 11, 1999. At this time, we believe that Goldman's proposed Rule 23(b)(3) class complies with all of the requirements of Rule 23(a) and the superiority requirement of Rule 23(b)(3). However, we believe it is premature to find that the proposed class complies with the predominance requirement of Rule 23(b)(3). Specifically, we are concerned that common issues may not predominate over individual issues relating to each manager's employment setting, employment activities, and discretionary powers. RadioShack discussed how Goldman's "Y" store differed from other stores because the larger number of employees meant that he may have spent more time on managerial duties and less time on sales associate duties when compared to average "Y" Store Managers. RadioShack mentioned these allegations and theories in an effort to prevent conditional certification of the FLSA claim. We have already stated that such discussions are premature during an FLSA conditional certification inquiry. However, we believe they are relevant to a Rule 23(b)(3) class certification analysis because it is not a conditional or preliminary certification mechanism. In light of RadioShack's contentions, a more developed record is obviously required before we rule that common issues of fact and law predominate over individual variations.

> FN7. At this time, we are not predisposed to either finding regarding predominance.

We will postpone a Rule 23(b)(3) finding, pursuant to Local Rule 23.1(c), until the close of discovery, at which time Goldman may move anew for 23(b)(3) class certification. *See* E.D. Pa. R. 23.1(c) ( "In ruling upon a motion, the Court may allow the action to be so maintained, may disallow and strike the class action allegations, or *may order*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-86

Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

*postponement of the determination pending discovery* or such other preliminary procedures as appear to the appropriate and necessary in the circumstances.") (emphasis added); *Slater v. Philadelphia Hous. Auth.*, 1999 WL 997758, at * 5 (E.D.Pa. Nov. 2, 1999) (denying defendant's motion to dismiss plaintiff's class action complaint because the court's earlier denial of class certification without prejudice was a delay of the class action certification pending discovery pursuant to Local Rule 23.1(c) and not a denial on the merits) (citations omitted); *Gomberg v. Western Union Corp.*, 1997 WL 338938, *5 (E.D. Pa. June 16, 1997) (allowing motion for certification to proceed following discovery pursuant to Local Rule 23.1(c) when the parties treated the action as a class action throughout litigation, defendant refused to participate in discovery unless the motion was delayed, and defendant suffered no undue hardship; *see also De La Fuente*, 2002 WL 31819226, at * 1-2 (declining to rule on class certification until after discovery concluded) We will not discuss the requirements of Rule 23 because any such discussion would be dicta at this time. We acknowledge receipt of RadioShack's March 21, 2003 letter requesting oral arguments on all certification issues. We believe that oral arguments may well be appropriate, but it would be more productive if the oral arguments and accompanying testimony were heard following discovery. The parties should remember that a proposed class action shall proceed as if it is a class action until class certification is denied or the class is decertified. *See* Manual for Complex Litigation § 30.11 ("When an action has been filed as a class action, the court must treat it as one until it has determined otherwise ").

*V. Conclusion*

*10 We will conditionally certify Goldman's proposed FLSA federal representative action because he has fulfilled the first tier test for certification. RadioShack's fact-specific arguments on the merits are premature. We will postpone Goldman's motion for class certification of the state claims until discovery is concluded. We believe that it is proper to rule on the final FLSA certification

and the Rule 23 class certification at the same time because: (1) the parties and the court will have a better understanding of the facts after conducting discovery; and (2) the second tier of the similarly situated inquiry overlaps with the Rule 23 inquiry such that they are properly analyzed together. Goldman may move for class certification after discovery and the parties may request oral argument at that time.

An appropriate Order follows.

*ORDER*

AND NOW, this 16th day of April, 2003, upon consideration of Plaintiff Mark A. Goldman's Motion for Conditional Certification of the Federal Fair Labor Standards Claim Pursuant to 29 U.S.C. § 216(b) and for Class Certification of the Pennsylvania Minimum Wage Act and Wage Payment and Collection Law Claims Pursuant to Fed. R. Civ. P. 23 filed on February 14, 2003 [Docket # 18]; Plaintiff's Supplemental Memorandum in Support filed on February 25, 2003 [# 21]; Defendant RadioShack Corporation's Memorandum in Opposition filed on March 21, 2003 [# 26]; Plaintiff Mark A. Goldman's Reply Memorandum filed on April 4, 2003[# 30]; and Defendant RadioShack Corporation's Supplemental Brief in Opposition filed on April 8, 2003 [# 31], it is hereby ORDERED consistent with the foregoing memorandum that:

1. Plaintiff Mark A. Goldman's Motion for Class Certification of the Pennsylvania Minimum Wage Act and Wage Payment and Collection Law Claims Pursuant to Fed. R. Civ. Pro. 23(b)(3) is DENIED at this time pursuant to Local Rule E.D. Pa. R. 23.1(c) WITHOUT PREJUDICE to Plaintiff Mark A. Goldman's right to move for Class Certification of these Pennsylvania claims following the close of discovery;

2. Plaintiff Mark A. Goldman's Motion for Conditional Certification of the Federal Fair Labor Standards Act Claim and Facilitation of Notice Pursuant to 29 U.S.C § 216(b) is GRANTED at this time subject to further review as set forth in our

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

A-87

Not Reported in F.Supp.2d                                                      Page 10

Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

memorandum;

3. Pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 83, this Court conditionally certifies an opt-in Class of all former or current employees of RadioShack Corporation (and/or Tandy Corporation) who managed a RadioShack "Y" store in Pennsylvania at any time on or after December 11, 1999, for the claim under the Federal Fair Labor Standards Act;

4. Plaintiff Mark A. Goldman is conditionally designated as the representative of the Class;

5. Plaintiff's Counsel, Roda & Nast, P.C. and the Wexler Firm, are hereby appointed as Counsel for the Class;

6. Within thirty (30) business days from the date of this Order, Defendant RadioShack Corporation SHALL PRODUCE to Plaintiff's Counsel a list of the names and last known addresses of all potential members of the Class described in the Paragraph Three of this Order;

*11 7. Plaintiff's Counsel SHALL CAUSE to be sent by first-class mail, to all members of the Class described in Paragraph Three of this Order, a Notice Packet consisting of a Notice and Notice of Consent form that are substantially in the form of Exhibits Six and Nine attached to Plaintiff's Supplemental Memorandum in Support filed on February 28, 2003 [Docket # 21]; and

8. Any person who fits within the Class described in Paragraph Three of this Order may join this action by sending a completed Notice of Consent form to Plaintiff's Counsel postmarked on or before July 31, 2003. Any person who does not send a completed Notice of Consent form to Plaintiff's Counsel postmarked on or before July 31, 2003 SHALL NOT be permitted to participate in the Federal Fair Labor Standards Act Representative Action.

E.D.Pa.,2003.
Goldman v. RadioShack Corp.
Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2149897 (Trial Motion, Memorandum and Affidavit) Plaintiff's Renewed Motion for Judgment as a Matter of Law or in the Alternative for a New Trial (Jul. 18, 2005)
• 2005 WL 3295291 () (Report or Affidavit) (Apr. 20, 2005)
• 2005 WL 3295285 () Back Wage Report (Mar. 21, 2005)
• 2004 WL 3608927 () Expert Report (Oct. 18, 2004)
• 2004 WL 3609338 () Expert Report (Oct. 18, 2004)
• 2004 WL 3608928 () (Report or Affidavit) (Sep. 30, 2004)
• 2:03cv00032 (Docket) (Jan. 02, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-88

IN THE UNTIED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUAN JAVIER RIVERA, and                          :        CIVIL ACTION
JOSE PABLO LEMUS, Individually and on Behalf     :
of Others Similarly Situated                     :

# FILED

v.                          NOV 1 0 2005  :

                      MICHAEL E. KUNZ, Clerk
THE BRICKMAN GROUP, LTD.    By_____Dep. Clerk    NO. 05-1518

## REPORT AND RECOMMENDATION

M. FAITH ANGELL                              November 10 2005
CHIEF UNITED STATES MAGISTRATE JUDGE

The instant action is brought by Plaintiffs Juan Javier Rivera and Jose Pablo Lemus,

individually and on behalf of other similarly situated foreign workers who were employed by

Defendant The Brickman Group, Ltd. (Brickman) pursuant to the Immigration and Nationalities Act

H-2B visa program. They allege four causes of actions: 1) violation of the Fair Labor Standards Act

(FLSA); 2) violations of the Pennsylvania Wage Payment and Collection Law; 3) breach of contract,

and 4) wrongful discharge. The FLSA claim is brought on behalf of all similarly situated H-2B

workers employed by Brickman between 2003 and 2005; the Pennsylvania Wage Payment claim is

brought on behalf of Brickman's H-2B workers employed in Pennsylvania between 2002 and 2005,

and the third and fourth causes of action pertain only to Mr. Rivera individually.

This matter is before the Court on Plaintiffs' motion to certify a plaintiff representative class

of persons similarly situated pursuant to 29 U.S.C. § 216(b), to which Brickman has responded.; the

matter was referred to me for pretrial management by Order of the Honorable Louis H. Pollak dated

April 18, 2005. After considering the documentary evidence submitted, and for the reasons which

ENTERED

NOV 1 2005

CLERK OF COURT

A-89

follow, it is recommended that Plaintiffs' motion to certify a plaintiff representative class of persons similarly situated be granted.

# I. BACKGROUND[1]

Brickman is a landscape service provider which has offices throughout the United States. By its nature, Brickman's work is largely seasonal. In order to meet its workforce needs, Brickman has hired temporary non-agricultural workers under an immigration program referred to as "H-2B"[2] Under this program, an employer may lawfully hire certain non-United States workers who immigrate on a temporary basis to the United States. The workers hired by Brickman come predominantly from Mexico and, to a lesser extent, from Guatemala. Once they arrive on United States soil, the workers travel to the various Brickman branch offices to work as landscapers.

Brickman has used an outside vendor to coordinate its H-2B applications with the United States government and to work with recruiters who do the actual arranging for the workers to immigrate to the U.S.A. to work for Brickman. All of Brickman's workers come into this country in late March or early April to begin work upon arrival at their respective branches. Brickman's H-2B employees work no longer than the requested period of certification on its H-2B applications to the United States Department of Labor. This certification period is less than one year and falls within a single calendar year.

_____

[1] In preparing this Report and Recommendation, I have reviewed the following documents: Plaintiffs' complaint; amended complaint, and second amended complaint; Defendant's answer to the amended complaint; Plaintiffs' Motion to Certify a Plaintiff Representative Class of Persons Similarly Situated Pursuant to 29 U.S.C. § 216(b), inclusive of all exhibits thereto; the preliminary brief in support of their motion; Defendant's response to Plaintiffs' motion; Plaintiffs' Supplemental Motion to Preliminarily Certify a Collective Class of Persons Similarly Situated Pursuant to 29 U.S.C. § 216(b) and their brief in support; the Statement of Facts in Support of Plaintiffs' Supplemental Motion and its numerous attachments; Defendant's Brief in Opposition to Plaintiffs' Motion and Plaintiffs' Reply Brief in support of their motion.

[2] The program H-2B is so named in reference to the statutory provision authorizing it.

A-90

Plaintiffs Juan Javier Rivera and Jose Pablo Lemus are Mexican Nationals who, with hundreds of other workers from Mexico and Guatemala, came to the United States as H-2B landscapers for Brickman in 2003 and 2004. Plaintiffs allege that all the Mexican H-2B Brickman workers had to incur a number of expenses in order to accept these jobs, such as: visa applications, processing and issuance fees charged by the United States government, recruitment fees charged by the recruiters used by Brickman, and transportation costs associated with travel between the place of their recruitment in Mexico and Guatemala and the various Brickman job sites.

Plaintiffs allege that these costs were primarily for the benefit of Brickman and operate as *de facto* deductions from Plaintiffs' first week's wages for purposes of measuring compliance with the minimum wage and overtime requirements of the Fair Labor Standards Act. According to Plaintiffs, because of these *de facto* deductions, none of Brickman's H-2B workers earned the minimum wage and overtime premium mandated by the Fair Labor Standards Act during their first week of employment. Plaintiffs contend that this matter is appropriate for proceeding as a FLSA collective action in that Brickman's H-2B employees are similarly situated with respect to Brickman's policy of imposing these *de facto* deductions upon them.

## II. LEGAL STANDARD

The FLSA provides in pertinent part:

> An action to recover the liability prescribed [by the FLSA] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. 29 U.S.C. § 216(b).

"There are two requirements for FLSA group plaintiffs: (1) all plaintiffs must be 'similarly situated', and (2) all plaintiffs must consent in writing to taking part in the suit." *Bosley v. Chubb*, 2005 WL 1334565 *2 (E.D.Pa. 2005). However, the FLSA does not define "similarly situated", nor does it provide specific procedures by which claimants may opt-in. *Id.*

"...[D]istrict courts have developed a two-tiered test to determine whether FLSA claimants are "similarly situated" for the purposes of § 216(b)." *Id. See also Goldman v. Radioshack*, 2003 U.S. Dist. LEXIS 7611 *19 (E.D.Pa. 2003); *Smith v. Sovereign Bancorp*, 2003 U.S. Dist. LEXIS 21010 *4 (E.D.Pa. 2003).

> The first step, generally conducted early in the litigation process, is a preliminary inquiry into whether the plaintiffs' proposed class is constituted of similarly-situated employees. The second step, usually conducted after the completion of class-related discovery, is a specific factual analysis of each employee's claim to ensure that each actual claimant is appropriately made party to the suit (internal citations omitted). *Id.*

The instant motion addresses the first step of the two-tiered process.[3]

Though it appears that all our courts apply the two-tier approach to determine whether potential class members are "similarly situated", courts differ in regard to the level of proof necessary in the first step. Some courts in our District have held that motions for preliminary certification and notice may be granted if the plaintiff simply alleges that the putative class members were injured as the result of a single policy of the defendant employer. *See Goldman*, 2003 U.S. Dist. LEXIS 7611 *27; *Sperling v. Hoffmann-LaRoche*, 118 F.R.D. 392, 407 (D.N.J. 1988), *aff'd*

---

[3]I have adopted the two-step process in this matter, with one modification pursuant to agreement of the parties. Plaintiffs' motion to preliminarily certify a collective class of persons similarly situated pursuant to 216(b) was filed at the beginning of the discovery period, to which Brickman responded. Briefing of the preliminary certification issue followed the completion of the first phase of discovery.

*in part*, 862 F.2d 439 (3dCir. 1988), *aff'd* 493 U.S. 165, 107 L.Ed.2d 480, 110 S.Ct. 482 (1989). Other courts apply a more stringent, though still lenient, test that requires that plaintiffs make a "modest factual showing" that the similarly-situated requirement is satisfied. *See Bosley*, 2005 WL 1334565 *3-4; *Smith*, 2003 U.S. Dist. LEXIS 21010 *6. "Plaintiffs need only provide some 'modest' evidence, beyond pure speculation, that Defendant's alleged policy affected other employees." *Smith*, 2003 U.S. Dist. LEXIS 21010, *10. However, as stated in *Sperling*, 118 F.R.D. at 407, "[w]hatever the proper standard may be for conclusively judging the 'similarly situated' issue, [] it must be remembered that the 'similarly situated' showing establishes nothing more than the right of plaintiffs to 'maintain' a collective action."

I join those of my colleagues who require plaintiffs to make a factual showing that the proposed recipients of the required opt-in notices are similarly situated to the named plaintiffs.

## III. DISCUSSION

### A. Similarly Situated

Plaintiffs move to certify this case as a FLSA representative action pursuant to 29 U.S.C. § on behalf of "all H-2B workers employed by Brickman during 2003, 2004, and 2005.[4] *See* Motion to Certify a Plaintiff Representative Class of Persons Similarly situated Pursuant to 29 U.S.C. § 216(b) at [1]. They seek to include each similarly situated employee of Brickman who was employed by Brickman to perform landscaping duties in the first work week that he arrived at the various Brickman facilities in the United States.

Plaintiff Rivera is a citizen and resident of the State of Guanajuato, Mexico who was lawfully

---

[4] Brickman imported at least 982 H-2B landscape workers in 2003, at least 1,239 in 2004 and 1,034 in 2005. *See* Statement of Facts, Attachment 3, p. 7, ¶ 15(k); p. 10, ¶ 21(k) and Attachment 10, Interrogatory No. 3.

admitted to the United States in 2003 on a temporary work visa pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b) (H-2B visa) to perform work for Brickman. *See* Second Amended Complaint at 2. Plaintiff Lemus is also a citizen and resident of the State of Guanajuato, Mexico who was lawfully admitted the United States in 2004 on a H-2B visa to perform work for Brickman. *Id.*

During the operative time period, Brickman petitioned the Untied States Department of Labor for permission to import temporary foreign workers pursuant to the U.S. government's H-2B visa program in order to hire Mexican laborers,[5] including Plaintiffs, to perform landscaping services[6]. Permission was granted and Brickman imported no less than several hundred H-2B workers to work throughout the United States. Brickman followed uniform policies and procedures in regard to the importation and employment of its H-2B landscape workers. *See* Plaintiffs' Statement of Facts, Attachments 11.1, 11.2 and 11.3. Most of the recipients of Brickman's petitions were processed by the United States consulate in Monterrey, Mexico, as were Plaintiffs.[7] *See* Defendant's Response to Plaintiffs' Motion, ¶12.

All of Brickman's H-2B workers during this time period had to incur a number of expenses

---

[5] A small group of landscape laborers also came from Guatemala each year. *See* Plaintiffs' Statement of Facts, Attachments 5 and 6.

[6] All Brickman's H-2B visa petitions for the years 2003, 2004, and 2005 sought workers to fill the same basic job position as landscape laborer. *Id.*, Attachment 14. All these petitions offered essentially the same terms and conditions of work. They only differed in the length of the term of work and the hourly rate of pay. *Id.*, Attachments 3, 4.

[7] In 2003, Brickman utilized Mid-Atlantic Resources Association to facilitate the filing of its H-2B applications and to assist in recruiting and processing H-2B landscape workers. In 2004 and 2005, it operated under the name Mid-Atlantic Solutions, Inc. (collectively MAS). *Id.*, Attachment 10. Brickman also informed Del-Al Associates, Inc. and its related entity Del-Al Guanajuato, Mexico (collectively Del-Al Associates) of its need to hire certain H-2B workers for 2003. Del-Al recruited workers whom Brickman ultimately employed under the H-2B program (including Rivera). *See* Defendant's Response to Plaintiffs' Motion, ¶ 51. In 2004, MAS utilized LLS United States, LLC and its related Mexican entity LLS International (collectively LLS) to recruit H-2B workers and assist them in processing their visas. *See* Statement of Facts, Attachment 10; Response to Plaintiffs' Motion, ¶ 63. Del-Al Associates recruited Rivera to work at Brickman for part of 2003. *See* Defendant's Response to Plaintiffs' Motion, ¶55; Lemus obtained his H-2B visa to work as a landscape laborer for Brickman in 2004 as a result of LLS' recruitment. *Id.*, ¶64

in order to accept the landscaping positions offered by Brickman. The expenses included: 1) H-2B visa application fee; 2) H-2B visa issuance fee; 3) I-94 fee paid at port of entry; 4) fees or expenses incurred for assistance completing the visa application form; 5) transportation from the worker's permanent home, or if different, from the place of recruitment in Mexico, to the U.S. consulate where his visa was issued; 6) transportation from the point where the H-2B visa was issued to the work place in the U.S.; 7) costs of overnight accommodations incurred between the worker's home and the work place in the U.S.; 8) other processing or recruitment costs associated with obtaining the job with Brickman; 9) transportation costs returning from the work site in the U.S. to the worker's home in Mexico, or if different, to the place of recruitment in Mexico. *See* Statement of Facts, Attachment 9; Plaintiffs' motion to certify, Exhibit #0000079; Brickman's response to Plaintiffs' motion, ¶14; Plaintiffs' motion to certify, Exhibits #80, 81. Brickman did not reimburse H-2B workers employed by it during the relevant time period for any portion of these costs. *See* Brickman's response to Plaintiffs' motion, ¶¶15, 17; Statement of Facts, Attachment 9, 11.1, 11.2, 11.3. Further, it did not take into account the above-mentioned expenses in determining whether its H-2B landscape workers earned the required FLSA minimum wage or mandated overtime premium. *See* Statement of Facts, Attachment 9. Neither River nor Lemus, nor any of Brickman's H-2B landscapers, were reimbursed such costs at the time of their first payment of wages. Plaintiffs, and all members of the putative class, assert that because these costs were not reimbursed by Brickman, they became *de facto* deductions to each worker's first week's paycheck for the purposes of measuring compliance with the minimum wage and overtime requirements of the FLSA, and because of these *de facto* deductions, none of Brickman's H-2B workers earned the minimum wage and overtime premium mandated by the FLSA during their first week of employment. Plaintiffs and the

A-95

class they seek to represent are all subject to Brickman's policy of not reimbursing the various costs and expenses associated with working as a H-2B employer for Brickman. They raise the same claim and seek the same form of relief. They all assert that the pre-employment costs associated with their visas should be considered in determining compliance with the FLSA, and they seek reimbursement of them

Brickman asserts that 2005 workers should not be included in the class because the named plaintiffs only worked at Brickman in 2003 and 2004. 29 U.S.C. § 216(b) authorizes named plaintiffs to represent similarly situated workers. The named plaintiff in *Goldman*, 2003 U.S. Dist. LEXIS 7611 worked at RadioShack from November, 1985 to September, 2001. The complaint in that matter, however, defines the FLSA class as:

> All persons who were employed by RadioShack as a "Y" store manager in Pennsylvania at any time on or after December 11, 1999, and during at least one workweek during that period worked in excess of 40 hours without receiving compensation for the excess hours at a rate not less than one and one-half times the regular rate at which the person was employed. *Id.* at *5.

Though the time period that Goldman worked at RadioShack was not identical to the class, the court noted that: "A court may conditionally certify the class for purpose of notice and discovery under a comparatively liberal standard, i.e., by determining that the members of the putative class 'were together the victims of a single decision, policy or plan.'" *Id.* at 20 (*quoting Mueller v. CBS, Inc.*, 201 F.R.D. 425, 428 (W.D.Pa. 2001)). *See also Wetzel v. Liberty Mutual Insurance Company*, 508 F.2d 239, 247 (3d Cir. 1974) *cert. denied* 421 U.S. 1011 (1975). I am unpersuaded that Brickman's concern regarding the named plaintiffs is sufficient to render Plaintiffs inadequate class representatives for the 2005 landscape workers.

Brickman also argues that class certification should be denied with respect to 2003 H-2B workers because their claims are time-barred in that Plaintiffs have failed to demonstrate that Brickman's alleged violations of the FLSA were willful. Plaintiffs concede that without a finding of willfulness, the claims of the 2003 landscape workers will be barred by the relevant statute of limitations. *See* Plaintiffs' Reply Brief at 2.

However, at this stage of the proceedings, Plaintiffs are only required to make a "modest factual showing" that the class is similarly situated. *See Bosley*, 2005 WL 13334565 at *3. "[F]act-specific arguments on the merits are premature." *Goldman*, 2003 U.S. Dist. LEXIS 7611*32. "It would be premature at this juncture to reach a determination as to whether Defendant's violations, if any, have been willful . . ." *Harrington v. Education Management Corp.*, 2002 WL 1343753 * 2 (S.D.N.Y. 2002).

> Whether Defendants violated the FLSA, and whether they acted willfully, are issues involving the merits of the action, which cannot be resolved at this stage. . . . However, the statute of limitations is of concern at this stage because the limitations period for potential plaintiffs is only tolled after they "opt-in" to the case. If the Court were to later determine that Defendants acted willfully or recklessly, then those plaintiffs whose claims arose between two and three years prior to the opt-in deadline, could find that their claims are time-barred if they are not included in the initial notice and given an opportunity to opt-in to the action as promptly as possible. Accordingly, in the interest of reaching all similarly situated potential plaintiffs, the notice should extend to those employed up to three years prior to this Opinion. *Vaicaitiene v. Partners in Care, Inc.*, 2005 WL 1593053 *7 (S.D.N.Y. 2005) (internal citations omitted).

While evidence of willfulness, or a lack thereof, may be significant after discovery, and during step two of the process, at this stage it does not compel me to deny preliminary certification.

Brickman also asserts that the 2005 workers should not be included in the class because

I conclude that Plaintiffs have satisfied the lenient first tier factual showing for preliminary pretrial certification, therefore, I recommend that Plaintiffs' request for certification of a statutory representative action pursuant to 18 U.S.C. § 216(b) be granted.

## B. Notice

29 U.S.C. § 216(b) provides in pertinent part:

> Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he give his consent in writing to become such a party and such consent is filed in the court in which such action is brought. Thus, under the FLSA, potential plaintiffs must "opt-in" to a collective action to be bound by the judgment (and to benefit from it). Moreover, only by "opting-in" will the statute of limitations on potential plaintiffs' claims be tolled. *Hoffman*, 982 F.Supp. at 260.

In their supplemental motion, Plaintiffs have included a proposed Notice. I recommend that counsel for all parties meet and confer as soon as practicable regarding a form, content, and translation of Notice satisfactory to all. The joint proposed notice should then be submitted to me for consideration.

Upon my approval of the notice, Brickman shall provide to Plaintiffs' counsel a listing of the names and the last known addresses of all members of the class as defined in the Notice. The addresses should be provided in computer readable form if possible.

I further recommend that class members have at least three (3) months from the time notice issues to file their consent to sue forms.

A-98

## IV. <u>CONCLUSION</u>

Consistent with the above discussion, it is recommended that Plaintiffs' Motion to Certify

a Plaintiff Representative Class of Persons Similarly Situated Pursuant to 29 U.S.C. § 216(b) be

GRANTED.

BY THE COURT:

M. FAITH ANGELL
CHIEF UNITED STATES MAGISTRATE JUDGE

Date: _11-10-05_
By Fax and/or Mail: See the Attached List

A-99

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

November 14, 2005

RE:    RIVERA ET AL v THE BRICKMAN GROUP LTD.
       CA No. 05-1518

**NOTICE**

Enclosed herewith please find a copy of the Report and Recommendation filed by United States Magistrate Judge M. Faith Angell, on this date in the above captioned matter. You are hereby notified that within ten (10) days from the date of service of this Notice of the filing of the Report and Recommendation of the United States Magistrate Judge, any party may file (in duplicate) with the clerk and serve upon all other parties written objections thereto (See Local Civil Rule 72.1 IV (b)).

In accordance with 28 U.S.C. §636(b)(1)(B), the judge to whom the case is assigned will make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The judge may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge, receive further evidence or recommit the matter to the magistrate judge with instructions.

Where the magistrate judge has been appointed as special master under F.R.Civ.P.53, the procedure under that rule shall be followed.

MICHAEL E. KUNZ
Clerk of Court

By: _____
Mrs. Norman, Deputy Clerk

cc:    B. Hirsch, Esq.      M. Wiener, Esq.
       A. Read, Esq.        M. Boigues, Esq.
       A. Berkowitz, Esq.   E. Tuddenham, Esq.
       T. Rodriguez, Esq.
       Courtroom Deputy to Judge Pollak

civ623 frm
(5/97)

A-100

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUAN JAVIER RIVERA and              :      CIVIL ACTION
JOSE PABLO LEMUS, Individually and on Behalf  :
of Others Similarly Situated         :
                    :
                    :
      v.                :
                    :
                    :
THE BRICKMAN GROUP, LTD.        :      NO. 05-1518

## ORDER

AND NOW, this 10th day of November, 2005, upon consideration of the pleadings and the record herein, and after review of the Report and Recommendation of M. Faith Angell, Chief United States Magistrate Judge, it is hereby **ORDERED** that:

1. The Report and Recommendation is **APPROVED AND ADOPTED**.

2. Plaintiffs' Motion to Certify a Plaintiff Representative Class of Persons Similarly Situated Pursuant to 29 U.S.C. § 216(b) (Docket Entry No. 18) **is GRANTED**.

3. Counsel shall meet and confer as soon as practicable regarding a form, content and translation of the Notice. A joint proposed notice shall be submitted to Chief Magistrate Judge Angell for consideration within ten (10) days of the date of this Order.

4. Within twenty (20) days of the date of this Order, Defendant shall provide to Plaintiffs' counsel a listing of the names and the last known addresses of all members of the class as defined in the Notice. The addresses shall be provided in computer readable form if possible.

5. Class members shall have three (3) months from the time Notice issues to file their consent to sue forms.

BY THE COURT:

_____
LOUIS H. POLLAK, J.

A-101

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JUAN JAVIER RIVERA and
JOSE PABLO LEMUS, Individually and
on Behalf of Others Similarly Situated,

                Plaintiffs,

    v.

THE BRICKMAN GROUP, LTD.

                Defendant.

Civil Action No. 05-1518

**FILED**

DEC 2 2 2005

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**MEMORANDUM / ORDER**

December 22, 2005

On November 10, 2005, Chief Magistrate Judge M. Faith Angell filed a Report

and Recommendation in which she recommended that this court grant plaintiffs' "Motion

to Certify a Plaintiff Representative Class of Persons Similarly Situated Pursuant to 29

U.S.C. § 216(b)" (Docket # 18). Plaintiffs filed objections to the Report and

Recommendation, and defendant responded, opposing each request made in plaintiffs'

objections. However, neither party has objected to Judge Angell's primary

**ENTERED**

DEC 2 2 2005

**CLERK OF COURT**

A-102

recommendation – that the motion for conditional certification be granted – and that recommendation will therefore be adopted.

In their objections, plaintiffs request that this court: 1) order a six-month opt-in period; 2) approve plaintiffs' proposed class notice; 3) order defendant to produce all contact information for potential class members, including phone numbers, and authorize plaintiffs' counsel to "use all available means to disseminate notice," including phone calls to and/or meetings with potential class members; and 4) order defendant to assist in distribution of notice to potential class members.

The Report and Recommendation proposes an opt-in period of "at least three (3) months." Plaintiffs' request for a six-month opt-in period is not inconsistent with this recommendation, and I find it reasonable given that a large proportion of the putative class members reside in rural areas outside the United States and are relatively transient. I will therefore grant plaintiffs' request for a six-month opt-in period.

Judge Angell's proposed order attached to the Report and Recommendation directs the parties to confer regarding a form of notice to class members and submit a joint proposed notice to Judge Angell within ten days of the date of this order. Plaintiffs ask that I adopt their proposed notice now rather than ordering continued negotiations between the parties and submission of an agreed notice. I am not persuaded that an additional few days of negotiations will cause undue delay. Further, I would note that, being far more familiar than I am with the details of this case, Judge Angell is in a better

position to consider the form of notice. The procedure proposed by Judge Angell will be approved.

The balance of plaintiffs' objections relate to matters not raised with Judge Angell before issuance of the Report and Recommendation. Accordingly, I will not address them. Local Rule 72(IV)(c). They will be overruled, but without prejudice to their submission to Judge Angell.

For the foregoing reasons, it is therefore ORDERED that:

1) The Report and Recommendation is APPROVED AND ADOPTED;

2) Plaintiffs' "Motion to Certify a Plaintiff Representative Class of Persons Similarly Situated Pursuant to 29 U.S.C. § 216(b)" (Docket # 18) is GRANTED;

3) Counsel for the parties shall meet and confer as soon as practicable regarding the form, content, and translation of the notice to putative class members. A joint proposed notice shall be submitted to Chief Magistrate Judge Angell for consideration within ten (10) days of the date of this order.

4) Within twenty (20) days of the date of this order, defendant shall provide to plaintiffs' counsel a list of the names and last known addresses of all members of the class as defined in the notice. The addresses shall be provided in computer readable form if possible.

5) Class members shall have six (6) months from the time notice issues to file their consent to sue forms.

A-104

6) To the extent not sustained herein, plaintiffs' objections are OVERRULED.

BY THE COURT:

December 22, 2005

_L_ ~ _H. Pollak_

Pollak, J.

A-105

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUAN JAVIER RIVERA and
JOSE PABLO LEMUS, Individually and
on Behalf of Others Similarly Situated,

        Plaintiffs,

    v.

THE BRICKMAN GROUP, LTD.

        Defendant.

Civil Action No. 05-1518

## MEMORANDUM / ORDER

March 10, 2006

Before the court is defendant "The Brickman Group, Ltd.'s Objections to the Magistrate's January 19, 2006 Order" (Docket # 56). For the reasons that follow, the objections will be overruled.

On November 10, 2005, Chief Magistrate Judge M. Faith Angell filed a Report and Recommendation ("R&R") in which she recommended, *inter alia*, that this court grant plaintiffs' motion to preliminarily certify a class. As neither party objected to this recommendation, I accepted it and certified a plaintiff class by order dated December 22,

A-106

2005

Plaintiffs filed a number of objections to the R&R, one of which requested that, in

addition to being ordered to provide addresses for putative class members (as

recommended in the R&R), defendant be ordered to provide phone numbers for putative

class members as well. I overruled this objection pursuant to Local Rule 72(IV)(c)

because the issue had not been presented to Judge Angell. However, my order specified

that the objection was overruled "without prejudice to [its] submission to Judge Angell."

Plaintiffs later raised this issue with Judge Angell, who agreed with plaintiffs and

ordered, *inter alia,* the following on January 19, 2006 (Docket # 54):

> 2. In addition to a list of the names and last known addresses of all
> members of the class as defined in the notice, Defendant shall provide to
> Plaintiffs' counsel telephone numbers of the above-mentioned class members.
> 3. Any potential class member with whom Plaintiffs' counsel has in-
> person contact shall receive a copy of the court-approved notice.
> 4 Should meetings be held to inform potential class members of this
> action, Defendant shall be informed of the date, time and place of each
> meeting, regardless of its location.

It is this portion of the order to which defendant now objects.

The parties disagree as to the standard under which I should review Judge Angell's

order. Defendant contends that the order seeks to modify this court's December 22, 2005

order permitting maintenance of a class action, and therefore it implicates 28 U.S.C. §

636(b)(1)(B)[1] and should be treated as a report and recommendation and be reviewed *de*

---

[1] 28 U.S.C. § 636(b) states as follows: "Notwithstanding any provision of law to the
contrary –
(A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending

motive for the lawyer's doing so is the lawyer's pecuniary gain . . . . The term ''solicit'' includes contact in-person by telephone or by real-time electronic communication, but, subject to the requirements of Rule 7.1 and Rule 7.3(b), does not include written communications, which may include targeted, direct mail advertisements.''

Again, defendant is incorrect. There is no evidence that plaintiffs' counsel will be motivated by pecuniary gain in contacting prospective plaintiffs. The fact that plaintiffs' counsel seeks statutory fees does not constitute such evidence. Plaintiffs's counsel are employed by a non-profit legal services organization. If, like most non-profit organizations, plaintiffs' counsel's employer uses income to fund more projects rather than supplement the salaries of its employees, one can expect plaintiffs' counsel to receive no pecuniary gain whatsoever from their efforts in this litigation. Absent some evidence to the contrary, this court sees nothing in Judge Angell's order that is inconsistent with the Pennsylvania Rules of Professional Conduct[2]. That being the case, this court will leave it to plaintiffs' counsel and the state bar to ensure that plaintiffs' counsel comply with the Rules.

Defendant also contends that allowing plaintiffs' counsel to personally contact

---

[2] The parties both dedicate considerable space in their submissions to argument over whether plaintiffs' counsel have a First Amendment right to contact potential clients. In this connection, both parties cite *In re Primus*, 436 U.S. 412 (1978) and related cases. These cases dealt with the question of whether a state bar association *could* limit lawyers' ability to solicit clients under certain circumstances. As I have concluded that Pennsylvania has not prohibited the type of direct contact apparently contemplated in this case, I have no occasion to consider whether the state could prohibit such contact if it so chose. The First Amendment is therefore not implicated by this ruling.

A-108

putative class members would be inconsistent with the purpose of issuing written class

notice. In opposition to this argument, plaintiffs cite a number of cases in which courts

ordered defendants in FLSA class actions to produce telephone numbers of putative class

members[3]. Additionally, plaintiffs presented evidence to Judge Angell that mail service

in the countries of many putative class members' residence is unreliable, particularly in

rural areas. As defendant recognizes, this court has "inherent power to manage FLSA

litigation to ensure that putative class members receive accurate information" (quote from

defendant's submission) in a timely fashion. *See Hoffman-La Roche, Inc. v. Sperling*, 493

U.S. 165, 170-72 (1989). Under the circumstances presented in this case, permitting

alternative forms of contact in addition to mailing of the class notice appears to be the

best way to get accurate, timely information about this action to putative class members.

Judge Angell's order appropriately safeguards against misinformation by requiring

plaintiffs' counsel to give a copy of the court-approved class notice to all putative

plaintiffs with whom plaintiff has contact and by requiring plaintiffs' counsel to notify

defendant before any meeting with prospective plaintiffs. Defendant has not persuaded

me that these safeguards are inadequate[4].

---

[3] *Dietrich v. Liberty Square, LLC*, 230 F.R.D. 574, 580-81 (N.D. Iowa 2005); *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 395 (W.D.N.Y. 2005); *Geer v. Challenge Finance Investors Corp.*, 2005 WL 2648054 at *5 (D. Kan. 2005); *Bell v. Mynt Entertainment, LLC*, 223 F.R.D. 680, 683 (S.D. Fla. 2004); *De La Rosa Ortiz v. Rain King, Inc.*, 2003 WL 23741409 at *1 (S.D. Tex. 2004); *Bailey v. Ameriquest Mortgage Co.*, 2002 WL 100388 (D. Minn. 2002).

[4] Defendant suggests a more appropriate safeguard would be to require plaintiffs' counsel to read from a script when contacting prospective plaintiffs directly. I agree with plaintiffs that

A-109

Because I find no error, let alone clear error, in Judge Angell's challenged order,

defendant's objections thereto will be overruled in their entirety.

For the foregoing reasons, it is hereby ORDERED that "The Brickman Group,

Ltd.'s Objections to the Magistrate's January 19, 2006 Order" (Docket # 56) are

OVERRULED.

BY THE COURT:

/s/ Louis H. Pollak

_____

Pollak, J.

---

this would be awkward and unlikely to result in fair, effective notice to putative class members.
Defendant also urges that plaintiffs' counsel be prohibited from collecting opt-in signatures at
group meetings with prospective plaintiffs. This seems unnecessary, as defendant will be
notified of any such meetings and presumably invited to attend; defendant can therefore mitigate
or report any improprieties that might be committed at these meetings.

A - 110

Westlaw.

Slip Copy                                                                      Page 1

Slip Copy, 2005 WL 3557178 (S.D.Miss.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents

Only the Westlaw citation is currently available.

United States District Court,S.D. Mississippi,
Jackson Division.
Federico SALINAS-RODRIGUEZ, et al. Plaintiff
v.
ALPHA SERVICES, L.L.C. and Robert Wade
Zaharie Defendant.
**No. Civ.A. 3:05CV44WHBAGN.**

Dec. 27, 2005.

Andrew Turner, Kelley M. Bruner, Mary C. Bauer,
Immigrant Justice Project/Southern Poverty Law
Center, Montgomery, AL, Richard T. Conrad, III,
Armstrong Allen, PLLC, Jackson, MS, for Plaintiffs.
Elizabeth K. Dorminey, James Larry Stine, Paul
Oliver, Wimberly, Lawson, Steckel & Schneider,
PC, Atlanta, GA, R. Pepper Crutcher, Jr., Balch &
Bingham, LLP, Jackson, MS, for Defendants.

*OPINION AND ORDER*
BARBOUR, J.
**\*1** This cause is before the Court on Plaintiffs'
Motion for Preliminary Certification of Collective
Action, Court-Authorized Notice, and Disclosure of
the Names, Addresses and Telephone Numbers of
Potential Opt-In Plaintiffs ("Motion for Preliminary
Certification"). Having considered the Motion,
Response, and all attachments to each, as well as
supporting and opposing authority, the Court finds
that Plaintiffs' Motion is well taken and should be
granted.

I. Factual Background and Procedural History

This action arises from the employment of migrant
forestry workers by Defendants Alpha Services,
L.L.C., and Robert Zaharie (collectively referred to
as "Defendants" or "Alpha") under the H-2B
temporary foreign worker visa program. Plaintiffs

are eleven former migrant employees of Alpha
admitted to the United States under 8 U.S.C. §
1101(a)(15)(H)(ii)(b) ("H-2B workers"). Alpha is
an Idaho company that provides a tree planting
service in various locations throughout the United
States. Alpha allegedly employed Plaintiffs as well
as hundreds of other H-2B workers from 2001 to
2005 to plant trees. On April 14, 2005, Plaintiffs
filed this action against Alpha, asserting class action
claims for violations of the Migrant and Seasonal
Agricultural Workers' Protection Act, 29 U.S.C. §
1801 *et seq.*, and the Fair Labor Standards Act, 29
U.S.C. § 201 *et seq.* ("FLSA"). Pursuant to Section
216(b) of the FLSA, Plaintiffs now move for
preliminary certification of their FLSA collective
action claim.

Plaintiffs' allege that they and similarly situated
H-2B workers of Alpha were subjected to a
common policy and practice of compensation that
violated the FLSA in the following ways:
1. Plaintiffs and similarly situated H-2B workers'
wages were not supplemented when their average
piece-rate earnings for a particular pay period did
not equal or exceed minimum and/or overtime wage
requirements;
2. Plaintiffs and similarly situated H-2B workers
were not paid for all compensable time worked;
3. Plaintiffs and similarly situated H-2B workers'
wages were subjected to deductions for cost of
tools, materials and other incidentals that were
necessary for the work performed; and
4. Plaintiffs and similarly situated H-2B workers
were not reimbursed for visa processing and travel
costs that were incurred primarily for the benefit of
Alpha.

Because Plaintiffs and other H-2B workers
employed by Alpha during this period had
comparable "working arrangements, job duties and
job descriptions and payment systems," Plaintiffs
contend that they are "similarly situated" to other
H-2B workers of Alpha to justify a collective action
under the FLSA. *See* Memorandum in Support of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-111

Page 2

Slip Copy

Slip Copy, 2005 WL 3557178 (S.D.Miss.)
**(Cite as: Slip Copy)**

Plaintiffs' Motion for Preliminary Certification, p. 3.

To establish that they are similarly situated, Plaintiffs submit affidavits stating that they observed other H-2B workers on their fourteen-member crew who had the same duties as they did and were similarly under-compensated. Also, Plaintiffs claim that they spoke with H-2B workers of Alpha who served on different crews and that these workers complained of the same pay practices that are the focus of Plaintiffs' lawsuit. *See* Exhibits "6-8" of Plaintiffs' Motion for Preliminary Certification. Further, Plaintiffs point to the " Applications for Alien Employment Certification" submitted by Alpha to the Department of Labor as proof that the H-2B workers had almost identical job descriptions and terms of compensation. *See* Exhibits "1-4" of Plaintiffs' Motion for Preliminary Certification. As further proof that there are similarly situated workers, Plaintiffs submit the " 2004-2005 Planting Disclosure" of Alpha which sets forth the terms of employment for all migrant workers who were employed as tree planters.

*2 Plaintiffs seek to represent the following class of former H-2B employees of Alpha:
All non-supervisory workers admitted as H-2b temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b), who were employed by the Defendants between April 14, 2002, through present

*See* Plaintiffs' Motion for Preliminary Certification, p. 2.

Conversely, Alpha argues that Plaintiffs only make generalized assertions that they are similarly situated. Alpha contends that Plaintiffs provide no evidentiary support that H-2B employees of Alpha were employed under the same terms or suffered the same FLSA violations alleged by Plaintiffs. Moreover, Alpha argues that Plaintiff Federico Salinas-Rodriguez stated in his deposition that the disputed pay practice pertains to the number of trees planted, which is contrary to the claims asserted in the Complaint. *See* Dep. of Salinas-Rodriguez, p 32; attached as Exhibit to Defendants' Response to Plaintiffs' Motion for Collective Action. Also, because Plaintiffs have refused to answer questions

and have asserted their Fifth Amendment right during depositions, Alpha profers that Plaintiffs are unsuitable representatives of the proposed class. Alternatively, Alpha argues that if the Court decides to conditionally certify the class, the class should be limited to the fourteen member crew of which Plaintiffs were members.

In addition to requesting preliminary certification, Plaintiffs also ask that the Court approve the notice to be sent to putative class members, that Alpha be ordered to provide the names, addresses, and telephone numbers of any potential opt-in plaintiffs, and that the opt-in period last for eight months.

II. Analysis

II.A. Preliminary Certification

Section 16(b) of the FLSA provides that employees who seek recourse against an employer may bring a suit on behalf of "similarly situated" employees. This type of action is commonly referred to as an FLSA collective action. Putative plaintiffs in a FLSA collective action, unlike class actions under Rule 23 of the Federal Rules of Civil Procedure, must "opt-in" rather than "opt-out" of the suit. 29 U.S.C. § 216(b).

> FN1. Section 216(b) provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."

The United States Court of Appeals for the Fifth Circuit in *Mooney v. Aramaco Services Co.*, 54 F.3d 1207, 1212 (5th Cir.1995), outline two alternative methods district courts could use in deciding whether an FLSA collective action claim should be certified. The first approach described in *Mooney* calls for a "two-stage" analysis of the similarly situated inquiry. *Id.* The second approach is identical to the Rule 23 class certification inquiry. *Id.* at 1213-14. The *Mooney* court chose not to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-112

Slip Copy

Slip Copy, 2005 WL 3557178 (S.D.Miss.)
**(Cite as: Slip Copy)**

adopt either method. However, in discussing the " opt-in" aspect of Section 216(b), the Fifth Circuit, prior to *Mooney*, opined that there is a " fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b)." *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir.1975) Accordingly, this Court finds that the two-stage method outlined in *Mooney* is the more appropriate method and will use this process in deciding whether Plaintiffs are similarly situated to other H-2B employees of Alpha.

> FN2 Although the court in *Mooney* was faced with an ADEA claim, *Mooney* is nonetheless applicable to preliminary certification of FLSA claims. Because the ADEA expressly incorporates Section 16(b) of the FLSA, the law regarding certification under both acts is interchangeable. *Mooney*, 54 F.3d at 1212.

*3 The mechanics of the two-stage analysis, as elaborated by the court in *Mooney*, are as follows:
The first determination is made at the so-called ' notice stage.' At the notice stage, the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members.
Because the court has minimal evidence, this determination is made using a fairly lenient standard and typically results in 'conditional certification' of a representative class. If the district court ' conditionally certifies' the class, putative class members are given notice and the opportunity to ' opt-in.' The action proceeds as a representative action throughout discovery.
The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial If the claimants are not similarly situated, the district

court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-i e. the original plaintiffs-proceed to trial on their individual claims.

*Id* at 1213-14 (footnotes omitted). In the notice stage, representative plaintiffs must substantially allege that they and putative class members were similarly situated as to their job requirements and pay provision. *Aguilar v. Complete Landsculpture, Inc.*, No. Civ. A. 3:04CV0766D; 2004 WL 2293842, at *2 (N.D.Tex. Oct.7, 2004) The employment circumstances need not be identical, only similar *Grayson v. K Mart Corp*, 79 F.3d 1086, 1096 (11th Cir.1996) To justify conditional certification, there must be "some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particularly alleged policy or practice." *Villataro v. Kim Son Rest, L.P*, 286 F.Supp.2d 807, 810 (S.D.Tex.2003) (citations and brackets omitted)

In the case *sub judice*, the Court finds that Plaintiffs have met the "fairly lenient" standard of the notice stage by substantially alleging that other H-2B workers of Alpha, including those outside Plaintiffs crew, were similarly situated to Plaintiffs. The " Applications for Alien Employment Certification" and "Planting Disclosure" reflects that other H-2B forestry workers were employed under the same job description and compensation scheme as Plaintiffs. Moreover, Plaintiffs' affidavits allege that other H-2B workers were affected by the same policies and practices of which Plaintiffs complain. Although the affidavits are in generalized terms, at this stage in the litigation, Plaintiffs can not be expected to have an elaborate knowledge of the circumstances facing other H-2B workers that were not members of Plaintiffs immediate crew. The Court is mindful that discovery is only in its infant stages. Plaintiffs are not yet privy to the names and contact information of other H-2B workers. Thus, Plaintiffs have not had the opportunity to contact proposed class members to confirm or dispel these alleged similarities If the Court required more proof at this notice stage, it would be overlooking the purpose behind the two-stage inquiry.

*4 Defendants further argue that the FLSA

A-113

Slip Copy

Slip Copy, 2005 WL 3557178 (S.D.Miss.)
**(Cite as: Slip Copy)**

violations alleged in the Complaint are different than those which Plaintiff Salinas-Rodriguez described in his deposition. However, the court can not deny Plaintiffs' rights to pursue a collective action simply based on the deposition of one named Plaintiff, especially when other named Plaintiffs have yet to be deposed. Moreover, Defendants argument that Plaintiffs are not suitable representatives is premature. In making this argument, Defendant relies on case law that pertains to the adequacy requirement of Rule 23 class certification. But, as the Court recognized *supra*, the Fifth Circuit has explained that Rule 23 class actions are wholly different from FLSA collective actions. Unlike certification under Rule 23, in-depth discovery has generally not been conducted prior to preliminary certification of FLSA collective actions. Until the facts are more fully developed through discovery, the Court is unwilling to find that Plaintiffs are inadequate as representatives. Accordingly, the Court will conditionally certify Plaintiffs FLSA collective action claim.

> FN3. Of course the conditional certification of Plaintiffs' FLSA collective action today indicates no ruling as to Plaintiffs' proposed class action claim under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801, *et seq.*, ("AWPA"). Whether the AWPA claim will proceed as a class action claim will be determined according to Rule 23.

Although the action should be preliminarily certified as a collective action, the Court believes the class as proposed by Plaintiffs is too broad. Specifically, the Court takes issue with the period urged by Plaintiffs. FLSA claims generally have a two year statute of limitations. 29 U.S.C. § 255(a). The lone exception to the two year limitations is where there has been a willful violation by an employer, in which case there is a three year statute of limitations. *Id.* Moreover, the filing of a complaint does not toll the statute of limitation for all claims that are brought under an FLSA collective certification. As Plaintiffs admit, the statute of limitations on an opt-in plaintiff's claim is not tolled

until he or she files a consent form with the Court. 29 U.S.C. § 256(b). Even assuming Defendants committed wilful violations, there are clearly claims in the proposed class that are time barred. Defendants contend that the Court should limit the time period to cover any claims accruing within three years of the issuance of this Order. Defendants suggestion is well taken. The Court therefore conditionally certifies the following class:

All non-supervisory workers admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b), who were employed by the Defendants between December 27, 2002 through present.

> FN4. Both Plaintiffs and Defendants submitted proposed notices to be sent to potential opt-in plaintiffs. In light of several discrepancies in those proposed notices, the Court held a telephonic conference with counsel for all parties on December 19, 2005. The Court made several rulings regarding those discrepancies and directed counselors to promptly submit to the Court an agreed notice and consent form that reflects the ruling of the Court. After the agreed-to notice and consent form are submitted, the Court will issue a separate order authorizing the notice and consent form.

III.B. Miscellaneous Request of Plaintiff

In addition to conditional certification, Plaintiffs ask that Defendant be ordered to provide Plaintiffs with the names, last-known addresses and telephone numbers of all potential opt-in plaintiffs. Defendants do not dispute that Plaintiffs are entitled to this information; therefore, Defendants are ordered to provide Plaintiffs the requested information on or before Friday, January 13, 2006.

Plaintiffs also ask that they be given eight months to locate and file consent forms for opt-in plaintiffs. Because the vast majority of potential opt-in plaintiffs currently reside in remote locations in Guatemala and Mexico where there are limited

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-114

Slip Copy

Slip Copy, 2005 WL 3557178 (S.D.Miss.)
**(Cite as: Slip Copy)**

means of communication, Plaintiffs contend that this eight-month period is reasonable. The Court finds that an eight-month opt-in period is excessive. However, the Court agrees that the circumstances described by Plaintiffs may very well hamper their efforts to communicate with potential opt-in plaintiffs. Thus, the Court will give Plaintiffs 180 days from the date of this Opinion and Order to locate and file consent forms for opt-in plaintiffs.

### III. Conclusion

**\*5** Based on the holdings presented above:

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Preliminary Certification of Collective Action, Court-Authorized Notice, and Disclosure of the Names, Addresses and Telephone Numbers of Potential Opt-In Plaintiffs [docket entry no. 46] is hereby granted. The Court hereby conditionally certifies Plaintiffs FLSA claim.

IT IS FURTHER ORDERED that Defendants provide Plaintiffs the names, last-known addresses and telephone numbers of all potential opt-in plaintiffs, as described in the class conditionally certified by the Court today, on or before Monday, January 13, 2005.

IT IS FURTHER ORDERED that Plaintiffs must file all consents forms of opt-in plaintiffs within 180 days from the date of this Opinion and Order.

SO ORDERED

S.D.Miss.,2005.
Salinas-Rodriguez v. Alpha Services, L.L.C.
Slip Copy, 2005 WL 3557178 (S.D.Miss.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 664582 (Trial Motion, Memorandum and Affidavit) Defendants' Response in Opposition to Plaintiffs' Motion for Protective Order (Jan. 17, 2006)
• 2006 WL 507475 (Trial Pleading) First Amended Complaint (Jan. 13, 2006)
• 2005 WL 2913769 (Trial Motion, Memorandum

and Affidavit) Memorandum of Law in Support of Plaintiffs' Motion to Invalidate Defendants' Third Offer of Judgment (Sep. 12, 2005)
• 2005 WL 2913770 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Certification of Collective Action, Court-Authorized Notice, and Disclosure of the Names, Addresses and Telephone Numbers of Potential Opt-In Plaintiffs (2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-115

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2003 WL 22701017 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania
Michelle SMITH, et al., Plaintiffs,
v.
SOVEREIGN BANCORP, INC., et al., Defendants
**No. Civ.A. 03-2420.**

Nov. 13, 2003.

Joseph Edward Mccain, The Law Offices of J. Edward McCain, III, Munira Mack, Philadelphia, PA, for Plaintiff
Larry J. Rappoport, Stevens & Lee, King of Prussia, PA, for Defendant.

*MEMORANDUM AND ORDER*

SCHILLER, J.
*1 Plaintiffs Michelle Smith and Michelle Lyons bring suit against their employer, Sovereign Bank (" Sovereign"), alleging violations of, inter alia, the Fair Labor Standards Act, 29 U.S.C §§ 201-219 (" FLSA"). Specifically, Plaintiffs allege that Sovereign failed to pay its employees time-and-a-half for hours worked in excess of forty hours per week and on Saturdays. Presently before the Court is Plaintiff's motion requesting that the Court grant preliminary class certification to their FLSA claim and approve an "opt-in" claim notice to be sent to all of Sovereign's hourly, non-FLSA-exempt employees. For the reasons set out below, the Court will deny this motion without prejudice.

I. FACTUAL BACKGROUND

Plaintiffs have been employed at Sovereign as hourly employees since September of 1998. (Compl. ¶¶ 6-7.) Plaintiffs allege that for an unspecified period of time during their employment, they and other hourly employees were instructed by their supervisors to record a maximum of eight hours of work per day on their time cards even if they worked in excess of eight hours. In addition, Plaintiffs allege that they and other hourly employees were required to work on certain Saturdays without appropriate compensation. Sovereign argues that it did not violate FLSA, and that even if such violations occurred, they ceased by December of 2001.

Plaintiffs, apparently recognizing some merit in Sovereign's latter argument, now raise the possibility that a two-year statute of limitations for their FLSA claim will expire in the near future. Accordingly, Plaintiffs, who have not yet conducted class-related discovery, request that the Court preliminarily certify a class of plaintiffs that includes all of Sovereign's non-FLSA-exempt hourly employees and approve a form notice to be sent to these employees so that they may opt-in to this suit before they are time-barred from doing so.

> FN1. Plaintiffs have repeatedly stated that Sovereign continues to deny its employees overtime pay in violation of FLSA. (Pl.'s Mot. for Notice to Potential Class Members ¶ 2; Compl. ¶¶ 18-20.) In light of this, it is unclear to the Court why " the claims of many, if not most [potential class members] will likely expire by the date that class certification issue [sic] is addressed by the Court" (Pl.'s Mem of Law in Support of Mot. for Notice to Potential Class Members, Part II A.)

> FN2. As the parties note, the statute of limitations under FLSA is either two or three years, with the longer period applying to "willful" violations. 29 U.S.C § 255. At this time, the Court neither addresses this issue nor decides which time period is applicable to the instant case.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-116

Page 2

## II. DISCUSSION

There are two requirements for FLSA group plaintiffs: (1) All plaintiffs must be "similarly situated"; and (2) All plaintiffs must consent in writing to taking part in the suit. 29 U.S.C. § 216(b). FLSA does not define the term "similarly situated," see id.; Briggs v. United States, 54 Fed. Cl. 205, 206 (2002) ("The term 'similarly situated' is defined neither in the FLSA nor in its implementing regulations "), nor does it provide specific procedures by which claimants may opt-in, but the Supreme Court has held that "district courts have discretion .... to implement [§ 216(b) ] ... by facilitating notice to potential plaintiffs." Hoffman La-Roche Inc. v. Sperling, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

The determination of whether FLSA claimants are "similarly situated" for the purposes of § 216(b) is a two-step procedure. Felix de Asencio v. Tyson Foods, Inc., 130 F.Supp.2d 660, 663 (E.D.Pa.2001) ; Briggs, 54 Fed. Cl. at 206. The first step, generally conducted early in the litigation process, is a preliminary inquiry into whether the plaintiffs' proposed class is constituted of similarly-situated employees. Felix de Asencio, 130 F.Supp.2d at 663; Briggs, 54 Fed. Cl. at 206. The second step, usually conducted after the completion of class-related discovery, is a specific factual analysis of each employee's claim to ensure that each actual claimant is appropriately made party to the suit. Felix de Asencio, 130 F.Supp.2d at 663; Briggs, 54 Fed. Cl. at 206. Only the first step of this process is implicated by the present motion.

*2 The Third Circuit has not yet determined what standard to apply in considering whether potential class members are "similarly situated" such that FLSA plaintiffs may be entitled to send them notice of the suit. In the absence of appellate guidance, the Court looks to other districts and circuits, which have applied varying standards. Some courts, including two within this District, have held that motions for preliminary certification and notice may be granted as long as the plaintiff merely alleges that the putative class members were injured as a result of a single policy of the defendant employer. See Goldman v. RadioShack Corp., No.

03-CV-0032, 2003 WL 21250571, *8, 2003 U.S. Dist. LEXIS 7611, *27 (E.D.Pa. Apr.16, 2003) (" During this first-tier inquiry, we ask only whether the plaintiff and the proposed representative class members allegedly suffered from the same scheme." ); Felix de Asencio, 130 F.Supp.2d at 663 (" [C]ourts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." (internal quotations omitted)); Sperling v. Hoffman-La Roche, 118 F.R.D. 392, 407 (D.N.J.1988)) (same), aff'd on other grounds 862 F.2d 439 (3d Cir.1988), aff'd 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Other courts generally apply a more stringent-although nonetheless lenient-test that requires the plaintiff to make a "modest factual showing" that the similarly situated requirement is satisfied. See Dybach v. Fla. Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir.1991) ("Before determining to exercise [its] power [to approve notice to potential plaintiffs], the district court should satisfy itself that there are other employees ... who desire to 'opt-in' and who are 'similarly situated' ..."); Mueller v. CBS, Inc., 201 F.R.D. 425, 428 (W.D.Pa.2001) (requiring plaintiff to provide "a sufficient factual basis on which a reasonable inference could be made" that potential plaintiffs are similarly situated (internal quotations omitted)); Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 362 (M.D.Ala.1999) ("Plaintiffs have the burden of demonstrating that a reasonable basis for crediting their assertions that aggrieved individuals exist in the broad class that they propose. "); Jackson v. New York, 163 F.R.D. 429, 431 (S.D.N.Y.1995) ("[P]laintiffs need merely provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." (internal quotations omitted)); Briggs, 54 Fed. Cl. at 207 (requiring "modest factual showing that [plaintiffs] are ... similarly-situated with other, un-named potential plaintiffs").

Thus, in order to determine whether preliminary class certification should be granted, this Court must first determine the appropriate standard to apply: The "mere allegation" approach of Goldman and Felix de Asencio, or the "modest factual showing" test of Briggs, et al. In effect, Goldman

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-117

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22701017 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

and *Felix de Acensio* render preliminary class certification automatic, as long as the Complaint contains the magic words: "Other employees similarly situated." Under this rationale, any plaintiff who is denied overtime pay may file suit under FLSA and, as long as her complaint is well-pled, receive preliminary class certification and send court-approved notice forms to every one of her employer's hourly employees. This is, at best, an inefficient and overbroad application of the opt-in system, and at worst it places a substantial and expensive burden on a defendant to provide names and addresses of thousands of employees who would clearly be established as outside the class if the plaintiff were to conduct even minimal class-related discovery. More importantly, automatic preliminary class certification is at odds with the Supreme Court's recommendation to " ascertain the contours of the [§ 216] action at the outset." *Hoffman La-Roche*, 495 U.S. at 487 (discussing district court management of cases under § 216(b)), and such certification does not comport with the congressional intent behind FLSA's opt-in requirement, which was designed to limit the potentially enormous size of FLSA representative actions. *See id.* at 488. As the Supreme Court has stated, the opt-in requirement was intended to reduce "excessive litigation spawned by plaintiffs lacking a personal interest in the outcome." *Id.* If district courts do not take basic steps to ensure that opt-in notices are sent only to potential plaintiffs who "have a personal interest" in the employer's challenged policy, the congressionally-mandated line between representative actions under FLSA and class actions under Rule 23 will be substantially blurred.

> FN3. The Court also notes that the cases in which the plaintiffs' allegations were deemed sufficient for preliminary certification purposes are factually distinguishable from the instant case. In *Goldman*, the plaintiff sought to provide notice only to employees who held the same title as himself, as opposed to the instant Plaintiffs, who wish to contact *all* of defendant's estimated 7,500 hourly employees. Similarly, in *Felix de Asencio*,

the plaintiffs sought to provide notice to the workers at one particular plant, rather than to the entire corporate payroll. In both cases, therefore, there was a significantly greater likelihood than exists in the instant case that the employees receiving the opt-in form would be similarly situated to the plaintiffs.

**\*3** Accordingly, rather than following the automatic preliminary certification route, this Court will adopt the reasoning of those courts that have required plaintiffs to make a basic factual showing that the proposed recipients of opt-in notices are similarly situated to the named plaintiffs. *See, e.g., Dybach*, 942 F.2d at 1567-68; *Mueller*, 201 F.R.D. at 428; *Harper*, 185 F.R.D. at 362; *Jackson*, 163 F.R.D. at 431; *Briggs*, 54 Fed. Cl. at 207. This approach provides a more efficient and effective means of managing FLSA litigation and comports with the Supreme Court's case-management recommendation and the Congressional intent behind FLSA. Specifically, the factual showing requirement enables a court to narrow the potential class from all of a defendant's employees to just those employees who can possibly claim to have been denied overtime under the same policy as allegedly affected Plaintiffs.

It should be stressed that this is an extremely lenient standard. Plaintiffs need only provide some "modest " evidence, beyond pure speculation, that Defendant's alleged policy affected other employees. Nonetheless, in light of this standard, the Court must deny Plaintiffs' motion because Plaintiffs fail to provide any factual or evidentiary basis for the inclusion of all of Defendant's hourly employees in the putative class. However, because Plaintiffs have not yet conducted discovery on the class certification issue, the Court will permit Plaintiffs to re-file their motion for preliminary class certification and notice when and if the discovery process has yielded facts that render such certification appropriate .

> FN4. Plaintiffs may wish to consider narrowing the putative class-by geography, job title, or otherwise-to reflect the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

A-118

Not Reported in F.Supp.2d                                                Page 4

Not Reported in F.Supp.2d, 2003 WL 22701017 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

    evidence that arises during discovery.

For the reasons stated above, the Court denies
Plaintiffs' motion for preliminary class certification.
An appropriate Order follows.

*ORDER*

AND NOW, this 13th day of November, 2003,
upon consideration of Plaintiff's Motion for Notice
to Potential Class Members and for Approval of
Form of Preliminary Class Notice and Defendant's
response thereto, it is hereby ORDERED that:

Plaintiff's Motion (Document No. 7) is DENIED
without prejudice.

E.D.Pa.,2003.
Smith v. Sovereign Bancorp, Inc.
Not Reported in F.Supp.2d, 2003 WL 22701017
(E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 2716490 (Trial Motion, Memorandum
and Affidavit) Defendant Sovereign Bancorp,
Inc./Sovereign Bank's Response to Plaintiffs'
Renewed Motion for Notice to Potential Class
Members and Approval of form of Preliminary
Class Notice and Consent Order to Opt-In form
(Apr. 8, 2004)
• 2004 WL 2716494 (Trial Motion, Memorandum
and Affidavit) Defendants Sovereign Bancorp,
Inc./Sovereign Bank's Response to Plaintiffs'
Motion for Expansion of Discovery to Include All
of Pennsylvania (Apr. 8, 2004)
• 2003 WL 23902823 (Trial Motion, Memorandum
and Affidavit) Defendant's Memorandum of Law in
Opposition to Plaintiffs' Motion for Notice to
Potential Class Members and for Approval of form
of Preliminary Class Notice (Nov. 7, 2003)
• 2:03cv02420 (Docket) (Apr. 22, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-119

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2001 WL 1002448 (D.Del.), 144 Lab.Cas. P 34,364
**(Cite as: Not Reported in F.Supp.2d)**

United States District Court, D. Delaware.
Leona TROTTER, Joan Smith, Honorio Perez,
Joanne Autry, Marilyn Gilliam, Samantha Michelle
Jones, and Diana Webster, on behalf of themselves
and all others similarly situated, Plaintiffs,
v.
PERDUE FARMS, INC. and Retirement and
Benefits Committee of the Perdue Supplemental
Retirement Plan, Defendants.
**No. CIV.A.99-893-RRM.**

Aug. 16, 2001.

ORDER GRANTING CLASS CERTIFICATION

MCKELVIE, District J.
**\*1** This is an employment case. Plaintiffs Leona
Trotter, Joan Smith, Honorio Perez, Joanne Autry,
Marilyn Gilliam, Samantha Michelle Jones, Diana
Webster, and Billie Jo Smiling are current or former
employees of Perdue Farms, Inc. Perdue Farms, Inc.
is a Maryland corporation that operates sixteen
chicken processing plants in eight states including
Delaware, Kentucky, Maryland, North Carolina,
and South Carolina. Plaintiffs seek class
certification for claims based on the Employee
Retirement Income and Security Act, 29 U.S.C. §§
1001, et seq., the Fair Labor Standards Act, 29
U.S.C. § 201, et seq., and the wage and hour laws
of Delaware, Kentucky, Maryland, North Carolina,
and South Carolina. According to plaintiffs, Perdue
employs approximately 16,000 employees at its
chicken processing facilities.

Plaintiffs contend that they, and all others similarly
situated, are entitled to compensation for time spent
obtaining, putting on, removing, and sanitizing
required safety equipment. According to plaintiffs,
under federal Occupational Safety and Health
Administration ("OSHA") regulations and United
States Department of Agriculture ("USDA")

regulations, chicken processing employees are
required to wear and use protective equipment when
performing their job. Further, plaintiffs state that
failure to follow Perdue's safety manual and
sanitation policies, which require that chicken
processing employees wear OSHA and USDA
mandated safety and sanitary equipment, could lead
to discipline and termination.

Despite these requirements, plaintiffs contend that
Perdue does not compensate its production
employees for the time it takes them to obtain, don,
doff, and sanitize equipment. On December 12,
1999, plaintiffs filed suit in this court seeking
damages under the FLSA and state wage and hour
laws for the uncompensated time and under ERISA
for failure to contribute to the Supplemental
Retirement Plan.

On October 31, 2000, plaintiffs filed a motion for
class certification under Federal Rule of Civil
Procedure 23 and for collective action designation
under the FLSA, 29 U.S.C. § 216(b). According to
plaintiffs, the class meets the standard for
certification under Rule 23 because a) the class, and
appropriate subclasses are too numerous for
joinder; b) there are common question of law and
fact among the class members; c) the class
representatives are typical of the claims of the class
and the subclasses; and d) the class representative
will fairly and adequately represent the class.

On January 16, 2001, defendants filed an answering
brief. Defendants first argued that plaintiffs cannot
meet the standard for class certification because
there is no commonality or typicality of the claims
because throughout Perdue's chicken-processing
plants, each department uses a different
methodology for recording time and for obtaining,
donning, doffing, and sanitizing supplies.
Moreover, Perdue argues that the kind and type of
equipment varies among the departments depending
on the function of the line worker. Lastly,
defendants contend that differences in the physical

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

A-120

Not Reported in F.Supp.2d                                                     Page 2

Not Reported in F.Supp.2d, 2001 WL 1002448 (D.Del.), 144 Lab.Cas. P 34,364
**(Cite as: Not Reported in F.Supp.2d)**

layout of the plants means that some workers take more time to obtain and sanitize equipment than others. Defendants further argue that plaintiffs have not meet the standard for class certification because the plaintiffs are not adequate representatives

*2 The Third Circuit has indicated that class actions should be looked upon favorably. *See Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.), *cert. denied, Weinstein v. Eisenberg,* 474 U.S. 946 (1985) The Supreme Court has also expressed its approval of class action proceedings, noting that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99 (1981). In *Eisenberg,* 766 F.2d at 785, the Third Circuit went so far as to declare that " 'in a doubtful case … any error, if there is to be one, should be committed in favor of allowing a class action.' " (citations omitted).

Accordingly, the standard for determining whether the class action prerequisites are met is rather lenient. In addition, in considering whether to certify a class, the court may not consider "whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits." *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 178 (1974). That is, a motion for class certification the court is not to test the sufficiency of the merits of the case, but should look to whether the plaintiffs meet the standard under Rule 23.

In light of these standards, the court finds in this case defendants' concerns about the difference between different chicken processing plants do not undermine the plaintiffs' rationale for bringing this case as a class action. There are often small variables between plaintiffs' claims in a class action. These differences should not necessarily derail a class action. In this case, if plaintiffs can succeed on the merits, they will have to justify a damage figure for each member of the class. That work will take into account the average time lost by each class member that is required to obtain, don, doff, and sanitize equipment.

Therefore, having considered the arguments for and against class certification, the court finds that the plaintiffs' claims meet the requirements of Rule 23.

That is, the proposed class, and subclasses, are so numerous that joinder is impracticable. Moreover, despite potential differences in the equipment used and the time it takes for individuals to don, doff, and sanitize that equipment does not undermine the common questions of law and fact for each the proposed class. Lastly, plaintiffs have appropriately addressed potential differences in the state wage and hour laws by proposing subdivisions for the potential class.

For the reasons set forth above, it is HEREBY ORDERED:

1. Plaintiff's motion for class certification and collective action designation (D.I.79) is granted;

2. The class is defined as:

All persons who at any time from December 16, 1993, to the present have worked or continue to work as non-exempt hourly production employees of Perdue Farms, Inc in any one or more of the chicken processing facilities operated by Perdue, and who were or are participating in the Perdue Supplemental Retirement Plan.

*3 3. The court also certifies the following opt-out subclasses:

### The "Delaware Subclass"

All persons who at any time from the period from December 16, 1998, to the present have worked or continue to work as non-exempt hourly production employees of Perdue Farms, Inc. in any one or more of the chicken processing facilities operated by Perdue in the State of Delaware.

### The "Kentucky Subclass"

All persons who at any time from the period from December 16, 1994, to the present have worked or continue to work as non-exempt hourly production employees of Perdue Farms, Inc. in any one or more of the chicken processing facilities operated by Perdue in the State of Kentucky.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

A-121

Not Reported in F.Supp.2d                                                                Page 3

Not Reported in F.Supp.2d, 2001 WL 1002448 (D.Del.), 144 Lab.Cas. P 34,364
**(Cite as: Not Reported in F.Supp.2d)**

### The "Maryland Subclass"

All persons who at any time from the period from December 16, 1996, to the present have worked or continue to work as non-exempt hourly production employees of Perdue Farms, Inc. in any one or more of the chicken processing facilities operated by Perdue in the State of Maryland.

### The "North Carolina Subclass"

All persons who at any time from the period from December 16, 1997, to the present have worked or continue to work as non-exempt hourly production employees of Perdue Farms, Inc. in any one or more of the chicken processing facilities operated by Perdue in the State of North Carolina.

### The "South Carolina Subclass"

All persons who at any time from the period from February 14, 1997, to the present have worked or continue to work as non-exempt hourly production employees of Perdue Farms, Inc. in any one or more of the chicken processing facilities operated by Perdue in the State of South Carolina.

### The "FLSA Subclass"

All persons who at any time from the period from December 16, 1996, to the present have worked or continue to work as non-exempt hourly production employees of Perdue Farms, Inc. in any one or more of the chicken processing facilities operated by Perdue.

D.Del.,2001
Trotter v. Perdue Farms, Inc.
Not Reported in F.Supp.2d, 2001 WL 1002448 (D.Del.), 144 Lab.Cas. P 34,364

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-122