IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RAMON VILLANUEVA-BAZALDUA, individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 06-185 (GMS) |
| TRUGREEN LIMITED PARTNERS[1] and, TRUGREEN, INC.[2], d/b/a TRUGREEN CHEMLAWN[3], | ) ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EXPEDITED MOTION TO CONDITIONALLY CERTIFY A FLSA COLLECTIVE ACTION & REPLY IN FURTHER SUPPORT OF ITS MOTION FOR EXPEDITED DISCOVERY**

Michael P. Kelly (Del. Bar ID #2295)
McCARTER & ENGLISH
919 N. Market Street, 18th Floor
Wilmington, DE 19801
(302) 984-6300

*Admitted Pro Hac*
Michael L. Banks (Pa. I.D. #35052)
Sarah E. Bouchard (Pa. I.D. #77088)
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5387/5077

OF COUNSEL:
MORGAN, LEWIS & BOCKIUS, LLP

Dated: May 15, 2006

Attorneys for Defendants

---

[1]    The correct legal name is TruGreen Limited Partnership.

[2]    TruGreen, Inc. was not Plaintiff's employer, and therefore, is not a proper party in this action.

[3]    TruGreen, Inc. does not do business as (d/b/a) TruGreen Chemlawn; TruGreen Limited Partnership does do business as (d/b/a) TruGreen Chemlawn.

MEI\5651295.1

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................ 1

II.  RELEVANT BACKGROUND ............................................................................ 3

    A.  TruGreen Chemlawn & The H-2B Program ........................................... 3

    B.  Plaintiff's Employment With TruGreen Chemlawn .............................. 4

III.  ARGUMENT ....................................................................................................... 5

    A.  Plaintiff's Request For Expedited Notice And Conditional
         Certification Should Be Exposed And Denied For What It Is –
         An Improper Effort to Effect Legislative Change Through The Court ................ 6

    B.  Sending Notice And Conditionally Certifying This Matter As
         A Collective Action Is Premature ....................................................... 9

         1.  Plaintiff has not demonstrated that he can meet even the
                 lenient standard that would justify proceeding as a collective
                 action at this stage ................................................................ 9

         2.  In light of Plaintiff's misrepresentations of the facts, discovery
                 is more appropriate at this stage than notice or conditional
                 certification ......................................................................... 11

         3.  Courts routinely permit limited discovery prior to deciding
                 whether notification and conditional certification are appropriate ........... 13

IV.  CONCLUSION .................................................................................................. 14

ME1\5651295.1

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Arriaga v. Florida Pacific Farms*,
305 F.3d 1228 (11th Cir. 2002)......................................................................... 8

*H&R Block, Ltd. v. Housden*,
186 F.R.D. 399 (E.D. Tex. 1999)....................................................................... 10

*Harper v. Lovett's Buffet, Inc.*,
185 F.R.D. 358 (M.D. Ala. 1999) ...................................................................... 12

*Haynes v. Singer Co.*,
696 F.2d 884 (11th Cir. 1983*)* ......................................................................... 10

*Mueller v. CBS, Inc.*,
201 F.R.D. 425 (W.D. Pa. 2001*)*...................................................................... 13

*Spellman v. Visionquest National*,
1998 U.S. Dist. LEXIS 4298 (W.D. Pa. Feb. 13, 1998).................................... 12

### STATE CASES

*De La Cruz v. El Paso County Water Improvement District No. 1*,
2005 WL. 2291015 (W.D. Tex. Sept. 19, 2005)............................................... 10

*Flores v. Osaka Health Spa, Inc.*,
2006 WL. 695675 (S.D.N.Y. Mar. 16, 2006) .................................................... 9

*Moeck v. Gray Supply Corp.*,
2006 WL. 42368 (D.N.J. Jan. 6, 2006).............................................................. 9

*Smith v. Sovereign Bancorp., Inc.*,
2003 WL. 22701017 (E.D. Pa. Nov. 13, 2003) ........................................... 9, 10

*Wertheim v. Ariz.*,
1992 WL. 566321 (D. Ariz. Aug. 4, 1992)........................................................ 10

### DOCKETED CASES

*De Luna-Guerrero et al. v. N.C. Grower's Association et al.*,
Docket No. 4:02-cv-00173-H (E.D.N.C.) ......................................................... 13

*Recinos-Recinos et al. v. Express Forestry, Inc.*,
Docket No. 2:05-cv-01355-LMA-DEK (E.D. La.)............................................. 13

ME1\5651295.1

*Rivera v. The Brickman Group, Ltd.,*
    Docket No. 2:05-cv-01518-LP (E.D. Pa.) ...................................................... 13

*Salinas-Rodriquez et al. v. Alpha Services, Inc.,*
    Docket No. 3:05-cv-00440-WHB-JCS (S.D. Miss.) ...................................... 13

## FEDERAL STATUTES

8 C.F.R. § 214.2(h)(6) ................................................................................... 8, 11

8 U.S.C. § 1101(H) ............................................................................................ 7

20 C.F.R. § 655.102(b)(13) ............................................................................... 8

## MISCELLANEOUS

U.S. Gen. Accounting Office,
    *The H-2A Program:  Protections for U.S. Farmworkers,* Table 1.1 (1988) ...................... 7

MEI\5651295.1

## I.    **INTRODUCTION**

On May 5, 2006, Plaintiff Ramon Villanueva-Bazaldua ("Plaintiff") filed an expedited

Motion to Conditionally Certify a Fair Labor Standards Act ("FLSA") Collective Action.  In that

Motion, Plaintiff demands that this Court take, at face value, the false and misleading statements

in Plaintiff's Declaration and Brief, and open this case to nationwide discovery and collective

treatment.  Defendants respectfully suggest this Court should not be so baited by Plaintiff's

superficial and fast-and-loose tactics.[4]

By way of background, Plaintiff worked for TruGreen Limited Partnership d/b/a

TruGreen Chemlawn ("TruGreen") on an H-2B visa at its Wilmington, Delaware branch

beginning in 2004.  See Declaration of Ramon Villanueva-Bazaldua, dated April 21, 2006

(hereinafter "Plaintiff Decl."), at ¶ 2, a copy of which is contained in Plaintiff's Appendix at pp.

A-13-19.  TruGreen, like many other lawn and landscaping companies, employs, on a lawful

basis, non-immigrant temporary non-agricultural workers for seasonal work in the United States

pursuant to the federal government's H-2B visa program.  See Answer ¶ 12.  TruGreen

participates in the H-2B program where and when necessary (including in Delaware and other

regions of the United States) because there are not a sufficient number of workers available to fill

these positions on a seasonal basis.  See Declaration of James Vacchiano, dated May 12, 2006

(hereinafter "Vacchiano Decl."), at ¶ 3, a copy of which is attached as Exhibit A.

Plaintiff's Complaint alleges that, prior to accepting employment in 2004, TruGreen

made promises to him in Mexico about wages and other perquisites that he would receive when

---

[4]    Plaintiff's desire that the Court give short-shrift to the actual facts of this matter is evident
throughout his moving papers, but perhaps the most egregious example is his reliance on
and reference to the affidavit of Gregory S. Schell, which was prepared for and submitted in
an entirely different case.  By doing so, Plaintiff highlights his mistaken belief that he
somehow is automatically entitled to collective action treatment of his claims simply
because his attorney has made similar arguments in prior cases.  His suggestion that the
Court need not conduct an analysis of the facts of this matter should be ignored on its face.

he arrived in the United States. He contends that he relied on these alleged promises to his detriment. See Complaint ¶¶ 17, 34-36 (claiming breach of contract (Count II), fraud (Count III) and violations of covenant of good faith and fair dealing (Count IV)). In addition to these highly individualized claims, Plaintiff also alleges that TruGreen violated the Fair Labor Standards Act ("FLSA") by failing to account for alleged expenses he incurred during the first and last workweeks of employment with TruGreen. See Complaint ¶¶ 23-26, 29. These expenses are detailed in his Complaint and Declaration, and include: the cost of obtaining a Mexican passport, $200 visa application fees, a $6 border crossing fee, a $155 administrative fee paid to Defendants' agent for processing the visa paperwork, and transportation expenses from the point of recruitment to the place of work in the United States, as well as return transportation to Mexico. See Complaint ¶¶ 19, 21; Plaintiff Decl. ¶¶ 3, 9.

Although *no statute, regulation or decision requires an employer to bear these expenses for H-2B workers, either in a direct or de facto manner*, Plaintiff seeks to represent a class of "all H-2B workers employed by Defendant TruGreen Limited Partners[hip] at any time between 2003 and 2006."[5] Complaint ¶ 9. Plaintiff contends that he and all other H-2B workers are similarly situated, as he and all other H-2B workers purportedly were required to pay these expenses on their own behalf. Complaint ¶¶ 21, 23; Plaintiff Decl. ¶¶ 7-8.

---

[5] Plaintiff alleges in his Complaint that he also seeks to represent a class of "all H2-B workers employed by Defendant TruGreen Limited Partners[hip] at any time between 2003 and 2006" pursuant to Rule 23 of the Federal Rules of Civil Procedure as to his claims of breach of contract, fraud, and breach of the duty of good faith and fair dealing. See Complaint ¶ 10. However, Plaintiff has chosen to "move for certification of the Rule 23 claims at a later date" because Plaintiff posits that "[t]here is no statute of limitations problem with respect to the Rule 23 claims as the filing of the action tolls limitations for those claims." Plaintiff's Brief, at p.2 n.2. TruGreen disputes that class treatment pursuant to Rule 23 would be proper in these circumstances, and it strains credulity that highly individualized claims of fraud, breach of contract, and breach of good faith and fair dealing ever could be appropriate for class treatment. Nonetheless, because Plaintiff apparently has temporarily tabled the argument for another date, TruGreen will not address his Rule 23 theory here.

ME1\5651295.1

Notwithstanding that Plaintiff lacks any basis to allege unlawful activity by TruGreen, Plaintiff was not similarly situated to the other H-2B workers he seeks to join in this action. Contrary to his Declaration, Plaintiff was *not* required to pay his own return transportation costs, and, in fact, was given a plane ticket to Mexico in the middle of the 2004 season, at his own request, and at the expense of TruGreen. See Declaration of Michael Matejik, dated May 12, 2006 (hereinafter "Matejik Decl."), at ¶ 5, a copy of which is attached hereto as Exhibit B. Moreover, and despite alleging in his Complaint that there was a "policy or practice of not taking into account" various expenses incurred by H-2B workers, the irrefutable facts to date demonstrate that certain H-2B workers *did* receive compensation for various incidentals arising from their temporary employment. See Vacchiano Decl. ¶ 4.

In short, neither this case nor the law are what Plaintiff represents there to be, and these misrepresentations of both facts and law serve only to underscore why a limited period of discovery before issues of notice and certification are decided is a more prudent and proper approach at this stage in the proceedings.

## II.     RELEVANT BACKGROUND

### A.     TruGreen Chemlawn & The H-2B Program

TruGreen Chemlawn provides professional lawn care through a combination of weed control and fertilization treatments and services designed to target every lawn care issue. See Vacchiano Decl. ¶ 2. In accordance with the H-2B temporary seasonal worker program established and overseen by the United States government, certain branches of TruGreen Chemlawn (though not all) sometimes rely on temporary non-immigrant workers to fill the demand for labor during the lawn care season. See Vacchiano Decl. ¶ 3. To the extent necessary, these foreign nationals are employed in a variety of positions in any given year, including as Laborers, Applicators, and Lawn Care Specialists, depending on the needs of the

ME1\5651295.1

business and, in some cases, whether the individual holds a valid U.S. driver's license. See
Vacchiano Decl. ¶ 3.

There is nothing in the statute or H-2B regulations that mandates a specific manner or
method of payment to such temporary seasonal workers, and there is nothing in the statute or
regulations that requires an employer to cover particular expenses incurred by the H-2B worker.
Each branch determines what additional monies to provide, if any, to assist the workers with the
transition to their employment in the United States. For example, since at least 2003, the Branch
Manager in the DC West (Dulles) Branch has provided his H-2B workers an additional $200
"sign up bonus" to cover incidental expenses at the beginning of their employment in the States,
and in 2006, the Branch Manager in Malvern, Pennsylvania purchased $742 worth of groceries
for the twelve H-2B workers in his branch without seeking recoupment from any of the workers.
See Vacchiano Decl. ¶ 4.

**B.    Plaintiff's Employment With TruGreen Chemlawn**

Plaintiff began his employment as an H-2B worker with TruGreen in or about March
2004 at the Wilmington, Delaware branch. See Plaintiff Decl. ¶ 2. Plaintiff, along with five
other H-2B workers, received $150 from TruGreen for expenses incurred before the employees
received their first paychecks. See Matejik Decl. ¶¶ 2-3. This money was not repaid by or
otherwise recovered from any employee, including Plaintiff. See Matejik Decl. ¶ 3.

Until June 2004, Plaintiff's employment continued without issue. In June 2004, however,
Plaintiff began to complain about non-work-related back pain. Ultimately, Plaintiff sought
treatment for his pain and did not work for an entire week because of the injury. During this
time off, TruGreen compensated Plaintiff as if he had been working during that week. See
Matejik Decl. ¶ 4.

ME1\5651295.1

When Plaintiff returned to work from his time off, he began to complain about his overall compensation. Namely, Plaintiff complained that his total compensation was too low and that he believed he was not earning as much as other H-2B workers. See Matejik Decl. ¶ 5. Eventually, by the mid-point of the season, Plaintiff requested to return to Mexico. Without any legal obligation to do so, TruGreen paid for a one-way plane ticket for Plaintiff's return travel to Mexico. See Matejik Decl. ¶ 5. Plaintiff's last day of employment with TruGreen was July 3, 2004, but he stayed in Wilmington until July 10, 2004, when he received his final check for $579.19  See Matejik Decl. ¶ 6.

## III.   **ARGUMENT**

Consistent with the practice and procedure in other putative collective actions, TruGreen sought an opportunity for limited discovery so that this Court would have a reasonable basis on which to evaluate whether collective action treatment was necessary or appropriate in this case. Plaintiff resisted that opportunity entirely and, through the instant Motion, seeks expedited authorization to send notice to putative class members and expedited conditional certification of his claims as a collective action. In support of that effort to expedite the collective action treatment, Plaintiff alleges generally that "as a matter of uniform policy or practice" TruGreen failed to properly account for costs associated with "obtaining visas and getting to the United States to accept work with TruGreen" and that TruGreen had a "policy of requiring H-2B workers to pay their own return transportation to Mexico," both of which Plaintiff maintains constitute violations of the FLSA. See Plaintiff's Brief, pp. 2-3.

Put simply, this matter is not appropriate for collective action treatment. Far from being the *de facto* violations of law that Plaintiff suggests, TruGreen's policies and practices with respect to H-2B workers are entirely lawful under the existing legislation and regulations. Moreover, the claims asserted by Plaintiff are not appropriate for collective action because none

MEI\5651295.1

of the H-2B workers are similarly situated with respect to the alleged expenses and, in any event, Plaintiff is not a proper representative for any such action. However, the Court need not even decide the merits of any of those issues at this juncture. Rather, it is clear from the record to date that the interests of justice and efficiency will be best served by first allowing an opportunity for limited discovery to determine whether, in fact, the Court and the parties need to incur the time and expense associated with notice and conditional certification.

**A.    Plaintiff's Request For Expedited Notice And Conditional Certification Should Be Exposed And Denied For What It Is – An Improper Effort To Effect Legislative Change Through The Courts.**

Plaintiff's moving papers misleadingly suggest that an employer is required by law to pay expenses incurred by H-2B workers (whether directly or *de facto*) and, on that basis, superficially contend that collective action treatment would be appropriate in this matter. To the contrary, there is no such obligation under any existing legislation or administrative regulation. Rather, all that Plaintiff relies upon to create the appearance of a mandatory legal obligation vis a vis H-2B workers is the decision of a single court relating to the reimbursement and/or authorized deductions for expenses of *H-2A* workers. H-2A workers, however, have been specifically afforded substantial protections and benefits that are not available to any other type of non-immigrant workers, including H-2B workers. The distinction between H-2A and H-2B is significant and completely undermines one of the fundamental premises of Plaintiff's request for expedited notice and conditional certification.

To appreciate the error of Plaintiff's suggestion that there has been a *de facto* violation of the law by TruGreen, it is essential to understand the background of the H-2 program and, specifically, the protections afforded *only* to H-2A agricultural workers.[6]  The Immigration and

---

[6]    By definition, "agricultural" workers are a narrow class that includes only those who work on or in connection with farms (e.g., those who cultivate soil on farms, those who create or maintain irrigation systems on farms) or for the purpose of creating an agricultural

ME1\5651295.1

Nationality Act of 1952 created the H-2 visa program.  From then until 1986, all non-immigrant

temporary workers – whether employed as farm laborers or other temporary seasonal laborers –

gained lawful entry and authorization to work in the United States under this general "H-2"

program.  In 1986, however, Congress split the H-2 visa category into the H-2A and H-2B

classifications – H-2A for "agricultural" workers and H-2B for all "other" temporary workers.  8

U.S.C. §§ 1101(H)(ii)(a), (b).  The purpose behind Congress's decision to treat farm workers

differently from other temporary seasonal workers was straightforward:  to balance the labor

needs of domestic farmers with the growing concern about exploitation of foreign farm workers.

See Immigration Reform and Control Act of 1986, P.L. 99-603, p. 106. ("We seek a balanced

program that would ensure an adequate source of labor, but would not exploit these employees or

provide an added incentive to hire foreign rather than resident workers.")  Specifically, it was

noted that:

> Overall, [the H-2] program has worked reasonably well, with
> respect to non-agricultural occupations.  However, with respect to
> agriculture, the Committee has identified a number of areas where
> improvement is needed.  Accordingly, the bill creates a separate H-
> 2 program for agricultural occupations and sets forth the basic
> contours that program is expected to take.  *The bill makes no
> changes regarding the non-agricultural H-2 law.*

Id. at pp. 50-51 (emphasis added).

To achieve this balance between farmers' needs and farm workers' rights, Congress

obligated farmer-employers to provide farm workers with certain benefits (e.g., meals, housing,

transportation costs, and guaranteed work).  In return, the applicable regulations specifically

provide that the employers can "deduct the cost of the worker's transportation and daily

---

commodity (e.g., sugarcane, apples, sheep's wool, logs, citrus, and tobacco) or in connection
with pressing apple cider.  See 8 U.S.C. § 1101(H)(ii)(a).  See also U.S. Gen. Accounting
Office, The H-2A Program:  Protections for U.S. Farmworkers, Table 1.1 (1988)
(identifying the types and number of H-2A Agricultural Jobs Certified by the Department of
Labor).

ME1\5651295.1

subsistence expenses to the place of employment," but must then reimburse the full amount of

such deductions "upon the worker's completion of 50 percent of the worker's contract period."

20 C.F.R. § 655.102(b)(13).  In <u>Arriaga v. Florida Pacific Farms</u>, 305 F.3d 1228 (11th Cir.

2002), the Eleventh Circuit Court of Appeals seized upon and extended these principles under

the FLSA, concluding that the expenses incurred by H-2A workers were for the benefit of the

employer and, therefore, were *de facto* deductions to the extent that the H-2A farm workers were

not reimbursed or otherwise compensated for those expenditures.  See <u>Arriaga</u>, 305 F.3d at 1237-

46.[7]

       By contrast, there is nothing in the H2-B regulations that addresses any of these expense

or reimbursement issues, as Plaintiff has alleged them.  Rather, the only regulation regarding

expenses for H-2B workers states:  "The employer shall be liable for the reasonable costs of

return transportation of the alien abroad, if the alien is dismissed from employment for any

reason by the employer before the end of the period of authorized admission . . ."  8 C.F.R. §

214.2(h)(6)(vi)(E).

       In short, the so-called practices about which Plaintiff complains and seeks to represent a

class – TruGreen's practices and policies with respect to accounting for transportation and other

employment-related expenses incurred by H-2B workers – is eminently lawful.  Plaintiff's

counsel may be hoping to use the Court and the threat of the collective action mechanism as

---

[7]     As is clear in the opinion, the <u>Arriaga</u> decision related only to H-2A farm workers, but not
other temporary seasonal workers (such as Plaintiff) authorized to work under separate and
distinct H-2B visas.  Moreover, the <u>Arriaga</u> decision binds only those employers in the
jurisdiction of the Eleventh Circuit Court of Appeals.  Plaintiff cannot identify any other
jurisdiction that has accepted the <u>Arriaga</u> decision or reasoning in any context (let alone
extending it to H-2B workers), and there is no indication that the Department of Labor has
sought to enforce the <u>Arriaga</u> decision on any employer in any jurisdiction.  In any event,
TruGreen believes the <u>Arriaga</u> decision, in part, was wrongly decided and is fundamentally
inconsistent with the plain text of the applicable immigration and FLSA regulations.

ME1\5651295.1

means to effectuate change that can only properly be achieved through legislative or administrative means. That intent, however, does not justify notice or conditional certification.

Although TruGreen is not asking the Court to decide the merits of Plaintiff's legal theory at this time, it raises this critical issue to show that there is a genuine basis upon which to oppose Plaintiff's claims. At a minimum, TruGreen submits, it should be allowed to take limited discovery so that this Court can decide the appropriateness of a collective action based on the true facts, as opposed to certain hollow allegations in the Complaint and his Declaration.

## B.     Sending Notice And Conditionally Certifying This Matter As A Collective Action Is Premature.

### 1.     Plaintiff has not demonstrated that he can meet even the lenient standard that would justify proceeding as a collective action at this stage.

Plaintiff apparently recognizes that it is his burden to demonstrate that collective action treatment is appropriate as a matter of law, yet he fails to demonstrate that he can actually meet that burden. Notwithstanding his suggestions to the contrary, it is not sufficient even at this early stage to rely on his own self-serving affidavit to permit nationwide notice and conditional certification. Rather, most courts reasonably require plaintiffs to make a "basic *factual* showing that the proposed recipients of opt-in notices are similarly situated to the named plaintiffs." Smith v. Sovereign Bancorp., Inc., No. Civ. A. 03-2420, 2003 WL 22701017, at *2-3 (E.D. Pa. Nov. 13, 2003) (emphasis added) (all unreported opinions are contained within a separate compendium). See also Moeck v. Gray Supply Corp., No. 03-1950, 2006 WL 42368, at *4-5 (D.N.J. Jan. 6, 2006) (concluding after discovery that "this case is not an appropriate one for [collective] action certification" because plaintiff could not present any factual basis to support his allegation that the proposed class was similarly situated).[8]   Although this is an admittedly

---

[8]     See also Flores v. Osaka Health Spa, Inc., No. 05 Civ. 962VMKNF, 2006 WL 695675, at *3 (S.D.N.Y. Mar. 16, 2006) (denying motion for notice and conditional certification and

lenient standard, Plaintiff cannot make an end-run around the fundamental legal principles by seeking notice and certification prematurely and suggesting that the absence of a sufficient factual record should not be an impediment. Rather, he must provide some evidence "*beyond pure speculation*" that the policy similarly affected other employees. Smith, 2003 WL 22701017, at *3 (emphasis added).

Speculation is all that Plaintiff has provided. He has not provided affidavits from any other class member he purports to represent. Indeed, he has not provided *any* factual basis from which to make any assumptions that he will be able to demonstrate at some later date that he is similarly situated to the putative class members. To the contrary, the only other record evidence reveals that there are substantial differences between Plaintiff and the putative members of the class that arguably could preclude proceeding as a collective action. See Vacchiano Decl. ¶ 4. In light of all of the foregoing, notice and certification are premature, and Defendant is entitled to limited discovery to explore further the allegations on which Plaintiff premises his request for collective action treatment.

---

noting that "[t]he plaintiff's determination to rely upon broad conclusory allegations and nothing more, also militates against certifying this as a FLSA collective action."); De La Cruz v. El Paso County Water Improvement Dist No. 1, No. EP-05-CV-206-FM, 2005 WL 2291015, *6-7 (W.D. Tex. Sept. 19, 2005) (refusing to certify class for alleged failure to pay overtime because the only evidence before the court was "unsupported assertions of violation. . . No affidavits that would provide evidence that others are similarly situated was submitted by Plaintiffs"); H&R Block, Ltd. v. Housden, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (denying certification because the plaintiffs did not "go beyond the level of making unsupported factual assertions"); Wertheim v. Ariz., No. Civ. 92-0453 PHX RCB, 1992 WL 566321, at *4 (D. Ariz. Aug. 4, 1992) (refusing to authorize notice "based solely on plaintiff's unsupported allegations"); Haynes v. Singer Co., 696 F.2d 884, 887 (11th Cir. 1983) (affirming district court's refusal to authorize notice based only on "counsel's unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores").

ME1\5651295.1

**2.    In light of Plaintiff's misrepresentations of the facts, discovery is more appropriate at this stage than notice or conditional certification.**

Not only has Plaintiff failed to make even the "modest factual showing" necessary to obtain notice and conditional certification; he also overstates the allegations in his Complaint that serve as the premise of his collective action allegations. For example, Plaintiff asserted in his Complaint and under oath in his Declaration that "Plaintiff had to pay for his return transportation to Mexico" (Complaint ¶ 21; Plaintiff Decl. ¶ 9) and states further in his Motion that TruGreen's alleged "policy and practice" of failing to pay these costs constitutes a violation of the FLSA for which collective treatment is appropriate. To the contrary, the record evidence clearly demonstrates that *TruGreen paid for Plaintiff's return transportation to Mexico* – in the form of a $336.16 one-way plane ticket from Philadelphia to Mexico. See Matejik Decl. ¶ 5. If Plaintiff has not actually incurred the expenses on which he seeks to premise the FLSA claims for which he seeks collective action treatment, he cannot possibly proceed as the named plaintiff for purposes of the collective action.

Indeed, there may be other facts that are easily obtained through limited discovery that will further reveal the impropriety of permitting Plaintiff to proceed as a representative of this purported collective action, including whether Plaintiff is entitled to any protections under the H-2B visa program. For example, as stated above, an employer is required to pay for the return transportation of an H-2B worker only if that employee is dismissed prior to the expiration of the authorized period. See 8 C.F.R. § 214.2(h)(6)(vi)(E). Because there appears to be a factual dispute regarding whether Plaintiff's mid-season departure was voluntary or involuntary, TruGreen should at least be able to explore those circumstances at Plaintiff's deposition. If Plaintiff in fact voluntarily resigned his employment mid-season, he clearly is not entitled to the limited expenses provided to H-2B workers who are dismissed, mid-season, and those circumstances clearly impact his necessary status as a similarly situated employee.

ME1\5651295.1

Similarly, Plaintiff argues that collective action treatment is appropriate "[b]ecause all of Defendants' H-2B workers are similarly situated with respect to Defendants' practice of requiring workers to bear these visa- and travel-related costs." See Plaintiff's Motion at pp. 3, 6. However, this is an unsupported assumption that, at the very least, requires a more developed record. As noted in Mr. Vacchiano's and Mr. Matejik's Declarations, TruGreen branches reimburse H-2B workers differently for incidental expenses. See Vacchiano Decl. ¶ 4; Matejik Decl. ¶ 3. Plaintiff has offered no support for his suggestion that there is uniformity in the treatment of such expenses, or that he is similarly situated to others. Therefore, there is not yet any factual basis upon which Plaintiff can assert (as he must) that there was a "practice" that similarly affected all workers that would justify collective action treatment. See generally Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358 (M.D. Ala. 1999) (refusing to issue notice to a company-wide class when plaintiffs failed to present any evidence to support their claim that a "uniform corporate practice discouraging overtime" existed or that "widespread wrongdoing" occurred); Spellman v. Visionquest Nat'l, 1998 U.S. Dist. LEXIS 4298, at *6 (W.D. Pa. Feb. 13, 1998) (striking plaintiff's FLSA collective action allegations where plaintiffs failed to sufficiently allege a "single decision, policy, or plan" of the defendant for failing to compensate employees for sleep time).

Further to that point, even if Plaintiff's legal theory somehow survives, it is difficult to imagine *any* circumstances in which the *de facto* deductions could result in an FLSA violation for the last workweek, as Plaintiff suggests.[9] (Complaint ¶ 24.) Simply put, most individuals

---

[9]    It is similarly unlikely that there could be an FLSA violation in the first workweek. By way of example, an H-2B employee can earn $843 in his first week of employment for 47 hours of work. Based on Plaintiff's Complaint and Declaration, the alleged visa-related expenses total approximately $361 (see Plaintiff Decl. ¶¶ 3, 9), and a bus ticket from Mexico to the Northeastern United States costs approximately $150. See Vacchiano Decl. ¶ 5. By working 47 hours in that first workweek, the employee must have made an effective wage of $260.11 in order to meet the FLSA's minimum wage threshold (including overtime) for that

MEI\5651295.1

will not have any basis to assert liability against TruGreen for the last workweek because their individual wages and hours worked generated an effective wage that cannot be brought below the minimum wage threshold, even after accounting for the costs incurred for bus travel home, as Plaintiff claims. See Vacchiano Decl. ¶ 5 (noting that the transportation expense for travel from the Northeastern United States to Mexico amounts to approximately $150). Thus, contrary to Plaintiff's conclusory assertion that differences in salaries and hours worked are irrelevant to this analysis, it is clear that Plaintiff's legal theory requires an individualized analysis of each person's circumstances and is not suitable for collective treatment at this stage.

3.    **Courts routinely permit limited discovery prior to deciding whether notification and conditional certification are appropriate.**

Permitting discovery before considering issues of notice and conditional certification would be wholly consistent with the practice of other courts in this circuit as well as the other collective actions to which Plaintiff cites in his moving papers. See, e.g., Mueller v. CBS, Inc., 201 F.R.D. 425, 428 (W.D. Pa. 2001) (noting that it denied motion for class certification pending discovery on the question of suitability for certification); De Luna-Guerrero et al. v. N.C. Grower's Ass'n et al., Docket No. 4:02-cv-00173-H (E.D.N.C.) (providing 120 days to conduct discovery after complaint filed and staying all motions addressed to the issue of certification for the period of discovery); Recinos-Recinos et al. v. Express Forestry, Inc., Docket No. 2:05-cv-01355-LMA-DEK (E.D. La.) (complaint filed April 7, 2005, motion to compel discovery filed November 28, 2006, and order granting motion for conditional certification filed January 30, 2006); Rivera v. The Brickman Group, Ltd., Docket No. 2:05-cv-01518-LP (E.D. Pa.) (scheduling order indicating that parties have 60 days after filing of motion for certification "for completion of discovery as to issues related to the motion"); Salinas-Rodriquez et al. v. Alpha

_____

workweek. Under the illustrative facts above, even accounting for $511 in allegedly *de facto* deductions, the individual still earned an effective wage of $332 in the first workweek – well above the minimum wage threshold for that first week of employment.

13

Servs., Inc., Docket No. 3:05-cv-00440-WHB-JCS (S.D. Miss.) (granting parties joint motion to extend time to complete discovery prior to class certification motion). As the Court already has recognized, Plaintiff's concerns regarding potential statute of limitations concerns are merely theoretical at this stage and, therefore, need not bear upon the instant Motion. In any event, at present, Plaintiff's counsel speaks only for <u>one</u> putative class member (Plaintiff), and he has not identified any statute of limitations issues as to him. Clearly, as evidenced by the common practice of courts highlighted above, notwithstanding the possibility that claims may become stale while engaging in discovery, courts have not considered that potential a bar to permitting reasonable discovery under these very circumstances.

In short, there is no reason that Plaintiff's request for notice and certification must be decided in a vacuum and every reason to permit limited discovery in the interim. As Defendant requested in its Motion for Expedited Discovery, once Defendant has had a brief 45-day period to depose Plaintiff and obtain his responses to targeted written discovery, the parties can then provide the court with reasonably sufficient record evidence upon which to decide whether the claims presented in this Complaint warrant collective action treatment.

## IV.    CONCLUSION

Plaintiff's rushed approach is antithetical to the very principles of efficiency on which collective actions are based. Rather, the fundamental interests of judicial efficiency and fairness are better served by allowing limited discovery to determine whether this Plaintiff, as he alleges, can meet the burden of demonstrating that he is similarly situated to the members of the purported collective action he seeks to represent and that this matter truly is proper for notice and certification.

ME1\5651295.1

Respectfully submitted,

/s/ Michael P. Kelly

_____

Michael P. Kelly (Del. Bar ID #2295)
McCarter & English LLP
919 N. Market Street, 18th Floor
Wilmington, DE  19801
(302) 984-6301

*Admitted Pro Hac*
Michael L. Banks (Pa. I.D. #35052)
Sarah E. Bouchard (Pa. I.D. #77088)
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5387/5077

OF COUNSEL:
MORGAN, LEWIS & BOCKIUS, LLP

Dated:  May15, 2006                        Attorneys for Defendants

15

## CERTIFICATE OF SERVICE

I, Michael P. Kelly, hereby certify that a true and correct copy of Defendants' Opposition

To Plaintiff's Expedited Motion To Conditionally Certify An FLSA Collective Action & Reply

In Further Support Of Its Motion for Expedited Discovery was served via e-file and hand

delivery on this 15th day of May, 2006, upon the following:

Vivian L. Rapposelli, Esquire (#3204)
Rapposelli, Castro & Gonzeles
916 North Union Street, Suite 2
Wilmington, DE  19805


/s/ Michael P. Kelly
_____
Michael P. Kelly

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RAMON VILLANUEVA-BAZALDUA, individually and on behalf of others similarly situated,       ) )<br>) )<br>Plaintiff,     )<br>)<br>v.     )<br>)<br>TRUGREEN LIMITED PARTNERS[1] and, )<br>TRUGREEN, INC.[2], d/b/a TRUGREEN )<br>CHEMLAWN[3],     )<br>)<br>Defendant.     ) | Civil Action No.:  06-185 |

### DECLARATION OF JAMES VACCHIANO

I, James Vacchiano, hereby declare as follows:

1.    I am currently employed by TruGreen Limited Partnership (d/b/a TruGreen Chemlawn) ("TruGreen") as the Regional Human Resource Manager for the New Jersey and Mid-Atlantic regions.  I have held this role since 1992.  In this role, I have knowledge regarding TruGreen's participation in the H-2B program established and overseen by the United States federal government.

2.    TruGreen provides professional lawn care through a combination of weed control and fertilization treatments and services designed to target every lawn care issue.

3.    TruGreen participates in the H-2B program where and when necessary because there are not a sufficient number of workers available to fill these positions on a seasonal basis.

---

[1]    The correct legal name is TruGreen Limited Partnership.

[2]    TruGreen, Inc. was not Plaintiff's employer, and therefore, is not a proper party in this action.

[3]    TruGreen, Inc. does not do business as (d/b/a) TruGreen Chemlawn; TruGreen Limited Partnership does do business as (d/b/a) TruGreen Chemlawn.

H-2B workers are employed in a variety of positions in any given year, including as Laborers, Applicators, and Lawn Care Specialists, depending on the needs of the business and, in some cases, whether the individual holds a valid U.S. driver's license.

4.      TruGreen does not have a policy or practice that either prohibits or requires Branch Managers to provide additional compensation to H-2B workers. Branch Managers have the discretion to provide additional money to H-2B workers as they deem necessary and appropriate. For example, since at least 2003, the Branch Manager in Washington DC West (Dulles) paid all H-2B workers in his branch a $200 "sign up bonus" even though he was not required to do so. Similarly, in 2006, the Branch Manager in Malvern, Pennsylvania purchased $742 worth of groceries for the twelve H-2B workers in his branch and did not seek repayment or reimbursement from those individuals, even though he was not required to do so.

5.      In my experience and upon information and belief, a bus ticket for travel to the Northeastern United States from Mexico costs approximately $150.00.

I hereby declare under penalty of perjury that the foregoing Declaration is true and correct.

Dated: May _12_, 2006

_James G. Vacchiano_
James Vacchiano

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

RAMON VILLANUEVA-BAZALDUA,  )
individually and on behalf of others  )
similarly situated,  )
                      )     Civil Action No.: 06-185
     Plaintiff,  )
                      )
     v.  )
                      )
TRUGREEN LIMITED PARTNERS[1] and,  )
TRUGREEN, INC.[2], d/b/a TRUGREEN  )
CHEMLAWN[3],  )
                      )
     Defendant.  )

## DECLARATION OF MICHAEL MATEJIK

     I, Michael Matejik, hereby declare as follows:

     1.     I am currently employed by TruGreen Limited Partnership (d/b/a TruGreen

Chemlawn) ("TruGreen") as a Branch Manager for TruGreen's Wilmington, Delaware branch. I

have held this position with TruGreen since October 2000. In my role as Branch Manager, I am

responsible for all operations of the Branch, including supervision of employees.

     2.     Ramon Villanueva-Bazaldua began his employment with TruGreen at the

Wilmington Branch in March 2004. He was the only non-returning H-2B worker. TruGreen

employed five other H-2B workers in 2004, each of whom had worked the previous season for

TruGreen.

---

[1]     The correct legal name is TruGreen Limited Partnership.

[2]     TruGreen, Inc. was not Plaintiff's employer, and therefore, is not a proper party in this
action.

[3]     TruGreen, Inc. does not do business as (d/b/a) TruGreen Chemlawn; TruGreen Limited
Partnership does do business as (d/b/a) TruGreen Chemlawn.

3.    As Branch Manager, I have discretion to reasonably allocate funds as I deem necessary and appropriate. When Mr. Villanueva and the other H-2B workers arrived in Wilmington in March 2004, I authorized payment of $150.00 to each of them so that they could use the money for food, incidentals, or however they saw fit. I did not ask for, expect, or seek repayment of this money from any individual, including Mr. Villanueva. I was neither required nor prohibited by any company policy or practice to provide this money to the H-2B workers.

4.    In June 2004, Mr. Villanueva complained to me that he was having back pain. It was my understanding that his pain was not related to any work injury or issue. It is my understanding that Mr. Villanueva sought treatment at a hospital for his back pain. He did not work for a week thereafter, but he was paid as if he had worked for the full week.

5.    When Mr. Villanueva returned to work after his time off for his back pain, he complained to me that he believed his pay was too low and believed that he was being paid less than other H-2B workers. Approximately one week later, at or around the mid-point of the season, Mr. Villanueva told me that he was considering returning to Mexico at that time. We discussed the possibility of him leaving and returning in July, but Mr. Villanueva declined that option and asked to return home at that point. I initially informed Mr. Villanueva that I would authorize payment for a bus ticket to return him to Mexico even though there was no requirement to do so, but I eventually authorized payment for a plane ticket to return him to Mexico. Monica Wilson, the Office Manager for the Wilmington Branch, charged $336.16 to the company's credit card for Mr. Villanueva's one-way air trip on July 11, 2004, from Philadelphia (airport code PHL) to the Leon-Guanajuato Del Bajio Airport (airport code BJX). A true and correct copy of the credit card statement is attached to this Declaration at Tab 1. TruGreen did not deduct the cost of this airline ticket or any other expense from Mr. Villanueva's final paycheck.

2

6.      Mr. Villanueva's last day of employment with TruGreen was July 3, 2004.  It is my understanding and belief that he stayed in or around the Wilmington area until July 10, 2004, when he picked up his final check, which was in the amount of $579.19.

I hereby declare under penalty of perjury that the foregoing Declaration is true and correct.

Dated: May 12, 2006

Michael. Matejik

3