IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RAMON VILLANUEVA-BAZALDUA, individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 06-185 (GMS) |
| TRUGREEN LIMITED PARTNERS[1] and, TRUGREEN, INC.[2], d/b/a TRUGREEN CHEMLAWN[3], | ) ) ) ) | |
| Defendant. | ) ) | |

**COMPENDIUM TO
DEFENDANTS' OPPOSITION TO PLAINTIFF'S EXPEDITED MOTION TO
CONDITIONALLY CERTIFY A FLSA COLLECTIVE ACTION &
REPLY IN FURTHER SUPPORT OF ITS MOTION FOR EXPEDITED DISCOVERY**

Michael P. Kelly (Del. Bar ID #2295)
McCARTER & ENGLISH
919 N. Market Street, 18th Floor
Wilmington, DE 19801
(302) 984-6300

*Admitted Pro Hac*
Michael L. Banks (Pa. I.D. #35052)
Sarah E. Bouchard (Pa. I.D. #77088)
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5387/5077

OF COUNSEL:
MORGAN, LEWIS & BOCKIUS, LLP

Dated: May 15, 2006                    Attorneys for Defendants

---

[1]    The correct legal name is TruGreen Limited Partnership.

[2]    TruGreen, Inc. was not Plaintiff's employer, and therefore, is not a proper party in this action.

[3]    TruGreen, Inc. does not do business as (d/b/a) TruGreen Chemlawn; TruGreen Limited Partnership does do business as (d/b/a) TruGreen Chemlawn.

## <u>TABLE OF CONTENTS</u>

<u>Tab</u>

### FEDERAL CASES

*Spellman v.* Visionquest *National,*
    1998 U.S. Dist. LEXIS 4298 (W.D. Pa. Feb. 13, 1998)....................................................1

### STATE CASES

*De La Cruz v. El Paso County Water Improvement District No. 1,*
    2005 WL 2291015 (W.D. Tex. Sept. 19, 2005)................................................................2

*Flores v. Osaka Health Spa, Inc.,*
    2006 WL 695675 (S.D.N.Y. Mar. 16, 2006)...................................................................3

*Moeck v. Gray Supply Corp.,*
    2006 WL 42368 (D.N.J. Jan. 6, 2006) ...........................................................................4

*Smith v. Sovereign Bancorp., Inc.,*
    2003 WL 22701017 (E.D. Pa. Nov. 13, 2003) ...............................................................5

*Wertheim v. Ariz.,*
    1992 WL 566321 (D. Ariz. Aug. 4, 1992).......................................................................6

1

LEXSEE 1998 US DIST LEXIS 4298

**JIMMY SPELLMAN, Plaintiff, v. VISIONQUEST NATIONAL, LTD., Defendant.**

**Civ. 96-235E**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
PENNSYLVANIA, ERIE DIVISION**

*1998 U.S. Dist. LEXIS 4298*

**February 13, 1998, Decided**

**DISPOSITION:** [*1] Defendant's Motion to Strike
Plaintiff's Class Allegations GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee
individually and collectively filed suit against defendant
employer, primarily alleging a violation of the Fair Labor
Standards Act of 1938, *29 U.S.C.S. § 201* et seq., in that
he was required to work 96 or more consecutive hours
each week but was only compensated for 60 hours or less
each week. The employer filed a motion to strike the
employee's class allegations.

**OVERVIEW:** The employee filed a motion to compel
discovery, which the employer opposed on the ground
that the discovery presupposed at least conditional certi-
fication of an undefined class. One week before the close
of discovery, the employee filed a motion to extend dis-
covery and the employer renewed its motion to strike the
class allegations. In response, the employee argued that
because the suit was not brought under *Fed. R. Civ. P. 23*
but under *29 U.S.C.S. § 216*(b), different standards ap-
plied. The employer argued that, absent a motion for
conditional certification, the § 216(b) allegations should
be struck or the employee should be precluded from
seeking discovery of potential class members. The court
held that: (1) the employee did not follow the two-tiered
certification approach established for the management of
§ 216(b) cases; (2) the employee also did not meet his
burden under the lower standard for conditional certifica-
tion; (3) the employer's sleep-time policy was identical in
all material respects to one approved for a different em-
ployer by the Department of Labor; and (4) the employee
failed to set forth all the necessary elements to prove a
violation of law.

**OUTCOME:** The court granted the employer's motion
to strike the employee's class allegations.

LexisNexis(R) Headnotes

*Civil Procedure > Class Actions > Opt-Out Provisions*
*Civil Procedure > Class Actions > Prerequisites > Gen-*
*eral Overview*
*Labor & Employment Law > Wage & Hour Laws >*
*Remedies > Class Actions*
[HN1] Pursuant to § 216(b) of the Fair Labor Standards
Act, a person may bring a representative action on behalf
of himself "and other employees similarly situated." *29
U.S.C.S. § 216*(b). It is clear that such actions, while
similar in some respects, are separate and distinct from
class actions brought under *Fed. R. Civ. P. 23*. Under
Rule 23, once certified as a class, individuals who do not
wish to be parties to the action in question must opt-out.
Under § 216(b), however, potential class members must
opt-in to the proposed class. In order to opt-in, a trial
court must make a determination that each person is
"similarly situated," a determination that is necessarily
fact specific. Because of this fundamental difference
between Rule 23 and § 216(b) actions, potential class
members must receive notice of a proposed § 216(b)
collective action before a final determination of whether
the case can proceed as a collective action is made. For
this reason, trial courts have developed a two-tiered ap-
proach to § 216(b) collective actions.

*Civil Procedure > Class Actions > Prerequisites > Gen-*
*eral Overview*
*Civil Procedure > Dismissals > General Overview*
*Labor & Employment Law > Wage & Hour Laws >*
*Remedies > General Overview*
[HN2] A trial court may conditionally certify a class
under § 216(b) of the Fair Labor Standards Act for the
purposes of notice and discovery under a comparatively
liberal standard. This appears to require nothing more

than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan. At the close of discovery, the trial court then revisits the certification question utilizing a higher "similarly situated" standard. At that stage, the trial court considers such factors as disparate factual and employment settings of the individuals, various defenses asserted against various individuals, and other fairness and procedural issues. If at that point the trial court is not convinced that the plaintiffs are "similarly situated," then the conditional class is decertified.

***Labor & Employment Law > Employment Relationships > Employment Contracts > Conditions & Terms > General Overview***

***Labor & Employment Law > Wage & Hour Laws > Administrative Proceedings & Remedies > Rulemaking Authority***

***Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period***

[HN3] In order to determine what a plaintiff must allege to set forth a violation of the Fair Labor Standards Act for failing to compensate employees working 24 hour shifts for sleep time or the lack thereof, a trial court looks to the United States Department of Labor regulation covering this issue. Under that regulation, when an employee is on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than eight hours from the hours worked. *29 C.F.R. § 785.22.* Such an agreement is acceptable so long as the employer provides "adequate sleep facilities" and the employee usually enjoys an uninterrupted night's sleep.

**COUNSEL:** For JIMMY SPELLMAN, plaintiff: Samuel J. Cordes, Ogg, Jones, Cordes & Ignelzi, Pittsburgh, PA. Ray P. McClain, Charleston, SC. B. Randall Dong, Simpson, Dong & Wingate, Columbia, SC. Edward K. Pritchard, Jr., Charleston, SC.

For VISIONQUEST NATIONAL LTD., defendant: Mark J. Kuhar, Knox, McLaughlin, Gornall & Sennett, Erie, PA. William J. Kilberg, Eugene Scalia, Gibson, Dunn & Crutcher, Washington, DC.

**JUDGES:** Maurice B. Cohill, Jr., Senior District Judge.

**OPINIONBY:** Maurice B. Cohill, Jr.

**OPINION:**

MEMORANDUM OPINION

On August 7, 1996, Plaintiff filed a complaint alleging, inter alia, that Defendant, VisionQuest National, Ltd. ("VisionQuest"), is in violation of the Fair Labor Standards Act of 1938, *29 U.S.C.A. § 201 et seq.* ("FLSA"). Plaintiff states in his complaint that he is bringing this action as a "collective action" pursuant to § 216(b) of the FLSA. In August, 1997, Defendant filed a Motion to Strike Plaintiff's Class Allegations. For the reasons set forth herein, we will grant that Motion.

I. FACTUAL BACKGROUND

VisionQuest is a company which provides rehabilitation services for youthful offenders [*2] throughout the United States. Plaintiff was hired in May 1994 as a "Tipiforeman" at one of VisionQuest's facilities. He was terminated for misconduct in November, 1994.

VisionQuest hires "Tipiforemen" and "Tipiparents" for four types of programs: the Medicine Morse Lodge Impact Camp at which Plaintiff was employed, which employs both tipis and trailers or "bunkhouses" as sleeping facilities; OceanQuest, which is usually conducted aboard one of two 130-foot sail boats; Rough Riders Wagon Train, which is a mobile camp employing trailers and tipis for sleeping facilities; and the South Mountain Lodge Impact Camps, both of which employ trailers and tipis for sleeping facilities. The sleeping facilities differ somewhat from time to time and program to program.

In his complaint, Plaintiff alleges that he was required to work ninety-six (96) or more consecutive hours each week but was only compensated for no more than sixty (60) hours a week. Complaint at P 13. He does, however, acknowledge signing an agreement wherein VisionQuest states that "eight hours of sleeping time" each day would be excluded from his pay. n1 Complaint at P 16. Me also alleges that he is bringing a collective action [*3] on behalf of himself and "all other similarly situated counselors presently or formerly employed by VisionQuest" on the grounds that each individual counselor has been "victimized by a pattern or policy which [sic] in violation of the FLSA." Complaint at P 10.

n1 The agreement refers to a policy printed in bold-face type in an employee handbook. That policy states as follows: "VisionQuest and its employees agree that eight (8) hours of sleeping time are excluded from compensable working time for each employee working a tour of duty in excess of twenty-four (24) hours and residing on VisionQuest property. If you are interrupted from sleeping while on VisionQuest property for a call to duty, you must report the time period of the interruption as hours worked on your continuous daily time card. If you receive less than five (5)

hours sleep during the night, you are to report having worked twenty-four (24) hours that day."

Plaintiff proceeded with discovery in this purported collective action, over VisionQuest's [*4] strenuous objection, despite his failure to move for conditional certification. Plaintiff filed a motion to compel discovery which VisionQuest opposed on the grounds that the requested discovery presupposed at least conditional certification of an undefined class. At a status conference, the court deferred ruling on the motion to compel but ordered VisionQuest to produce job descriptions for "Tipiforemen" and "Tipiparents" in order to help the Plaintiff define a proposed class. The court stated that once the job descriptions were produced, the ball would be in the Plaintiff's court.

VisionQuest provided those job descriptions and also provided descriptions of the four camp programs discussed above. Plaintiff took no further action to obtain the remaining information which he originally sought to compel. Likewise, Plaintiff took no further action to define and propose a class for purposes of certification or conditional certification. Consequently, in accordance with its earlier order, the court denied without prejudice the motion to compel. A week before the close of discovery, Plaintiff filed a motion to extend discovery, which the court granted. VisionQuest then filed the present [*5] Motion to Strike.

## II. COLLECTIVE ACTION PURSUANT TO § 216(b)

[HN1] Pursuant to § 216(b) of the FLSA, a person may bring a representative action on behalf of himself "and other employees similarly situated." *29 U.S.C.A. § 216*(b). It is clear that such actions, while similar in some respects, are separate and distinct from class actions brought under *Rule 23 of the Federal Rules of Civil Procedure.* Under Rule 23, once certified as a class, individuals who do not wish to be parties to the action in question must opt-out. Under § 216(b), however, potential class members must opt-in to the proposed class. In order to opt-in, the court must make a determination that each person is "similarly situated," a determination that is necessarily fact specific.

Because of this fundamental difference between Rule 23 and § 216(b) actions, potential class members must receive notice of a proposed § 216(b) collective action before a final determination of whether the case can proceed as a collective action is made. *Sperling v. Hoffman-LaRoche, Inc., 118 F.R.D. 392, 406* (D.N.J.), aff'd. in part and appeal dismissed in part, *862 F.2d 439 (3d Cir. 1988),* aff'd, Hoffmann-La Roche, [*6] *Inc. v. Sperling, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).* For this reason, courts have developed a two-

tiered approach to § 216(b) collective actions. *See Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987),* vacated in part on other grounds and appeal dismissed sub. nom., *Lusardi v. Lechner, 855 F.2d 1062 (3d Cir. 1988).* [HN2] A court may conditionally certify a § 216(b) class for purposes of notice and discovery under a comparatively liberal standard. Sperling, an ADEA case, set the standard in this Circuit by following the lead of other courts which "appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan ..." *118 F.R.D. 392 at 407.* In Sperling, the district court held that the plaintiffs had made detailed allegations in their pleadings, described a single decision, policy or plan of the defendant and supported those allegations with affidavits and that the those allegations set forth all the necessary elements to prove a violation of the law. *Id. at 406-07.*

At the close of discovery, the court then revisits the certification question [*7] utilizing a higher "similarly situated" standard. At that stage, the court considers such factors as disparate factual and employment settings of the individuals, various defenses asserted against various individuals and other fairness and procedural issues. *Lusardi, 118 F.R.D. at 359.* If at that point the court is not convinced that the plaintiffs are "similarly situated," then the conditional class is decertified.

The present case represents something of a hybrid. Plaintiff never requested, and the Court never granted, conditional certification. Nevertheless, discovery proceeded with, among other things, the Plaintiff serving a request for production of names, addresses and social security numbers of all VisionQuest "counselors" over the preceding three years. When VisionQuest objected and this Court held its hearing on Plaintiff's Motion to Compel, VisionQuest made clear its position that Plaintiff had never properly defined, or moved to conditionally certify a class. The Court required VisionQuest to produce job descriptions so that Plaintiff could more carefully define its proposed class and left it to Plaintiff to proceed from there.

VisionQuest's Motion to Strike and accompanying [*8] brief again point to Plaintiff's failure to move for conditional class certification. In response, rather than filing a motion for conditional certification, Plaintiff submitted a brief arguing that this action is not brought under Rule 23 but rather under § 216(b) which is governed by different standards. While true, this statement is not responsive to the arguments raised by VisionQuest and does not explain why the Plaintiff has not followed the two-tiered certification approach set forth in Lusardi and progeny. *118 F.R.D. 351. See e.g., Brooks v. Bellsouth Telecommunications, Inc., 164 F.R.D. 561 (N.D.Ala. 1995),* affirmed, *114 F.3d 1202 (11th Cir.*

1997); *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995); *Robertson v. Board of County Comm'rs of County of Morgan*, 985 F. Supp. 980, 1997 U.S. Dist. LEXIS 18868, 1997 WL 735789 (D. Colo. 1997); *Bayles v. American Medical Response of Colorado, Inc.*, 950 F. Supp. 1053 (D. Colo. 1996); *EEOC v. MCI International, Inc.*, 829 F. Supp. 1438 (D.N.J. 1993).

VisionQuest argues that, absent a motion for conditional certification, the Court should strike the § 216(b) allegations or preclude Plaintiff from seeking discovery of potential class [*9] members. In addition to citing numerous cases describing the conditional certification approach to § 216(b), VisionQuest cites Plaintiff's failure to comply with Local Rule 23.1 as a grounds for granting its Motion. While we find interesting the question of whether Local Rule 23.1 should be read broadly to encompass all representative action and not just actions brought under Rule 23, particularly in light of the distinction made in this Circuit between substantive and procedural matters regarding § 216(b) and Rule 23, *see Lusardi v. Lechner 855 F.2d 1062, 1064 (3d Cir. 1988)*(Lusardi II), we decline to address that question today. Instead we base our ruling in this matter on the Plaintiff's failure to move for conditional certification or to satisfy even the minimal requirements necessary for us to grant conditional certification in order to allow class discovery to proceed.

We are persuaded that the two-tiered approach is the appropriate procedure for courts to employ in managing § 216(b) cases. In fact, it is the answer to what the Sperling court called the "chicken-and-egg limbo" of requiring a plaintiff to certify a § 216(b) representative action before [*10] notice and discovery have occurred. *118 F.R.D. at 406.* While we did allow Plaintiff minimal discovery without moving for conditional certification, we did so with the understanding that such discovery was necessary for Plaintiff to properly define the proposed class. He has not done so. On that basis alone, we would strike without prejudice the § 216(b) allegations in the Complaint.

In addition, however, we find that, even under the lower standard for conditional certification, Plaintiff has failed to meet his burden. First, as noted above, Plaintiff was permitted to conduct limited discovery in order to help define a class. The Complaint defines very broadly a class of "counselors" employed at any VisionQuest facility who are owed overtime pay during a three year period. It is apparent from the limited discovery to date that VisionQuest has different types of facilities at which it employs "tipiforemen" and "tipiparents" and that Plaintiff was himself employed as a "Tipiforemen." Since Plaintiff has not amended his Complaint, we can only

assume that he means to define those positions as "counselors."

Similarly, Plaintiff alleges that VisionQuest has violated the FLSA by adopting [*11] a policy of excluding eight hours of sleeptime from each twenty-four hour day of work. Complaint at PP 13-16. This general description does not provide enough detail for the Court to determine the nature of the "agreement" referred to in paragraph 16 of the Complaint, nor does it set forth all the elements necessary to prove a violation of the law. Additionally, Plaintiff has provided no affidavits or other evidence supporting his allegations.

[HN3] In order to determine what a Plaintiff must allege to set forth a violation of the FLSA for failing to compensate employees working twenty-four hour shifts for sleeptime or lack thereof, we must look to the United States Department of Labor regulation covering this issue. Under that regulation, when an employee is on duty for twenty-four hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than eight hours from hours worked." *29 C.F.R. § 785.22.* Such an agreement is acceptable so long as the employer provides "adequate sleep facilities" and "the employee can usually enjoy an uninterrupted nights sleep." Id.

In the present case, VisionQuest [*12] submitted a copy of its sleep-time agreement signed by the Plaintiff which reads, in pertinent part, as follows:

> I acknowledge that I have read and understand Section III, E of the [Employee] Handbook which reviews VisionQuests policy regarding overtime compensation under the Fair Labor Standards Act. I agree that in the event I work a nonexempt position and reside on VisionQuest's premises for consecutive twenty-four (24) hour periods. I will have eight (8) hours of sleep time for which I will not be compensated. I also understand that if my sleep time is interrupted, I must note the interruption on my time sheet and inform my supervisor of the interruption in order to ensure that I will be compensated for that time.

VisionQuest Employee Handbook Acknowledgment (Reply Memorandum in Support of Defendant's Motion to Strike, at Exhibit A). Inside the Handbook, the sleep-time policy explains that if an employee gets less than five (5) hours sleep on any given night, he is "to report

having worked twenty-four (24) hours that day." VisionQuest Employee Handbook, at p. 20 (Plaintiff's Motion to Compel, at Exhibit 1).

The Department of Labor has issued an opinion letter [*13] reviewing a similar program at which "youth specialists" took youth offenders on two-to-four day camping trips and slept in tents at the camp sites. DOL Opinion Letter (February 20, 1987)(VisionQuest's Opposition to Plaintiff's Motion to Compel, at Exhibit A). The opinion letter finds the exclusion of sleep-time appropriate under those circumstances even when the "youth specialists" are occasionally awakened during the night to handle situations which arise, so long as the time spent handling those situations is counted as hours worked. If the employee is unable to get at least five (5) hours of sleep in a given night, the entire twenty-four hour period must be - counted as hours worked.

VisionQuest's sleep-time policy is identical in all material respects to the one approved in the DOL opinion letter. This policy does not appear to be in violation of the FSLA. Plaintiff fails to allege in his Complaint that he, or the proposed members of his class of "similarly situated" "counselors" were not furnished with adequate sleeping facilities or were not able to generally get eight hours of uninterrupted sleep. Rather, he alleges that he was not provided with "personal quarters" for sleeping. [*14] Complaint, at P 14. We see no requirement in the FSLA that VisionQuest furnish personal quarters under the facts alleged. Consequently, we find that Plaintiff has failed to make the requisite detailed allegations in his pleadings, to-wit, describe a single decision, policy or plan of the defendant and set forth all the necessary elements to prove a violation of the law.

III. CONCLUSION

For the reasons set forth above, we will strike Plaintiff's class allegations and allow this action to proceed only as an individual action.

An appropriate order will follow.

Maurice B. Cohill, Jr.

Senior District Judge

ORDER

And now, to-wit, this 13th day of February, 1998, for the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that Defendant's Motion to Strike Plaintiff's Class Allegations (Doc. # 21) be and hereby is GRANTED.

Maurice B. Cohill, Jr.

Senior District Judge

106B78

********** Print Completed **********

Time of Request:     May 15, 2006   06:08 PM EDT

Print Number:        1822:98836786
Number of Lines:     235
Number of Pages:

Send To:   ZELVIN, JENNIFER
           MCCARTER & ENGLISH
           919 N MARKET ST
           WILMINGTON, DE 19899

**2**

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2005 WL 2291015 (W.D.Tex.), 10 Wage & Hour Cas.2d (BNA) 1753
**(Cite as: 2005 WL 2291015 (W.D.Tex.))**

C

United States District Court,
W.D. Texas, El Paso Division.
Joe DE LA CRUZ, Jesus J. Duran, Robert Gutierrez,
David Ortega, Lorenzo
Pacheco, Jr., David Robinson, Fred Walker Jr., and
Other Similarly Situated
Persons, Plaintiffs,
v.
EL PASO COUNTY WATER IMPROVEMENT
DISTRICT NO. 1, Defendant.
**No. EP-05-CV-206-FM.**

Sept. 19, 2005.
David L. Kern, Peticolas, Shapleigh, Brandys &
Kern, P.L.L.C., Mike Milligan, Attorney at Law, El
Paso, TX, for Plaintiffs.

Clara B. Burns, El Paso, TX, for Defendant.

*MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFFS' MOTION FOR
COLLECTIVE ACTION
RECOGNITION*

MONTALVO, J.

*\*1* On this date, the Court considered "Plaintiffs'
Motion for Collective Action Recognition" [Rec. No.
8] and "Defendant's Response to Plaintiffs' Motion
for Collective Action Recognition" [Rec. No. 10]
filed in the above numbered and styled cause. After
carefully considering the arguments and authorities,
the Court is of the opinion that "Plaintiffs' Motion for
Collective Action Recognition" [Rec. No. 8] should
be DENIED.

Plaintiffs' suit alleges Defendant violated the Fair
Labor Standards Act (FLSA) by failing to pay them
the correct amount of earned wages. On July 27,
2005, Plaintiffs filed the instant motion requesting
the Court enter an order allowing the case to proceed
as an opt-in collective action pursuant to § 216(b) of
the FLSA. *See* 29 U.S.C. § 216(b). Plaintiffs'
statement defining the class declares: "The collective
is comprised of all current and former employees of
Defendant who worked for Defendant at any time
from June 1, 2002 ... through the present and who
were subjected to any of the unlawful pay or
retaliation practices that the named Plaintiffs are
complaining of in this case." [Rec. No. 8, pg. 2].

Unlike a class action filed under Federal Rule of
Civil Procedure 23(c), a collective action under §
216(b) provides for a procedure to "opt-in," rather
than "opt-out." *See Mooney v. Aramco Servs. Co.,* 54
F.3d 1207, 1212-13 (5th Cir.1995).

Section 216(b) of the FLSA sets forth two core
requirements to certify a collective action. Members
of the putative class must be "similarly situated" and
must provide "consent in writing ... in the court in
which such action is brought." 29 U.S.C. § 216(b).
The Fifth Circuit has not specifically addressed the
meaning of "similarly situated" in this context. [FN1]
However, courts have utilized two approaches to
determine whether a plaintiffs are similarly situated
and whether a case should proceed as a collective
action. *Mooney,* 54 F.3d at 1213-16. The two-part
approach, developed in *Lusardi v. Xerox Corp.,* 118
F.R.D. 351 (D.N.J.1987), requires the Court to decide
whether the plaintiff has presented evidence that
similarly situated plaintiffs exist. *See also Mooney,*
54 F.3d at 1213-15. The district court must decide,
"usually based only on the pleadings and any
affidavits which have been submitted," whether
notice should be given to any potential plaintiffs. *Id.*
at 1214. The decision "is made using a fairly lenient
standard" and usually results in a conditional
certification. *Id.* If the Court conditionally certifies
the class, the case then proceeds through discovery as
a representative action. *Id.* After the close of
discovery, the defendant then files a motion for
"decertification." *Id.* At this second stage, the Court
makes a factual determination, using the information
gained from discovery, on whether the putative class
members are "similarly situated." *Id.* "If the class
members are similarly situated, the district court
allows the representative action to proceed to trial."
*Id.* If not, the district court decertifies the class,
dismisses without prejudice the opt-in plaintiffs, and
allows the class representatives to proceed to trial on
their individual claims. *Id.*

> FN1. *See Mooney,* 54 F.3d at 1213 (writing
> "In other words, this line of cases, by its
> nature, does not give a recognizable form to
> an ADEA representative class, but lends
> itself to *ad hoc* analysis on a case-by-case
> basis.").

*\*2* The alternative to the two-part test is to analyze
the factors applicable to Rule 23 class action

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 2291015 (W.D.Tex.), 10 Wage & Hour Cas.2d (BNA) 1753
**(Cite as: 2005 WL 2291015 (W.D.Tex.))**

certification: numerosity, commonality, typicality, and adequacy of representation. *See Shushan v. University of Colorado,* 132 F.R.D. 263 (D.Colo.1990). Our Circuit has expressly refused to endorse either method over the other. *Mooney,* 54 F.3d at 1216. Because the two-stage approach appears to be the method of analysis more generally accepted, the Court will analyze the instant motion under the two-part approach.

Plaintiffs describe themselves as "ditch riders, dispatchers, river team members, and/or maintenance workers." [Rec. No. 3, pg. 1]. It is alleged by Plaintiffs that Defendant violated the "FLSA by failing to pay Plaintiffs and other similarly situated employees, or former employees, for the hours worked by such employees in excess of forty (40) hours per week at a rate not less than one and one-half times the regular hourly rate at which such employees were compensated." [Rec. No. 3, pg 3]. Plaintiffs argue that a collective action of similarly situated Plaintiffs is the appropriate method for the fair and efficient adjudication of the controversy. In opposition, Defendant argues Plaintiffs have not met their burden and put forth allegations supported by evidence that there are similarly situated employees who should have the chance to opt-in. Defendant further argues that Plaintiffs' assertions, if taken as true, show that Plaintiffs in fact were not similarly situated because the different job titles identified by Plaintiffs "connote[ ] totally different duties, responsibilities, and working conditions." [Rec. No. 10, pg. 5]. Plaintiffs correctly cite to *Mooney v. Aramco Services Co.* for the proposition that the initial burden on plaintiffs is a lenient one and only a "modest factual showing" is required to meet this burden. 54 F.3d 1207, 1214 (5th Cir.1995). However, this Court finds that Plaintiffs in the instant case have failed to even present a modest factual showing that Plaintiffs are "similarly situated."

The Court finds Plaintiffs have failed the first step of the two-step approach. While the Court recognizes the standard for satisfying the first step is "fairly lenient standard," the Plaintiff has failed to provide any evidence that others were similarly situated. Plaintiffs are required to make "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *H & R Block,* 186 F.R.D. at 400 (quoting *Mooney,* 54 F.3d at 1214 n. 8). The evidence before the Court includes only unsupported assertions of violations that are not sufficient to meet Plaintiff's burden. No affidavits that would provide evidence that others are similarly

situated was submitted by Plaintiffs. Plaintiffs produce only conclusory statements that do not even meet a "modest factual showing." Having found that the evidence presented by Plaintiffs fails to sufficiently demonstrate that "similarly situated" Plaintiffs exist, Plaintiffs' motion to certify a collective action under 29 U.S.C. § 216(b) is DENIED.

**\*3** IT IS THEREFORE ORDERED that "Plaintiffs' Motion for Collective Action Recognition" [Rec. No. 8] is DENIED.

Not Reported in F.Supp.2d, 2005 WL 2291015 (W.D.Tex.), 10 Wage & Hour Cas.2d (BNA) 1753

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**3**

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2006 WL 695675 (S.D.N.Y.)
**(Cite as: 2006 WL 695675 (S.D.N.Y.))**

# H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Floren Basco FLORES, on behalf of herself and all
others similarly situated,
Plaintiffs,
v.
OSAKA HEALTH SPA, INC., et al., Defendants.
**No. 05 Civ. 962VMKNF.**

March 16, 2006.

MEMORANDUM and ORDER

FOX, Magistrate J.

**\*1** In this action brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* and related provisions of New York law, the plaintiff, Floren Basco Flores ("Flores"), has made an application, pursuant to 29 U.S.C. § 216(b), for an order: (1) directing the defendants to provide Flores with the names and addresses of persons they employed during the last three years, who are "similarly situated" to the plaintiff; and (2) approving, for publication to those employees, a notice prepared by Flores announcing, *inter alia,* the existence of this action and inviting the relevant employees to participate in this action, as plaintiffs, along with Flores. The notice Flores proposes that the Court approve is styled "Notice of Lawsuit with Opportunity to Join ."

The defendants, except for Nam-Hi Lee ("Lee"), who is representing herself in the action, responded to Flores' motion by filing a cross-motion. Through that cross-motion, the moving defendants sought to have the action shifted to a state court for adjudication. According to the moving defendants, they are not engaged in commerce, as that term is defined in FLSA and, therefore, the plaintiff cannot prosecute a FLSA-based action against them in this court. However, after Flores responded to the cross-motion, the moving defendants advised the Court, during a conference, that they had determined to

withdraw their cross-motion from consideration by the Court. Lee never responded to Flores' motion. Therefore, the motion is unopposed.

Flores maintains that during the period May 2004 through November 2004, she was employed principally as a masseuse at two spa facilities owned, operated and managed by the defendants. Flores contends that, on rare occasions, she was assigned to perform cleaning and other unspecified services. Flores recalls that, while she was in the defendants' employ, she worked six to seven days a week and typically performed her assignments from 3:00 p.m. to 3:00 a.m. Flores also recalls that other masseuses employed by the defendants worked the identical shift, and that they, like she, were not given overtime compensation for hours they worked in excess of 40 hours, during a work-week. Furthermore, according to Flores, she typically received tips from the spas' patrons, but the defendants confiscated those tips.

As noted above, in reliance upon FLSA § 216(b), Flores is seeking an order from the Court directing the defendants to disclose to her the names of their current and former employees who are or were similarly situated to Flores, so that notice of this action and an opportunity to join it as a plaintiff may be published to them. Flores defines the universe of current and former employees similarly situated to her as follows:

> All non-exempt current and former employees of Osaka Health Spa of New York who were not paid overtime at any time during the past three years.

"Osaka Health Spa of New York" is not an entity that is a defendant in this action.

**\*2** Courts typically employ a two-step certification process in collective actions such as the one proposed by Flores. *See Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d 91, 95-96 (S.D.N.Y.2003); *Masson v. Ecolab, Inc.,* No. 04 Civ. 4488, 2005 WL 2000133, at \*13 (S.D.N.Y. Aug. 17, 2005). First, a court reviews the pleadings and affidavits to determine whether the named plaintiff and the proposed plaintiffs are similarly situated. The named plaintiff has the burden of showing that the proposed plaintiffs for the collective action are similarly situated to him or her with respect to their claims that FLSA has been violated. The named plaintiff can satisfy that burden by demonstrating a " 'factual nexus' between his or her situation and the situation

Slip Copy
Slip Copy, 2006 WL 695675 (S.D.N.Y.)
(Cite as: 2006 WL 695675 (S.D.N.Y.))

Page 2

of other current or former employees." *Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y.2005) (citation omitted). The named plaintiff needs to make only "a modest factual showing sufficient to demonstrate that [the named plaintiff] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hoffman v. SBARRO, Inc,* 982 F.Supp. 249, 261 (S.D.N.Y.1997). "The leniency of this requirement is consistent with the broad remedial purpose of FLSA." *Morales v. Plantworks,* No. 05 Civ. 2349, 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006). If the court determines that the named plaintiff and the proposed plaintiffs are similarly situated, it certifies the class conditionally and allows notice of the action to be sent to proposed plaintiffs. *See Masson,* 2005 WL 2000133, at *13.

During the second step in the process, a defendant can make an application to the court that the class be decertified if, during the pretrial discovery phase of the litigation it becomes apparent that the plaintiffs are not similarly situated. *See id.,* at *14.

In the instant case, it is not clear to whom Flores contends she is similarly situated such that a class of proposed plaintiffs might be identified. In her complaint, Flores alleges that she was employed by the defendants as a masseuse, and that she and "fellow masseuses [ ] worked more than forty hours each work-week, but were not paid overtime compensation." In the memorandum of law that Flores submitted in connection with the instant motion, she alleges that she and "her fellow employees worked more than forty hours each work-week but were not paid overtime compensation." The plaintiff's complaint states that the action is brought on behalf of "all other current and former employees of defendants who were not paid in accordance with [FLSA's] overtime provisions and whose tips were misappropriated by the defendants." The plaintiff's memorandum of law, as noted above, defines the universe of persons similarly situated to Flores as "all non-exempt current and former employees" of an entity that is not a defendant in the action, "who were not paid over-time at any time during the past three years."

*3 The plaintiff's description of the universe of proposed plaintiffs, that is, the class of persons she maintains is similarly situated to her, is not consistent. On one occasion, the class is alleged to be composed of masseuses who work and did work at the defendants' spa facilities in excess of 40 hours in a work-week and were not compensated for the hours

beyond 40 hours that they worked. On another occasion, the class is not limited to masseuses, but is claimed to be composed of "all [ ] current and former employees of the defendants who were not paid in accordance with [FLSA's] overtime provisions and whose tips were misappropriated by the defendants." On yet another occasion, the class is described as "all non-exempt current and former employees" of an entity, "Osaka Health Spa of New York," that is not a defendant in the action. In addition, Flores has confused matters further by describing the proposed plaintiffs as "home health aide employees" in the notice concerning the pendency of this action that she has asked the Court to approve for publication. In a situation such as this, where the named plaintiff is unable to state clearly and specifically to whom it is that she contends she is similarly situated, it is not possible for the Court to conclude that a collective action certification is warranted.

Furthermore, the Court finds that the plaintiff has failed to make a "modest" showing to establish that she and the proposed plaintiffs together were the victims of a common policy or plan that violated the law. Flores contends, in her memorandum of law, that typically, she "served at least 7-8 customers per [12-hour] shift and [that] it is [her] understanding that the other massage therapists working my shift did the same." The submissions made by the plaintiff to the Court do not provide any factual information concerning the basis for Flores' "understanding" of the quantum of work performed by "other massage therapists" assigned to work during the shift on which Flores worked. Flores also alleges, in her memorandum of law, that the defendants' spa customers typically paid cash tips in amounts ranging from $20 to $50, and that the defendants "confiscated our tips." These allegations, like the allegations Flores made in an affidavit she submitted in reply to the defendants' opposition to her motion, are broad conclusory allegations. As such, they offer nothing of evidentiary value to support a finding that a factual nexus exists between the way the defendants allegedly compensated Flores and the way they may have compensated other employees during the relevant time period. The plaintiff's determination to rely upon broad conclusory allegations and nothing more, also militates against certifying this as a FLSA collective action. *See Morales,* 2006 WL 278154, at *3.

Since Flores has not met her burden of showing that she is similarly situated to former and current employees of the defendants, her motion, that this action proceed as a collective action, is denied.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 695675 (S.D.N.Y.)
**(Cite as: 2006 WL 695675 (S.D.N.Y.))**

**\*4** Although the Court has determined that certifying this action as a collective action, pursuant to 29 U.S.C. § 216(b), is not warranted at this juncture in the litigation, the Court remains mindful of the remedial purpose of FLSA and the broad discretionary power that the Court has. Therefore, the Court will direct the defendants to disclose to Flores the names of persons they employed at their spa facilities, in the job title masseuse, during the 3 years immediately preceding the date on which this action was commenced. *See id.,* at \*3.

SO ORDERED:

Slip Copy, 2006 WL 695675 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:05cv00962 (Docket) (Jan. 28, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**4**

Westlaw.

Slip Copy
Slip Copy, 2006 WL 42368 (D.N.J.)
(Cite as: 2006 WL 42368 (D.N.J.))

Page 1

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

NOT FOR PUBLICATION

United States District Court,
D. New Jersey.
Ronald MOECK and James Wilbur, Jr., on behalf of
themselves and all others
similarly situated Plaintiffs,
v.
GRAY SUPPLY CORPORATION, Defendant.
No. 03-1950 (WGB).

Jan. 6, 2006.

Jed Mendelson, Mark Tabakman, Grotta, Glassman
& Hoffman, P.A., Roseland, New Jersey, for
Defendant Gray Supply Corporation.

Paul G. Hunezak, Stephen A. Snyder, Morris,
Downing & Sherred, LLP, Newton, New Jersey, for
Plaintiffs.

*MEMORANDUM OPINION*

BASSLER, Senior J.

*1 Plaintiffs, former employees of Defendant Gray
Supply Corporation ("Company" or "Gray"), claim
that Defendant failed to pay Plaintiffs overtime that
they were entitled to, which violated the Fair Labor
Standards Act ("FLSA") and the New Jersey Wage
and Hour Law ("Wage and Hour Law"). Plaintiffs
also bring claims for fraud and negligent
misrepresentation. Defendant now moves for
summary judgment, and Plaintiffs move to certify a
class on behalf of similarly situated employees who
were required by Defendant to work overtime
without pay.

I. Factual Background [FN1]

> FN1. All facts have been construed in the
> light most favorable to Plaintiffs, the
> nonmoving party. *Boyle v. Allegheny
> Pennsylvania, 139 F.3d 386, 393 (3d
> Cir.1998).*

Defendant Gray is in the business of installing
natural gas lines and mains for residential and
commercial purposes. Amended Complaint
("Am.Compl.") ¶ 2. The assigned work hours for
employees at Gray is from 7:30AM to 4:00PM with a
thirty-minute lunch break. Declaration of Tabakman
("Tabakman Dec."), Moeck Dep., Ex., B 86:20-
87:11. Employees are required to work an additional
thirty minutes at both the beginning and the end of
their shifts. Tabakman Dec., Dipasquale Dep., Ex. E,
20:20-21:13, 26:23-27:13. This time is referred to as
"free time" by Gray's management. *Id.* Plaintiffs
claim that since 1991, they and other Gray employees
have not received pay for this additional hour
worked. Am. Compl. ¶ 16. They further allege that
they were informed that refusal to work overtime was
grounds for termination. Tabakman Dec., Wilbur
Dep., Ex. D, 53:13-14.

Plaintiff Moeck has worked for Gray three times. He
began working around 1991 or 1992 until February
2002. He left for a year and returned to work at Gray
from 1994 to 1996. He then left for another year and
joined the Company again in 1997 until he resigned
in February 2002. Tabakman Dec., Moeck Dep., Ex.
B, 7:20-24; 8:22-10:5; 11:14-20; 12:17-13:12; 13:25-
14:10. Moeck testified that he had complained to the
shop steward of his union and to his supervisors since
1992 about having to work free time. *Id.* at 19:23-
20:2; 21:2-22:8; 23:5- 24:4, 35:8-19.

Plaintiff Wilbur began working for Gray in 1994.
Tabakman Dec., Wilbur Dep., Ex. D, 12:8-12. After
his first day of employment, he was informed that he
should be at work a half hour early. *Id.,* 50:6-51:13;
127:4-128:8; 129:9- 12. Wilbur also testified that he
complained to his shop steward. *Id.* at 17:11-23;
55:17-25. Wilbur was laid off from Gray on April 4,
2002. *Id.* at 35:4-10.

At issue here is:
• Whether the FLSA preempts Plaintiffs' state
common law claims.
• Whether the Labor Management Relations Act
preempts all of Plaintiffs' claims.
• Whether Plaintiff Wilbur's FLSA and New Jersey
Wage and Hour Law claims are time-barred.
The Court finds that the FLSA does preempt
Plaintiffs' state common law claims, the Labor
Management Relations Act does not preempt
Plaintiffs' FLSA action and Wilbur's Wage and Hour

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Law claims are time-barred.

This Court has jurisdiction over this case pursuant to 28 U.S.C. § § 1331 & 1337(a) and supplemental jurisdiction over the remaining New Jersey statutory and common-law claims pursuant to 28 U.S.C. § 1367.

## II. Fraud and Misrepresentation Claims Preempted by FLSA

**\*2** Counts three through six-Plaintiffs' fraud and negligent misrepresentation causes of action based on Gray's alleged affirmative misrepresentation and failure to disclose-are derived completely from Plaintiffs' overtime claims. Defendant argues that these counts are therefore preempted by the FLSA. The Court agrees.

Although the law is unsettled as to whether the FLSA preempts state common law causes of action, most courts have held that claims directly covered by the FLSA (such as overtime), must be brought under the FLSA. *See e.g., Chen v. Street Beat Sportswear Inc.,* 364 F.Supp.2d 269 (E.D.N.Y.2005). Courts that have considered this issue analyze whether the FLSA and common law claims are grounded in the same facts. *Petras v. Johnson,* No. 92 CIV. 8298(CSH), 1993 WL 228014, at *3 (S.D.N.Y. June 22, 1993) is instructive.

In *Petras,* which is similar to this case, the plaintiff alleged "fraud on the ground that the defendants knowingly and with intent to misrepresent and deceive the plaintiff made false representations to him to lead him to believe that he was not entitled to overtime compensation." *Id.* The court held that plaintiff's allegations of fraud "lies simply in concealing plaintiff's rights under the FLSA" and that the FLSA was the exclusive remedy for overtime payments. *Id.; see also Alexander v. Vesta Ins. Group, Inc.,* 147 F.Supp.2d 1223, 1240-41 (N.D.Ala.2001) (holding plaintiffs could not merely recast "FLSA claims as common law claims" to recover damages not available under the FLSA); *Johnston v. Davis Sec., Inc.,* 217 F.Supp.2d 1224, 1227-28 (D.Utah 2002) (finding that plaintiff's common law claims, including gross negligence and negligent misrepresentation, were preempted under the FLSA because they were based on same facts and circumstances).

Likewise, Plaintiffs' contentions that Defendants "materially misrepresented" that its employees "would be paid for overtime" and "concealed the fact

... that they [Defendant's employees] would be compelled to work additional time without compensation" merely are based on Plaintiffs' overtime claims. Am. Compl. ¶ ¶ 31,38,46,51. These claims are, therefore, preempted by the FLSA. [FN2]

> FN2. Because the Court has determined that these claims are preempted by the FLSA, the Court finds it unnecessary to address Defendant's argument that the state common law claims are time-barred and that Plaintiffs have failed to state a prima facie case for these claims.

## III. Labor Relations Management Act Preemption

Gray argues that Plaintiffs' entire action is prohibited by the Labor Management Relations Act ("LMRA"), which was designed to encourage employees to promote their interests collectively. Defendants contend that Plaintiffs' claims are founded "directly on rights created by a collective bargaining agreement." Gray Memorandum of Law ("Gray Mem.") at 15. In *Barrantine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), however, the Supreme Court held that FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies that the Act was designed to effectuate. Moreover, the Court held that congressionally granted FLSA rights take precedence over any conflicting provisions in a collectively bargained compensation arrangement.

**\*3** Under the FLSA, covered employers may not employ any employee "for a workweek longer than forty hours unless such employee receives compensation for his employment ... at a rate not less than one and one-half times the regular rate at which he is employed ." 29 U.S.C. § 207(a)(1). Plaintiffs' action is solely based on "overtime wages to which they are entitled but have not received." Am. Compl. ¶ 4. The Supreme Court specifically stated in *Barrentine* that the complex questions of fact and law, "e.g., what constitutes the 'regular rate,' the 'workweek,' or 'principal' rather than 'preliminary or postliminary' activities are statutory questions properly resolved under the FLSA." *Barrantine,* 450 U.S. at 728.

Plaintiffs correctly assert that the case relied on by Gray is inapposite to this one. *Valdino v. Valley Engineers,* 903 F.2d 254 (3d Cir1990) involved the proper wage rate that should be applied to a worker,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

who claimed he should be compensated at the rate of a "journeyman" under the contract. The Third Circuit held that the LMRA preempted the FLSA where the plaintiff's claims "rest on interpretations of the underlying collective bargaining agreement ." *Id.* at 266. That is not the case here. Plaintiffs' claims are not based on an interpretation of the collective bargaining agreement with respect to the appropriate wage rate, but are based on their contention that they are entitled to overtime. Plaintiffs are not barred by the LMRA from pursuing these claims under the FLSA merely because its contractual and statutory rights arise from the same factual occurrence.

IV. Wilbur's FLSA and Wage and Labor Law Claims

*A. FLSA*

The statutory scheme of the FLSA presumes a two-year statute of limitations but provides for a longer, three-year period if a plaintiff can show that the defendant's violation of the FLSA has been "willful." 29 U.S.C. § 255(a). The Supreme Court in *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), held that the term "willful" means "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."

Plaintiffs and Leo Dipasquale-a non-party witness-have testified that they repeatedly complained to their supervisors about not receiving overtime pay and nothing was ever done about it. Tabakman Dec., Moeck Dep., Ex. B. 40:7-42:25; Tabakman Dec., Dipasquale Dep., Ex. E. 36:25-39:24; 65:23-66:18. Plaintiff Moeck also testified that after he complained about being required to work "free time" without pay, his supervisor informed him that "if [he or other employees] didn't want to do the time, to find a new job." Tabakman Dec., Moeck Dep., Ex. B, 26:24-27:1. Dipasquale further noted during his deposition that the policy requiring "free time" at Gray ended only a couple of weeks prior to his deposition. Dipasquale Dep., Ex. E. 68:22-69:7.

As the collective bargaining agreement governing Gray's relationship with union employees expressly follows the FLSA stating that [a]ll time worked in excess of eight hours shall be paid at the rate of time and one-half the applicable rate, the Court finds that Plaintiffs have raised a genuine issue of material fact that Gray's conduct was a "willful" violation of the FLSA. Therefore, the Court finds that since the amended complaint was filed on April 28, 2004 and

Plaintiff Wilbur was laid off in April 2002, his FLSA claim is timely. [FN3]

> FN3. The courts uniformly have adopted the approach that under the FLSA "a separate cause of action accrued each payday when the [employer] excluded the overtime compensation claim." Although Plaintiffs Wilbur and Moeck may not be entitled to claims made prior to the three-year statutory period, Defendant Gray has not raised this argument and the Court is therefore reluctant to address it.

*B. Wage and Hour Law*

*4 A year after its enactment, the Wage and Hour Law was amended to add a two-year statute of limitations. *Troise v. Extel Commc'n., Inc.,* 345 N.J.Super. 231, 784 A.2d 748 (App.Div.2001). The Wage and Hour Law, however, does not contain a provision similar to the FLSA which makes an exception for willful conduct. Therefore, Wilbur's action is not timely with regard to the Wage and Hour Law. [FN4]

> FN4. Although Plaintiffs argue that the date Gray states Wilbur was laid off, April 4, 2002, is in dispute, Plaintiffs have provided no evidence to rebut the Defendant's evidence to show that this date is incorrect. Plaintiffs' Memorandum of Law ("Pls.Mem.") at 9, n. 3.

Plaintiffs argue, however, that it is well-settled that the commencement of a class action tolls the statute of limitation as to all putative class members. Pls. Mem. at 9; (citing *Crown, Cork & Seal Co., Inc., v. Parker,* 462 U.S. 345, 353-54, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983)). Although Plaintiffs are correct in its assertion, commencement of an action as a class action suspends the applicable statute of limitations during the interim period *from commencement until refusal to certify the class.* *Ravitch v. Pricewaterhouse,* 793 A.2d 939 (Penn.2002) (emphasis added). The statute of limitations for Wilbur's Wage and Hour Law claim had already expired before the class action suit had even been filed, therefore, his claim cannot be tolled pursuant to this rule.

V. Plaintiffs' Class Certification Motion

*A. FLSA*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 42368 (D.N.J.)
(Cite as: 2006 WL 42368 (D.N.J.))

Page 4

Class actions under the FLSA are governed by 29 U.S.C. § 216(b). Unlike Federal Rule of Civil Procedure Rule 23, § 216(b) of the FLSA establishes an opt-in system for collective actions, mandating that "[n]o employee shall be a party plaintiff to any such action [under the FLSA] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

Under § 216(b), there are two threshold requirements for an action to proceed as a collective action: (1) class members must be "similarly situated" and (2) all members must affirmatively consent to join the action. *Goldman v. Radio Shack Corp.,* No. 2:03-CV-0032, 2003 U.S. Dist. LEXIS 7611 (E.D. Pa. April 17, 2001).

In the absence of Third Circuit or Supreme Court guidance on who are "similarly situated" employees under § 216(b), a two tier test has developed amongst district courts in the Third Circuit. *Id.* at * 20; *see also Morisky v. Public Serv. Elec. & Gas Co., 111 F.Supp.2d 493 (D.N.J.2000).* At the "notice stage"-where the court determines whether notice should be given to potential class members-the court's determination typically results in "conditional certification" of a representative class. *Morisky,* 111 F.Supp.2d at 497. At this stage, some courts have required nothing more than "substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Id.* [FN5] In the second stage, after the court has more evidence and the case is ready for trial, the court applies a stricter standard.

> FN5. Although Defendant's assert that the Court should apply the modest factual showing standard applied by some courts in the first stage, the Court finds it unnecessary to address this issue as Plaintiffs' have failed to satisfy the more lenient standard.

Even though court's have recognized that the notice stage, which this case is currently in, is a lenient standard, the Court finds that Plaintiffs have failed to meet this standard. Plaintiffs have provided little evidence that the class members that they seek to represent were the victims of a single policy, decision or plan.

*5 Plaintiffs have established that one supervisor, Shawn McCord, required his workers to work "free time." *See e.g.,* Tabakman Dec., DiPasquale Dep., Ex. E, 36:3-38:9, 45:17-19. Although Plaintiff Moeck

mentions Ed Smock as another supervisor who had used the phrase "free time," Plaintiffs have failed to establish that other supervisors employed the same policies as McCord. Although Plaintiffs intend on representing "all employees of Gray Supply who have and are required by Gray Supply to work in excess of forty (40) hours," based on Plaintiffs' own testimony, practices and reporting requirements are different at each of the four "yards" where Plaintiffs and potential class members work. *See e.g.,* Tabakman Dec., Moeck Dep., Ex. B, 106:11-18. Plaintiffs further admit that at times they were allowed to drive directly to and from a project site. *See* Tabakman Dec., Moeck Dep., Ex. B, 70:20-71-9 (Moeck testified for at least six months he drove directly to and from his project site and was not entitled to overtime payments during that period). In addition, there was a call-in policy that at least DiPasquale was aware of, which allowed him to call into the office the night before and find out the location of his job so that he could go there directly, which kept him from having to work "free time." Tabakman Dec., DiPasquale Dep., Ex. E, 54;12-24.

Because of the many potential distinctions of each putative class member's claim, the Court finds that this case is not an appropriate one for class action certification, even at this early stage in the action. Based on the current evidence, the proposed class is not "similarly situated" or the victims of a single policy or plan. The Court also believes that this determination is consistent with § 216(b) of the FLSA's purpose, which was to limit private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions, therefore, the Court denies certification.

*B. Wage and Hour Law*

Plaintiff Moeck's Wage and Hour Law claim is also not suitable for class action treatment. First, as discussed above, Congress created the opt-in procedure under the FLSA for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions. *Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 173, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Allowing Plaintiff Moeck to circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA would undermine Congress's intent to limit these types of claims to collective actions. *See McClain v. Leona's Pizzeria, Inc.,* 222 F.R.D. 574 (N.D.Ill.2004).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 42368 (D.N.J.)
(Cite as: 2006 WL 42368 (D.N.J.))

Page 5

Second, under <u>Federal Rule of Civil Procedure Rule 23</u>, which governs other class action claims, Plaintiffs would have to meet the prerequisites of commonality and typicality, amongst other things. As discussed above, Plaintiffs have failed to show that common issues predominate over individual issues or that their claims are typical of others in the class. <u>*Mulder v. PCS Health Systems, Inc.,* 216 F.R.D. 307 (D.N.J.2003)</u>.

VI. Conclusion

*6 For the reasons stated in this Opinion, this Court denies Defendant's motion for summary judgment on Count One, grants Defendant's motion for summary judgment on Count Two with regard to Plaintiff Wilbur and grants Defendant's motion for summary judgment on Counts Three, Four, Five and Six. The Court further denies Plaintiffs' motion for class certification.

An appropriate Order accompanies this Opinion.

Slip Copy, 2006 WL 42368 (D.N.J.)

**Motions, Pleadings and Filings <u>(Back to top)</u>**

• <u>2004 WL 3373359</u> (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion for Summary Judgment of Defendant Gray Supply Corporation, Inc. (Jun. 17, 2004)

• <u>2004 WL 3373357</u> (Trial Pleading) First Amended Answer (May 3, 2004)

• <u>2004 WL 3373356</u> (Trial Pleading) Plaintiffs' First Amended Complaint (Apr. 28, 2004)

• <u>2:03CV01950</u> (Docket) (Apr. 30, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**5**

Westlaw.

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2003 WL 22701017 (E.D.Pa.)
**(Cite as: 2003 WL 22701017 (E.D.Pa.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Michelle SMITH, et al., Plaintiffs,
v.
SOVEREIGN BANCORP, INC., et al., Defendants.
**No. Civ.A. 03-2420.**

Nov. 13, 2003.

Joseph Edward Mccain, The Law Offices of J.
Edward McCain, III, Munira Mack, Philadelphia,
PA, for Plaintiff.

Larry J. Rappoport, Stevens & Lee, King of Prussia,
PA, for Defendant.

*MEMORANDUM AND ORDER*

SCHILLER, J.

*1 Plaintiffs Michelle Smith and Michelle Lyons
bring suit against their employer, Sovereign Bank
("Sovereign"), alleging violations of, inter alia, the
Fair Labor Standards Act, 29 U.S.C. § § 201-219
("FLSA"). Specifically, Plaintiffs allege that
Sovereign failed to pay its employees time-and-a-half
for hours worked in excess of forty hours per week
and on Saturdays. Presently before the Court is
Plaintiff's motion requesting that the Court grant
preliminary class certification to their FLSA claim
and approve an "opt-in" claim notice to be sent to all
of Sovereign's hourly, non-FLSA-exempt employees.
For the reasons set out below, the Court will deny
this motion without prejudice.

I. FACTUAL BACKGROUND

Plaintiffs have been employed at Sovereign as
hourly employees since September of 1998. (Compl.¶
¶ 6-7.) Plaintiffs allege that for an unspecified period
of time during their employment, they and other
hourly employees were instructed by their
supervisors to record a maximum of eight hours of
work per day on their time cards even if they worked
in excess of eight hours. In addition, Plaintiffs allege

that they and other hourly employees were required
to work on certain Saturdays without appropriate
compensation. Sovereign argues that it did not violate
FLSA, and that even if such violations occurred, they
ceased by December of 2001.

Plaintiffs, apparently recognizing some merit in
Sovereign's latter argument, [FN1] now raise the
possibility that a two-year statute of limitations for
their FLSA claim will expire in the near future.
[FN2] Accordingly, Plaintiffs, who have not yet
conducted class-related discovery, request that the
Court preliminarily certify a class of plaintiffs that
includes all of Sovereign's non-FLSA-exempt hourly
employees and approve a form notice to be sent to
these employees so that they may opt-in to this suit
before they are time-barred from doing so.

> FN1. Plaintiffs have repeatedly stated that
> Sovereign continues to deny its employees
> overtime pay in violation of FLSA. (Pl.'s
> Mot. for Notice to Potential Class Members
> ¶ 2; Compl. ¶ ¶ 18-20.) In light of this, it is
> unclear to the Court why "the claims of
> many, if not most [potential class members]
> will likely expire by the date that class
> certification issue [sic] is addressed by the
> Court." (Pl.'s Mem. of Law in Support of
> Mot. for Notice to Potential Class Members,
> Part II.A.)

> FN2. As the parties note, the statute of
> limitations under FLSA is either two or
> three years, with the longer period applying
> to "willful" violations. 29 U.S.C. § 255. At
> this time, the Court neither addresses this
> issue nor decides which time period is
> applicable to the instant case.

II. DISCUSSION

There are two requirements for FLSA group
plaintiffs: (1) All plaintiffs must be "similarly
situated"; and (2) All plaintiffs must consent in
writing to taking part in the suit. 29 U.S.C. § 216(b).
FLSA does not define the term "similarly situated,"
*see id.; Briggs v. United States*, 54 Fed. Cl. 205, 206
(2002) ("The term 'similarly situated' is defined
neither in the FLSA nor in its implementing
regulations."), nor does it provide specific procedures
by which claimants may opt-in, but the Supreme

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22701017 (E.D.Pa.)
**(Cite as: 2003 WL 22701017 (E.D.Pa.))**

Court has held that "district courts have discretion ... to implement [§ 216(b) ] ... by facilitating notice to potential plaintiffs." *Hoffman La-Roche Inc. v. Sperling,* 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

The determination of whether FLSA claimants are "similarly situated" for the purposes of § 216(b) is a two-step procedure. *Felix de Asencio v. Tyson Foods, Inc.,* 130 F.Supp.2d 660, 663 (E.D.Pa.2001); *Briggs,* 54 Fed. Cl. at 206. The first step, generally conducted early in the litigation process, is a preliminary inquiry into whether the plaintiffs' proposed class is constituted of similarly-situated employees. *Felix de Asencio,* 130 F.Supp.2d at 663; *Briggs,* 54 Fed. Cl. at 206. The second step, usually conducted after the completion of class-related discovery, is a specific factual analysis of each employee's claim to ensure that each actual claimant is appropriately made party to the suit. *Felix de Asencio,* 130 F.Supp.2d at 663; *Briggs,* 54 Fed. Cl. at 206. Only the first step of this process is implicated by the present motion.

*2 The Third Circuit has not yet determined what standard to apply in considering whether potential class members are "similarly situated" such that FLSA plaintiffs may be entitled to send them notice of the suit. In the absence of appellate guidance, the Court looks to other districts and circuits, which have applied varying standards. Some courts, including two within this District, have held that motions for preliminary certification and notice may be granted as long as the plaintiff merely alleges that the putative class members were injured as a result of a single policy of the defendant employer. *See Goldman v. RadioShack Corp.,* No. 03-CV-0032, 2003 WL 21250571, *8, 2003 U.S. Dist. LEXIS 7611, *27 (E.D.Pa. Apr.16, 2003)* ("During this first-tier inquiry, we ask only whether the plaintiff and the proposed representative class members allegedly suffered from the same scheme."); *Felix de Asencio,* 130 F.Supp.2d 660 at 663 ("[C]ourts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." (internal quotations omitted)); *Sperling v. Hoffman-La Roche,* 118 F.R.D. 392, 407 (D.N.J.1988)) (same), *aff'd on other grounds* 862 F.2d 439 (3d Cir.1988), *aff'd* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Other courts generally apply a more stringent-although nonetheless lenient-test that requires the plaintiff to make a "modest factual showing" that the similarly situated requirement is satisfied. *See Dybach v. Fla. Dep't of Corr.,* 942 F.2d 1562, 1567-68 (11th Cir.1991) ("Before determining to exercise

[its] power [to approve notice to potential plaintiffs], the district court should satisfy itself that there are other employees ... who desire to 'opt-in' and who are 'similarly situated'...."); *Mueller v. CBS, Inc.,* 201 F.R.D. 425, 428 (W.D.Pa.2001) (requiring plaintiff to provide "a sufficient factual basis on which a reasonable inference could be made" that potential plaintiffs are similarly situated (internal quotations omitted)); *Harper v. Lovett's Buffet, Inc.,* 185 F.R.D. 358, 362 (M.D.Ala.1999) ("Plaintiffs have the burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals exist in the broad class that they propose."); *Jackson v. New York,* 163 F.R.D. 429, 431 (S.D.N.Y.1995) ("[P]laintiffs need merely provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." (internal quotations omitted)); *Briggs,* 54 Fed. Cl. at 207 (requiring "modest factual showing that [plaintiffs] are ... similarly-situated with other, un-named potential plaintiffs").

Thus, in order to determine whether preliminary class certification should be granted, this Court must first determine the appropriate standard to apply: The "mere allegation" approach of *Goldman* and *Felix de Asencio,* or the "modest factual showing" test of *Briggs,* et al. In effect, *Goldman* and *Felix de Acensio* render preliminary class certification automatic, as long as the Complaint contains the magic words: "Other employees similarly situated." Under this rationale, any plaintiff who is denied overtime pay may file suit under FLSA and, as long as her complaint is well-pled, receive preliminary class certification and send court-approved notice forms to every one of her employer's hourly employees. This is, at best, an inefficient and overbroad application of the opt-in system, and at worst it places a substantial and expensive burden on a defendant to provide names and addresses of thousands of employees who would clearly be established as outside the class if the plaintiff were to conduct even minimal class-related discovery. [FN3] More importantly, automatic preliminary class certification is at odds with the Supreme Court's recommendation to "ascertain the contours of the [§ 216] action at the outset." *Hoffman La-Roche,* 495 U.S. at 487 (discussing district court management of cases under § 216(b)), and such certification does not comport with the congressional intent behind FLSA's opt-in requirement, which was designed to limit the potentially enormous size of FLSA representative actions. *See id.* at 488. As the Supreme Court has stated, the opt-in requirement was intended to reduce "excessive litigation spawned by plaintiffs lacking a personal interest in the outcome."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22701017 (E.D.Pa.)
**(Cite as: 2003 WL 22701017 (E.D.Pa.))**

Page 3

*Id.* If district courts do not take basic steps to ensure that opt-in notices are sent only to potential plaintiffs who "have a personal interest" in the employer's challenged policy, the congressionally-mandated line between representative actions under FLSA and class actions under Rule 23 will be substantially blurred.

> FN3. The Court also notes that the cases in which the plaintiffs' allegations were deemed sufficient for preliminary certification purposes are factually distinguishable from the instant case. In *Goldman,* the plaintiff sought to provide notice only to employees who held the same title as himself, as opposed to the instant Plaintiffs, who wish to contact *all* of defendant's estimated 7,500 hourly employees. Similarly, in *Felix de Asencio,* the plaintiffs sought to provide notice to the workers at one particular plant, rather than to the entire corporate payroll. In both cases, therefore, there was a significantly greater likelihood than exists in the instant case that the employees receiving the opt-in form would be similarly situated to the plaintiffs.

*3 Accordingly, rather than following the automatic preliminary certification route, this Court will adopt the reasoning of those courts that have required plaintiffs to make a basic factual showing that the proposed recipients of opt-in notices are similarly situated to the named plaintiffs. *See, e.g., Dybach,* 942 F.2d at 1567-68; *Mueller,* 201 F.R.D. at 428; *Harper,* 185 F.R.D. at 362; *Jackson,* 163 F.R.D. at 431; *Briggs,* 54 Fed. Cl. at 207. This approach provides a more efficient and effective means of managing FLSA litigation and comports with the Supreme Court's case-management recommendation and the Congressional intent behind FLSA. Specifically, the factual showing requirement enables a court to narrow the potential class from all of a defendant's employees to just those employees who can possibly claim to have been denied overtime under the same policy as allegedly affected Plaintiffs.

It should be stressed that this is an extremely lenient standard. Plaintiffs need only provide some "modest" evidence, beyond pure speculation, that Defendant's alleged policy affected other employees. Nonetheless, in light of this standard, the Court must deny Plaintiffs' motion because Plaintiffs fail to provide any factual or evidentiary basis for the inclusion of all of Defendant's hourly employees in the putative class. However, because Plaintiffs have not yet conducted discovery on the class certification issue,

the Court will permit Plaintiffs to re-file their motion for preliminary class certification and notice when and if the discovery process has yielded facts that render such certification appropriate . [FN4]

> FN4. Plaintiffs may wish to consider narrowing the putative class-by geography, job title, or otherwise-to reflect the evidence that arises during discovery.

For the reasons stated above, the Court denies Plaintiffs' motion for preliminary class certification. An appropriate Order follows.

### *ORDER*

AND NOW, this 13th day of November, 2003, upon consideration of Plaintiff's Motion for Notice to Potential Class Members and for Approval of Form of Preliminary Class Notice and Defendant's response thereto, it is hereby ORDERED that:

Plaintiff's Motion (Document No. 7) is DENIED without prejudice.

Not Reported in F.Supp.2d, 2003 WL 22701017 (E.D.Pa.)

### **Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2716490 (Trial Motion, Memorandum and Affidavit) Defendant Sovereign Bancorp, Inc./Sovereign Bank's Response to Plaintiffs' Renewed Motion for Notice to Potential Class Members and Approval of form of Preliminary Class Notice and Consent Order to Opt-In form (Apr. 8, 2004)

• 2004 WL 2716494 (Trial Motion, Memorandum and Affidavit) Defendants Sovereign Bancorp, Inc./Sovereign Bank's Response to Plaintiffs' Motion for Expansion of Discovery to Include All of Pennsylvania (Apr. 8, 2004)

• 2003 WL 23902823 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Notice to Potential Class Members and for Approval of form of Preliminary Class Notice (Nov. 7, 2003)

• 2:03cv02420 (Docket) (Apr. 22, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**6**

Westlaw.

Not Reported in F.Supp.                                                    Page 1
Not Reported in F.Supp., 1992 WL 566321 (D.Ariz.)
**(Cite as: 1992 WL 566321 (D.Ariz.))**

**H**

Only the Westlaw citation is currently available.

United States District Court, D. Arizona.
Pat WERTHEIM, on behalf of himself and others
similarly situated, Plaintiffs,
v.
STATE of ARIZONA; and Arizona Department of
Public Safety, Defendants.
**No. CIV. 92-0453 PHX RCB.**

Aug. 4, 1992.

Joseph W. Bell, Fredrick P. Furth, Daniel S. Mason,
Furth Fahrner & Mason, San Francisco, CA, R. Chip
Larsen, James J. Farley, Farley Robinson & Larsen,
Mesa, AZ, for Pat A. Wertheim.

Michael K. Kennedy, Gallagher & Kennedy,
Phoenix, AZ, for State of Arizona, Department of
Public Safety, (Arizona).

ORDER

BROOMFIELD, District Judge.

*1 Plaintiff moves for an order authorizing him to
provide notice of this action to other employees of
the State of Arizona who may be similarly situated
(Opt-In Class), approving the form of a proposed
notice and consent, and requiring defendants to
provide plaintiff with the names and addresses of
members of the Opt-In Class. Defendants object to
the definition of the Opt-In Class proposed by
plaintiff and raise specific objections to the proposed
form of notice and consent. The matter has been
fully briefed. Defendants also filed a separate
motion to strike certain portions of the affidavits of
Robert Tavernaro and Steven Anderson attached as
exhibits to plaintiff's motion. Plaintiff responded to
the motion to strike but defendants did not reply.
The court has heard oral argument on both motions.

Plaintiff was employed by the State of Arizona,
Department of Public Safety ("DPS") on March 5,
1989 in the position of Latent Prints Examiner
("LPE") II; he has since been promoted to LPE III.
The positions of LPE II and III are classified as
exempt for purposes of the Fair Labor Standards Act
("FLSA"). Defendants assert the positions are
properly classified as exempt because they are

"professional" occupations. Plaintiff complains that
the positions have been misclassified and that as a
result he has been denied overtime pay and pay for
on-call time, in violation of FLSA statutes and
regulations. Plaintiff brought this action on his own
behalf and on behalf of others similarly situated to
recover unpaid overtime compensation, an equal sum
in liquidated damages, interest, fees and costs,
pursuant to 29 U.S.C. § 216(b) [FN1].

Plaintiff seeks an order authorizing him to send
notice of the action and a form of consent to "others
similarly situated" in accordance with the Supreme
Court's recent approval of such procedures in
Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165,
110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Plaintiff
contends that this Opt-In Class should include:

  All present or former employees of the State of
  Arizona who, at any time since March 10, 1989,
  worked overtime hours without receiving overtime
  pay and/or were not paid for time spent in
  restricted on-call status.

Plaintiff contends this class definition complies with
the test established by the Ninth Circuit in Church v.
Consolidated Freightways, Inc. for determining
whether the plaintiff and class members were
"similarly situated." Church, 137 F.R.D. 294
(N.D.Cal.1991). Plaintiff asserts that defendants
tried to avoid paying overtime wages mandated by
FLSA by incorrectly classifying employee positions
as exempt based on their rate of pay rather than on
the criteria required to be applied under FLSA.
Plaintiff further alleges all members of the defined
class were "affected by a similar plan," Church, 137
F.R.D. at 308, in the sense that the defendants
classified non-exempt employees as exempt and
failed to pay them for restricted on-call time.

*2 Plaintiff also seeks approval of a notice and form
of consent to be sent to members of the Opt-In Class.
Plaintiff asserts that the proposed notice and consent
attached to the motion is "clear, fair and accurate"
and tracks the language of notices and consent forms
approved in other cases.

Finally, plaintiff seeks an order requiring defendants
to produce a list of the names and addresses of the
Opt-In Class within 15 days of the date of the hearing
for use in mailing the notice and consent form to
class members. Plaintiff argues that the Court in
Sperling approved discovery of this information in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                          Page 2
Not Reported in F.Supp., 1992 WL 566321 (D.Ariz.)
**(Cite as: 1992 WL 566321 (D.Ariz.))**

order to facilitate early notice to potential class members. In addition, plaintiff reminds the court that the statute of limitations for actions brought under § 216(b) does not toll for any opt-in plaintiff until written consent has been filed.

Defendants object to plaintiff's inclusion of all state employees in the Opt-In Class. First, defendants argue that classifications for DPS employees are determined exclusively by a Law Enforcement Merit Systems Council ("LEMSC") which has no function outside the DPS. For that reason, defendants argue that classifications are not made by a "centralized decision-making process" as plaintiff has alleged, and the classifications and job conditions of employees in other state agencies and entities are unrelated to those of DPS employees. Further, defendants argue that the class plaintiff proposes is so overly broad as to include attorneys and elected officials who clearly are exempt under the statutes and regulations and not intended to be included in the class. Finally, defendants argue that the only foundation asserted by plaintiffs in support of the broad class definition is affidavits of plaintiff and two other LPEs which pertain solely to their own positions in the DPS. [FN2]

Defendants would restrict the Opt-In Class to persons employed by the DPS in the position of LPE II or LPE III. Defendants argue that classifications are fact-specific determinations that require investigation and study because of the varying specific requirements for each of the three white-collar exemptions: executive, administrative and professional. Defendants assert that the LEMSC classifies positions based on the requirements of the statute and regulations pertaining to these exemptions and deny that this determination is based solely on pay grade as plaintiff alleges.

As a second basis for limiting the Opt-In Class to persons employed as LPE II or LPE III, defendants maintain that the on-call restrictions vary greatly among the large variety of DPS positions that require on-call status, depending upon the unique demands made on various departments and the availability of personnel to meet those demands. Defendants deny there is any uniform policy within DPS concerning such restrictions and argue that plaintiff's limited experience with the restrictions placed on LPE II and III employees in Tucson does not provide grounds for asserting that other DPS employees in positions requiring on-call status are "similarly situated" for purposes of this action.

*3 Finally, defendants contend notice is not necessary to adequately inform potential class members of this action because notice and a consent form similar to that proposed by this motion were previously sent to all members of the Associated Highway Patrolmen of Arizona ("AHPA"). Defendants further argue, however, that the notice sent to AHPA members is likely to mislead persons not similarly situated to plaintiff to believe they may be part of the class. Consequently, defendants urge the court to treat any opt-in notices received as a result of that mailing with suspicion.

The court finds plaintiff has failed to make even a prima facie showing in support of his proposed definition of the Opt-In Class. First, plaintiff has shown no credible evidence in support of his allegation that he was deprived of overtime and on-call compensation as the result of a "centralized decision making process" that affected all employees of the State of Arizona. Defendants have demonstrated that the classification of LPE II and LPE III as exempt positions was made by a body whose determinations affected only DPS employees. The only evidence suggesting that all state employees are classified using the same method allegedly used by the LEMSC is a statement by another LPE, Robert Taverno, that he has been "informed" that was the case. Tavernaro Affidavit ¶ 6. This is one of the statements defendants have moved to strike. The court will grant that motion. Plaintiff may be correct that the evidence offered in support of a preliminary notice determination need not meet Rule 56(e) standards of admissibility. Tavern's statement, however, is so lacking in foundation that, even if admissible, it deserves no weight whatsoever. Tavernaro does not even go so far as to identify the source of the "information" he purports to have received.

Second, plaintiff's definition would include employees classified as non-exempt who nevertheless did not receive overtime pay for overtime work or for time spent in on-call status restrictions sufficient to require compensation under the FLSA. Any claims of such employees would necessarily have a totally different factual basis from plaintiff who alleges that he did not receive compensation for overtime work solely because he was misclassified as exempt. Thus, to the extent the Opt-In Class includes employees not paid an overtime rate for overtime work, the class must be restricted to DPS employees classified as exempt during the relevant period.

Third, plaintiff's allegation that the LEMSC

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

classified positions as exempt based solely on the position's pay grade is unsupported by any credible evidence. Again, plaintiff alleges only "preliminary indications" that classifications were based on pay grade and cites in support only Tavernaro's affidavit. Again, Tavernaro bases his assertion solely on "information" he received from some unidentified source in the Human Resources Department of DPS. Tavernaro Affidavit ¶ 6. Defendants respond with an equally unsupported assertion that exempt classifications were based on "investigation and study" and on "the requirements of the Act and its regulations pertaining to white-collar exemptions." Response at 8-9 & 9 n. 3.

**\*4** Neither party has presented sufficient evidence for the court to reach even an inconclusive determination as to whether the exempt classifications of all DPS employees resulted from an improper reliance on pay grade alone rather than on the requirements of the statute and regulations as they pertain to each position. Without some evidence that the determination was based upon pay grade or some other improper basis applied across-the-board, the court can only conclude that the determination to classify the positions of LPE II and LPE III as exempt was based on factors unique to that position or perhaps other closely related positions not identified in plaintiff's motion. The determination that an attorney is exempt as "professional," for example, presumably would be based on a completely different analysis than a similar determination for the position of LPE II or LPE III. The court finds no grounds for including all purportedly exempt DPS employees in the Opt-In Class absent some evidence that the classification of the numerous and varied positions had a common improper basis. Thus, unless plaintiff can present some credible evidence that the classification of LPE II and LPE III as exempt was based solely or primarily on pay grade or a similarly improper basis applied to numerous other positions in DPS, the court intends to limit the Opt-In Class to persons employed in the position of LPE II or LPE III.

Plaintiff similarly has failed to make any prima facie showing that he is similarly situated to any DPS employees other than other persons employed as LPE II or LPE III with regard to his alleged deprivation of compensation for on-call time. Plaintiff implies that he has raised an issue concerning whether defendants' "policy of denying pay" for on-call time violates the FLSA. Motion at 4. The court has searched in vain for any factual basis in plaintiff's complaint or motion, however, which would indicate that the DPS,

much less the State of Arizona, has any centralized policy concerning pay for on-call status. In fact, the only evidence related to this issue, a memo from a DPS staff attorney to assistant directors, indicates that on-call restrictions are established by individual supervisors. Anderson Affidavit, Exhibit C. The memo does nothing more than provide general guidelines concerning the types of restrictions held by courts to make on-call time compensable. *Id.*

As defendants note, addressing the question of pay for on-call status requires a fact-intensive inquiry related to the peculiar characteristics of the position in question and the requirements of the employer. *Skidmore v. Swift & Co.,* 323 U.S. 134, 136-37, 65 S.Ct. 161, 163 (1944). Plaintiff may be correct that the determination of whether pay for on-call status is required under the FLSA does not require a "job duties analysis." Motion at 11. The analysis required to determine whether the restrictions placed upon the employee are sufficient to require compensation, however, would be just as individualized and fact-intensive as a job duties analysis.

**\*5** The court recognizes the concept so strongly relied upon by plaintiff that approval of a notice and consent form does not require a determination that all persons receiving the notice are similarly situated to the plaintiff. The court does not interpret either *Sperling* or *Church,* however, as fostering the approach suggested by plaintiff: that the court authorize notice to the broadest possible class of plaintiffs, based solely on plaintiff's unsupported allegations, and decline to make even a preliminary determination of whether the potentially huge number of opt-in plaintiffs that may result actually are or may be similarly situated to the plaintiff. The court does not consider such an approach to be consistent with orderly management of the litigation, the recognized purpose for allowing early court-approved notice to potential plaintiffs. *Sperling,* 110 S.Ct. at 487.

Further, the court disagrees with plaintiff that *Church* is directly on point on the issues raised by this motion. In *Church,* the court rejected the notion that the class must be narrowly circumscribed to include only those occupying the same positions at the same locations as the named plaintiffs, reporting to the same supervisors or terminating employment for the same reason. *Church,* 137 F.R.D. at 308. The court held, however, that "[w]hat governs the scope of the class is whether the named plaintiffs and the class members were all affected by a similar plan

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 566321 (D.Ariz.)
**(Cite as: 1992 WL 566321 (D.Ariz.))**

Page 4

infected by discrimination." *Id.* The court determined that the plaintiffs in that case had alleged a sufficient factual basis to indicate a common scheme of terminating older employees to reduce the costs of severance benefits. *Id.* at 309.  Unlike in *Church,* plaintiff has not provided a sufficient factual basis in this case to indicate that the employees he seeks to include in the Opt-In Class were "all affected by a similar plan" to deny them compensation for overtime and on-call status.

Until plaintiff provides some acceptable evidence [FN3] indicating that his exempt classification has the same or a similar improper basis as that of other DPS employees and/or that on-call compensation was determined pursuant to policies established by the LEMSC or another centralized decision-making body, the court will not include in the Opt-In Class any employees other than LPE II's and LPE III's. The court will, however, allow plaintiff to conduct discovery on these issues and will order defendants to respond promptly and fully to such requests.  To the extent such information has previously been requested and responses are due or past due, the court will order defendants to produce the requested information immediately or show why they are unable to do so.  In the meantime, plaintiff may at his option propose a revised form of notice and consent to be sent only to persons employed by the DPS as LPE II or LPE III, pending the court's determination of whether notice should be sent to a broader class of potential plaintiffs.  The court will not, of course, require defendants to respond to discovery requesting the names and addresses of Opt-In Class members unless plaintiff voluntarily restricts that request to the names and addresses of persons employed as LPE II and LPE III or until the class has been finally defined, either by court order or by stipulation of the parties.

**\*6** IT IS ORDERED denying, without prejudice, plaintiff's motion to approve and authorize notice and to require defendants to provide the name and addresses of opt-in class members (Doc. No. 6).

IT IS FURTHER ORDERED granting defendants' motion to strike.

DATED this 29 day of July, 1992.

> FN1. The statute provides in relevant part:
> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their ... unpaid

overtime compensation ... and in an additional equal amount as liquidated damages ...  An action to recover [such] liability may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.  The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

FN2. The court has granted defendants' separate motion to strike portions of the affidavits of these individuals in which they state their understanding of the method by which DPS determined the exempt classifications and its similarity to the method employed by the State of Arizona outside the DPS.

FN3. The court emphasizes that it will not require plaintiff to provide the substantial evidence of such policies that can only be obtained after full discovery on the merits. The court finds, however, that to date plaintiff has provided essentially no evidence that exemption classifications of all DPS employees had a similar improper basis or that plaintiff's alleged deprivation of compensation for on-call status was the result of any "centralized decision-making process."

Not Reported in F.Supp., 1992 WL 566321 (D.Ariz.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Michael P. Kelly, hereby certify that a true and correct copy of Compendium to

Defendants' Opposition to Plaintiff's Expedited Motion to Conditionally Certify a FLSA

Collective Action & Reply in Further Support of its Motion for Expedited Discovery was served

via hand delivery this 15th day of May, 2006, upon the following:

Vivian L. Rapposelli, Esquire (#3204)
Rapposelli, Castro & Gonzeles
916 North Union Street, Suite 2
Wilmington, DE  19805


/s/ Michael P. Kelly

———————————————————

Michael P. Kelly

ME1\5651376.1