# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RAMON VILLANUEVA-BAZALDUA
individually and on behalf of others similarly
situated,

        Plaintiff,

v.

TRUGREEN LIMITED PARTNERS and
TRUGREEN, INC.

        Defendants.

**CA 1:06-cv-00185-GMS**

**Class Action**

## PLAINTIFF'S BRIEF IN SUPPORT OF
## EXPEDITED MOTION TO CONDITIONALLY CERTIFY AN
## FLSA COLLECTIVE ACTION

Vivian L. Rapposelli
Rapposelli, Castro & Gonzales
916 Union St., Suite 2
Wilmington, Delaware 19805
Tel: 302-652-8711

Edward Tuddenham
Tx Bar No. 20282300
272 W. 107th St. #20A
New York, New York 10025
Tel: 212-866-6026

ATTORNEYS FOR PLAINTIFF

    TruGreen's[1] opposition to Plaintiff's motion to conditionally certify this action as a Fair

Labor Standards Act (FLSA) collective action is long on *ad hominum* attacks, but remarkably short

on substantive arguments.   As set forth below, the two points that TruGreen does make support

---

[1]    Throughout this brief Plaintiff will refer to Defendants TruGreen Limited Partnership and Trugreen, Inc.
collectively as "TruGreen."

conditional certification. The first of these arguments challenges the legal basis for Plaintiff's claim, but only demonstrates that the principal issue in this case is a legal one, e.g., whether the FLSA regulations, properly interpreted, require the visa and transportation costs incurred by TruGreen's H-2B workers to be treated as wage deductions. That legal question, which is common to all of TruGreen's H-2B workers, is most appropriately decided in a single action on behalf of all such workers. TruGreen's second argument focuses on the facts of the case, but here, too, TruGreen's discussion only underscores that the essential facts of this case – that all of TruGreen's H-2B workers incurred visa and travel expenses which give rise to FLSA violations if, as Plaintiff argues, those costs constitute *de facto* wage deductions under the FLSA – are both undisputed and apply to all H-2B workers uniformly. The only factual distinctions that TruGreen idenitifies involve variations in the class members' damages resulting from discretionary payments that some of Defendant's branch managers made to workers. Such variations in damages are not a valid basis for denying conditional certification.

## I. TRUGREEN'S ATTACK ON THE LEGAL MERITS OF PLAINTIFF'S FLSA CLAIM SUPPORTS CONDITIONAL CERTIFICATION

TruGreen begins its argument by asserting that Plaintiff's FLSA claim is an attempt to "effect legislative change" that is lacking in legal merit. Of course, as TruGreen acknowledges, the "conditional certification" stage is not the appropriate time to debate the legal merits of Plaintiff's claim. It is simply a preliminary inquiry to determine if Plaintiff has made "substantial allegations" or "a modest factual showing" to support his contention that he and other class members are similarly situated with respect to the FLSA claim at issue. *Felix de Ascencio v. Tyson Foods,* 130 F.Supp.2d 660, 663 (E.D. Pa. 2001) (substantial allegations in complaint are sufficient to warrant

2

conditional certification); *Smith v. Sovereign Bancorp, Inc.*, 2003 U.S. Dist. LEXIS 21010 at \*3 (E.D. Pa. 2003) (requiring "a basic factual showing that the proposed recipients of the opt-in notice are similarly situated to the named plaintiffs").

Nevertheless, by stressing its legal arguments, TruGreen inadvertently highlights one of the reasons why certification of a collective action is appropriate in this case: The essential question presented is a legal one: When properly construed, do the regulations implementing the FLSA mandate that the visa, processing and transportation expenses incurred by the class members be treated as *de facto* wage deductions for purposes of determining compliance with the minimum wage and overtime provisions of the FLSA? Obviously, it would be far more efficient to determine that legal question once in a collective action on behalf of all of Defendants' H-2B workers than to do so over and over again in dozens of individual lawsuits [2]

---

[2]  The seminal case addressing this issue, *Arriaga v. Florida Pacific Farms*, 305 F.3d 1229 (11th Cir. 2002), illustrates the point. In that case numerous migrant farmworkers sued their employer in a single action claiming that their visa and transportation expenses operated as *de facto* wage deductions. The case was tried on stipulated facts and the only issue in the case was the proper legal interpretation of the applicable DOL regulations.

Even if the legal merits of Plaintiff's claim were a proper consideration at the conditional certification stage, TruGreen's arguments on that score are meritless. Contrary to TruGreen's assertions, the holding in *Arriaga v. Florida Pacific Farms, Inc.*, 305 F.3d 1228 (11th Cir. 2002), that visa and transportation costs incurred by foreign workers operate as *de facto* wage deductions, was not based on "an extrapolation" of H-2A program regulations or any other visa regulations. Rather, it was based on a straight-forward interpretation of Section 3(m) of the FLSA, 29 U.S.C. §203(m), and its implementing regulations which apply to all employers covered by the FLSA, 29 C.F.R. §531.32-.36. *Arriaga*, 305 F.3d at 1241-1244. Those provisions make clear that employment-related expenses which are "primarily for the benefit or convenience of the employer" (such as transportation costs that are an "incident of and necessary to the employment") are not "wages" when paid for by the employer and operate as *de facto* wage deductions when paid for by the worker. 29 C.F.R. §§ 531.32, 531.35. *See e.g., Ayres v. 127 Rest. Corp.*, 12 F.Supp.3d 305, 310 (S.D.N.Y. 1998) (uniform costs paid by restaurant workers were *de facto* wage deductions). The *Arriaga* court merely applied these general FLSA principles to conclude that transportation and visa costs arising from an employer's decision to recruit workers in a foreign country operate as *de facto* wage deductions. *Arriaga*, 305 F.3d at 1241-1244. Even a cursory reading of that opinion reveals that court's reasoning applies with equal force regardless of whether the workers enter the U.S. on H-2A visas, H-2B visas, or on some other basis.[3] Moreover, contrary to Defendants' claim, the *Arriaga* court is not the only court to have interpreted the FLSA in this way. *See, e.g. Brock v. Glassboro Serv. Assn.*,

---

[3] The only discussion of the H-2A regulations in the *Arriaga* arose in the context of the *employer's* argument that the provisions of the H-2A regulations calling for reimbursement of transportation expenses half way through an H-2A worker's contract somehow preempted the requirements of the FLSA – an argument that the *Arriaga* court summarily rejected. *Id.* at 1235-1236.

1987 WL 25334 at *5-*6 (D. N.J. 1987), *aff'd sub nom. McLaughlin v. Glassboro Serv. Assn.*, 841 F.2d 1119 (3rd Cir. 1988) (costs of transporting workers recruited in Puerto Rico to New Jersey were part of employer's recruitment costs and could not be considered part of the employee's wage); *De Luna Guerrero v. North Carolina Growers Assn.*, 338 F.Supp.2d 649, 656-664 (D.N.C. 2004) (visa and transportation costs incurred by workers recruited in Mexico operate as *de facto* wage deductions for purposes of the FLSA).

In sum, TruGreen's emphasis on the legal issue involved in this case only underscores the appropriateness of class certification.

## II. PLAINTIFF HAS DEMONSTRATED THAT HE AND THE PROPOSED CLASS MEMBERS ARE SIMILARLY SITUATED.

TruGreen's second argument, that Plaintiff has failed to come forward with evidence that he and the class are similarly situated, simply ignores the factual record in this case. Plaintiff submitted evidence with his motion showing that:

1. All H-2B workers, including Plaintiff, were required to pay certain expenses to accept work with TruGreen, including $100 visa application fee, a $100 visa issuance fee, and a $6 border crossing fee. D.I. 16, *Affidavit of Plaintiff*, A-13; State Department Web Sites, A 35-48; Disclosure Form, A-19 ¶7.

2. Plaintiff and other H-2B workers recruited by TruGreen's agent, LLS International, were required to pay LLS a $155 visa processing fee as well as transportation costs to their work place in the United States. D.I. 16, *Affidavit of Plaintiff*, A-13, A-14 ¶¶3,5

3. TruGreen did not reimburse the visa, processing and transportation costs incurred by H-2B workers or take them into account in determining whether H-2B workers' wages complied with the

FLSA. D.I. 16, *Affidavit of Plaintiff,* A-14 ¶ 6-7.

**Despite the fact that any evidence contrary to these fact would be in TruGreen's possession, TruGreen has not challenged any of these facts.** These undisputed facts are more than sufficient to demonstrate that Plaintiff and all of the class members are "similarly situated" with respect to the FLSA issue presented by this case – i.e. whether the visa, processing, and transportation costs they incurred should be treated as *de facto* wage deductions for purposes of determining compliance with FLSA minimum wage and overtime requirements. Indeed, the *Arriaga* case was decided on the merits based on a stipulation regarding these same basic facts. *See Arriaga,* 305 F.3d at 1233 - 1234. If these facts were sufficient for the Court to render judgment in *Arriaga,* they are clearly sufficient to satisfy the "modest showing" needed for conditional certification.[4] *Felix de Ascencio,* 130 F.Supp.2d at 663; *Smith,* 2003 WL 22701017 at *3.

---

[4] The two cases cited by TruGreen as example's of cases in which a plaintiff failed to come forward with evidence of a company-wide policy justifying notice to all employees are easily distinguishable. In *Harper v Lovett's Buffet, Inc.,* 185 F.R.D. 358 (M.D. Ala. 1999), the plaintiff's evidence was limited to pay practices in only one of the defendant's restaurants. No evidence that similar violations occurred at other restaurants was offered. In *Spellman v. Visionquest Nat'l,* 1998 U.S. Dist. Lexis 4298 (W.D. Pa. 1998), the plaintiff failed to come forward with any evidence of an allegedly illegal practice. Here, by contrast, Plaintiff has submitted undisputed evidence that all class members incurred the expenses at issue and that those expenses were not reimbursed up to the level of the minimum wage. As TruGreen does not deny either of those allegations, Plaintiff has shown that all class members present the same claim.

TruGreen does not contest the core facts upon which Plaintiff's motion for conditional certification is based, but does raise two additional facts the merit brief discussion. First, TruGreen alleges that "Branch managers have the discretion to provide additional money to H-2B workers as they deem necessary and appropriate." D.I. 18, Ex. A ¶4. By way of example TruGreen states that one Branch Manager in Washington, D.C., paid H-2B workers a $200 "sign-up bonus"; another paid for $742 in groceries for 12 workers ($68 per worker); and a third paid Plaintiff and other H-2A workers $150 each for food and incidentals. D.I. 18, Ex. A ¶4, Ex. B ¶3. Assuming both that these payments were made during the first work week and that they constitute "wages" for purposes of the FLSA,[5] such payments might affect the amount of a worker's damages, but they have no effect on the "similarity" of the class members' FLSA claim[6] The issue for Plaintiff and each class member remains whether the visa and travel expenses incurred by the worker were *de facto* wage deductions for purposes of the FLSA. If so, then each class member's damages will be calculated by determining whether the "wages" a worker received during the first work week were sufficient to offset those visa and transportation expenses incurred by the worker *and* to ensure payment of minimum wage for all hours under 40 and overtime for all hours over 40. To be sure, each class member's damages will be different depending on how much he was paid and how many hours he

---

[5] Since FLSA violations are calculated on a workweek-by-workweek basis, these discretionary payments would have to occur during the first work week to offset the *de facto* deductions for visas and travel which pertain to the first work week. *See Arriaga,* 305 F.3d at 1237 ("Workers must be reimbursed during the first workweek for preemployment expenses which primarily benefit the employer, to the point that wages are at least equivalent to the minimum wage.")

[6] The fact that TruGreen needed to provide its H-2B workers with grocery money when they first arrived illustrates why the FLSA treats the substantial pre-employment costs incurred by the class members as wage deductions. After all, the minimum wage provisions of the FLSA were adopted to ensure the health and well-being of employees who lack sufficient bargaining power to secure for themselves a minimum subsistence wage. *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 707 (1945)

worked the first work week. But the issue presented, and the method off calculating damages, remains the same for all class members. Variation in individual damages is not a valid reason for denying conditional certification.[7] *Brown v. Moneytree Mortgage Inc.*, 222 F.R.D. 676, 682 (D. Kan. 2004)("It is well established that individual questions with respect to damages will not defeat class certification . . . unless that issue creates a conflict which goes to the heart of the lawsuit."); *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 628-629 (D. Colo. 2002) (same).

Second, TruGreen has submitted an affidavit disputing Plaintiff's claim that he paid for his own transportation home. But the mere fact that there is a dispute over whether Plaintiff paid for his way home is not a basis for denying conditional certification. First, as courts have repeatedly recognized, the conditional certification stage is not the appropriate time to resolve factual disputes. *Goldman v. RadioShack*, 2003 Dist. LEXIS 7611 at *8 (E.D. Pa. 2003) (refusing to consider argument that plaintiff was exempt from FLSA at conditional certification stage); *Hoffman v. Sbarro*, 982 F.Supp. 249, 262 (S.D.N.Y. 1997) (refusing to consider merits of defendant's claim that named plaintiff was not subject to the dockage policy challenged in the suit at conditional certification stage); *Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 432 (S.D.N.Y. 1995). *See also, Felix de Ascensio*, 130 F.Supp.2d at 663 ("[Forcing] plaintiffs to counter every one of defendant's assertions

---

[7] TruGreen suggests that the "discretionary payments" made by its branch managers might eliminate some class members' damages altogether. This seems highly unlikely. In the first place, none of the amounts mentioned by TruGreen (which range from $68 to $200 per worker) remotely begins to offset the more than $500 each H-2B worker paid to get to the U.S. Moreover, since TruGreen obviously has access to its branch managers, the Court can safely assume that if more than $200 had been paid, TruGreen would have mentioned that fact. The example of a worker earning $843 for 47 hours of work, discussed at footnote 9 of TruGreen's brief, is highly misleading: To earn that much in 47 hours, a worker would have to have a regular rate of pay of $16.69 an hour: ($16.69 x 40 hrs.) + ($16.69 x 1.5 o.t. premium x 7 hrs) = $843. At the $10/hour actually offered by TruGreen, *see TruGreen Visa Applications*, D.I. 16, A-21 (box 12), A-24 (box 12), a worker working 47 hours would only earn $505. That amount would still leave him with negative income for the week if the $511 in visa and transportation expenses are constitute wage deductions. It is telling that TruGreen, which has all of it H-2B workers' payroll records in its possession, makes no attempt to argue that Plaintiff or any other class member earned more than the minimum wage during his first work week.

concerning the similarly situated question at this early stage of the action would 'condemn any large class claim under the [FLSA] to a chicken-and-egg limbo.'"). Instead, "[o]nce the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated: The Court need not evaluate the merits of a plaintiff's claims in order to [make the similarly situated finding]." *Gjurovich v. Emanuel's Market Place Inc.*, 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003).

Second, since TruGreen acknowledges that all class members incurred visa, processing and transportation costs in accepting work with TruGreen, all class members are similarly situated with respect to the claim in this case, regardless of whether they had to pay return transportation or not. The fact that some class members may have incurred additional expenses returning to Mexico that others did not, may affect their damages, but does not preclude conditional certification. The "similarly situated" determination only requires the plaintiff and the putative class members show that their situations are similar, not that they are identical. *Prichard v. Dent Wizard Intl.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002). *See also Heagney v. European American Bank*, 122 F.R.D. 125, 127 n.2 (E.D.N.Y. 1988) (similarly situated standard is "considerably less stringent than the requirement of Rule 23(b)(3) that common questions predominate.")

In sum, despite having all of the relevant employment records in its possession, Tru-Green has failed to come forward with a single fact to indicate that the Plaintiff and the class members are are anything other than "similarly situated." for purposes of the claim at issue here.

## III. TRUGREEN HAS FAILED TO SHOW ANY NEED FOR DISCOVERY OF PLAINTIFF

In his response to TruGreen's motion for expedited discovery, Plaintiff pointed out that TruGreen's request for discovery was in direct conflict with the two-step process for FLSA class certification. Plaintiff also pointed out that TruGreen had provided no specifics about the discovery it sought that would justify an exception to that process. TruGreen's opposition to Plaintiff's motion for conditional certification afforded it another opportunity to come forward with specifics about the discovery it needed and why such discovery was critical, but it has still failed to do so. The truth of the matter is that no discovery is necessary at this point. Given the very specific and narrow FLSA issue presented by this case – whether expenses for visas, processing and travel that result from TruGreen's voluntary decision to recruit workers in a foreign country constitute *de facto* wage deductions – the only facts necessary to show that the class members are "similarly situated" are that they incurred these expenses and were not reimbursed for them by TruGreen. Because TruGreen does not dispute these critical facts, there can be no question that Plaintiff has met his burden for purposes of conditional certification of an FLSA class. TruGreen will be afforded ample opportunity to conduct discovery on the merits after certification and, in the unlikely event that it develops evidence to suggest that some or all class members are not similarly situated, it can move to decertify the class at the second stage.[8]

---

[8] In the event the Court were to grant TruGreen's request to depose Plaintiff, TruGreen should be required to depose Plaintiff on the merits of his claim as well as FLSA class certification issues. There is no reason to make plaintiff go through a deposition twice. Moreover, inasmuch as Plaintiff is currently in California and cannot afford to travel to Delaware, any deposition of Plaintiff should be taken by telephone. Indeed, it would subvert the remedial purposes of the FLSA to require Plaintiff (or any other class member for that matter) to pay for transportation from Mexico or some other distant place to Delaware in order have the opportunity to recover the cost of such transportation.

10

## IV.  PLAINTIFF'S PROPOSED NOTICE SHOULD BE ADOPTED

TruGreen's answer brief raises no objections to either the notice or the six-month opt-in period proposed by Plaintiff.  Nor does it present any objections to Plaintiff's request for the last known addresses, telephone numbers and social security numbers of the class members. Accordingly, Plaintiff urges the Court to adopt those matters as set forth in Plaintiff's motion for conditional certification so that notice may issue promptly.

### CONCLUSION

Defendant TruGreen's answer brief does not challenge any of the essential facts that make Plaintiff and the class members "similarly situated" with respect to the FLSA claim in this case. It is undisputed that Plaintiff and the class members all incurred various visa, processing and transportation expenses that arose out of TruGreen's voluntary decision to recruit workers in Mexico. While the damages suffered by each class member may vary due to differences in the expenses incurred, the wages paid and TruGreen's practice of providing groceries or loans to some of the class members upon arrival, variations in the amount of the class members' damages is not a basis for denying conditional certification. Accordingly, Court should grant Plaintiff's motion and enter an Order: (1) conditionally certifying this action as an FLSA collective action on behalf of all H-2B workers employed by TruGreen Limited Partnership at any time during 2003, 2004, 2005, or 2006; (2) requiring Defendants to provide Plaintiff, in computer readable form, if possible, all addresses, telephone numbers and social security numbers for the class members; (3) authorizing Plaintiff to issue the notice, attached to Plaintiff's Appendix (D.I. 16) at A-8 to the members of the class; and (4) giving the members of the class six months from the date that notice issues to opt-into this action.

11

Respectfully submitted,

Vivian L. Rapposelli
Rapposelli, Castro & Gonzales
916 Union St., Suite 2
Wilmington, Delaware 19805
Tel: 302-652-8711

Edward Tuddenham
Tx Bar No. 20282300
272 W. 107th St. #20A
New York, New York 10025
Tel: 212-866-6026

ATTORNEYS FOR PLAINTIFF

12

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

RAMON VILLANUEVA-BAZALDUA
individually and on behalf of others similarly
situated,

           Plaintiff,

v.

TRUGREEN LIMITED PARTNERS and
TRUGREEN, INC.

           Defendants.

           **CA 1:06-cv-00185-GMS**

           **Class Action**

**COMPENDIUM TO
PLAINTIFF'S BRIEF IN SUPPORT OF
EXPEDITED MOTION TO CONDITIONALLY CERTIFY AN
FLSA COLLECTIVE ACTION**

Vivian L. Rapposelli
Rapposelli, Castro & Gonzales
916 Union St., Suite 2
Wilmington, Delaware 19805
Tel: 302-652-8711

Edward Tuddenham
Tx Bar No. 20282300
272 W. 107th St. #20A
New York, New York 10025
Tel: 212-866-6026

ATTORNEYS FOR PLAINTIFF

1

## CASES

TAB

*Brock v. Glassboro Serv. Assn.*, 1987 WL 25334 at *5-*6 (D. N.J. 1987)
    *aff'd sub. nom. McLaughlin v. Glassboro Serv. Assn.*,
    841 F.2d 1119 (3rd Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

*Goldman v. RadioShack* 2003 U.S. Dist. LEXIS 7611 at *8 (E.D. Pa. 2003) . . . . . . . . . . .    2

*Smith v. Sovereign Bancorp, Inc.*, 2003 U.S. Dist. LEXIS 21010, at *3 (E.D. Pa. 2003) . . .    3

Copyright 2005 CCH Incorporated, All Rights Reserved
CCH Wages & Hour Reporter Cases & Opinion Letters

Wages-Hours Federal Cases and Opinion Letters Archive 1937-1995
Fair Labor Standards Act
U.S. District Courts
United States District Court

*107 Lab. Cas. (CCH) P34,961*

July 23, 1987

P 34,961 William E. Brock, Secretary of Labor, United States Department of Labor, Plaintiff v. Glassboro Service Association, Inc., Defendant.

United States District Court, District of New Jersey No. 78-0377

**Fair Labor Standards Act**

**Civil Contempt Proceedings--Purge of Contempt--Five Days to Pay.**

--An employer was in civil contempt of a permanent injunction against minimum wage violations and was ordered to purge that contempt within five days by ensuring that all employees receive the appropriate minimum wage, and that recruited employees were neither required nor permitted to pay either their airfare or busfare to the extent that such payments would reduce their wages below the minimum. The employer also was directed to conduct a self-audit of its records under the supervision of the Department of Labor within five days and to provide to Department representatives all payroll and employment records necessary to compute post-bankruptcy petition interest due to employees. The Secretary was granted a motion to withdraw the contempt proceeding from bankruptcy court to district court. FLSA, Section 17.

Back reference: P 25,850.983.

**Contempt proceeding following (U.S.; 1981) *S.Ct., 91 LC P 33,993*.**

Patricia M. Rodenhausen, Regional Solicitor, Leslie Paul Brody, for Plaintiff. Frederick A. Jacob, Midville, New Jersey, for Defendant.

*[Statement of Case]*

GERRY, D.J.: Whereas on December 4, 1979, this Court signed an Order granting partial summary judgment permanently enjoining defendant from violating sections 6 and 15(a)(2) of the Fair Labor Standards Act of 1938, as amended, *29 U.S.C. 201 et seq*, (F L S A);

Whereas on November 4, 1981, this Court signed a Consent Amendatory Order amending and further refining its previous Order granting partial summary judgment permanently enjoining defendant from violating the FLSA;

Whereas on August 25, 1983, this Court signed a Letter Opinion clarifying in all aspects its prior Judgment and Order permanently enjoining defendant from violating the FLSA;

Whereas this proceeding having come before the court on Plaintiff's Motion to Hold defendant in Civil Contempt, the court being fully advised of the issues and having rendered its decision herein following oral argument on April 30, 1987;

It is Hereby Ordered, Adjudged and Decreed that defendant is in civil contempt of the Judgment, Order and Letter Opinion previously entered in this matter; and it is further Ordered, Adjudged and Decreed that defendant shall have five (5) days from the date of this Order to purge itself of its contempt of this Court's prior Judgment, Order and Letter Opinion by ensuring that all employees receive the appropriate minimum wage under the FLSA and that recruited em-

Copyright 2005 CCH Incorporated, All Rights Reserved

ployees are neither required nor permitted to pay either their airfare or busfare as a direct or indirect consequence or condition of employment to the extent such transportation payments would reduce their wages below the minimum wage; and it is further

Ordered, Adjudged and Decreed that plaintiff's Motion to Withdraw its FLSA contempt proceeding from Bankruptcy Court to the District Court is hereby granted; and it is further

Ordered, Adjudged and Decreed that within five (5) days from the date of this Order, defendant shall conduct a self-audit of its records, under the supervision of the U.S. Department of Labor, and compute all minimum wages due to it's employees, from August 25, 1983 to the present; and it is further

Ordered, Adjudged and Decreed that following completion of its self-audit, defendant shall provide all payroll and employment records, to plaintiff's representatives which are necessary for plaintiff to compute all post-bankruptcy petition interest due to employees found by the court to be due minimum wage compensation; and it is further

Ordered, Adjudged and Decreed that in the event defendant does not purge its contempt in the time and manner described in this Order, plaintiff may apply for an Order directing such remedial or other sanctions against defendant as may be appropriate to compel defendant to purge the aforesaid contempt

**UPDATE-DATE:** October 03, 2005

**MARK A. GOLDMAN, Plaintiff, v. RADIOSHACK CORPORATION, Defendant.**

### Civil Action No. 2:03-CV-0032

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*2003 U.S. Dist. LEXIS 7611*

**April 16, 2003, Decided**
**April 17, 2003, Filed, Entered**

**SUBSEQUENT HISTORY:** Class certification granted by *Goldman v. Radioshack Corp., 2005 U.S. Dist. LEXIS 8742 (E.D. Pa., May 9, 2005)*

**DISPOSITION:** [*1] Motion for class certification denied. Motion for conditional certification of Federal Fair Labor Standards Act claim GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Putative class action plaintiff, a former store manager for defendant employer, moved for class certification of state law claims brought under the Pennsylvania Minimum Wage Act (MWA) and the Pennsylvania Wage Payment and Collection Law (WPCL) pursuant to *Fed. R. Civ. P. 23(b)(3)*, and for conditional certification of Federal Fair Labor Standards Act (FLSA) claims under 29 U.S.C.S. § 216(b).

**OVERVIEW:** The manager claimed that he and other similarly situated store managers were designated as exempt executive personnel under 29 U.S.C.S. § 213(a)(1) of the FLSA and *29 C.F.R. §§ 541.1-541.119*, although they were really nonexempt employees and should have been entitled to overtime wages when they worked in excess of forty hours per week under 29 U.S.C.S. § 207(a), *43 Pa. Cons. Stat. § 104(c).* The court noted that the FLSA suit would include only those plaintiffs who expressly decided to take part (opt-in) while the state actions under the MWA and WPCL would include store managers employed in Pennsylvania. The employer argued that the court did not have jurisdiction over the state law claims, but the court found the issues were similar to the federal claims and that the exercise of supplemental jurisdiction was proper, and that a pending, uncertified class action filed in Illinois could be joined if the employer desired under 28 U.S.C.S. § 1407. Although the court found the requirements of *Fed. R.*

*Civ. P. 23(a)* were met, it deferred ruling that predominance under *Fed. R. Civ. P. 23(b)(3)* had been complied with.

**OUTCOME:** The motion for class certification of the state law claims was denied without prejudice pending a further showing that the proposed class complied with the predominance of common issues of fact and law requirement. Supplemental jurisdiction over the claims was granted. Conditional certification of the federal claim and facilitation of notice was granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
[HN1] The Fair Labor Standards Act, and the Pennsylvania Minimum Wage Act both require overtime pay for each hour in excess of forty hours per week that the employee works 29 U.S.C.S. § 207(a), *43 Pa. Cons. Stat. § 104(c).*

*Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview*
[HN2] See 28 U.S.C.S. § 1367(a).

2003 U.S. Dist. LEXIS 7611, *

*Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview*
[HN3] See 29 U.S.C.S. § 216(b).

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
[HN4] District Courts routinely exercise supplemental jurisdiction over related state labor law claims when the original jurisdiction is founded on 28 U.S.C.S. § 1331

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview*
*Governments > Courts > Authority to Adjudicate*
[HN5] 28 U.S.C.S. § 1367(a) gives a district court the power to exercise supplemental jurisdiction over opt-out plaintiffs who are not opt-in members of an action brought under the Fair Labor Standards Act.

*Civil Procedure > Class Actions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview*
[HN6] Considerations of judicial economy, convenience, and fairness to litigants will weigh in favor of hearing state law claims at the same time as federal law claims, where the Fair Labor Standards Act and the Pennsylvania Minimum Wage Act claims are premised on the same events and parallel one another.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN7] Employers are required to pay time and a half for each hour in excess of forty hours that the employee works. 29 U.S.C.S. § 207(a). There are exceptions to that rule, one of which provides that employees who are employed in a bona fide executive capacity are not entitled to overtime wages 29 U.S.C.S. § 213 (a)(1).

*Civil Procedure > Class Actions > Prerequisites > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
[HN8] An employee may bring an action on behalf of himself and other similarly situated employees pursuant to 29 U.S.C.S. § 216(b). Fair Labor Standards Act claims are not subject to the usual *Fed. R. Civ. P. 23*

class action requirements. Instead, 29 U.S.C.S. § 216(b) provides a special opt-in representative action mechanism for joining claims and plaintiffs. Each employee who wishes to join the action must affirmatively consent to be a member of the action by filing written consent to that effect

*Civil Procedure > Parties > Joinder > General Overview*
*Civil Procedure > Class Actions > Judicial Discretion*
*Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview*
[HN9] Although the Fair Labor Standards Act creates an opt-in mechanism, district courts nevertheless have wide discretion in managing joinder of parties and notice to parties *Fed. R. Civ. P. 83(b)*.

*Civil Procedure > Class Actions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview*
[HN10] There are only two requirements under 29 U.S.C.S. § 216(b) for an action to proceed as a representative action: (1) class members must be similarly situated; and (2) all members must affirmatively consent to join the action. The statute does not provide an express test for determining who are similarly situated employees under § 216(b)

*Civil Procedure > Class Actions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
[HN11] Under the two-tiered test structure developed for the application of the Fair Labor Standards Act to a class action among the district courts in the Third Circuit, the first tier of the test occurs at the beginning of the case when the court has minimal evidence. At that stage, a court may only conditionally certify the class so that a lead plaintiff may send notice to the potential representative action members. A court may conditionally certify the class for purpose of notice and discovery under a comparatively liberal standard, by determining that the members of the putative class were together the victims of a single decision, policy or plan.

*Civil Procedure > Class Actions > Prerequisites > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
[HN12] The second tier of the test structure developed for the application of the Fair Labor Standards Act (FSLA) to a class action occurs after all opt-in forms

2003 U.S. Dist. LEXIS 7611, *

have been received and discovery has concluded. At that time, a court may make a more thorough finding regarding the similarly situated requirement. The court will conduct a fact-specific review of each class member who has opted-in, taking into account factors such as employment setting, variations in employment activities, employment oversight and instruction, and discretionary powers entrusted to individual opt-in plaintiffs. If the court decides that the plaintiffs are not similarly situated, the FLSA representative action will be decertified and the plaintiffs will proceed with their individual claims.

*Governments > Legislation > Statutes of Limitations > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Remedies > Liquidated Damages*
[HN13] Damages under the Fair Labor Standards Act are limited to the payment of wages lost and an additional equal amount as liquidated damages. 29 U.S.C.S. § 216(b).

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN14] In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits of the case; those issues are irrelevant to class certification.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Decertification*
*Civil Procedure > Class Actions > Judicial Discretion*
[HN15] In a class action suit, a fact-specific inquiry is conducted only after discovery and a formal motion to decertify a class is brought by the defendant. Any class certification effort should not turn on the merits of the case even after the discovery period has closed.

*Civil Procedure > Class Actions > Judicial Discretion*
*Civil Procedure > Class Actions > Opt-Out Provisions*
*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
[HN16] Unlike the situation applicable to claims under the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act and Pennsylvania Wage Payment and Collection Law do not provide independent joinder mechanisms, and proposed class actions under the state statutes are opt-out classes governed by *Fed. R. Civ. P. 23*.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN17] To certify a class in a class action suit under *Fed. R. Civ. P. 23*, the class representative must fully comply with the four requirements of *Fed. R. Civ. P. 23(a)* and fulfill the requirements of either *Fed. R. Civ. P. 23(b)(1), 23(b)(2),* or *23(b)(3)*.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Judicial Discretion*
[HN18] See U.S. Dist. Ct., E.D. Pa., R. 23.1(c).

**COUNSEL:** For MARK GOLDMAN, Plaintiff: ELIZABETH FEGAN HARTWEG, THE WEXLER FIRM, CHICAGO, IL.

For MARK GOLDMAN, Plaintiff: MICHELE S. EAGAN, RODA & NAST PC, LANCASTER, PA.

For RADIOSHACK CORPORATION, Defendant: MARYBETH S. CHRISTIANSEN, MCKENNA, LONG & ALDRIDGE, LLP, DEVON, PA.

For RADIOSHACK CORPORATION, Defendant: ROBERT S. BREWER, JR., ROSS H. HYSLOP, MCKENNA LONG AND ALDRIDGE LLP, SAN DIEGO, CA.

**JUDGES:** Franklin S. Van Antwerpen, U.S.D.J.

**OPINIONBY:** Franklin S. Van Antwerpen

**OPINION:**

MEMORANDUM AND ORDER

Van Antwerpen, J

April 16, 2003

Presently before this court is Plaintiff Mark A. Goldman's Motion for Conditional Certification of a *Federal Fair Labor Standards Act* ("FLSA") Claim and Facilitation of Notice Pursuant to [*2] *29 U.S.C. § 216(b)*, and for Class Certification of *Pennsylvania Minimum Wage Act* ("MWA") and *Wage Payment and Collection Law* ("WPCL") Claims Pursuant to *FED. R. CIV. P. 23* filed on February 14, 2003 [Docket # 18]. Plaintiff's motion will be granted in part and postponed in part. We will grant Plaintiff's motion for conditional certification of the FLSA claim. We also believe that the proposed state law class action meets all the requirements of *FED. R. CIV. P. 23(a)* and the superiority requirement of *FED. R. CIV. P. 23(b)(3)*, but we will postpone class certification because further discovery is

Case 1:06-cv-00185-GMS    Document 20-2    Filed 05/22/2006    Page 8 of 19

Page 4
2003 U.S. Dist. LEXIS 7611, *

needed regarding the predominance test of *FED. R. CIV. P. 23(b)(3)*. We will therefore refrain from a complete *Rule 23(a)* and partial *Rule 23(b)(3)* inquiry until we rule on the entire *Rule 23(b)(3)* motion.

I. Background & Procedural History

Goldman brings a three count complaint against Defendant RadioShack Corporation ("RadioShack") on behalf of himself and all other similarly situated plaintiffs. He worked at RadioShack from November 1985 to September 2001. Goldman alleges that RadioShack violated federal and state minimum wage laws because it did not pay [*3] its "Y" Store Managers n1 overtime wages when they worked in excess of forty hours per week. RadioShack claims that Store Managers are exempt from both federal and Pennsylvania overtime pay requirements because they are exempt executive personnel under *29 U.S.C. § 213(a)(1)*, or *29 C.F.R. § § 541.1-541.119*. Goldman alleges that the Store Managers were actually nothing more than sales associates with a few extra tasks to preform. He alleges that RadioShack merely put an executive sounding label on the Store Managers to avoid paying overtime wages. Goldman has filed affidavits of himself and four other former "Y" Store Managers that describe their day-to-day activities. Each affidavit and the complaint alleges that Store Managers performed sales associate tasks including: sales; restocking shelves; and cleaning. Moreover, they do not have the discretionary powers associated with executive or managerial positions, including but not limited to: merchandising; hiring or terminating employees; determining employee salaries; controlling inventory levels; setting store hours; training employees; and designing store layout. Goldman further alleges [*4] that Store Managers were required to keep their managerial activities to less than 22% of their work week through the RadioShack "7-1-1" plan. The "7-1-1" plan required Store Managers to work as sales associates for seven out of every nine hours worked. The "1-1" in the plan refers to one hour of paperwork and one hour of training per day. See Pl.'s Motion for Conditional Certification: Exs. 6 & 7, filed on Feb. 14, 2003 [# 18]. The plan also required Store Managers to work at least 54 hours per week without any overtime compensation.

> n1 RadioShack "Y" stores are RadioShack locations that had over $ 500,000 in annual gross revenues in fiscal year 2000 and thereafter.

In defense, RadioShack argues that the percentage of time spent on managerial duties is not the correct test for whether an employee is exempt from the overtime pay

statutes; and that the Store Managers are exempt employees because they are actual managers.

Goldman filed his complaint against RadioShack in Court of Common Pleas of Philadelphia [*5] County on December 17, 2002. Defendant properly removed the complaint to this court in January 2003. Goldman now moves to conditionally certify an FLSA opt-in representative action, and moves to certify a *Rule 23(b)(3)* opt-out class action alleging violations of MWA and WPCL. The FLSA suit would therefore include only those plaintiffs who expressly decide to take part while conversely the state actions consist of "all persons who were employed by RadioShack as a "Y" Store Manager in Pennsylvania at any time on or after December 11, 1999." See Pl.'s Motion filed on Feb. 14, 2003, at 2 [Docket # 18] n2

> n2 Goldman's complaint defines both the FLSA and the MWA/WCPL classes as:
>
>> All persons who were employed by RadioShack as a "Y" store manager in Pennsylvania at any time on or after December 11, 1999, and during at least one workweek during that period worked in excess of 40 hours without receiving compensation for the excess hours at a rate not less than one and one-half times the regular rate at which the person was employed.
>
> See Def.'s Notice of Removal Exhibit: Pl.'s Complaint filed on Jan. 3, 2003 [# 1]

[*6]

II. Jurisdiction

This case was properly removed to this court pursuant to *28 U.S.C. § 1441*. We have original federal question jurisdiction over Plaintiff's FLSA claim pursuant to *28 U.S.C. § 1331*. We have supplemental jurisdiction over Plaintiff's state law claims pursuant to *28 U.S.C. § 1367(a)* because the MWA and WPCL claims form part of the same controversy between the parties as the FLSA claim. [HN1] The FLSA and the MWA require overtime pay for each hour in excess of forty hours per week that the employee works. Compare *29 U.S.C. § 207(a)*; with *PA. STAT. ANN. tit. 43 § 104(c)*. The WPCL requires overtime compensation to be paid in the next period. See

*PA. STAT. ANN. tit. 43 § 260.3.* If the overtime wages are not timely paid, then the employer may be liable for liquidated damages under the WPCL. See *PA. STAT. ANN. tit. 43 § 260.10.* The FLSA, MWA and WPCL comprise the same case or controversy between Goldman, the proposed class and RadioShack.

RadioShack argues that we do not have jurisdiction over the state law claims brought on behalf of proposed class members [*7] who do not opt-into the FLSA representative action because in the absence of an accompanying individual federal claim we would not have original jurisdiction over their individual claims. RadioShack argues that the state law class should not encompass any proposed plaintiff that does not expressly opt-into the FLSA representative action. It argues that to exercise jurisdiction would be an impermissible and unauthorized use of so-called "pendent-plaintiff" jurisdiction. See Def.'s Mem. in Opp'n, at 44-45 filed on Feb. 2, 2003 [# 26-1].

In support, RadioShack cites two types of cases. First, RadioShack lists a series of cases decided before § 1367 was extensively altered in 1990. See *Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 411-14(D.N.J. 1988)* (finding no pendent-party question because plaintiff voluntarily defined the *Rule 23* state claims class as only those members in the opt-in ADEA representative class); *Robinson v. Sizes Unlimited, Inc., 685 F. Supp. 442, 444-49 (D.N.J. 1988)* (exercising discretion to refuse pendent-party jurisdiction over state law claims because court wanted to "effectively eliminate defendant's concerns" regarding [*8] the jurisdictional problems but not deciding the jurisdictional issues when the ADEA class and the New Jersey state law class have few overlapping plaintiffs); *Pirrone v. No. Hotel Assocs., 108 F.R.D. 78, 83-84 (E.D. Pa. 1985)* (exercising discretion to refuse pendent-party jurisdiction because Congress had not yet extended pendent-party jurisdiction beyond the scope of the FLSA); Isaac v. Wm. H. Pflaumer & Sons, Inc., 1990 U.S. Dist. LEXIS 8892, Civ. A. No. 90-1622, 1990 WL 102808 (E.D. Pa. July 17, 1990) (exercising discretion pursuant to *§ 1441(c)* to remand pendent-party class members to state court). In each of these four cases, the court declined to reach the issue of whether pendent-party jurisdiction existed. Instead, in three of the cases, court refrained from reaching the issue by exercising discretion pursuant to *§ 1441* or *§ 1367* to remand or refuse jurisdiction over the pendent-parties. In Sperling, the court did not face the question because the plaintiff did not move the court to exercise jurisdiction over non-opt-in potential class members. These cases are not analogous to the instant case.

Moreover, these cases have no relevance since Congress altered *§ [*9] 1367* to overrule the Supreme Court's Finley decision. In Finley, the Supreme Court

held that exercising pendent-party jurisdiction in federal question cases exceeded the statutory authority granted to the courts by Congress. See *Finley v. United States, 490 U.S. 545, 549, 104 L. Ed. 2d 593, 109 S. Ct. 2003 (1989).* The 1990 amendments to *§ 1367* combined pendent and ancillary jurisdiction into supplemental jurisdiction, and allowed supplemental jurisdiction to extend to the full limits of Article III in federal question cases, thus overruling Finley. *Section 1367(a)* states:

> [HN2] In any civil action of which the district courts have original jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such jurisdiction shall include claims that involve the joinder or intervention of *additional parties.*

*28 U.S.C. § 1367(a)* (emphasis added)

The text of the statute does not limit the additional parties to defendants, as RadioShack argues. Instead, *§ 1367(a)* expressly [*10] allows supplemental jurisdiction over "additional parties" which we believe would include related claims of any additional party. By creating a class of all Pennsylvania "Y" Store Managers under *Rule 23*, Goldman is seeking their joinder to this action as additional parties with claims that form part of the same case or controversy. See *Zahn v. International Paper Co., 414 U.S. 291, 296, 299-300, 38 L. Ed. 2d 511, 94 S. Ct. 505 & n.6, 414 U.S. 291, 38 L. Ed. 2d 511, 94 S. Ct. 505* (comparing class action and joinder cases) (citations omitted); *Snyder v. Harris, 394 U.S. 332, 337, 22 L. Ed. 2d 319, 89 S. Ct 1053 (1969)* (same); 7A Charles Alan Wright et al., Federal Practice and Procedure, § 1752 (discussing history of *Rule 23*, spurious class actions and joinder). Goldman is properly using *§ 1367(a).* The proposed opt-out class members are "additional parties" bringing "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *28 U.S.C. § 1367(a).*

Second, RadioShack cites four post-1990 cases for the proposition that courts do not have supplemental jurisdiction over state law claims related [*11] to an FLSA representative action. See *Marquis v. Tecumseh Prods., 206 F.R.D. 132, 162-65 (E.D. Mich. 2002)* (exercising discretion to decline certifying state law class action which included pendent-parties, because the named plaintiffs failed to exhaust their administrative remedies

regarding their Title VII claims that gave court original jurisdiction and state law issues predominated); *Zelaya v. J.M. Macias, Inc.*, 999 F. Supp. 778, 782-83 (E.D.N.C. 1998) (questioning federal jurisdiction over pendent-plaintiffs and declining jurisdiction under the court's discretion pursuant to § *1367(a)*); Ballaris v. Wacker Siltronic Corp., 2002 U.S. Dist. LEXIS 2746, No. Civ. 00-1627-KI, 2002 WL 926272, at *3 (D. Or. Feb. 7, 2002) (noting absence of pendent-party issue because plaintiff intended to move for certification of a state law *Rule 23* class that consisted of only the FLSA opt-in members); De La Fuente v. FPM Ipsen, 2002 U.S. Dist. LEXIS 24040, No. 02-C-50188, 2002 WL 31819226, at *1-2 (N.D. Ill. Dec. 16, 2002) (declining to rule on class certification until the conclusion of discovery; not addressing jurisdictional concerns). Zelaya is the only case cited by Defendant that [*12] is on point, because the court in the other three cases did not reach the pendent-plaintiff jurisdictional issue. We decline to follow Zelaya.

*Zelaya* was concerned with the risk that plaintiffs could manufacture original jurisdiction over the case in an attempt to gain federal jurisdiction over the tenuously related state law claims. See Kelley v. SBC, Inc., [5 Wages-Hours] Lab. L. Rep. (BNA) 16, 1998 U.S. Dist. LEXIS 18643, at *38 (N.D. Cal. Nov. 13, 1998) (exercising supplemental jurisdiction over state law claims when original jurisdiction was founded upon FLSA claims and distinguishing Zelaya because Kelley was removed by the defendant). No such risk exists here because Goldman filed in state court and it was RadioShack which chose to remove this case to federal court. RadioShack had the option of litigating the claims in state court because the FLSA allows concurrent state and federal court jurisdiction. See *29 U.S.C. § 216(b)* ([HN3] "An action may be maintained against an employer in any Federal or State court of competent jurisdiction ...") (parenthetical omitted). If the case had remained in Pennsylvania state court, [*13] Goldman would have been able to maintain the FLSA opt-in representative action and bring the state law claims under Pennsylvania's opt-out class action mechanism. See PA. R. CIV. P. 1702 & 1708 (listing requirements and factors to be considered for certifying a class). Goldman did not choose the federal forum to gain federal jurisdiction over tenuously related state law claims.

We note also that *Zelaya* has not received a welcomed reception in federal courts. See *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 95-96 (S.D.N.Y. 2001) (criticizing Zelaya and citing cases holding that supplemental jurisdiction is proper) (citations omitted); *Kelley, 1998 U.S. Dist. LEXIS 18643, *38* (distinguishing Zelaya and exercising supplemental jurisdiction). Zelaya has not been followed. [HN4] District Courts routinely exercise supplemental jurisdiction over related state labor law claims when the original jurisdiction is founded on *28 U.S.C. § 1331* and the plaintiffs are bringing an FLSA representative action. See *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261 (D. Conn. 2002) (certifying FLSA opt-in and *Rule* [*14] 23 opt-out classes without limiting opt-out class to only opt-in members); *O'Brien v. Encotech Constr. Servs.*, 203 F.R.D. 346, 350-53 (N.D. Ill. 2001) (same); *Ansoumana, 201 F.R.D. at 89-96* (providing an extensive history and discussion of the topic and exercising supplemental jurisdiction because § *1367(a)* retained the pre-1990 restrictions only for cases where original jurisdiction was founded solely on § *1332* diversity jurisdiction); *Brzychnalski v. Unesco, Inc.*, 35 F. Supp. 2d 351 (S.D.N.Y. 1999) (same as *Scott, 210 F.R.D. 261*); Ladegaard v. Hard Rock Concrete Cutters, Inc., 2000 U.S. Dist. LEXIS 17832, No. 00-C-5755, 2000 WL 1774091 (N.D. Ill. Dec. 1, 2000) (same); DeAsencio v. Tyson Foods, Inc., [8 Wages-Hours 2d] 2002 U.S. Dist. LEXIS 13038, Lab. L. Rep. (BNA) 190, 2002 WL 1585580, at *5 (E.D. Pa. July 17, 2002) (exercising supplemental jurisdiction); *Kelley, 1998 U.S. Dist. LEXIS 18643, at *38* (same); cf. Dunlop-McCullwn v. Parham, 2002 U.S. Dist. LEXIS 21854, No. 97-Civ.-0195, 2002 WL 31521012, at ** 9-10 (S.D.N.Y. Nov. 13, 2002) (exercising supplemental jurisdiction over state law claims when original jurisdiction was founded [*15] on § § *1331 & 1337* when plaintiff brought a LMRDA case). The clear weight of authority is in favor of exercising supplemental jurisdiction.

[HN5] We find that § *1367(a)* gives us the power to exercise supplemental jurisdiction over the opt-out plaintiffs who are not opt-in members of the FLSA action. The question remains as to whether we will exercise that power because § *1367* allows us to exercise our discretion and retain or remand these claims. We choose to retain these claims. It is prudent to try these related claims together in the interest of judicial economy. See *West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) [HN6] ("'Considerations of judicial economy, convenience and fairness to litigants' weigh in favor of hearing the state law claims at the same time as the federal law claims.") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966)). The FLSA and WPCL claims "are premised on the same events" and "parallel one another." DeAsencio, 2002 U.S. Dist. LEXIS 13038, 2002 WL 1585580, at *5. "It is likely that the two claims will either prevail or fail together." Id. If we were to remand certain class members, [*16] the two cases would be so related that any decision on the merits in one action would have preclusive effects on the other action. If the preclusive effects did not come to fruition, the cases may result in conflicting findings or judgments. Proceeding in both forums would needlessly increase litigation expenses for both parties. n3

n3 Judge Hellerstein stated the reasoning well:

> If the related FLSA and [state] *Minimum Wage Act* claims were to be litigated in parallel fashion, . ., there would be great potential for confusion of issues; considerable unnecessary costs, inefficiency and inconsistency of proceedings and results; and other problems inherent in parallel class action litigation ... Congress enacted § *1367* to avoid such problems. Defendants short-sightedly argue to reverse the Congressional wisdom. I decline to do so.

See *Ansoumana, 201 F.R.D. at 96*; see *De Asencio, 2002 U.S. Dist. LEXIS 13038, 2002 WL 1585580, at \*5* (exercising discretion for the sake of judicial economy).

Moreover, [*17] we do not want to create incentives for defendant forum shopping. This action could have easily been maintained in state court because the Pennsylvania courts have jurisdiction over the FLSA and state law claims. RadioShack choose this forum. Defendants might be encouraged to remove to federal court, not because they are an out of state defendant, but because the federal forum's jurisdictional limitations would complicate plaintiffs' case and increase plaintiffs' litigation expenses.

Pursuant to § *1331*, we have original jurisdiction over the opt-in FLSA representative class. For the reasons stated, we will exercise our discretion to assume supplemental jurisdiction pursuant to § *1367(a)* over the related state law claims and the proposed *Rule 23* opt-out class as well.

III. FLSA Representative Class

A. Applicable Law

[HN7] Employers are required to pay time and a half for each hour in excess of forty hours that the employee works. See *29 U.S.C. § 207(a)*. There are exceptions to the rule, including one which provides that employees who are employed in a bona fide executive capacity are not entitled to overtime wages. See *29 U.S.C. § 213* [*18] *(a)(1)*. [HN8] An employee may bring an action on behalf of himself and other similarly situated employ-

ees pursuant to *29 U.S.C. § 216(b)*. FLSA claims are not subject to the usual *Rule 23* class action requirements. Instead, *29 U.S.C. § 216(b)* provides a special opt-in representative action mechanism for joining claims and plaintiffs. Each employee who wishes to join the action must affirmatively consent to be a member of the action by filing written consent to that effect. See *29 U.S.C. § 216(b)*; *Lusardi v. Lechner, 855 F.2d 1062, 1068 n.8 (3d Cir. 1988)*.

[HN9] Although the FLSA creates an opt-in mechanism, district courts nevertheless have wide discretion in managing joinder of parties and notice to parties. See *FED. R. CIV. P. 83(b)* (allowing court discretion to manage cases when the rules are silent on an issue); cited by *Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 170-72, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989)* (urging early trial court management of the notice process in § *216(b)* opt-in actions to ensure that parties are made aware of the action's benefits and avoiding multiple lawsuits); *De Asencio v. Tyson Foods, Inc., 130 F. Supp. 2d 660, 662 (E.D. Pa. 2001)* [*19]

Before facilitating notice, we must first find that the action can proceed as an FLSA representative action. See *De Asencio, 130 F. Supp. 2d at 662*. [HN10] There are only two requirements under § *216(b)* for an action to proceed as a representative action: (1) class members must be "similarly situated"; and (2) all members must affirmatively consent to join the action. See *29 U.S.C. § 216(b)*; *Sperling v. Hoffman-La Roche, Inc., 862 F.2d 439, 444*, aff'd *493 U.S. 165, 107 L. Ed. 2d 480, 110 S. Ct. 482*; *De Asencio, 130 F. Supp. 2d at 662*. The statute does not provide an express test for determining who are "similarly situated" employees under § *216(b)*. In the absence of Third Circuit or Supreme Court guidance, a two-tiered test structure has developed among the district courts in the Third Circuit. See *De Asencio, 130 F. Supp. 2d at 662-63*; *Mueller, 201 F.R.D. 425, 427-28 (W.D. Pa. 2001)*; *Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J. 2000)*; *Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987)*, modified *122 F.R.D. 463 (D.N.J. 1988)* (decertifying [*20] class because representative action members not "similarly situated"); *Bunnion v. Consol. Rail Corp., [5 Wages-Hours 2d] 1998 U.S. Dist. LEXIS 7727, Lab. L. Rep. (BNA) 717, 1998 WL 372644, at \* 17 (E.D. Pa. May 14, 1998)*; see also *Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208 (11th Cir. 2001)* (adopting the two-tiered approach and citing *Lusardi, 118 F.R.D. 351)*; *Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)* (adopting the *Lusardi, 118 F.R.D. 351*, two-tiered test).

[HN11] The first tier of the test occurs at the beginning of the case when the court has minimal evidence. See *De Asencio,, 130 F. Supp. 2d at 662-63*. At this stage, the court may only conditionally certify the class

so that the Plaintiff may send notice to the potential representative action members. *Id.*, *Mueller, 201 F.R.D. at 428.* "A court may conditionally certify the class for purpose of notice and discovery under a comparatively liberal standard, i.e., by determining that the members of the putative class 'were together the victims of a single decision, policy or plan'" *Mueller, 201 F.R.D. at 428* [*21] (quoting *Sperling, 118 F.R.D. at 407*) The conditional certification is by no means final.

[HN12] The second tier of the test occurs after all opt-in forms have been received and discovery has concluded. At that time, the court may make a more thorough finding regarding the "similarly situated" requirement. *Id.* The court will conduct a "fact-specific review of each class member who has opted-in, taking into account factors such as employment setting," variations in employment activities, employment oversight and instruction, and discretionary powers entrusted to individual opt-in plaintiffs *See id.* If the court then decides that the plaintiffs are not "similarly situated," the FLSA representative action will be decertified and the plaintiffs will proceed with their individual claims *See De Asencio, 130 F. Supp. 2d at 663.*

B. RadioShack's Arguments Against Conditional Certification

RadioShack argues that the first tier conditional certification is unwarranted in this case because: (1) there is a pending FLSA representative action in United States District Court of the Northern District of Illinois which has yet to be certified; (2) Goldman [*22] is not an appropriate representative because he is an exempt employee under the FLSA; and (3) the proposed representative action members are not "similarly situated." We do not find RadioShack's arguments persuasive.

*1. The Illinois Action*

Comity does not dictate that we postpone first tier conditional certification until certification of the FLSA representative action in Illinois is decided. RadioShack claims that Pennsylvania "Y" Store Managers could simply join the nationwide representative action in Illinois, rendering this action redundant. RadioShack's arguments fail for two reasons. First, we are dealing with two different *opt-in* actions. If the Illinois court was entertaining a motion to certify a nationwide *opt-out* class, then our proceeding with a Pennsylvania-wide action could well complicate and frustrate our sister court's jurisdiction. Creating two overlapping opt-out classes would create conflict. This is not the present situation. We are dealing with two *opt-in* actions. No plaintiff will be a member of both representative actions because they must choose one or the other. n4

n4 If RadioShack is dissatisfied with this result it may make a *28 U.S.C. § 1407* request for transfer to the Judicial Panel on Multidistrict Litigation to consolidate the two actions. See Manual for Complex Litigation § 31.13 (discussing multidistrict transfers under *§ 1407*)

[*23]

Second, while the two cases are similar, they provide different relief and benefits. The Illinois FLSA action does not include any state claims. Therefore, the opt-in plaintiffs will be entitled to two years of back overtime wages if they prevail. They could also recoup three years of back overtime wages but only if they prove RadioShack's alleged willfulness to the court. [HN13] Damages under the FLSA are limited to "the payment of wages lost and an additional equal amount as liquidated damages." *29 U.S.C. § 216(b).* The FLSA statute of limitations is not tolled until the employee opts-in.

The Pennsylvania action in our case may allow greater relief to class members because Goldman filed a class action alleging violations of the MWA and the WPCL. Unlike the FLSA, the state statute of limitations is three years without the extra burden of proving willful conduct. Damages under the MWA and the WPCL amount to the unpaid wages, plus liquidated damages equal to the greater of $ 500 or 25% of the lost wages due, plus reasonable attorney's fees and costs. See *PA STAT. ANN. tit. 43 § § 260.10 & 333.113.* Thus, the Pennsylvania action allows a longer period of recovery [*24] without the extra burden of proving willful conduct, but provides for lower liquidated damages. The Illinois case does not provide these extra opportunities for recovery.

Moreover, the opt-out nature of the potential *Rule 23(b)(3)* class allows potential class members to be included in the class without making a public declaration. Although the FLSA protects current workers from employer retribution, the reality is that some current employees may be hesitant to join a opt-in class out of fear of retribution. The opt-out class will allow current employees relief--albeit not identical relief--as the opt-in plaintiffs without the same concerns regarding retribution.

*2. Goldman's Exempt Status Is Irrelevant At This Stage*

RadioShack argues that Goldman should not be allowed to pursue an FLSA representative action because he is an exempt employee who is not entitled to overtime wages. See Def.'s Memo. in Opp'n, at 19-31, filed on Mar. 21, 2003 [# 26]. We will not consider the substance of RadioShack's arguments on the merits at this stage because only a motion for conditional certification is

presently before us. See *Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974)* [*25] [HN14] ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits ..."); *Ansoumana, 201 F.R.D. at 85* (merits of the case are irrelevant to class certification); *Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 262 (S.D.N.Y. 1997)* (merits of the case are irrelevant to "similarly situated" test); *Jackson v. New York Tel. Co., 163 F.R.D. 429, 432 (S.D.N.Y. 1995)* (merits of the case irrelevant to motion for authorization of notice). All of RadioShack's arguments on this issue go to the merits of Goldman's case. The conditional certification inquiry only focuses on the lenient first tier "similarly situated" test. At this stage, with little evidence before us, we believe that Goldman and other "Y" Store Managers were similarly situated because they all had the same minimum weekly hours and did not receive overtime compensation. If Goldman is an exempt employee under the FLSA, it is likely that the other "Y" Store Managers are also exempt employees. However, the merits of the plaintiff's case are not at issue today because this is a motion for [*26] conditional certification and not a summary judgment motion. n5

> n5 RadioShack's discussion of Department of Labor's newly proposed regulations, *68 Fed. Reg. 15560*, governing exemptions to the FLSA's overtime requirements are not relevant. See Def's Supp. Br. in Opp'n filed on Apr. 8, 2003 [# 31]; Def.'s Notice of Errata filed on Apr. 10, 2003 [# 32]. First, the regulations defining exempt employees go to the merits of the case which are not currently at issue. Second, the proposed regulations are just that, only proposed regulations and not actual regulations. If and when they are enacted, and if they are binding on this case which was filed before *68 Fed. Reg. 15560* was proposed, the new regulation will be relevant only when the merits of Goldman's case are at issue.

### 3. A Fact-Specific "Similarly Situated" Inquiry Is Premature

RadioShack contends that Goldman was a special "Y" Store Manager that was not similar to regular "Y" Store Managers because: (1) his store had fifteen [*27] employees instead of the normal two employees; (2) Goldman was trained three times to become a District Manager; and (3) Goldman was designated a "Hiring Manager" with the responsibility to hire employees at several locations; and (4) RadioShack labeled Goldman a "Team Captain."

This may or may not be the case, but we will not delve into a fact-specific "similarly situated" inquiry at this time. As discussed supra Section III.A., conditional certification requires a lax showing of "similarly situated." During this first-tier inquiry, we ask only whether the plaintiff and the proposed representative class members allegedly suffered from the same scheme. [HN15] A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant. Moreover, any class certification effort should not turn on the merits of the case even after the discovery period has closed. See *Eisen, 417 U.S. at 178*; *Ansoumana, 201 F.R.D. at 85*; *Hoffmann, 982 F. Supp. at 262*; *Jackson, 163 F.R.D. at 432*. It is simply premature to do so now because we lack sufficient evidence to conduct a more rigorous [*28] inquiry.

### C. Conditional Certification is Warranted

We find that the potential members of Goldman's FLSA representative action are "similarly situated" under the first tier test because they were all subjected to the same employment contract with RadioShack. They were all required to work at least 54 hours per week and all were denied overtime pay. We will conditionally certify the FLSA representative action at this time so that Goldman may send notification to potential opt-in plaintiffs. To this end, we will order RadioShack to produce the names and last known addresses of all potential members of the FLSA representative action. This potential group consists of all RadioShack "Y" Store Managers who worked at Pennsylvania RadioShack locations at any time on or after December 11, 1999. n6

> n6 This group may be over inclusive after a more thorough analysis of the FLSA statute of limitations. For our present purposes, we would rather be over inclusive rather than under inclusive so that potential action members may state their claim and influence any future statute of limitations debate.

[*29]

### IV. MWA and WCPL *Rule 23(b)(3)* Class Action

[HN16] Unlike the FLSA claims, Pennsylvania's MWA and WCPL do not provide independent joinder mechanisms. Therefore, the proposed MWA and WCPL class actions are opt-out classes governed by *FED. R. CIV. P. 23*. In order [HN17] to certify a class under *Rule 23*, the class representative must fully comply with the four requirements of *Rule 23(a)* and fulfill the requirements of either *Rule 23(b)(1), 23(b)(2) or (b)(3)*. See *Monahan v. City of Wilmington, 49 Fed. Appx. 383, 384 (3d Cir. 2002)*. Goldman seeks to certify a *Rule 23(b)(3)*

class of all Pennsylvania RadioShack "Y" employees who worked as Store Managers at any time on or after December 11, 1999. At this time, we believe that Goldman's proposed *Rule 23(b)(3)* class complies with all of the requirements of *Rule 23(a)* and the superiority requirement of *Rule 23(b)(3)*. However, we believe it is premature to find that the proposed class complies with the predominance requirement of *Rule 23(b)(3)*. Specifically, we are concerned that common issues may not predominate over individual issues relating to each manager's employment setting, employment activities, and discretionary powers. RadioShack [*30] discussed how Goldman's "Y" store differed from other stores because the larger number of employees meant that he may have spent more time on managerial duties and less time on sales associate duties when compared to average "Y" Store Managers. RadioShack mentioned these allegations and theories in an effort to prevent conditional certification of the FLSA claim. We have already stated that such discussions are premature during an FLSA conditional certification inquiry. However, we believe they are relevant to a *Rule 23(b)(3)* class certification analysis because it is not a conditional or preliminary certification mechanism. In light of RadioShack's contentions, a more developed record is obviously required before we rule that common issues of fact and law predominate over individual variations. n7

n7 At this time, we are not predisposed to either finding regarding predominance.

We will postpone a *Rule 23(b)(3)* finding, pursuant to Local *Rule 23.1(c)*, until the close of discovery, at which time Goldman may move [*31] anew for *23(b)(3)* class certification. See *E.D. PA. R. 23.1(c)* [HN18] ("In ruling upon a motion, the Court may allow the action to be so maintained, may disallow and strike the class action allegations, or *may order postponement of the determination pending discovery* or such other preliminary procedures as appear to be appropriate and necessary in the circumstances.") (emphasis added); Salter v. Philadelphia Hous. Auth., 1999 U.S. Dist. LEXIS 16960, 1999 WL 997758, at * 5 (E.D. Pa. Nov. 2, 1999) (denying defendant's motion to dismiss plaintiff's class action complaint because the court's earlier denial of class certification without prejudice was a delay of the class action certification pending discovery pursuant to Local *Rule 23.1(c)* and not a denial on the merits) (citations omitted); Gomberg v. Western Union Corp., 1997 U.S. Dist. LEXIS 8700, 1997 WL 338938, *5 (E.D. Pa. June 16, 1997) (allowing motion for certification to proceed following discovery pursuant to Local *Rule 23.1(c)* when the parties treated the action as a class action throughout litigation, defendant refused to participate in discovery

unless the motion was delayed, and defendant suffered no undue hardship); see also De La Fuente, 2002 U.S. Dist. LEXIS 24040, 2002 WL 31819226, [*32] at *1-2 (declining to rule on class certification until after discovery concluded). We will not discuss the requirements of *Rule 23* because any such discussion would be dicta at this time. We acknowledge receipt of RadioShack's March 21, 2003 letter requesting oral arguments on all certification issues. We believe that oral arguments may well be appropriate, but it would be more productive if the oral arguments and accompanying testimony were heard following discovery. The parties should remember that a proposed class action shall proceed as if it is a class action until class certification is denied or the class is decertified. See Manual for Complex Litigation § 30.11 ("When an action has been filed as a class action, the court must treat it as one until it has determined otherwise.").

V. Conclusion

We will conditionally certify Goldman's proposed FLSA federal representative action because he has fulfilled the first tier test for certification. RadioShack's fact-specific arguments on the merits are premature. We will postpone Goldman's motion for class certification of the state claims until discovery is concluded. We believe that it is proper to rule on the final FLSA [*33] certification and the *Rule 23* class certification at the same time because: (1) the parties and the court will have a better understanding of the facts after conducting discovery; and (2) the second tier of the similarly situated inquiry overlaps with the *Rule 23* inquiry such that they are properly analyzed together. Goldman may move for class certification after discovery and the parties may request oral argument at that time.

An appropriate Order follows.

ORDER

AND NOW, this 16th day of April, 2003, upon consideration of Plaintiff Mark A. Goldman's Motion for Conditional Certification of the Federal Fair Labor Standards Claim Pursuant to *29 U.S.C. § 216(b)* and for Class Certification of the Pennsylvania Minimum Wage Act and Wage Payment and Collection Law Claims Pursuant to *FED. R. CIV. P. 23* filed on February 14, 2003 [Docket # 18]; Plaintiff's Supplemental Memorandum in Support filed on February 25, 2003 [# 21]; Defendant RadioShack Corporation's Memorandum in Opposition filed on March 21, 2003 [# 26]; Plaintiff Mark A. Goldman's Reply Memorandum filed on April 4, 2003 [# 30]; and Defendant RadioShack Corporation's Supplemental Brief in Opposition [*34] filed on April 8, 2003 [# 31], it is hereby ORDERED consistent with the foregoing memorandum that:

2003 U.S. Dist. LEXIS 7611, *

1. Plaintiff Mark A. Goldman's Motion for Class Certification of the Pennsylvania Minimum Wage Act and Wage Payment and Collection Law Claims Pursuant to *FED. R. CIV. PRO. 23(b)(3)* is DENIED at this time pursuant to Local Rule *E.D. PA. R. 23.1(c)* WITHOUT PREJUDICE to Plaintiff Mark A. Goldman's right to move for Class Certification of these Pennsylvania claims following the close of discovery;

2. Plaintiff Mark A. Goldman's Motion for Conditional Certification of the Federal Fair Labor Standards Act Claim and Facilitation of Notice Pursuant to *29 U.S.C. § 216(b)* is GRANTED at this time subject to further review as set forth in our memorandum;

3. Pursuant to *29 U.S.C. § 216(b)* and *FED. R. CIV. P. 83*, this Court conditionally certifies an opt-in Class of all former or current employees of RadioShack Corporation (and/or Tandy Corporation) who managed a RadioShack "Y" store in Pennsylvania at any time on or after December 11, 1999, for the claim under the Federal Fair Labor Standards Act;

4. Plaintiff Mark A. Goldman is conditionally designated [*35] as the representative of the Class;

5. Plaintiff's Counsel, Roda & Nast, P.C. and the Wexler Firm, are hereby appointed as Counsel for the Class;

6. Within thirty (30) business days from the date of this Order, Defendant RadioShack Corporation SHALL PRODUCE to Plaintiff's Counsel a list of the names and last known addresses of all potential members of the Class described in the Paragraph Three of this Order;

7. Plaintiff's Counsel SHALL CAUSE to be sent by first-class mail, to all members of the Class described in Paragraph Three of this Order, a Notice Packet consisting of a Notice and Notice of Consent form that are substantially in the form of Exhibits Six and Nine attached to Plaintiff's Supplemental Memorandum in Support filed on February 28, 2003 [Docket # 21]; and

8. Any person who fits within the Class described in Paragraph Three of this Order may join this action by sending a completed Notice of Consent form to Plaintiff's Counsel postmarked on or before July 31, 2003. Any person who does not send a completed Notice of Consent form to Plaintiff's Counsel postmarked on or before July 31, 2003 SHALL NOT be permitted to participate in the Federal Fair Labor Standards Act [*36] Representative Action.

BY THE COURT:

Franklin S. Van Antwerpen, U.S.D.J.

MICHELLE SMITH, et al., Plaintiffs, v. SOVEREIGN BANCORP, INC., et al., Defendants.

CIVIL ACTION No. 03-2420

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*2003 U.S. Dist. LEXIS 21010*

**November 13, 2003, Decided**
**November 13, 2003, Filed**

**DISPOSITION:** Plaintiff's motion for preliminary class certification denied without prejudice

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff hourly employees sued defendant employer, alleging violations of, inter alia, the Fair Labor Standards Act (FLSA), *29 U.S.C.S. § 201* et seq. The employees filed a motion requesting that the court grant preliminary class certification to their FLSA claim and approve an "opt-in" claim notice to be sent to all of the employer's hourly, non-FLSA-exempt employees.

**OVERVIEW:** The employees alleged that the employer failed to pay time-and-a-half for hours worked in excess of 40 hours per week and on Saturdays. Allegedly, the plaintiff employees and other hourly employees were instructed by supervisors to record a maximum of eight hours of work per day on their time cards even if they worked in excess of eight hours. The court adopted the reasoning of those courts that required plaintiffs, under *29 U.S.C.S. § 216*(b) of the FLSA, to make a basic factual showing that the proposed recipients of opt-in notices were similarly situated to the named plaintiffs. This comported with the United States Supreme Court's case-management recommendation and the Congressional intent behind FLSA. The factual showing requirement enabled a court to narrow the potential class from all of a defendant's employees to just those employees who could possibly claim to have been denied overtime under the same policy as the allegedly affected plaintiffs. In the instant case, the court denied the employees' motion (but without prejudice) because they failed to provide any factual or evidentiary basis for the inclusion of all of the employer's hourly employees in the putative class.

**OUTCOME:** The district court denied the employees' motion for preliminary class certification, without prejudice to refiling after discovery on the class certification issue.

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview*
[HN1] There are two requirements for Fair Labor Standards Act (FLSA), *29 U.S.C.S. § 201* et seq., group plaintiffs: (1) all plaintiffs must be "similarly situated"; and (2) all plaintiffs must consent in writing to taking part in the suit. *29 U.S.C.S. § 216*(b)

*Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview*
[HN2] The United States Supreme Court has held that district courts have discretion to implement *29 U.S.C.S. § 216*(b) of the Fair Labor Standards Act, *29 U.S.C.S. § 201* et seq., by facilitating notice to potential plaintiffs.

*Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview*
[HN3] The determination of whether Fair Labor Standards Act, *29 U.S.C.S. § 201* et seq., claimants are "similarly situated" for the purposes of *29 U.S.C.S. § 216*(b) is a two-step procedure. The first step, generally conducted early in the litigation process, is a preliminary inquiry into whether the plaintiffs' proposed class is constituted of similarly-situated employees. The second step, usually conducted after the completion of class-related discovery, is a specific factual analysis of each em-

2003 U.S. Dist. LEXIS 21010, *

ployee's claim to ensure that each actual claimant is appropriately made party to the suit

**Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview**
[HN4] The United States District Court for the Eastern District of Pennsylvania adopts the reasoning of those courts that have required plaintiffs, under *29 U.S.C.S. § 216*(b) of the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, to make a basic factual showing that the proposed recipients of opt-in notices are similarly situated to the named plaintiffs

**Civil Procedure > Class Actions > General Overview**
**Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview**
[HN5] Under *29 U.S.C.S. § 216*(b) of the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, the plaintiffs need only provide some "modest" evidence, beyond pure speculation, that the defendant's alleged policy affected other employees.

**COUNSEL:**    [*1]    For MICHELLE SMITH, MICHELLE LYONS, Plaintiffs: JOSEPH EDWARD MCCAIN, THE LAW OFFICES OF J. EDWARD MCCAIN III, PHILADELPHIA, PA. MUNIRA MACK, PHILADELPHIA, PA.

For SOVEREIGN BANCORP, INC., SOVEREIGN BANK, Defendant: LARRY J. RAPPOPORT, STEVENS & LEE, KING OF PRUSSIA, PA.

**JUDGES:** Berle M. Schiller, J.

**OPINIONBY:** Berle M. Schiller

**OPINION:**

MEMORANDUM AND ORDER

Schiller, J.

November 13, 2003

Plaintiffs Michelle Smith and Michelle Lyons bring suit against their employer, Sovereign Bank ("Sovereign"), alleging violations of, inter alia, the Fair Labor Standards Act, *29 U.S.C. § § 201-219* ("FLSA"). Specifically, Plaintiffs allege that Sovereign failed to pay its employees time-and-a-half for hours worked in excess of forty hours per week and on Saturdays. Presently before the Court is Plaintiff's motion requesting that the Court grant preliminary class certification to their FLSA claim and approve an "opt-in" claim notice to be sent to all of Sovereign's hourly, non-FLSA-exempt employees. For

the reasons set out below, the Court will deny this motion without prejudice

## I. FACTUAL BACKGROUND

Plaintiffs have been employed at Sovereign as [*2] hourly employees since September of 1998. (Compl. PP 6-7.) Plaintiffs allege that for an unspecified period of time during their employment, they and other hourly employees were instructed by their supervisors to record a maximum of eight hours of work per day on their time cards even if they worked in excess of eight hours. In addition, Plaintiffs allege that they and other hourly employees were required to work on certain Saturdays without appropriate compensation. Sovereign argues that it did not violate FLSA, and that even if such violations occurred, they ceased by December of 2001.

Plaintiffs, apparently recognizing some merit in Sovereign's latter argument, n1 now raise the possibility that a two-year statute of limitations for their FLSA claim will expire in the near future. n2 Accordingly, Plaintiffs, who have not yet conducted class-related discovery, request that the Court preliminarily certify a class of plaintiffs that includes all of Sovereign's non-FLSA-exempt hourly employees and approve a form notice to be sent to these employees so that they may opt-in to this suit before they are time-barred from doing so. [*3]

## II. DISCUSSION

[HN1] There are two requirements for FLSA group plaintiffs: (1) All plaintiffs must be "similarly situated"; and (2) All plaintiffs must consent in writing to taking part in the suit. *29 U.S.C. § 216(b).* FLSA does not define the term "similarly situated," *see id.; Briggs v. United States, 54 Fed. Cl. 205, 206 (2002)* ("The term 'similarly situated' is defined neither in the FLSA nor in its implementing regulations."), nor does it provide specific procedures by which claimants may opt-in, but [HN2] the Supreme Court has held that "district courts have discretion. . . to implement *[§ 216(b)]* by facilitating notice to potential plaintiffs." *Hoffman La-Roche Inc. v. Sperling, 493 U.S. 165, 169, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989)*

> n1 Plaintiffs have repeatedly stated that Sovereign continues to deny its employees overtime pay in violation of FLSA. (Pl.'s Mot. for Notice to Potential Class Members P 2; Compl. PP 18-20.) In light of this, it is unclear to the Court why "the claims of many, if not most [potential class members] will likely expire by the date that class

certification issue [sic] is addressed by the Court." (Pl.'s Mem. of Law in Support of Mot. for Notice to Potential Class Members, Part II.A.)

[*4]

n2 As the parties note, the statute of limitations under FLSA is either two or three years, with the longer period applying to "willful" violations. 29 U.S.C. § 255. At this time, the Court neither addresses this issue nor decides when time period is applicable to the instant case.

[HN3] The determination of whether FLSA claimants are "similarly situated" for the purposes of § 216(b) is a two-step process. Felix de Asencio v. Tyson Foods, Inc., 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001), Briggs, 54 Fed. Cl. at 206. The first step, generally conducted early in the litigation process, is a preliminary inquiry into whether the plaintiffs' proposed class is constituted of similarly-situated employees. Felix de Asencio, 130 F. Supp. 2d at 663; Briggs, 54 Fed. Cl. at 206. The second step, usually conducted after the completion of class-related discovery, is a specific factual analysis of each employee's claim to ensure that each actual claimant is appropriately made party to the suit. Felix de Asencio, 130 F. Supp. 2d at 663; [*5] Briggs, 54 Fed. Cl. at 206. Only the first step of this process is implicated by the present motion.

The Third Circuit has not yet determined what standard to apply in considering whether potential class members are "similarly situated" such that FLSA plaintiffs may be entitled to send them notice of the suit. In the absence of appellate guidance, the Court looks to other districts and circuits, which have applied varying standards. Some courts, including two within this District, have held that motions for preliminary certification and notice may be granted as long as the plaintiff merely alleges that the putative class members were injured as a result of a single policy of the defendant employer. See Goldman v. RadioShack Corp., No. 03-CV-0032, 2003 WL 21250571, *8, 2003 U.S. Dist. LEXIS 7611, *27 (E.D. Pa. Apr. 16, 2003) ("During this first-tier inquiry, we ask only whether the plaintiff and the proposed representative class members allegedly suffered from the same scheme."); Felix de Asencio, 130 F. Supp. 2d 660 at 663 ("Courts appear to require nothing more than substantial allegations that the putative class members [*6] were together the victims of a single decision, policy, or plan." (internal quotations omitted)); Sperling v. Hoffman-La Roche, 118 F.R.D. 392, 407 (D.N.J. 1988)) (same), aff'd on other grounds 862 F.2d 439 (3d Cir. 1988), aff'd 493 U.S. 165, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989). Other courts generally apply a more strin-

gent--although nonetheless lenient--test that requires the plaintiff to make a "modest factual showing" that the similarly situated requirement is satisfied. See Dybach v. Fla. Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991) ("Before determining to exercise [its] power [to approve notice to potential plaintiffs], the district court should satisfy itself that there are other employees ... who desire to 'opt-in' and who are 'similarly situated' ..."); Mueller v. CBS, Inc., 201 F.R.D. 425, 428 (W.D. Pa. 2001) (requiring plaintiff to provide "a sufficient factual basis on which a reasonable inference could be made" that potential plaintiffs are similarly situated (internal quotations omitted)); Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 362 (M.D. Ala. 1999) [*7] ("Plaintiffs have the burden of demonstrating that a reasonable basis for crediting their assertions that aggrieved individuals exist in the broad class that they propose"); Jackson v. New York, 163 F.R.D. 429, 431 (S.D.N.Y. 1995) ("Plaintiffs need merely provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." (internal quotations omitted)); Briggs, 54 Fed. Cl. at 207 (requiring "modest factual showing that [plaintiffs] are ... similarly-situated with other, un-named potential plaintiffs")

Thus, in order to determine whether preliminary class certification should be granted, this Court must first determine the appropriate standard to apply: The "mere allegation" approach of Goldman and Felix de Asencio, or the "modest factual showing" test of Briggs, et al. In effect, Goldman and Felix de Acensio render preliminary class certification automatic, as long as the Complaint contains the magic words: "Other employees similarly situated." Under this rationale, any plaintiff who is denied overtime pay may file suit under FLSA and, as long as her complaint is well-pled, receive [*8] preliminary class certification and send court-approved notice forms to every one of her employer's hourly employees. This is, at best, an inefficient and overbroad application of the opt-in system, and at worst it places a substantial and expensive burden on a defendant to provide names and addresses of thousands of employees who would clearly be established as outside the class if the plaintiff were to conduct even minimal class-related discovery. n3 More importantly, automatic preliminary class certification is at odds with the Supreme Court's recommendation to "ascertain the contours of the [§ 216] action at the outset." Hoffman La-Roche, 107 L. Ed. 2d 480 at 487 (discussing district court management of cases under § 216(b)), and such certification does not comport with the congressional intent behind FLSA's opt-in requirement, which was designed to limit the potentially enormous size of FLSA representative actions. See 107 L. Ed. 2d 480 at 488. As the Supreme Court has stated, the opt-in requirement was intended to reduce "excessive litigation spawned by plaintiffs lacking a personal interest in the

outcome." *Id.* If district courts do not take basic steps [*9] to ensure that opt-in notices are sent only to potential plaintiffs who "have a personal interest" in the employer's challenged policy, the congressionally-mandated line between representative actions under FLSA and class actions under *Rule 23* will be substantially blurred.

> n3 The Court also notes that the cases in which the plaintiffs' allegations were deemed sufficient for preliminary certification purposes are factually distinguishable from the instant case. In *Goldman,* the plaintiff sought to provide notice only to employees who held the same title as himself, as opposed to the instant Plaintiffs, who wish to contact *all* of defendant's estimated 7,500 hourly employees Similarly, in *Felix de Asencio,* the plaintiffs sought to provide notice to the workers at one particular plant, rather than to the entire corporate payroll. In both cases, therefore, there was a significantly greater likelihood than exists in the instant case that the employees receiving the opt-in form would be similarly situated to the plaintiffs.

[*10]

Accordingly, rather than following the automatic preliminary certification route, [HN4] this Court will adopt the reasoning of those courts that have required plaintiffs to make a basic factual showing that the proposed recipients of opt-in notices are similarly situated to the named plaintiffs *See, e.g., Dybach, 942 F.2d at 1567-68*; *Mueller, 201 F.R.D. at 428*; *Harper, 185 F.R.D. at 362*; *Jackson, 163 F.R.D. at 431*; *Briggs, 54 Fed. Cl. at 207.* This approach provides a more efficient and effective means of managing FLSA litigation and comports with the Supreme Court's case-management recommendation and the Congressional intent behind FLSA. Specifically, the factual showing requirement enables a court to narrow the potential class from all of a defendant's employees to just those employees who can

possibly claim to have been denied overtime under the same policy as allegedly affected Plaintiffs.

It should be stressed that this is an extremely lenient standard. [HN5] Plaintiffs need only provide some "modest" evidence, beyond pure speculation, that Defendant's alleged policy affected other employees. Nonetheless, [*11] in light of this standard, the Court must deny Plaintiffs' motion because Plaintiffs fail to provide any factual or evidentiary basis for the inclusion of all of Defendant's hourly employees in the putative class However, because Plaintiffs have not yet conducted discovery on the class certification issue, the Court will permit Plaintiffs to re-file their motion for preliminary class certification and notice when and if the discovery process has yielded facts that render such certification appropriate. n4

> n4 Plaintiffs may wish to consider narrowing the putative class--by geography, job title, or otherwise--to reflect the evidence that arises during discovery.

For the reasons stated above, the Court denies Plaintiffs' motion for preliminary class certification. An appropriate Order follows

ORDER

AND NOW, this 13th day of November, 2003, upon consideration of Plaintiff's Motion for Notice to Potential Class Members and for Approval of Form of Preliminary Class Notice and Defendant's response thereto, [*12] it is hereby ORDERED that:

Plaintiffs Motion (Document No. 7) is DENIED without prejudice.

BY THE COURT:

Berle M. Schiller, J

CERTIFICATE OF SERVICE

I, Vivian L. Rapposelli, Esquire, hereby certify that on May 22, 2006, I caused electronic copies of the foregoing PLAINTIFF'S BRIEF IN SUPPORT OF EXPEDITED MOTION TO CONDITIONALLY CERTIFY AN FLSA COLLECTIVE ACTION to be served via the Court's CM/ECF system to counsel for the defense:

Michael P. Kelly, Esquire
McCarter & English, LLP
919 N. Market Street, Suite 1800
P.O. Box 111
Wilmington, DE 19899

Sarah E. Bouchard, Esquire
Morgan Lewis
1701 Market Street
Philadelphia, PA 19103


RAPPOSELLI, CASTRO & GONZALES


Vivian L. Rapposelli, Esquire
DE Bar No. 3204
916 N. Union Street, Suite 2
Wilmington, DE 19805
(302) 652-8711
Attorneys for Plaintiff


Dated: May 22, 2006