IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RAMON VILLANUEVA-BAZALDUA
individually and on behalf of others similarly
situated,

                                                    CA 1:06-cv-00185-UNA

      Plaintiff                            Class Action

v.

TRUGREEN LIMITED PARTNERS and
TRUGREEN, INC.

      Defendants.

_____

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF
EXPEDITED MOTION TO CONDITIONALLY CERTIFY AN
FLSA COLLECTIVE ACTION**

Plaintiff Ramon Villanueva files this supplemental memorandum in support of his motion

to conditionally certify this action as a Fair Labor Standards Act (FLSA) collective action. This brief

responds to the issues raised in Defendants' Supplemental Brief In Opposition to Conditional

Certification (D.I. 35).

**I. PLAINTIFF IS AN ADEQUATE REPRESENTATIVE FOR A FLSA
COLLECTIVE ACTION**

Defendants' argument that Plaintiff is not an adequate representative of the proposed FLSA

collective action because he invoked his Fifth Amendment right during his deposition is without

merit.

First, as a factual matter, Defendants exaggerate the extent to which Plaintiff declined to

testify about his work in the United States. Contrary to Defendants' assertions in their Brief at 2,

Plaintiff only invoked the Fifth Amendment with respect to work in 2006 – two years after he his

work at TruGreen ended – when he was in the U.S. on a tourist visa.[1] Plaintiff testified fully about

his employment with TruGreen in 2004. He also testified that when he left TruGreen in July 2004,

he went directly to Mexico. Villanueva deposition at 16, lines 12-15[2]. He testified that he began

working in Mexico as a school teacher in September 2004, *id.* at 63, lines 3-12; and that he did not

work again in the United States in 2004. *Id.* at 22, lines 13-19. Plaintiff further testified that he

continued working in Mexico in 2005 and did not return to the U.S. until 2006. *Id.* at 16, lines 4-11.

Second, Defendants err in raising adequacy of representation as an issue since adequacy does

not apply in the FLSA context. FLSA collective actions are not "representative"actions in the way

that Rule 23 classes are. Because of the opt-in requirement, every participant in a collective action

must individually appear before the Court. Accordingly there is no "representative" in the Rule 23

sense and no requirement that the named plaintiff demonstrate compliance with the adequacy of

representation requirement in Rule 23(a)(4). As explained by the court in *Prichard v. Dent Wizard*

*Int'l. Corp.*,

> The procedural protections of Rule 23 are unnecessary in a Section
> 216(b) class action because of the statute's 'opt-in' requirement. A
> plaintiff who 'opts in' presumably has decided that the benefits of
> joining the class outweigh any benefits of bringing an individual
> action. That is to say, there is no need for the court to determine
> whether a class action is the most efficient method to proceed because
> each individual plaintiff has already concluded that a sufficiently
> common issue of fact or law exists and that he or she will be
> adequately represented.

201 F.R.D. 591, 594 (S.D. Ohio 2002). *See also Hoffman v. Sbarro, Inc.,* 982 F.Supp. 249, 263

---

[1] Deposition at 9 lines 6-8 (Plaintiff in U.S. in 2006 on a tourist visa); page 12, line 19, to page 13, line 22 (invoking 5th Amendment as to work in U.S. in 2006).

[2] A copy of Plaintiff's deposition is attached as Exhibit A to Defendants Motion for Leave to file its supplemental brief (D.I. 35).

(S.D.N.Y. 1997) (because there are no absent class members in a FLSA collective action "the prevailing view among federal courts . . . is that §216(b) collective actions are not subject to Rule 23's strict requirements, particularly at the notice stage").

More importantly, Plaintiff's decision to invoke his Fifth Amendment right with regard to work in 2006 has no bearing whatsoever on his ability to pursue a collective action and is totally irrelevant to the issues in this action. The FLSA claims at issue in this case relate to Defendant TruGreen's treatment of its workers during their employment with TruGreen; those claims have nothing to do with work for other employers performed years after Plaintiff's employment with TruGreen ended. Arguably, work performed by Plaintiff in 2004 after he left TruGreen, but before his H-2B visa expired on November 30, 2004 (i.e. before the contract term ended), might be relevant to the question of mitigation for his breach of contract claim, but, as noted above, Plaintiff fully answered all questions about his employment in 2004 as well as questions about his employment in 2005.

Defendants do not claim that Plaintiff's testimony regarding work in the U.S. during 2006 is relevant to the merits of his FLSA action. Rather they argue that his testimony is significant for two other reasons: First, because "TruGreen has a genuine and legitimate interest in understanding Plaintiff's work visa status or lack thereof," Def. Brief at 4, and second "whether there are any circumstances that may preclude Plaintiff in the future from traveling freely to the United States." *Id.* at 4. Both claims are meritless. As for the first issue, Defendants never explain why they have an interest in Plaintiff's work and visa status during 2006, nor can they. Courts throughout the nation have recognized that a worker's immigration status is entirely irrelevant in FLSA and other employment rights actions. *See, e.g., Rivera v. NIBCO,* 364 F3d. 1057, 1065 (9th Cir. 2004)

(affirming protective order against inquiries into Title VII plaintiffs immigration status, noting that "[t]he chilling effect such discovery could have on bringing of civil rights actions unacceptably burdens the public interest"); *In re: Reyes,* 814 F.2d 168 (5th Cir. 1987) (granting mandamus overturning district court's order allowing inquiry into immigration status in FLSA claim); *Avila-Blum v. Casa de Cambio Delgado, Inc.,* 236 F.R.D. 190, 191 (S.D.N.Y. 2006) (granting protective order prohibiting defendant from inquiring into plaintiff's immigration status in employment action); *Garcia-Andrade v. Madra's Café Corp.,* 2005 WL 2430195 at *1-2 (E.D. Mich. 2005) (same, wage claim); *Flores v. Amignon,* 233 F.Supp.2d 462 (E.D.N.Y. 2002) (same, FLSA action); *Zeng Liu v. Donna Karan Intl. Inc.,* 207 F.Supp.2d 191 (S.D. N.Y. 2002) (same, FLSA collective action); *Cortez v. Medina's Landscaping,* 2002 WL 31175471 (N.D. Ill. 2002) (denying motion to compel discovery concerning citizenship status in FLSA action). *See also, Zavala v. Wal-Mart Stores, Inc.,* 393 F.Supp2d 295, 325 (D.N.J. 2005) (undocumented workers entitled to bring FLSA collective action).

Defendants' assertion that they need to know whether Plaintiff can freely travel to the United States is even more of a non-issue. Plaintiff testified that he was able to enter and leave the U.S. repeatedly on a tourist visa in 2006. Villanueva Deposition at 9 -11; 26. So to the extent Defendants are concerned about Plaintiff's ability to enter the country they have their answer. More fundamentally, a plaintiff's ability to enter the United States is not a legitimate criterion for measuring his ability to represent a class.[3] *See, e.g., In re Diasonics Securities Litigation,* 599

---

[3] Defendants seem to be arguing that a class representative should reside in the United States, a requirement that would effectively preclude H-2B workers from ever filing class actions. By definition, an H-2B worker is "an alien . . . having a residence in a foreign country which he has no intention of abandoning . . . ." 8 U.S.C. § 1101(a)(15)(H)(ii)(b). Defendants' suggestion that Plaintiff's immigration status somehow precluded them from taking a complete deposition, Def. Brief at 3 fn 4, is also meritless. Defendants voluntary concluded the deposition at 12:15 pm, more than two hours before Plaintiff had to leave for the airport. Villanueva Depo.

F..Supp. 447, 453 (N.D.Ca. 1984) (residence outside the U.S. did not disqualify putative class representative)*; Billet v. Storage Technology Corp.,* 72 F.R.D. 583, 587 (S.D.N.Y. 1976) (rejecting adequacy objection to class representative who was leaving the country and "may be living abroad during the pendency of the suit.").   Even undocumented aliens who have no legal right to enter the country are routinely certified as class representatives.  *See, e.g., Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301 (9th Cir. 1990) (affirming damage awards to class of 1349 undocumented Mexican farmworkers); *Int'l. Molders & Allied Workers' Local Union No. 164 v. Nelson,* 102 F.R.D. 457, 465 (N.D.Cal. 1983) (certifying class represented by plaintiffs who are "not alleged to be lawful residents of the U.S."); *Walters v. Reno,* 145 F.3d 1032, 1046 (9th Cir. 1998) (certifying class of aliens in deportation proceedings and finding claim that named plaintiffs had committed document fraud irrelevant to adequacy of representation issue).

Finally, there is no merit to the argument that Plaintiff's invocation of the Fifth Amendment with respect to unauthorized employment undermines his credibility and renders him an inadequate representative.  *See Walters, supra,* 145 F.3d at 1046; *Martinez v. Mecca Farms, Inc.,* 213 F.R.D. 601, 606-607 (S.D. Fla. 2002) (rejecting claim that class representatives' undocumented status affected their credibility and certifying class); *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 87 (S.D.N.Y. 2001) (rejecting claim that named plaintiffs' immigration status affected their credibility and fitness to be class representatives and certifying FLSA collective action and Rule 23 class action); *Leyva v. Buley,* 125 F.R.D. 512, 516 (E.D. Wash. 1989) (finding plaintiff adequate representative despite character attacks and allegations of illegal activity).   All of these cases make clear that the adequacy of representation inquiry focuses on two issues: "(a) the plaintiff's attorney

---

at 65.

must be qualified, experienced and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3rd Cir. 1992). Courts have consistently refused to consider character attacks on a representative plaintiff unless they bear on one of those two issues. *See, e.g., Johns v. Rozet,* 141 F.R.D. 211, 218 (D.D.C. 1992) (rejecting allegations of plaintiffs' lack of integrity and credibility as not relevant to the issue of adequacy except as they bear on the existence of conflicts or the plaintiffs ability to prosecute the case.); *Randle v. Spectran,* 129 F.R.D. 386, (D. Mass. 1988) ("Plaintiffs' adequacy must be assessed in light of their conduct in this or previous litigation, not based on a subjective evaluation of their personal qualifications as . . evidenced by their prior criminal record"); *Haywood v. Barnes,* 109 F.R.D. 568, 579 (E.D.N.C. 1986) (finding named plaintiff's felony criminal records irrelevant to adequacy inquiry).

In this case, Plaintiff's counsel is competent and experienced in representing foreign workers, *see* D.I. 16 at A-26 (affidavit of Edward Tuddenham), and the fact that Plaintiff declines to discuss whether or not he worked in the U.S. in 2006 creates no conflicts with the class. Plaintiff's deposition demonstrates that he fully understands the claims presented to the Court and that he is vigorously pursuing those claims.[4] Accordingly, even if the "adequacy of representation" requirement of Rule 23(a)(4) applied to FLSA collective actions, Plaintiff more than satisfies that

---

[4] Among other things, the deposition reveals that Plaintiff has five years of university education, far more than a typical class representatives in claims such as this. Villanueva Depo. at 21. Moreover, his resourcefulness and interest in pursing his claim is evident from a memo written by his supervisor while he was still working for TruGreen – *see* TruGreen document Tru-0026 (June 29, 2004 memo from Plaintiff's supervisor to upper management indicating that Plaintiff was complaining about not receiving the pay he had been promised in Mexico and had contacted a lawyer about it) (copy attached to Plaintiff's Supplemental Appendix, filed herewith, at A-3) (hereafter referred to as "Supp. App. at A-___").

rule.[5]

## II.  PLAINTIFF AND TRUGREEN'S OTHER H-2B WORKERS ARE SIMILARLY SITUATED

Defendants do not dispute the accuracy of the detailed "Statement of Facts" (and supporting evidence) included in the appendix to Plaintiff's conditional certification motion. (D.I. 16 at A-4 to A-7).  Instead, they repeat the argument  made in their initial opposition brief that Plaintiff is not similarly situated to other H-2B workers because of two inconsequential facts: (1) He received $150 upon arrival in Delaware (which Plaintiff used for food and "a blanket", Villanueva Depo. at 45 lines 2-9), and (2) TruGreen paid for a portion of Plaintiff's return trip to Mexico.  The "similarly situated" determination does not require the plaintiffs and the putative class members be identical in all respects.  *Prichard v. Dent Wizard Intl.,* 210 F.R.D. 591, 595 (S.D. Ohio 2002);  *Crain v. Helmerich & Payne Int'l Dirlling Co.,* 1992 WL 91946 *2 (E.D.La. April 16, 1992).  Rather, FLSA collective action treatment is appropriate when there is a "demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Crain v. Helmerich & Payne Int'l Dirlling Co.,* 1992 WL 91946 *2 (E.D.La. April 16, 1992).  Here,  Plaintiff and all class members challenge the exact same practice – i.e. Defendants' policy of shifting the costs associated

---

[5]  Defendants also complain about Plaintiff's testimony at page 41 in which he indicated that he did not pay a lot of attention to a particular set of documents shown to him in his deposition. Defendants fail to inform the Court that the documents at issue were a series of forms that Defendants' personnel office apparently required all of its H-2B workers to sign upon arrival in Delaware.  Deposition Ex. 3. These documents included a receipt for the employee policy manual and a form 8850 "Pre-screening notice and certification request for welfare-to-work credits."  Anyone who has ever applied for a job is familiar with the stack of forms that one is asked to sign and if failure to read each of them carefully were sufficient to disqualify one as a class representative, there would be no class actions.  That Defendants rely upon this non-issue as a reason for opposing a collective action is telling of how baseless their opposition is.

with their Mexican recruitment program to the H-2B workers themselves.   As set forth in detail in

Plaintiff's Appendix (D.I. 16 at A-4 to A-7), most of those costs, including visa fees, I-94 fees, and

the administrative fee charged by Defendants' agent, are identical for all class members, a fact that

Defendants have now confirmed.[6] Other costs, such as the precise amount paid for transportation,

may vary slightly from worker to worker; some, like Plaintiff, may have had a portion of their return

trip paid[7], others may not have; some may have received $150 on arrival, others a different amount.

But those minor factual variations only go to the amount of each worker's damages;[8] they do not

alter the essential claim shared by all class members – i.e. whether the costs they incurred as a result

of TruGreen's foreign recruitment program should be treated as *de facto* wage deductions  for

purposes of the FLSA. *See Arriaga v. Fla. Pacific Farms,* 305 F.3d 1228 (11th Cir. 2002) (holding

---

[6]*See* TruGreen Document 93-94,  "Instructions Year 2004," a document produced by TruGreen which specifically informs workers that they will have to pay a $155 administrative fee, a $100 visa application fee, a $100 visa issuance fee, $100-$150 transportation, and a $6.00 Border Crossing fee. Supp. App. at A-5, A-6. *See also* Defendants Response to Admission 1, 2 (Supp. App. at A-7).

[7] Defendant mischaracterizes Plaintiff's testimony in this regard.  What Plaintiff stated was that he was required to pay his TruGreen supervisor, Mike, $75 in cash toward his airfare home. Villanueva deposition at 17 line 24-18 line 22.

[8] For example, Plaintiff testified he paid $200 in visa costs, $155 in administrative fees, and $170 in transportation to Delaware for a total of $525.  With the $150 he was given, he began his first work week $375 in the hole.  The wage records produced by TruGreen are confusing, but Plaintiff appears to have worked 40 hours his first week and received gross wages of $157.50.  *See* Tru 0063 (Attached as Supp. App. at A-4).  Thus if the $375 is treated as a *de facto* wage deduction, Plaintiff was still $217.50 in the hole after he received his paycheck. Since the FLSA minimum wage for 40 hours of work is $206, Plaintiff experienced a $423.50 minimum wage violation his first work week ($217.50 + $206 = $423.50).  Without the $150, the violation would be $573.50.  Variations in the amount of damages does not affect certification. *See Brown v. Moneytree Mortgage Inc.,* 222 F.R.D. 676, 682 (D. Kan. 2004)("It is well established that individual questions with respect to damages will not defeat class certification . . .unless that issue creates a conflict which goes to the heart of the lawsuit."); *Reab v. Electronic Arts, Inc.,* 214 F.R.D. 623, 628-629 (D. Colo. 2002) (same).

visa and transportation costs arising from employer's decision to hire workers in Mexico operate as FLSA wage deductions).  It would be far more efficient to decide that question in one action than to force hundreds of foreign workers to litigate that issue in individual actions.  Indeed, since the costs at issue amount to about $500 per worker, denial of collective action treatment would, effectively, preclude workers from pursuing their claims.

No doubt, that is why every FLSA action challenging visa-related expenses in which a motion to conditionally certify a collective action has been ruled upon, the motion was granted. *See e.g.Rivera v. Brickman Group Ltd.,* C.A. No. 05-1518 (E.D. Pa. Report and Recommendation November 14, 2005, approved Dec. 22, 2005)(certifying FLSA collective action for visas-related costs of H-2B workers) (D.I. 16, A-89 and A-102); *De Luna-Guerrero v. North Carolina Growers Association,* 338 F.Supp.2d 649, 653-655 (E.D. N.C. 2004) (certifying FLSA collective action on behalf of 9,000 Mexican visa workers for visa related costs); *Salinas-Rodriguez v. Alpha Services, LLC,* 2005 WL 3557178 (S.D. Miss. 2005) (conditionally certifying collective action by H-2B forestry workers for, *inter alia,* visa related costs)(D.I. 16, A-111); *Recinos-Recinos v. Express Forestry,* 233 F.R.D. 472, 475-477 (E.D. La. 2006) (same).

The factual variations in this case are far less significant than they were in *Trotter v. Perdue Farms, Inc.,* 2001 WL 1002448 (D.Del. 2001) (Attached to Plaintiff's Appendix, D.I. 16, at A-120), a collective action certified by this Court (McKelvie, J.).  In that case the class consisted of workers at sixteen different chicken processing plants in five different states.  The plaintiffs challenged defendant's policy of not paying for time spent donning, doffing, and cleaning various equipment. The defendant argued against collective action treatment claiming that the class members were not similarly situated because of variations throughout Perdue's chicken plants:

> [E]ach department uses a different methodology for recording time and for obtaining, donning, doffing, and sanitizing supplies. Moreover, Perdue argues that the kind and type of equipment varies among the department depending on the function of the line worker. Lastly, defendants contend that differences in the physical layout of the plants means that some workers take more time to obtain and sanitize equipment than others.

*Id.* at *1. The *Trotter* court recognized these variations would necessitate individual damage calculations, but despite that fact the court certified collective action treatment (and certified Rule 23 class actions with respect to pendant state law claims).

As noted in *Moss v. Crawford,* 201 F.R.D. 398 (W.D. Pa. 2000), the purposes of an FLSA collective action are: (1) to lower costs for plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact. *Id.* at 409. There is every reason to expect that certifying this action as a collective action will achieve these purposes and efficiently decide whether the reasoning of *Arriaga* applies to Defendants or not. Accordingly, conditional certification should be granted. If the facts develop in an unexpected way, Defendants always have an opportunity to move for decertification later in the case.

## IV.  IT IS PREMATURE TO DETERMINE WHETHER PLAINTIFF'S COMMON LAW CLAIMS ARE SUITABLE FOR CLASS TREATMENT

In their final argument, Defendants assert that Plaintiffs' three common law causes of action are unsuitable for class treatment under Rule 23. Defendants' argument is premature. Only Plaintiff's motion to conditionally certify a FLSA collective action is presently before the Court. Plaintiff has not yet filed a motion for class certification for his common law claims. Indeed, discovery with respect to the elements of Rule 23 class certification has barely begun. Once that discovery is complete and Plaintiff has moved for class certification of the common law claims, there

will be time enough for Defendants to make whatever arguments they may have in opposition to certification.

Defendants' argument is also premature in that it rests on numerous unsupported factual assertions about the merits of this case. Even at the class certification stage it is improper for the court to decide the merits of a claim. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (" 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' "); *Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 140 (3rd. Cir. 1998)("In considering whether certification is proper, we refrain from conducting a preliminary inquiry into the merits."). It would be even more improper to address the merits of Plaintiff's claim before class discovery has been completed.[9]

That said, Defendants' arguments about the merits reflects a fundamental misunderstanding of Plaintiff's claims which should not be allowed to mislead the Court. Plaintiff's common law claims are grounded in the fact that Defendants recruited H-2B workers on one set of work terms, including a promise that workers would be paid a fixed hourly rate ($11.34/hour in Plaintiff's case, DI 16 at A-16) and then, once the workers arrived in the U.S., Defendants paid them according to an entirely different, and less favorable, set of work terms using a fluctuating work week method of

---

[9] Among other disputed merits questions Defendants rely upon in their supplemental brief are their claims that plaintiff voluntarily agreed to work under a different pay system than the one he was promised and that Plaintiff voluntarily left his job at TruGreen. By way of illustration of the evidence that Plaintiff has to rebut these assertions see TruGreen document 26, (Supp. App. at A-3) a June 2004 memo from Plaintiff's supervisor indicating that Plaintiff was complaining about not receiving the pay he had been promised in Mexico. The supervisor concludes, "I do want to send him back . . . so how do I go about sending him home?" Plaintiff's employment with TruGreen ended about a week later.

pay.[10]  While Defendants claim that its H-2B workers voluntarily agreed to this change in pay, Plaintiff vigorously disputes whether any worker who has traveled several thousand miles from home and incurred over $500 in expenses, and who is precluded by the terms of his visa from working for any other employer, could "voluntarily" agree to the changed terms, particularly when the "choice" was coerced by the threat of discriminatory treatment. *See* Villanueva Depo. at 55 lines 12-22 (TruGreen supervisor said that if Plaintiff did not agree to the change in pay he would receive no overtime and no commissions).

But even apart from that, Defendants' actions in changing the terms of work are patently illegal.  In order to receive permission to import H-2B workers, TruGreen was required to obtain a labor certification from the Department of Labor (DOL) stating that (1) qualified U.S. workers were not available to fill Defendants' job openings, and (2) that the terms of employment offered by TruGreen would not adversely affect the wages and working conditions of workers in the United States similarly employed.  *See* 8 C.F.R. § 214.2(h)(6)(iv) and 20 C.F.R. § 655.3. The terms of work offered to foreign workers in the employer's labor certification petition are critical to both parts of the labor certification: DOL evaluates the terms offered in the petition to determine whether they are sufficient to avoid an adverse effect on U.S. workers, 20 C.F.R. § 655.0, and determines whether U.S. workers are available by requiring the employer to recruit U.S. workers using the petition terms. *Id.*  Obviously, this regulatory scheme would serve no purpose whatsoever if an employer were free

---

[10] Under a fluctuating work week method of pay, a worker receives a fixed salary regardless of the hours he workers.  His regular rate for the first 40 hours is determined by dividing the salary by the total hours worked during the week, whether 40, 50 60 etc..  He then receives ½ that regular rate as the overtime premium for each hour over 40.  Thus, the more hours a worker is employed in a week, the lower his regular rate and the lower his overtime premium.  *See* Villanueva Deposition at 55.

Case 1:06-cv-00185-GMS    Document 41    Filed 11/02/2006    Page 13 of 14


to change the terms of work paid to foreign workers after the visas were granted. If the changed

terms were lower than those approved by DOL, the certification of no adverse effect on U.S. workers

would be false; if the terms were more generous, the certification that U.S. workers were not

available would be meaningless because U.S. workers would never have had an opportunity to apply

for jobs at the new, higher terms of work. *See, e.g., Frederick County Fruit Growers Assn. v.

McLaughlin,* 703 F.Supp. 1021, 1031 (D.D.C. 1989), *aff'd.* 968 F.2d 1265 (D.C.Cir. 1992) (terms

offered in labor certification petition to DOL are contractually enforceable as a matter of law even

if the workers never saw the terms and never relied upon them).[11]

Plaintiff does not ask the Court to rule on these matters now. Plaintiff merely raises them

to show the Court that his common law claims raise serious and substantial questions about the way

Defendants treated their H-2B workers. These questions that should be addressed in an orderly

manner after discovery; not in the premature way that Defendants have raised them.

CONCLUSION

For all of the foregoing reasons, Plaintiffs motion for conditional certification of an FLSA

class should be granted.

Respectfully submitted,

 S/ Vivian Rapposelli

_____

Vivian L. Rapposelli
Rapposelli, Castro & Gonzalez

---

[11] Not only did Defendants' change to a fluctuating work week pay system violate the H-2B workers contract as a matter of law, but for that same reason the change violated the FLSA. Title 29 C.F.R. § 778.114(a) requires a clear mutual understanding regarding the use of the fluctuating work week before it can be legally used. Here, where there was a written contract that wages would be paid on an hourly basis, not a fluctuating work week method, use of that method is barred as a matter of law.

13

1300 Grant Ave.  Suite 100
Wilmington, Delaware 19806
Tel: 302-652-8711
Fax: 302-652-8712

Edward Tuddenham
Tx Bar No. 20282300
153 Upland Rd.
Cambridge, Mass. 02140
617-576-2182
Fax: 512-532-7780

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

I certify that on this 2nd day of November, 2006, I served the foregoing document on Defendants by mailing by e-mailing it to the Defendant's attorneys as follows:

Michael P. Kelly            Mkelly@mccarter.com
McCarter & English
Citizens Bank Building
919 N. Market St.  18th Floor
Wilmington, Delaware 19801

Michael Banks          sbouchard@morganlewis.com
Sarah Bouchard
Morgan Lewis
1701 Market St.
Philadelphia, Pa. 19103

S/ Vivian Rapposelli

_____

Vivian Rapposelli

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RAMON VILLANUEVA-BAZALDUA
individually and on behalf of others similarly
situated,

      Plaintiff

v.

TRUGREEN LIMITED PARTNERS and
TRUGREEN, INC.

      Defendants.

CA 1:06-cv-00185-GMS

Class Action

---

SUPPLEMENTAL APPENDIX
TO
PLAINTIFF'S EXPEDITED
MOTION TO CONDITIONALLY CERTIFY
FLSA COLLECTIVE ACTION

Vivian L. Rapposelli
Rapposelli, Castro & Gonzalez
Grant Ave.  Suite 100
Wilmington, Delaware 19806
Tel: 302-652-8711

Edward Tuddenham
Tx Bar No. 20282300
153 Upland Rd.
Cambridge, Mass.  02140
Tel: 617-576-2182

ATTORNEYS FOR PLAINTIFF

A - 1

## TABLE OF CONTENTS

Memorandum from M. Matejik to Jim dated 6.29.04
     TruGreen Document TRU - 0026 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . 3

TruGreen Payroll and Deduction Register for
     Ramon Villanueva dated 3.18.04
     TruGreen Document TRU - 0063 . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . .4

"Instructions 2004"
     TruGreen Document TRU - 0093-0094 . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . .5

TruGreen's Response to Plaintiffs First Set of Requests for Admission
     Admission 1 and 2 . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . .. . . . . . . . .7

Affidavit of Edward Tuddenham . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

A- 2

# Interoffice memo



**Date:**  06/29/04

**To:**  Jim

**From:**  Mike Matejik

**RE:**  Ramon Villanueva Bazaldua

---

I approached Ramon with the possibility of going home for 6 weeks, due to slow point of season. After I starting talking to him, he brought up the fact that he feels he is getting cheated with his pay. He stated that when he signed his paperwork in Mexico that his wages would be $11.34 per hour with time and a half pay. I explained that I do not even pay my full time lawn care specialist that rate, let alone a laborer.

He then went on to explain that he has sought legal assistance form a free service in the Philadelphia area. He went on to say that he does not like the commission issues with pay; he cannot control the amount of work he receives.

He then started going on and on about the other H2b's that are full time route specialist. After explaining that they have been here for 4 years and are very experienced on what we do and that he can working to that position but it will take until at least next year.

At this point I do want to send him back, if he is not happy working here. I do have a need to cut the work force down for the next 7 weeks, so how do I go about sending him home.

Please give me some guidance in this matter.

A - 3

TRU0026

TRU0063

REPORT ... RUN ON 03/23/2004 AT 23:57:22
REL 11.12.52 PAGE 6223

PAYROLL AND DEDUCTION REGISTER AS OF 03/18/2004

DIV REG PLT DPT:
EMPLOYEE NAME
EMP NUMBER

RATE/AMT
SSN   ES

CUR REG   O/T
YTD   ----HOURS---- MS

GROSS   RESIDENT   FED TAX   WORK
EX   ST LOC   ST LOC

FED TAX   OASDI TAX

HI TAX   TOT DED   NET PAY
CHECK DT
(YD SICK - VAC)   NET CHECK CHECK NO

000 000 048   95
VILLANUEVA, RAMON B
69314071 O  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  1

11.250000

157.50   .00
157.50   .00
40.00   .00 1

157.50   .00
157.50   .00
3 8   1   8   0

9.77
9.77

2.28
2.28

.00   142.24
.00   03/26/2004
142.24   11400124

292.50- REGULAR

450.00 REGULAR
40.00

11.250000   DI

STATE TAX   LOCAL TAX
CUR   1.24   1.97
YTD   1.24   1.97
      .00   .00

A-4

# INSTRUCTIONS – YEAR 2004

*If you follow these instructions, you will have the opportunity to apply for a visa to work in the US. The United States government makes the decision to approve or reject your application – not LLS.*

**WHEN:** Everyone needs to report to our offices before February 15. The first time you come to our office you will pay your fees and we will prepare all of your paperwork for processing. You must be on the employer's list of workers to be processed.

We will call you when you need to come to Monterrey for an interview and to leave to the United States. It will be your responsibility to make sure we have a good way to contact you. LLS will only make two attempts to notify you.

**If you do NOT report to an LLS office before February 15 to complete your paperwork, you may be replaced by another worker.**

**WHERE:** LLS International has three offices where workers can report for processing: Monterrey, Guanajuato, and Puebla. Directions to each office are on the back of this form.

You need to report to the **PUEBLA** office if you live in one of the following states:

| | | | |
|---|---|---|---|
| Puebla | Tlaxcala | Veracruz | Yucatan |
| Distrito Federal | Tabasco | Oaxaca | Morelos |
| Campeche | Guerrero | Chiapas | Q. Roo |

You need to report to the **GUANAJUATO** office if you live in one of the following states:

| | | | |
|---|---|---|---|
| Guanajuato | Queretaro | Aguascalientes | Nayarit |
| Jalisco | Michoacan | Estado de Mexico | Zacatecas |
| San Luis Potosi | Hidalgo | Colima | |

You need to report to the **MONTERREY** office if you live in one of the following states:

| | | | |
|---|---|---|---|
| Nuevo Leon | Coahuila | Tamaulipas | Sonora |
| Chihuahua | Durango | Sinaloa | Baja Norte y Sur |

**WHAT:** You need to bring the following things with you when you report before February 15.

1. Passport – you must have a Mexican Passport valid for ALL of 2004. Also, bring your prior passport and visa if you have one. (It is always better to get a passport with five years duration)
2. One passport size photograph
3. At least $3,800 pesos to cover the costs of the visa.

A-5

TRU0093

Page 2 - Directions

**Puebla Office**: The Puebla Office is located in the city of San Pedro Cholula at the north base of the archaeological zone which contains the pyramid and the Iglesia de los Remedios. Cholula is about 15 minutes from downtown Puebla. You can get there by taking a bus from "la CAPU" – the bus station in Puebla – to Cholula. Our office is only three blocks east of the Plaza Principal in Cholula.

The address is: **2 Oriente 601, Colonia Centro, San Pedro Cholula, Pue.**

The telephone number is: **(222) 404-6335 or (222) 404-6785**

**Guanajuato Office**: The Guanajuato Office is located in the Colonia Marfil next to the Volkswagen dealership.

The address is:    **Villas Manchegas #10, Colonia Marfil, Guanajuato, Gto.**

The telephone number is: **(473) 733-3175 or (473) 733-3176**

**Monterrey Office:** The Monterrey Office is located in downtown Monterrey just one block behind the U.S. Consulate – in front of the main branch of Bital.

The address is: **Ocampo 427 Pte., Zona Centro, Monterrey, N.L.**

The telephone numbers are: **(818) 040-7575 or (818) 040-7577**

Expenses

**Administrative - $155.00 USD**
**Consulate:**
- **Application fee - $100.00 USD or peso equivalent. (non refundable)**
- **Visa (if approved) - $100.00 USD or peso equivalent**

**Transportation- $100.00 - $150.00 USD (U.S. Chartered bus)**
**Border Crossing fee- $6.00 USD**

**Total Expenses including travel incidentals- $465.00 to $525.00 U.S.**

A -6

TRU0094

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

RAMON VILLANUEVA-BAZALDUA,  )
individually and on behalf of others  )
similarly situated,  )
                               )     Civil Action No.:  06-185 (GMS)
       Plaintiff,  )
                               )
      v.  )
                               )
TRUGREEN LIMITED PARTNERS[1] and,  )
TRUGREEN, INC.[2], d/b/a TRUGREEN  )
CHEMLAWN[3],  )
                               )
       Defendant.  )

### DEFENDANTS' RESPONSES TO
### PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS

Defendants TruGreen Limited Partnership, d/b/a TruGreen Chemlawn, as well as

TruGreen, Inc. (hereinafter "Defendants" or "TruGreen"), by their attorneys, for their objections

and answers to Plaintiff's First Request for Admissions, state as follows:

**REQUEST NO. 1.**    TruGreen H-2B workers incurred the following expenses in
coming to work for TruGreen Limited Partners in each of the years 2003, 2004, 2005 and 2006:

      a. $100 H-2B visa application fee;
      b. $100 H-2B visa issuance fee;
      c. $6 I-94 fee paid at port of entry;
      d. $155 administrative fee paid to LLS;
      e. Transportation from the H-2B worker's permanent home, or if different, from the
           place of recruitment in Mexico, to the U.S. consulate where his visa was issued;
      f. Transportation from the point where the H-2B visa was issued to the work place in the
           United States;

---

[1]   The correct legal name is TruGreen Limited Partnership.

[2]   TruGreen, Inc. was not Plaintiff's employer, and therefore, is not a proper party in this
action.

[3]   TruGreen, Inc. does not do business as (d/b/a) TruGreen Chemlawn; TruGreen Limited
Partnership does do business as (d/b/a) TruGreen Chemlawn.

g. Costs of overnight accommodations incurred between the worker's home and the worker's work place in the United States;

h. Costs of obtaining a Mexican passport and photographs for the visa;

i. Cost of uniform(s) worn during work.

(Admit or deny separately for each item and for each year unless the answer is the same for all items or all years.)

**RESPONSE:**

Defendants object to this Request for Admission No. 1 on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence concerning matters currently at issue in this case. The Court has neither certified this case as a class nor ordered a Court-facilitated notice of a collective action, and the only claims presently at issue herein are those asserted by Plaintiff. Consequently, discovery on claims Plaintiff may or may not be permitted to pursue in the future on behalf of hundreds of others in different states and regions is premature and beyond the scope of permissible discovery at this time. Defendants further object to this Request for Admission No. 1 on the grounds that it calls for speculation and on the grounds that it is overly broad in temporal scope given that Plaintiff worked for TruGreen only in 2004.

Subject to and without waiver of the foregoing objections, Defendants deny that Plaintiff incurred any costs or expenses for uniforms worn during work, as Defendants supplied and cleaned (and continue to supply and clean) uniforms at no cost to every employee in the field, including Plaintiff. Defendants admit that the costs described in subsections (a) through (c) refer to current H-2B visa-related fees established by the federal government for purposes of obtaining an H-2B visa and that the fees described in subsection (d) are established by LLS International ("LLS") in connection with its assistance to individuals, including Plaintiff, who use LLS's services to obtain employment in the United States. To the best of Defendants'

A - 8

*knowledge, information, and belief, Plaintiff, or someone on his behalf, incurred the costs*

*described in 1(a) through (d). Defendants are unaware whether or to what extent Plaintiff*

*incurred costs of transportation and/or accommodation or costs of a Mexican passport and/or*

*photographs, and, therefore, those assertions are denied.*

**REQUEST NO. 2.**   TruGreen Limited Partnership did not pay for any portion of the following costs on behalf of your H-2B workers in 2003, 2004, 2005 and 2006:

- a. $100 H-2B visa application fee;
- b. $100 H-2B visa issuance fee;
- c. $6 I-94 fee paid at port of entry;
- d. $155 administrative fee paid to LLS;
- e. Transportation from the H-2B worker's permanent home, or if different, from the place of recruitment in Mexico, to the U.S. consulate where his visa was issued;
- f. Transportation from the point where the H-2B visa was issued to the work place in the United States;
- g. Costs of overnight accommodations incurred between the worker's home and the worker's work place in the United States;
- h. Costs of obtaining a Mexican passport and photographs for the visa;
- i. Cost of uniform(s) worn during work.

(Admit or deny separately for each item and for each year unless the answer is the same for all items or all years.)

**RESPONSE:**

*Defendants object to this Request for Admission No. 2 on the grounds that it is*

*overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of*

*admissible evidence concerning matters currently at issue in this case. The Court has neither*

*certified this case as a class nor ordered a Court-facilitated notice of a collective action, and the*

*only claims presently at issue herein are those asserted by Plaintiff. Consequently, discovery on*

*claims Plaintiff may or may not be permitted to pursue in the future on behalf of hundreds of*

*others in different states and regions is premature and beyond the scope of permissible discovery*

*at this time. Defendants further object to this Request for Admission No. 2 on the grounds that it*

*is overly broad in temporal scope given that Plaintiff worked for TruGreen only in 2004.*

A-9

*Subject to and without waiver of the foregoing objections, Defendants deny that*

*TruGreen did not pay for Plaintiff's uniform costs; rather, TruGreen supplied and cleaned*

*uniforms at no cost to any employee in the field, including Plaintiff. Defendants admit that*

*TruGreen did not pay for any costs Plaintiff might have incurred in connection with obtaining*

*his H-2B visa and/or traveling to the United States from his residence in Mexico, but TruGreen*

*denies that it had any legal obligation to do so.*

**REQUEST NO. 3.**    TruGreen Limited Partnership did not advance or reimburse any portion of the following costs on behalf of your H-2B workers in 2003, 2004, 2005 and 2006:

- a. $100 H-2B visa application fee;
- b. $100 H-2B visa issuance fee;
- c. $6 I-94 fee paid at port of entry;
- d. $155 administrative fee paid to LLS;
- e. Transportation from the H-2B worker's permanent home, or if different, from the place of recruitment in Mexico, to the U.S. consulate where his visa was issued;
- f. Transportation from the point where the H-2B visa was issued to the work place in the United States;
- g. Costs of overnight accommodations incurred between the worker's home and the worker's work place in the United States;
- h. Costs of obtaining a Mexican passport and photographs for the visa;
- i. Cost of uniform(s) worn during work.

(Admit or deny separately for each item and for each year unless the answer is the same for all items or all years.)

<u>RESPONSE:</u>

*Defendants object to this Request for Admission No. 3 on the grounds that it is*

*overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of*

*admissible evidence concerning matters currently at issue in this case. The Court has neither*

*certified this case as a class nor ordered a Court-facilitated notice of a collective action, and the*

*only claims presently at issue herein are those asserted by Plaintiff. Consequently, discovery on*

*claims Plaintiff may or may not be permitted to pursue in the future on behalf of hundreds of*

*others in different states and regions is premature and beyond the scope of permissible discovery*

A-10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RAMON VILLANUEVA-BAZALDUA
individually and on behalf of others similarly
situated,

      Plaintiff

v.

TRUGREEN LIMITED PARTNERS and
TRUGREEN, INC.

      Defendants.

CA 1:06-cv-00185-GMS

Class Action

---

## AFFIDAVIT OF EDWARD TUDDENHAM

NOW COMES Edward Tuddenham and states that were he called as a witness in this action he would testify under oath as follows:

1.    I am an attorney licensed to practice law in the State of Texas and have been so licensed since May of 1979. My business address is 153 Upland Rd., Cambridge, Mass. 02140.

2.    I am one of the attorneys of record for Plaintiff Ramon Villanueva-Bazaldua in the above referenced action.

3.    The documents attached to Plaintiffs' Supplemental Appendix, Bates Stamped pages TRU 26, 63, and 93-94, are true and correct copies of documents produced by Defendants in their initial disclosures and in response to plaintiffs request for production of documents. Defendants' Responses to Plaintiffs First Request for Admission is a true and correct copy of the document served on Plaintiff by Defendants.

4.    I declare under penalty of perjury that the foregoing statements are true and correct.

Date: _11 - 1 - 06_

Edward Tuddenham
Tx. Bar No. 20282300

1    A - 11