## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**RAMON VILLANUEVA-BAZALDUA**
**individually and on behalf of others similarly**
**situated,**

                             **CA 1:06-cv-00185-GMS**

       **Plaintiff**

                             **Class Action**

**v.**

**TRUGREEN LIMITED PARTNERS and**
**TRUGREEN, INC.**

       **Defendants.**

_____

### PLAINTIFF'S BRIEF IN SUPPORT OF
### MOTION FOR RECONSIDERATION
### OF MOTION TO CONDITIONALLY CERTIFY AN
### FLSA COLLECTIVE ACTION
### OR ALTERNATIVELY
### AMENDED MOTION FOR CONDITIONAL CERTIFICATION

Vivian L. Rapposelli
DE Bar No. 3204
Rapposelli & Gonzales
1300 Grant Ave., Suite 100
Wilmington, Delaware 19806
Tel: 302-652-8711

Edward Tuddenham
Tx Bar No. 20282300
153 Upland Rd.
Cambridge, Mass 02140
617-576-2182

ATTORNEYS FOR PLAINTIFF

1

**TABLE OF CONTENTS**

A.  RECONSIDERATION OF CONDITIONAL CERTIFICATION
    MOTION IS APPROPRIATE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B.  DISCOVERY DEMONSTRATES THAT THE CLASS IS
    SIMILARLY SITUATED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    1.  Plaintiff Recently Obtained Discovery Since Filing
        His Initial Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    2.  Evidence That Other Class Members Exist. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

    3.  Evidence That Class Member Incurred The Same Expenses. . . . . . . . . . . . . . . . . .8

    4.  Evidence of That Recruitment Costs Were Not Reimbursed
        Up To FLSA Minimum. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

    5.  The Class Is Similarly Situated. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
    .
    6.  Return Transportation Issues Does Not Defeat Certification. . . . . . . . . . . . . . . . . .15

C.  LEGAL CONCERNS SUPPORT RECONSIDERATION
    AND CERTIFICATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    1.  Legal Questions Regarding The Applicability of
        *Arriaga v. Fla Pacific Farms* to H-2B Workers
        Are Best Decided In A Class Context . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    2.  The H-2B Provisions Are Irrelevant To This Action. . . . . . . . . . . . . . . . . . . . . . . .17

D.  THE REMEDIAL PURPOSES OF THE FLSA WILL BE SERVED
    BY RECONSIDERING THE DENIAL OF CONDITIONAL
    CERTIFICATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# INDEX OF AUTHORITIES

*Arriaga v. Fla. Pacific Farms,* 305 F. 3d 228 (11th Cir. 2002)............................ 17, 18

*Bosely v. Chubb,* 2005 WL 133465  (E.D. Pa. 2005)
    Copy at DI 16 A-64 ..................................................... 6, 14

*Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697 (1945)............................... 10, 20

*Brwon v. MoneyTree Mortgage Inc.,* 222 F.R.D. 676 (D. Kan. 2004) ..................... 13

*Eisen v. Carlisle & Jacqueline,* 417 U.S. 156 (1974).................................... 16

*Felix de Ascencio v. Tyson Foods, Inc.,* 130 F.Supp.2d 660 (E.D. Pa. 2001)................ .6

*Gjurovich v. Emmanuel's Marketplace, Inc.* 282 F.Supp.2d 101 (S.D.N.Y 2003)............16

*Goldman v. Radioshack Corp.,* 2003 WL 21250571 (E.D. Pa. 2003)
    Copy at D.I. 16 A-79 .................................................. .6, 8

*Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165 (1989)................................ 20

*Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363 (S.D.N.Y. 2007) ............. 6, 8, 14

*J.E.M. Ag Supply, Inc v. Pioneer Hi-Bred Intn'l., Inc.* 534 U.S. 124 (2002) ................. 18

*Morante-Navarro v. T&Y Pine Straw, Inc.,* 350 F.3d 1163 (11th Cir. 2003).................. 18

*Morton v. Mancari,* 417 U.S. 535 (1994) ...........................................18

*Mueller v. CBS, Inc.,*201 F.R.D. 425 (W.D. Pa. 2001) ...................................14

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154 (3rd Cir.  2001)....... 16, 17

*Powell v. U.S. Cartridge Co.,* 339 U.S. 497 (1950)...................................19, 20

*Recinos-Recinos v. Express Forestry, Inc.,* 2006 WL 197030 (E.D. La. 2006)
    Copy at App.- 105 ......................................................17

*Recinos-Recinos v. Express Forestry,* 233 F.R.D. 472  (E.D. La. 2006).................... 18

*Rivera v. Brickman Group Ltd.*  CA-05-1518 (E.D. Pa.  Order
    November 10, 2004 approved Dec. 22, 2005) Copy at D.I. 16 A-102. . . . . . . . . . . . . . . .18

*Salinas-Rodriguez v. Alpha Services, LLC,* 2005 WL 2557178
    (S.D. Miss. 2005) copy at D.I. 16 A-111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Smith v. Sovereign Bancorp, Inc.,* 2003 WL 22701017
    (E.D. Pa. 2003) copy at D.I. 16 A-116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Sperling v. Hoffman-La Roche, Inc.,* 118 F.R.D. 392 (D.N.J. 1988). . . . . . . . . . . . . . . . . . 14

*Stewart v. Abraham,* 275 F.3d 220, 226-227 (3rd Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*Trotter v. Purdue Farms, Inc.,* 2001 WL 1002448  (D.Del. 2001)
    Copy at D.I. 16 A-120 . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . .16

STATUTES AND REGULATIONS

8 U.S.C. §1184(c)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

29 C.F.R. §531.37(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

**PLAINTIFF'S BRIEF IN SUPPORT OF
MOTION FOR RECONSIDERATION
OF MOTION TO CONDITIONALLY CERTIFY AN
FLSA COLLECTIVE ACTION
OR ALTERNATIVELY
AMENDED MOTION FOR CONDITIONAL CERTIFICATION**

Plaintiff Ramon Villanueva moves this Court, pursuant to Local Rule 7.1.5, to reconsider its Order of March 19, 2007 (D.I. 44) denying Plaintiff's motion to conditionally certify this as an FLSA collective action. Alternatively, as this motion relies on discovery not available to Plaintiff at the time of his original motion, Plaintiff requests the Court to consider this as an Amended Motion for Conditional Certification of an FLSA class. In support of this motion Plaintiff would show the Court as follows.

**A.     RECONSIDERATION OF CONDITIONAL CERTIFICATION MOTION IS APPROPRIATE**

The FLSA presents plaintiffs who seek to pursue a collective action with a dilemma: On the one hand, there is a need to file a motion for conditional certification quickly since, unlike a Rule 23 class, the statute of limitations continues to run against class members until the class is certified and individual class members affirmatively opt-into the action. On the other hand, a class motion is always stronger after discovery has been obtained, particularly since the question to be decided (whether class members are 'similarly situated') turns on the employment practices of the defendant – evidence of which is uniquely within the possession of the defendant. Courts have attempted to address this dilemma in several ways: Some take a very liberal view of the prerequisites for

conditional certification, allowing notice of the action to issue to the class on the basis of allegations alone, or minimal evidence. *Felix de Ascencio v. Tyson Foods, Inc.,* 130 F.Supp.2d 660, 663 (E.D. Pa. 2001). Other courts insist on clearer evidence to support the claim that the class members are "similarly situated." *Bosely v. Chubb,* 2005 WL 133465 at *3-4 (E.D. Pa. 2005) (Copy at DI 16 at A-64); *Smith v. Sovereign Bancorp,* 2003 WL 22701017 at *3 (E.D. Pa. 2003) (Copy at DI 16 at A-116). Recognizing the dilemma that this higher standard creates, courts that reject pre-discovery motions for conditional certification remain open to reconsider that denial or allow an amended motion for certification to be filed after the plaintiff has had an opportunity to obtain preliminary discovery related to the class. *See, e.g., Bosely,* 2005 WL 133465 at *1 (after denying plaintiff's initial motion for conditional certification to allow for discovery, court granted plaintiff's renewed and amended motion for conditional certification of an FLSA class); *Sovereign Bancorp,* 2003 WL 22701017 at *3 (denying initial motion for conditional certification of FLSA class without prejudice to plaintiffs right "to re-file their motion for preliminary class certification and notice when and if the discovery process has yielded facts that render such certification appropriate."); *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 365-369 (S.D.N.Y. 2007) (granting renewed motion for conditional certification after initial denial). *See also Goldman v. Radioshack Corp.,* 2003 WL 21250571 at *9 (E.D. Pa. 2003) (Copy at DI 16 at A-79) (postponing ruling on Rule 23 class motion and allowing plaintiff to refile same after completion of discovery).

**B.  DISCOVERY DEMONSTRATES THAT THE CLASS IS SIMILARLY SITUATED**

### 1.  Plaintiff Recently Obtained Discovery Since Filing His Initial Motion

Plaintiff filed his motion for conditional certification in May 2006 immediately after Defendants filed there answer because the continued running of the statute of limitations necessitated

6

prompt action and because Plaintiff believed he had sufficient evidence that the class was similarly situated to justify "conditional" certification. While the motion was pending, Plaintiff promulgated discovery to Defendants in late August 2007. Defendants' responses to that discovery were incomplete. However, rather than file a motion to compel with the Court, Plaintiff engaged in lengthy negotiations with the Defendants between October 2006 and February 2007 in an effort to obtain the discovery necessary to support his allegations. *See Affidavit of Edward Tuddenham* filed herewith at App-5.[1] Eventually between late January 2007 and March 2007, Defendant produced a large number of documents related to the class members that directly bear on the conditional certification issue. *Id.* Those documents provide clear support for the class allegations set forth in Plaintiff's complaint and in original motion for conditional certification. Additional discovery that Plaintiff believes to be relevant has still not been provided and will be the subject of a motion to compel.[2]

## 2. Evidence That Other Class Members Exist

Defendants counsel has produced a list identifying the number of H-2B workers employed by it during the 2003-2006 period, App-10 to App-20, and has also produced worker files. (Sample copies at App-24 through App-61). These discovery documents show that TruGreen employed the following number of H-2B workers in each of the years at issue here:

---

[1] Throughout this brief, references to documents appearing in the Appendix filed with this motion are referred to as "App." followed by the appendix page number. References to the pages of previously filed appendices indicate the Docket Item number and "A-#" to indicate the page.

[2] Among other things, Defendants continue to refuse to provide information about the discretionary "bonus" payments paid to the class members at the beginning of the season.

| Year | Def. List | Worker Files |
|------|-----------|--------------|
| 2003: | 65 | 68 |
| 2004: | 83 | 91 |
| 2005: | 83 | 86 |
| 2006: | 115 | 171 |
| Total: | 346 | 416[3] |

*See Affidavit of Edward Tuddenham,* App-5.   The total number of different individuals in the class is probably lower than this number since some workers returned year after year.   Because Defendant redacted all of the identifying information from the documents provided, it is impossible for Plaintiff to tell how many of the workers are return workers.   At the very least the class consists of 115 - 171 different individuals and probably considerably more.   Although "numerosity" is not a requirement for an FLSA collective action,[4] even 115 class members is more than sufficient to satisfy the numerosity requirement for a Rule 23 class action. *See Stewart v. Abraham,* 275 F.3d 220, 226-227 (3rd Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a [Rule 23] class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.")

**3.  Evidence That Class Member Incurred The Same Expenses:**

Plaintiff's initial motion offered evidence from government web sites showing that all H-2B workers must pay $200 in visa fees and a $6 form I-94 fee.  *See* D.I. 16 at A 5 (Statement of Fact 3); DI 16 at A-35-48 (web sites).  Plaintiff also produced two forms which were given to him at the time

---

[3] The reason for the discrepancy between these two sources of information is not clear.

[4] *See Goldman v. Radio Shack,* 2003 WL 21250571 at *5 (E.D. Pa. 2003) (copy at DI 16 at A-79) ("FLSA claims are not subject to the usual Rule 23 class action requirements."); *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 368 (S.D.N.Y. 2007) ("for certification of a [FLSA] representative action no showing of numerosity, typicality, commonality, and representativeness need be made.")

he was hired in Mexico which indicated that he was responsible for $200 in visa fees, $155 in

administrative fees[5], and approximately $200 in travel expenses from Mexico to the job site. DI 16

at A-16, A-17. *See also* DI 16 at A-5 (Statement of Fact 4); at A-13 (*Affidavit of Ramon Villanueva*).

Plaintiff indicated that he understood that all other H-2B workers received the same disclosure form

and paid the same fees. D.I. 16 at A-6 (Statement of Fact 5). TruGreen has now produced individual

files for each of its H-2B workers. App. 5 (*Affidavit of Edward Tuddenham*); App-24 though App-

61 (sample copies of individual files). These files show that each H-2B worker did, in fact, sign two

forms similar to Plaintiff's which obligated the worker to pay $200 in visa fees, $155 in

administrative fees ($165 in 2006), and transportation to and from the United States. *Id.* The forms

go on to state:

> Neither LLS International nor the hiring "Employer" in the United
> States will be responsible for paying and/or returning his/her travel
> expenses, nor those resulting from processing the visa at the
> American Consulate. THIS IS SOLELY THE 'APPLICANT'S'
> RESPONSIBILITY.

App-27; App-32; App-37; App-40; App-44; App-48; App-53 (sample expense documents from

worker files); App-66 to App-75 (summary of voluminous expense documents produced by

Defendants). **Defendant admits that all H-2B workers incurred these expenses**. App-77 to App-

79 (response to Admission No. 1); App-97 (Deposition of James Vacchiano at 124 lines 4-9

---

[5] These fees were paid to an entity known as "LLS" which assisted workers which
worked with TruGreen's agent Great Lakes Labor to recruit H-2B workers for TruGreen. *See*
App-81 to App-86 (Defendants Response to Interrogatories 4 and 5). TruGreen designated LLS
as its "agent/representative" for processing visas. App-97 (deposition of J. Vacchiano, TruGreen
Regional Human Resource Manager) and App-104 (letter dated 2/23/2006 from J. Vacchiano to
U.S. Consulate designating LLS "to act as my agent/representative for the purposes of processing
visas at the Consulate in Monterrey" and indicating workers will be charged a fee of $165 by
LLS)

discussing expenses listed on TRU-94 (App-101 to App-103)).[6]

### 4. Evidence of That Recruitment Costs Were Not Reimbursed Up To FLSA Minimum

Defendant did <u>not</u> reimburse the visa, transportation and recruitment fees that each worker incurred and Defendant has never contended that it did. As Plaintiff pointed out in his initial motion, TruGreen's answer states that it lacked knowledge of the visa and transportation charges paid by H-2B workers, D.I. 8 at ¶¶ 19, 20, so it could not have had a policy to reimburse those specific costs. Rather, TruGreen contends that "branch managers had discretion to provide additional money to H-2B workers as they deem necessary and appropriate," and that this "bonus" money would have defrayed some portion of the expenses at issue. D.I. 18 attachment 1 (Affidavit of J. Vacchiano). In its order denying certification the Court indicated concern that those amounts may have meant that some or even all of the class members had no claim for reimbursement. In fact, Plaintiff has now deposed Mr. Vacchiano on this point and he stated that, after doing "some research on this," he determined that the branch offices provide between $75 and $250 per person. App-98 to App-99 (Depo. J. Vacchiano, p. 125 to 126). Defendant has resisted all attempts by Plaintiff to determine the exact "bonus" amount provided by each branch.[7] However, even if class members were paid the

---

[6] There is nothing contradictory about H-2B workers agreeing to be contractually bound to pay for their visa and transportation expenses and the claim in this action. TruGreen is fully within its rights to impose those costs on workers by contract as long as the workers earn the minimum wage. It is only if the contractual obligation to pay the expenses cuts into the minimum wage that the FLSA requires reimbursement. The contractual agreement is void as against public policy when it cuts into the minimum wage since a worker cannot contractually waive his right to receive the minimum wage. *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 706-707 (1945).

[7] Plaintiff's interrogatory number 31 asked Defendant:

Describe all "additional compensation" provided to H-2B workers by branch managers in 2003, 2004, 2005 and 2006. Your answer

highest amount, $250, there is a mathematical certainty that virtually all of them earned less than the

minimum wage during the first work week and thus present the exact same FLSA claim as Plaintiff.

This can be demonstrated quite easily:   The disclosure sheets signed by workers reveal that

each class member incurred a minimum of approximately $561 in visa-related fees ($571 in 2006).[8]

 If a worker worked at least 40 hours during his first week of work, and if those $561 in expenses

operated as *de facto* wage deductions as Plaintiff claims, then the worker would have been $561 in

the hole at the beginning of the week ($571 in 2006).  In order to earn the minimum wage of $5.15

per hour for each of his 40 hours of work, he would have had to have been paid at least $767  ($561

to offset the *de facto* deductions and $206 ($5.15/hour x 40 hrs.) to earn the minimum wage).

Assuming a worker was given the maximum "bonus" of $250 upon arrival, he would still need to

earn a minimum of $517 for the week to earn the minimum wage ($767-$250 = $517).  In order to

---

should identify the worker who received the compensation, the
amount provided, the date of payment and the purpose of the
"additional compensation."  The term "additional compensation"
has the same meaning in this interrogatory as in paragraph 4 of the
affidavit of James Vacchiano attached as Exhibit A to your
opposition to Plaintiff's motion to conditionally certify this as an
FLSA collective action.

App-87 to App-88.  Defendant objected to this request on the grounds that no collective action
has been certified.  *Id.*  Plaintiffs offered to narrow the request if Defendant would simply
provide the dollar amounts provided by each branch office (without specifying the name of the
worker who received the money). Defendant refused.  Plaintiff will be moving to compel an
answer to this interrogatory and if the Court considers the exact dollar amount of the bonuses to
be critical to the class determination, Plaintiff would request that Defendants be ordered to
respond to Interrogatory 31 before the Court rules on this motion.

    [8] $200 in visa application fees, $6 I-94 fee, $155 administrative fee, and approximately
$200 in transporation = $561.  In 2006 the administrative fee went up to $165 bringing the total
to $571. App-53 (translation at App-54); App-58 (translation at App-60) (sample expense
documents from 2006 worker files.

earn $517 for forty hours of work, a worker would have to be paid $12.93/hour ($517/40 = 12.93). (Of course if a class member worked fewer than 40 hours his first work week, which is likely to have happened if he arrived in the middle of the work week, he would have to be paid an even higher hourly rate to earn the minimum wage).

Examining the job offers signed by each worker, it is apparent that only 6 of the 242 H-2B workers employed by Defendant in 2003, 2004, and 2005 were offered wages of $12.93/hour. App-62 to App-65 (Summary of job offers); App-5 ¶6 (*Affidavit of Edward Tuddenham* explaining summary). All six of those workers were hired for the Yaphank, NY branch in 2004. **Thus, it is a mathematical certainty that, at the wage rates offered, all of the other 239 H-2B workers employed in 2003-2005 suffered a minimum wage violation during their first work week if Plaintiff's interpretation of the FLSA is correct, even if they received the maximum bonus of $250.** This holds true even if workers worked overtime during the first work week since DOL's regulations provide that an employer may not take more in deductions from workers who work overtime than it can take from a worker who works only 40 hours.[9] Of course the amount of each

---

[9] DOL regulations provide that,

deductions may be made . . . on the same basis in an overtime workweek as in a non-overtime workweek.. . . provided the amount deducted does not exceed the amount which could be deducted if the employee had only worked the maximum number of straight-time hours during the workweek. For example, in a situation where $1.60 an hour is the applicable minimum wage, if an employee is employed at a rate of $1.65 an hour (5 cents in excess of the minimum wage the maximum amount which may be deducted from his wages is a 40-hour workweek for items such as tools . . . or other articles which are not "facilities" within the meaning of the Act, is 40 times 5 cents or $2. **Deductions in excess of this amount for such articles are illegal in overtime workweeks as well as in non-overtime workweeks.**"

29 C.F.R. §531.37(a) (emphasis added). Plaintiff contends that the visa and travel costs at issue

worker's FLSA violation will vary with the worker's wage rate and the exact amount of the "bonus" he received, but this is a variation in the amount of *damages,* not in liability, since they all suffered an FLSA injury if Plaintiff's claim is correct, even if they received the maximum "bonus" amount of $250.[10]  Even the 6 workers in Yaphank would have an FLSA violation if they received less than the maximum possible bonus *or* if they happened to work less than 40 hours during their first workweek.[11]  In 2006 it is a mathematical certainty that if all workers received a $250 bonus 139 of 171 of them would still have a minimum wage violation, assuming Plaintiff's legal claim is correct. The remaining 32 workers would have to have received the maximum $250 bonus and have worked the full 40 hours to avoid a minimum wage violation.[12]

---

operate as *de facto* deductions just like tools and other non-"facilities." Pursuant to this regulation, an employer may not take any more in such deductions from a worker who works overtime during the first work week than he could if the worker only worked 40 hours.

[10]  Variations in the amount of damages suffered by each class member is not a basis for denying certification. *Brown v. MoneyTree Mortgage Inc.,* 222 F.R.D. 676, 682 (D.Kan. 2004) ("It is well established that individual questions with respect to damages will not defeat class certification . . . unless that issue creates a conflict which goes to the heart of the lawsuit.").  It should be stressed that in making this argument Plaintiff is not conceding that the "bonus" money may be used to offset a portion of the FLSA damages.  He is simply pointing out that *if* the bonus money operates as an offset, there is still a violation of the FLSA for all or virtually all of the class members.

[11]  The six workers might also have a violation if they were paid less than the $13.57/hour they were promised. App-65.  That may well be the case.  After all, Plaintiff was promised $11.34/hr. (DI 16 at A-16) but was actually paid $157.50 for 40 hours of work during his first work week – a rate of only $3.94/hr.  *See* Plaintiff's pay record at DI 41 at A-4.

[12]  If transportation cost only $150, as claimed by TruGreen (*see* Aff. J. Vacchiano at DI 18 Ex. A),  instead of $200, then a minimum of 2007 workers in the 2003-20905 period and 130 in 2006 would have had minimum wage violations even at the maximum bonus of $250 – more than enough to meet Rule 23 numerosity.  *Stewart,* 275 F.3d at 226-227.  Only 18 workers in 2003-2005 and 41 in 2006 could, even in theory, have earned minimum wage.

**5.  The Class Is Similarly Situated**

Thus, discovery obtained from Defendants demonstrates that there is a class of workers, including Plaintiff, who were contractually required to pay for their own visa, transportation and administrative expenses.  While Defendant had a practice of providing workers with "bonuses" during their first work week which may have defrayed some of those costs, it is a mathematical certainty that, even with those bonuses, the vast majority of the class members failed to earn the minimum wage during the first work week if, as Plaintiff alleges, those costs operate as *de facto* wage deductions for purposes of the FLSA.  Thus, the class is similarly situated in that  (1) they all incurred the same pre-employment expenses and (2) they all, or virtually all, experienced FLSA violations during the first work week if Plaintiff's legal claim is correct.

No doubt additional discovery will more clearly define the precise amount of each worker's FLSA violation, including whether the 6 workers from the 2003-2005 period and the 32 from 2006 have FLSA claims.   This is surely sufficient to satisfy the "similarly situated" standard at this conditional certification stage.  As the court noted court noted in *Mueller v. CBS, Inc.,* "to require conclusive proof of "similar situations" before providing notice to the absent class members 'would condemn any large class claim . . . to a chicken-and-egg limbo . . .'" *Id.* 201 F.R.D. 425, 429 (W.D. Pa. 2001) *quoting Sperling v. Hoffman-La Roche, Inc.,* 118 F.R.D. 392, 407 (D.N.J. 1988).  *See also, Bosely,* 2005 WL 1334565 at *5 (same); *Iglesias,* 239 F.R.D. at 369 ("Even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after full discovery, may enable more efficient resolution of the underlying issues in the case.")

14

**6.  Return Transportation Issues Does Not Defeat Certification.**

The primary issue argued by Defendants in opposition to the class was the claim that Defendants had paid for Plaintiff's return transportation.  In his deposition Plaintiff indicated that Defendants paid for only a portion of his return transportation and that Plaintiff had paid for the rest. While this factual dispute cannot be resolved at the conditional certification stage, it is a complete red-herring in any event.  The claim for reimbursement of the cost of return transportation (to the extent that cost cut into the minimum wage during the last work week) is a very minor part of Plaintiff's claim.  The common claim that makes the class 'similarly situated' is the claim for pre-employment expenses discussed above.  The return transportation claim is included simply because (1) it turns on the same legal issue as the pre-employment expenses – i.e. whether the expenses are "primarily for the benefit of the employer" as that phrase is defined by the Department of Labor, (2) the claim could arise with any member of the class since all class members were contractually bound to pay return transportation,[13] and (3) it is efficient to decide all of the FLSA claims that turn on the same legal theory in the same action.   If the Court disagrees or finds that including the last work week claim (based on the return transportation cost) is not appropriate, then the class claim can easily be limited to alleged minimum wage violations arising as a result of the pre-employment expenses imposed on all of Defendants' H-2B workers.

**C. LEGAL CONCERNS SUPPORT RECONSIDERATION AND CERTIFICATION**

**1.  Legal Questions Regarding The Applicability of *Arriaga v. Fla Pacific Farms* to H-2B Workers Are Best Decided In A Class Context**

"[I]n considering whether to certify a class, the court may not consider 'whether the plaintiff

---

[13]  *See* App-25, App-30, App-51, App-56 (Expense documents signed by workers indicating that return transportation was solely the responsibility of the worker).

or plaintiffs have stated a cause of action or will prevail on the merits.'" *Trotter v. Purdue Farms, Inc.,* 2001 WL 1002448 at *2 (D. Del. 2001) *quoting Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 178 (1974) (certifying FLSA collective action involving 16,000 workers in 6 different plants in 8 different states).  "Once the plaintiff makes a colorable claim for relief, the only inquiry necessary is whether potential plaintiffs to be notified are similarly situated to the named plaintiff. The court need not evaluate the merits of [a plaintiff's] claims in order to determine that a definable group of 'similarly situated' plaintiffs' exists." *Gjurovich v. Emmanuel's Marketplace, Inc.* 282 F.Supp.2d 101, 105 (S.D.N.Y 2003).

Although the Court properly recognizes that a decision on the merits is not appropriate on a motion for conditional certification, it cites *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 168 (3rd Cir. 2001), for the proposition that it is appropriate for the court to examine the factual and *legal* allegations carefully.  But as *Newton* makes clear, the examination of the legal issues is not to decide the merits of the claim  –  a consideration strictly forbidden by *Eisen,* 417 U.S. at 178 –  but "to determine whether the alleged claims can properly be resolved as a class action." *Id.* 259 F3d at 168.  Clearly the legal issues in this case not only can be decided in a class context, they ought to be decided that way.  The principal legal issues in the case noted in the Court's opinion are: (1) Whether the FLSA and its implementing regulations, properly construed, require an employer to reimburse the costs associated with the employer's long-distance recruitment program to the extent those costs cut into the statutorily mandated minimum wage, and (2) whether there is anything in the Immigration and Naturalization Act H-2B provisions that preempts the FLSA or otherwise deprives H-2B workers of the FLSA protection Plaintiff seeks to vindicate.  Both of those issues turn on statutory and regulatory interpretation that is most efficiently decided once, on behalf

16

of the entire class, rather than over and over again in separate individual actions in different courts.[14]

This is not a case like *Newton* where the court's analysis demonstrated that some of the legal elements of a Rule 10b-5 private securities fraud claim would require individualized proof such that individual questions would predominate over class questions and make the case impossible to try on a class basis. 259 F.3d at 190. To the contrary, the elements of Plaintiff's claim and the legal questions raised by that claim are all common to the class. Thus the legal analysis counseled by *Newton* favors conditional certification.

### 2. The H-2B Provisions Are Irrelevant To This Action

That said, given the Court's evident concern that the *Arriaga* holding may not extend to the H-2B workers in this case, it is worth emphasizing that **the holding in *Arriaga* was based on the requirements of the FLSA, which apply to all workers in the United States whether citizens or aliens, and was in no way based on the requirements of the H-2A program**. *See Recinos-Recinos v. Express Forestry, Inc.,* 2006 WL 197030 at *14 (E.D. La. 2006) (Copy at App-105) (concluding in a case brought by H-2B forestry workers that "the rationale employed by the *Arriaga* court applies to the H-2B program . . . . *Arriaga* is an FLSA case which does not hinge on any differences between the H-2A and H-2B guestworker program."). The H-2A provisions were only discussed in the *Arriaga* opinion because the defendant argued that those provisions somehow preempted the requirements of the FLSA – an argument the court rejected. *Arriaga*, 305 F. 3d at

---

[14] Because the issues raised by the FLSA claim are primarily legal issues, it is likely that the FLSA claim will be resolved on summary judgment. The parties may or may not be able to stipulate to a set of facts as was done in *Arriaga*, but even in the absence of a stipulation, it will be fairly simple for either party to put forth a set of uncontested facts to support a summary judgment motion. The facts surrounding Defendant's long distance recruitment program are simply not open to much debate.

1235 ("There has been no demonstration here that it is impossible to simultaneously comply with [the H-2A regulations and the FLSA regulations")). The Eleventh Circuit has recently extended the *Arriaga* decision to H-2B workers in *Morante-Navarro v. T&Y Pine Straw, Inc.,* 350 F.3d 1163, 1166 fn 2 (11th Cir. 2003). While there are, as yet, no other reported cases awarding *Arriaga* damages to H-2B workers, there are at least three cases that have certified collective actions by H-2B workers for reimbursement of visa and travel expenses: *Rivera v. Brickman Group Ltd.,* CA-05-1518 (E.D. Pa. Order Nov. 10, 2005) (copy at DI 16 at A-102); *Recinos-Recinos v. Express Forestry,* 233 F.R.D. 472, 475-477 (E.D. La. 2006); *Salinas-Rodriguez v. Alpha Services, LLC,* 2005 WL 2557178 (S.D. Miss. 2005). While the H-2A regulations promulgated under the Immigration and Naturalization Act (INA) were irrelevant to *Arriaga* decision, Defendants argue that the H-2B provisions of the INA are different and should lead to a different result. As noted above, the Court should not consider such arguments at the certification stage (except to note that they present issues common to all class members). Even if it were to consider those arguments, nothing in the H-2B provisions of the Immigration and Nationality Act (INA) (or the H-2A provisions for that matter) impliedly repeal the requirements of the FLSA. Where two statutes touch on the same subject matter, in this case the costs associated with long-distance recruitment, the general rule is that both statutes should be given effect, absent some explicit indication that the later statute is intended to repeal the prior statute. *J.E.M. Ag Supply, Inc v. Pioneer Hi-Bred Intn'l., Inc.* 534 U.S. 124, 43-144 (2002) ("[W]hen two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective"); *Morton v. Mancari,* 417 U.S. 535, 551 (1994) (same). Repeal by implication is "only permissible . . . when the earlier and later statutes are irreconcilable." *J.E.M. AG Supply, Inc.,* 534 U.S. at- 141-142; *Morton,* 417

U.S. at 550. This is particularly true of statutes addressing labor standards such as the FLSA. The Supreme Court has noted that "the coverage of the [FLSA] overlaps that of other federal legislation affecting labor standards." *Powell v. U.S. Cartridge Co.,* 339 U.S. 497, 518 (1950). Nevertheless, where such overlap occurs, courts should not be permitted to construe the overlapping statutes as "mutually exclusive" of one another unless there is "a demonstration of the impossibility of determining, in each instance, the respective wage requirements under each Act and then applying the higher requirement as satisfying both." *Id.* at 519 (holding that application of Walsh-Healey Act to a labor contract did not preclude simultaneous application of the FLSA). It does not matter that the INA specifically addresses immigration while the FLSA sets minimum wage and hour standards for employees generally. Absent explicit overruling of one statute by another or a clear showing of incompatibility, the requirements of these two overlapping statutes must be viewed as "mutually supplemental." *Id.* at 520.

In the case at hand, the INA does not expressly overrule the FLSA. Nor is there any incompatibility between the requirements of the two statutes that would support repeal by implication. The only provision in the INA touching on the expenses at issue here is a provision that requires employers of H-2B, H-1B, O, and P visa workers to pay return transportation when they terminate visa workers early.[15] 8 U.S.C. §1184(c)(5). That provision is in no way incompatible with the FLSA requirement that an employer reimburse "business expenses" – such as visa and travel costs – to the extent, and only to the extent, that they cut into the statutory minimum wage. An employer can easily comply with that FLSA requirement without running afoul of the INA in any

---

[15] The provisions of the H-2A program requiring reimbursement of travel expenses after completion of 50% of the visa period are regulatory, not statutory.

19

way.  Conversely, in the one instance where the INA sets a higher standard than the FLSA by requiring full reimbursement of return transportation upon early termination regardless of the worker's earnings, compliance with the INA standard will more than satisfy the FLSA requirement of reimbursement of travel expenses up to the minimum wage level.  Thus, just as in *Powell v. U.S. Cartridge*, it is quite simple to determine in any given situation which Act's requirements set the higher standard, *id.* at 519, and compliance with that standard will satisfy both statutes.  *Id* at 519.  In these circumstances, the INA is simply irrelevant to the FLSA rights of Plaintiff and the other H-2B workers employed by Defendant.

### D.  THE REMEDIAL PURPOSES OF THE FLSA WILL BE SERVED BY RECONSIDERING THE DENIAL OF CONDITIONAL CERTIFICATION

In adopting the FLSA, Congress recognized "the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health [and] efficiency. . . ." *Brooklyn Savings Bank,* 324 U.S. at 706.  The Act was designed to protect "employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Id.* at 707 fn. 18.   By adopting 29 U.S.C. §216(b), Congress stated its policy that FLSA plaintiffs should have the opportunity to vindicate these basic rights collectively.  A collective action serves the broad remedial goals of the FLSA because it "allows [ ] plaintiffs the advantage of lower individual costs to vindicate rights by pooling of resources."  *Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989).  Moreover, "[t]he judicial system benefits by efficient resolution in one proceeding of common issues arising from the same alleged [illegal] conduct." *Id.*  In this case, a collective action is particularly important because the class members are low-wage foreign workers

who, for the most part, are likely to be unaware of their rights under the FLSA. Absent notice to these workers, it is doubtful that they will ever be able to vindicate their rights – a result that not only harms them, but that defeats the very goals that Congress sought to achieve with the FLSA. Issuing notice will cause Defendants no harm. The costs of litigating the central FLSA issue – whether visa and travel expenses of foreign workers operate as *de facto* wage deductions for purposes of the FLSA – will not be significantly different whether there is one Plaintiff in this case or many. And, if Plaintiff's theory is as off the mark as Defendants contend, Defendant will have no liability regardless of the number of plaintiffs. Conversely, if Plaintiff is correct that the FLSA is violated when such expenses depress wages below the statutory minimum, it is only fair that all of Defendants' workers who incurred those expenses and received less than minimum wage receive their lawful wages.

## CONCLUSION

For all of the foregoing reasons, this Court should reconsider its order denying conditional certification of an FLSA class or, alternatively, treat this motion as an amended motion for conditional certification, grant conditional certification and issue notice to the class members.

Respectfully submitted,

/s/ Vivian Rapposelli
_____
Vivian L. Rapposelli
DE Bar No. 3204
Rapposelli & Gonzales
1300 Grant Ave., Suite 100
Wilmington, Delaware 19806
Tel: 302-652-8711

21

Edward Tuddenham
Tx Bar No. 20282300
153 Upland Rd.
Cambridge, Mass 02140
617-576-2182

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

 I certify that on this 29th day of March 2006, I served the foregoing document on Defendants by mailing by e-mailing it to the Defendant's attorneys as follows:

Michael P. Kelly   Mkelly@mccarter.com
McCarter & English
Citizens Bank Building
919 N. Market St.  18th Floor
Wilmington, Delaware 19801

Michael Banks   sbouchard@morganlewis.com
Sarah Bouchard
Morgan Lewis
1701 Market St.
Philadelphia, Pa. 19103

        S/ Edward Tuddenham

        _____

        Edward Tuddenham