IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RAMON VILLANUEVA-BAZALDUA, )
individually and on behalf of others )
similarly situated, )
                                )      Civil Action No.: 06-185 (GMS)
      Plaintiff, )
                                )
      v. )
                                )
TRUGREEN LIMITED PARTNERS and, )
TRUGREEN, INC., d/b/a TRUGREEN )
CHEMLAWN, )
                                )
      Defendants. )

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR RECONSIDERATION OF MOTION TO CONDITIONALLY CERTIFY
FLSA COLLECTIVE ACTION OR ALTERNATIVELY
AMEND MOTION FOR CONDITIONAL CERTIFICATION**

Michael P. Kelly (Del. Bar ID #2295)
McCARTER & ENGLISH, LLP
Citizens Bank Building
919 N. Market Street, 18th Floor
Wilmington, DE 19801
Phone: (302) 984-6300

OF COUNSEL:
MORGAN, LEWIS & BOCKIUS LLP

*Admitted Pro Hac*
Michael L. Banks (Pa. I.D. #35052)
Sarah E. Bouchard (Pa. I.D. #77088)
1701 Market Street
Philadelphia, PA 19103-2921
Phone: (215) 963-5387/5077

April 16, 2007                      Attorneys for Defendants

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ...................................................................................................... 1

II.     ARGUMENT .............................................................................................................. 4

      A.      Plaintiff's Suggestion That "New" Information Surfaced to Justify
             Reconsideration of His Motion for Conditional Certification Should
             Be Viewed With a Critical Eye .......................................................................... 4

      B.      The Dearth of Evidence That Other TruGreen H-2B Workers Are
             "Similarly Situated" to Plaintiff and Fundamental Differences In
             Putative Class Members Has Not Been and Cannot be Corrected ..................... 5

            1.      Plaintiff confirms that TruGreen does not have a uniform
                    policy or plan with respect to expense reimbursement ........................... 6

            2.      Plaintiff admits that there are highly individualized, fact-intensive
                    questions to be answered as to each H-2B worker, which
                    preclude collective treatment .................................................................. 7

      C.      The Remedial Purposes of the FLSA, As Well As Those of the Various
             Immigration Laws, Will Be Undermined – Not Served – If This
             Action Were To Proceed As a Collective Action .............................................. 9

III.    CONCLUSION ......................................................................................................... 12

## TABLE OF AUTHORITIES

### FEDERAL CASES

Basco v. Wal-Mart Stores, Inc., No. Civ. A. 00-3184, 2004 WL 1497709
(E.D. La. July 2, 2004)......................................................................................9

England v. New Century Finance Corp., 370 F. Supp. 2d 504 (M.D. La. 2005) ...............6

Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358 (M.D. Ala. 1999)....................................7

Lemus Guerrero v. Brickman Group, LLC, No. 1:05-CV-00357-DT,
2007 WL 922420 (W.D. Mich. Mar. 26, 2007)........................................................2, 8

Moeck v. Gray Supply Corp., No. 03-1950 (WGB), 2006 WL 42368
(D.N.J. Jan. 6, 2006) ......................................................................................8

West v. Border Foods, Inc., No. 05-2525, 2006 WL 1892527
(D. Minn. July 10, 2006)..................................................................................9

### FEDERAL REGULATIONS

8 C.F.R. § 214(h)(4)(iii)(E)..........................................................................10, 11

20 C.F.R. § 655.102(b)(5)..............................................................................10

29 C.F.R. § 531.32(c)....................................................................................10

31 Fed. Reg. 148401 .....................................................................................11

42 Fed. Reg. 4670-71 ....................................................................................11

52 Fed. Reg. 16775 ......................................................................................11

### MISCELLANEOUS

The H-2 Program and Non-Immigrants: Hearing before Subcomm. on
Immigration and Refugee Pol'y, Sen. Comm. on the Judiciary, 9th Cong.,
1st Sess. (Nov. 30, 1981) ...............................................................................11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RAMON VILLANUEVA-BAZALDUA, )
individually and on behalf of others )
similarly situated, )
) Civil Action No.: 06-185
Plaintiff, )
)
v. )
)
TRUGREEN LIMITED PARTNERS[1] and, )
TRUGREEN, INC.[2], d/b/a TRUGREEN )
CHEMLAWN[3], )
)
Defendants. )

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION FOR RECONSIDERATION OF MOTION TO CONDITIONALLY CERTIFY
## FLSA COLLECTIVE ACTION OR ALTERNATIVELY
## AMEND MOTION FOR CONDITIONAL CERTIFICATION

## I.    INTRODUCTION

Plaintiff Ramon Villanueva-Bazaldua ("Plaintiff") has offered absolutely nothing to

warrant the Court's reconsideration of its reasoned opinion denying Plaintiff's April 2006 motion

for conditional certification. Moreover, he certainly has not offered anything to warrant a second

bite at the conditional certification apple through the use of a purportedly "amended" motion. To

the contrary, the essential points on which the Court premised its decision remain unaffected by

Plaintiff's second effort. That is, it remains undisputed (and indisputable) that:

- Defendant TruGreen Limited Partnership ("TruGreen") does not have any uniform
  policy or practice regarding reimbursement of H-2B worker expenses (because there
  is no legal obligation to account for those items for H-2B workers) and, instead,

---

[1]    The correct legal name is TruGreen Limited Partnership.

[2]    TruGreen, Inc. was not Plaintiff's employer, and therefore, is not a proper party in this action.

[3]    TruGreen, Inc. does not do business as (d/b/a) TruGreen Chemlawn; TruGreen Limited Partnership does do
business as (d/b/a) TruGreen Chemlawn.

leaves all such decisions regarding incidental payments not connected to hours worked or other compensation to the individual Branch Manager's discretion;

♦ There are highly individualized differences as to what extent individual H-2B workers received unconditional payments upon their arrival at the various branches, as well as differences in hours worked and compensation earned in their first workweek such that it is impossible to determine on a collective basis whether H-2B workers, if any, were adversely impacted by any individual Branch Manager decisions; and

♦ Despite having more than 13 months since he filed his Complaint, Plaintiff still has yet to identify *any* other TruGreen H-2B worker (current or former) who feels that he or she has been harmed by TruGreen as Plaintiff purports.

Plaintiff's "alternative" – treating his request for reconsideration as an "amended" motion for conditional certification – is even more egregious and unwarranted. First, Plaintiff initially argued that pre-conditional certification discovery was unnecessary. Yet, now that he lost that motion, he suggests that he should be permitted a second chance to obtain conditional certification in light of certain "recent" discovery. However, nothing Plaintiff has brought before the Court is new or novel, and each of these theories and arguments already has been considered in one form or another by the Court. In fact, Judge Cleland of the Western District of Michigan also considered the *same* evidence and arguments Plaintiff has brought to the Court's attention twice to date and, consistent with this Court's decision, rejected both as "insufficient" for conditional certification just days after this Court's original decision.[4] Furthermore, all of this allegedly "new" information had been available to Plaintiff months prior to the Court's decision, and it remains unclear why Plaintiff believes it was necessary to bring such allegedly vital information to the Court's attention only *after* it had rendered a decision unfavorable to Plaintiff.

Put simply, despite every opportunity to develop a legally sufficient argument, Plaintiff still has no viable basis on which to obtain conditional certification in this matter – because no

---

[4] See Lemus Guerrero v. Brickman Group, LLC, No. 1:05-CV-00357-DT, 2007 WL 922420, at *3 (W.D. Mich. Mar. 26, 2007).

such basis exists.  Indeed, if anything, all that Plaintiff's second-effort has shown is that conditional certification is unwarranted and inappropriate as a matter of law and that the Court's decision regarding conditional certification should stand without further consideration.

## II.    ARGUMENT

### A.    Plaintiff's Suggestion That "New" Information Surfaced to Justify Reconsideration of His Motion for Conditional Certification Should Be Viewed With a Critical Eye.

Plaintiff filed three substantive briefs in this action, all of which are virtually identical. (Compare Plaintiff's Brief in Support of Expedited Motion to Conditionally Certify FLSA Collective Action (Docket No. 20, filed May 22, 2006), to Plaintiff's Supplemental Brief in Support of Expedited Motion to Conditionally Certify FLSA Collective Action (Docket No. 41, filed November 2, 2006), to Plaintiff's Brief in Support of Motion for Reconsideration of Motion to Conditionally Certify An FLSA Collective Action or Alternatively Amended Motion for Conditional Certification (Docket No. 46, filed March 29, 2007)).  Although nearly ten months passed between the first and third submissions, the *only* additional information Plaintiff has provided in his most recent submission is slightly more factual detail to the *same* theories and hypotheticals that have been put before the Court beginning May 22, 2006.  That factual detail, however, does not constitute "new" information for which reconsideration or amendment is justified.

First, Plaintiff proclaims that he now has obtained "[e]vidence that class members incurred the same expenses."  (Docket No. 46, at pp. 8-9.)  That point never has been in dispute, and, in any event, the "evidence" cited by him – forms produced *by him* and information from a governmental website – was available to him well before he filed this request for reconsideration.  The additional information produced by Defendant merely confirms what Plaintiff already knew (and, again, was not disputed by TruGreen).  Plaintiff then asserts that he has obtained "[e]vidence of that recruitment costs were not reimbursed up to the FLSA minimum."  (Docket No. 46, at pp. 10-13.)  Once again, this "evidence" is simply a variation on the same theory with additional factual detail:  individual branch managers have the discretion to

provide unconditional payments at the inception of employment that may or may not be used by the individual to recover expenses related to their employment. Plaintiff adds to his theory by providing an example of how an H-2B worker might be able to show harm under the circumstances – just as he provided a similar hypothetical in his initial moving papers and just as TruGreen provided a similar hypothetical (showing how an individual H-2B worker might not be harmed at all under the circumstances). (See Docket No. 46, at p. 8 n.7; Docket No. 18, at p. 9.) From that "evidence," Plaintiff reiterates the same speculative, conclusory, and misplaced arguments that the putative class is "similarly situated" and that the "legal concerns" raised in Arriaga v. Florida Pacific Farms somehow apply to this case.

Contrary to his characterizations, Plaintiff has offered nothing new to justify reconsideration of his motion for conditional certification. Indeed, it is somewhat incredible for Plaintiff to premise his request for reconsideration on purportedly new discovery when he initially opposed pre-notice and pre-conditional certification discovery at the outset. TruGreen had to file a motion to obtain expedited discovery from Plaintiff, whereas TruGreen has voluntarily produced more than 3,000 pages of documents to Plaintiff (including immigration documents from TruGreen's Mexican and domestic recruiting agents) beginning since in or about October 2006. Accordingly, taken together, Plaintiff's suggestion that his motion for reconsideration or, alternatively, "amended" motion for conditional certification should be granted because of newly discovered information after the Court's decision is undermined by the actual sequence of events.

**B.     The Dearth of Evidence That Other TruGreen H-2B Workers Are "Similarly Situated" to Plaintiff and Fundamental Differences In Putative Class Members Has Not Been and Cannot be Corrected.**

The Court very clearly identified the fundamental flaws in Plaintiff's motion for conditional certification: (1) the absence of any evidence regarding harm to other employees; (2)

the absence of any uniform, national policy affecting reimbursement/compensation for H-2B expenses; and (3) factual differences in "whether a putative class member received full reimbursement, partial reimbursement or no reimbursement at all." Plaintiff does not dispute the standards or legal authority cited by the Court, and does not even attempt to identify any other individual who believes he or she has been harmed as Plaintiff suggests he has been harmed. Instead, Plaintiff attempts to fill in the gaps regarding the "uniform policy" and differences among putative class members, but those attempts actually further the Court's conclusions – that Plaintiff cannot satisfy any of these necessary (albeit lenient) standards.

   1.  **Plaintiff confirms that TruGreen does not have a uniform policy or plan with respect to expense reimbursement.**

   Plaintiff initially argued (and continues to argue) that TruGreen's "uniform policy" is not to reimburse H-2B-related expenses, going so far as to quote the form from TruGreen's Mexican recruiting agent that travel and visa expenses are "SOLELY THE APPLICANT'S RESPONSIBILITY." (Docket No. 46, at p. 9.) However, Plaintiff undermines his own effort to create the appearance of a "uniform" policy, because he admits (as he must) that *he* was paid $150 upon his arrival at the Delaware Branch to be used for whatever purposes he deemed appropriate (including to cover expenses) and that he received from TruGreen a one-way plane ticket in order to return to his home. Thus, even if one reads the policy, it is clear that it is not – as it must be for purposes of conditional certification – a "uniform" policy. To the contrary, as the Court recognized in its Opinion, how that policy regarding expenses ultimately impacted each H-2B worker *in practice* necessarily requires an individualized inquiry for each H-2B worker. Accord England v. New Century Fin. Corp., 370 F. Supp.2d 504, 508 (M.D. La. 2005) (noting that an FLSA collective action is only appropriate when there is "a demonstrated similarity among the individual situations . . . some factual nexus which binds the named

plaintiffs and the potential class members together as victims of a particular alleged policy or practice"); Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358 (M.D. Ala. 1999) (denying conditional certification because "there is a total dearth of factual support for Plaintiff's allegations of widespread wrongdoing at Defendant's other [locations]").

Indeed, this fact cannot be disputed by Plaintiff no matter how many times he seeks to recharacterize his arguments. TruGreen has been clear since the day it filed its Answer: there are no legal obligations for it to reimburse these expenses, but if Branch Managers want to incur some or all of those expenses, they are free to do so at their own discretion. All of the discovery to date has only further reinforced this point, and nothing Plaintiff has attempted to bring before the Court (again) can alter this fundamental (and dispositive) truth.

**2.    Plaintiff admits that there are highly individualized, fact-intensive questions to be answered as to each H-2B worker, which preclude collective treatment.**

Plaintiff dedicates at least three pages to explain by example how it is possible that individual H-2B workers at TruGreen *could have been* paid less than the minimum wage in their first work week if H-2B-related expenses were accounted for. (Docket No. 46, at pp. 11-13.) However, this example merely stands in contrast to the example TruGreen put forth in its May 2006 brief (Docket No. 18) – a similar example of how individual H-2B workers *could not have been* paid less than the minimum wage in their first work week, even accounting for the H-2B-related expenses. The differences between the conclusions drawn from the parties' chosen examples depend directly on four variables: branch location, the size of the initial payment, the individual's compensation, and the hours worked. Indeed, even Plaintiff concedes that there *could be* an entire branch (Yaphank) that has not been negatively impacted by TruGreen's practices with respect to reimbursement/compensation practices at any time during the putative class period. In short, these two examples reveal exactly why this matter is not appropriate for

collective treatment – because whether an individual actually has been harmed by an allegedly uniform "policy" or practice depends on highly individualized, fact-specific inquiries. Accord Moeck v. Gray Supply Corp., No. 03-1950 (WGB), 2006 WL 42368, at *4 (D.N.J. Jan. 6, 2006) ("Because of the many potential distinctions of each putative class member's claim, the Court finds that this case is not an appropriate one for class action certification, even at this early stage in the litigation.") (A copy is attached hereto as Exhibit A.)  See also Lemus Guerrero v. Brickman Group, LLC, No. 1:05-CV-00357-DT, 2007 WL 922420, at *3 (W.D. Mich. Mar. 26, 2007) (concluding that "Personnel Action Forms, Earnings Statements, and Applications for Employment Certification . . . [are] insufficient" to make even a modest showing that the putative class members were similarly situated).  (A copy is attached hereto as Exhibit B.)

Moreover, the assumptions made by Plaintiff in his most recent submission are undermined by his own experiences, further weakening his position that there is some "mathematical certainty" of collective harm.  Most notably, Plaintiff conveniently assumes that the wage identified on the "disclosure sheets" executed in Mexico is the actual wages paid to the individual H-2B workers.  However, Plaintiff admitted in his deposition that *he* was not paid according to the disclosure sheet; instead, when he arrived in Delaware, he agreed to a different compensation plan.  As is evident from the list of workers attached to Plaintiff's Appendix (Docket No. 48, at App-12), whether any H-2B worker was paid hourly or through a special compensation plan is an individual determination that varied from year to year among the ever-changing mix of H-2B workers from year-to-year.[5]

In light of all of the above, it is clear that neither the remedial purposes of the FLSA nor the interests of judicial economy will be advanced by overlooking the facts as Plaintiff's most

---

[5]    The chart attached to Plaintiff's Appendix also makes clear that the jobs held by individual H-2B workers similarly varied from among branches each year.  As such, there necessarily will be variations in job duties, among other things.

recent motion requests. See West v. Border Foods, Inc., No. 05-2525, 2006 WL 1892527, at *7

(D. Minn. July 10, 2006) (A copy is attached hereto as Exhibit C.); Basco v. Wal-Mart Stores,

Inc., No. Civ. A. 00-3184, 2004 WL 1497709, at *5 (E.D. La. July 2, 2004) ("To create a

collective action class, including the cost associated with that when a Court is convinced that

there is insufficient support for the same prior to certification would be an exercise in futility and

wasted resources for all parties involved"). (A copy is attached hereto as Exhibit D.)

**C.    The Remedial Purposes of the FLSA, As Well As Those of the Various Immigration Laws, Will Be Undermined – Not Served -- If This Action Were To Proceed As a Collective Action.**

Tellingly, Plaintiff dedicates nearly one-third of his brief in further support of conditional

certification on his efforts to effect changes to existing immigration law. (Docket No. 46, pp. 15-

21.) Still intent to extend the protections afforded only to H-2A workers and extended in Arriaga

to H-2B workers, Plaintiff seeks reconsideration of the Court's decision regarding conditional

certification based on his disagreement and dissatisfaction with the current state of the law as it

relates to H-2B workers. As the Court already recognized, however, Arriaga does not have a

clear application to Plaintiff or any other H-2B worker, for it "involved the H-2A program,

which stems from a different set of regulations and obligations for the employer." (Docket No.

44, at p. 9.) In any event, as the Court further recognized, the resolution of that legal issue is not

germane to Plaintiff's motion for conditional certification, but the highly tenuous legal premise

on which Plaintiff seeks to move forward justifiably concerned the Court of opening it and

TruGreen to the expense of managing a nationwide opt-in collective action. Nothing Plaintiff

has brought before the Court undermines that position.

Instead, Plaintiff's continued efforts to extend Arriaga only more clearly reveal that he is

attempting to effect improperly legislative changes. This effort is improper not only because he

is circumventing the legislature by going through the courts, but also he is circumventing

specific and relevant immigration law by attempting to state a claim under the FLSA's general catch-all provision.

It is evident from both the framework and legislative history of both the Immigration and Naturalization Act (INA) and Immigration Reform Control Act (IRCA) that Congress intended those statutes to address the very issues Plaintiff is attempting to shoehorn into the FLSA. Neither the FLSA nor any of its myriad interpretive regulations addresses whether or when an employer is responsible for the relocation costs incurred by an H-2B (or any other non-immigrant) worker. Indeed, the only mention of transportation expenses relates to maintenance of way workers who must travel as part of their job. See 29 C.F.R. § 531.32(c) (referring to transportation costs incurred by employees who travel as a necessary part of their jobs *"as in the case of maintenance-of-way employees of a railroad"* as an expense that is "primarily for the benefit of the employer" under the FLSA) (emphasis added). By stark contrast, both the INA and the DOL's immigration regulations very specifically define when an employer is responsible for non-immigrant worker relocation costs. Compare 8 C.F.R. § 214(h)(4)(iii)(E) (defining limited circumstances when employer is responsible for return transportation of non-immigrant worker) and 8 C.F.R. § 214(h)(6)(vi)(E) (defining limited circumstances when employer is responsible for return transportation of non-immigrant worker) with 20 C.F.R. § 655.102(b)(5) (defining very specific circumstances when employer is responsible for a number of relocation expenses incurred by non-immigrant workers). In this framework that has developed over the years, Congress and the DOL made deliberate choices *under immigration law* about when an employer bears non-immigrant workers' relocation expenses. For H-2B workers, those situations in which they are entitled to reimbursement for travel and immigration-related expenses are limited *only* to those situations in which an H-2B visa holder is involuntarily

terminated before the expiration of his stated term of employment. See 8 C.F.R. §

214(h)(6)(vi)(E). As such, Plaintiff's efforts now to use the FLSA to get what Congress and the

DOL specifically did not intend to provide would completely undermine years of precedent and

rule-making.

That Congress and the DOL choose to deal with these issues under the rubric of

immigration law rather than the FLSA cannot be dismissed as coincidence. The INA and the

FLSA have been interpreted and enforced concurrently by the DOL for more than fifty years. In

all of that time, the DOL consistently has addressed all issues relating to non-immigrant worker

expenses through the INA, concluding each time that such expenses were not reimbursable to the

employee. See 31 Fed. Reg. 148401 (contemplating 1968 amendments to H-2 rules); 42 Fed.

Reg. 4670-71 (contemplating 1977 amendments to H-2 rules); and 52 Fed. Reg. 16775

(contemplating 1987 amendments to H-program rules). At no time was the FLSA ever raised by

the DOL or any interested party as an impediment or even as a complement to the INA or its

regulations. See also The H-2 Program and Non-Immigrants: Hearing before Subcomm. on

Immigration and Refugee Pol'y, Sen. Comm. on the Judiciary, 9th Cong., 1st Sess. (Nov. 30,

1981), at 2-6, 13, 19-21, 22, 51-52, 60, 78-79, 105.

In short, the propriety of avoiding the necessarily significant investments of a collective

action is even more evident given that the very theory of Plaintiff's case is one that is in conflict

with existing law. Stated another way, Plaintiff's desire to effect changes to the immigration

laws does not justify notice or conditional certification.

III.   **CONCLUSION**

The Court's March 19, 2007 Opinion need not be reconsidered in whole or in part, for it

is grounded entirely in the undisputed facts and applicable law.  Plaintiff has had more than a

year to develop a legally sufficient basis on which to seek conditional certification, and it is

eminently clear that he will be unable to do so.  As such, there is no viable reason to allow

Plaintiff to continue to hold the threat of collective action and to force TruGreen to engage in

even more certification-related discovery that ultimately will prove futile.

McCARTER & ENGLISH, LLP

/s/ Michael P. Kelly
Michael P. Kelly (Del. Bar ID #2295)
Citizens Bank Building
919 N. Market Street, 18th Floor
Wilmington, DE  19801
(302) 984-6300


MORGAN, LEWIS & BOCKIUS LLP
*Admitted Pro Hac*
Michael L. Banks (Pa. I.D. #35052)
Sarah E. Bouchard (Pa. I.D. #77088)
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5387/5077

Dated:  April 16, 2007                    Attorneys for Defendants

## <u>EXHIBIT A</u>
Villanueva-Bazaldua v. TruGreen, et al.
Civil Action No. 06-185

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2006 WL 42368 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

C

Moeck v. Gray Supply Corp.
D.N.J.,2006.
Only the Westlaw citation is currently available.NOT
FOR PUBLICATION
       United States District Court,D. New Jersey.
   Ronald MOECK and James Wilbur, Jr., on behalf of
themselves and all others similarly situated Plaintiffs,
                         v.
       GRAY SUPPLY CORPORATION, Defendant.
                No. 03-1950 (WGB).

                    Jan. 6, 2006.

Jed Mendelson, Mark Tabakman, Grotta, Glassman
& Hoffman, P.A., Roseland, New Jersey, for Defend-
ant Gray Supply Corporation.
Paul G. Hunezak, Stephen A. Snyder, Morris, Down-
ing & Sherred, LLP, Newton, New Jersey, for
Plaintiffs.

                 *MEMORANDUM OPINION*
BASSLER, Senior J.
**\*1** Plaintiffs, former employees of Defendant Gray
Supply Corporation ("Company" or "Gray"), claim
that Defendant failed to pay Plaintiffs overtime that
they were entitled to, which violated the Fair Labor
Standards Act ("FLSA") and the New Jersey Wage
and Hour Law ("Wage and Hour Law"). Plaintiffs
also bring claims for fraud and negligent misrepres-
entation. Defendant now moves for summary judg-
ment, and Plaintiffs move to certify a class on behalf
of similarly situated employees who were required by
Defendant to work overtime without pay.

          I. Factual Background [FN1]

        FN1. All facts have been construed in the
        light most favorable to Plaintiffs, the non-
        moving party. *Boyle v. Allegheny
        Pennsylvania,* 139 F.3d 386, 393 (3d
        Cir.1998).

Defendant Gray is in the business of installing natural
gas lines and mains for residential and commercial
purposes. Amended Complaint ("Am.Compl.") ¶ 2.
The assigned work hours for employees at Gray is

from 7:30AM to 4:00PM with a thirty-minute lunch
break. Declaration of Tabakman ("Tabakman Dec."),
Moeck Dep., Ex., B 86:20-87:11. Employees are re-
quired to work an additional thirty minutes at both
the beginning and the end of their shifts. Tabakman
Dec., Dipasquale Dep., Ex. E, 20:20-21:13,
26:23-27:13. This time is referred to as "free time"
by Gray's management. *Id.* Plaintiffs claim that since
1991, they and other Gray employees have not re-
ceived pay for this additional hour worked. Am.
Compl. ¶ 16. They further allege that they were in-
formed that refusal to work overtime was grounds for
termination. Tabakman Dec., Wilbur Dep., Ex. D,
53:13-14.

Plaintiff Moeck has worked for Gray three times. He
began working around 1991 or 1992 until February
2002. He left for a year and returned to work at Gray
from 1994 to 1996. He then left for another year and
joined the Company again in 1997 until he resigned
in February 2002. Tabakman Dec., Moeck Dep., Ex.
B, 7:20-24; 8:22-10:5; 11:14-20; 12:17-13:12;
13:25-14:10. Moeck testified that he had complained
to the shop steward of his union and to his super-
visors since 1992 about having to work free time. *Id.*
at 19:23-20:2; 21:2-22:8; 23:5-24:4, 35:8-19.

Plaintiff Wilbur began working for Gray in 1994.
Tabakman Dec., Wilbur Dep., Ex. D, 12:8-12. After
his first day of employment, he was informed that he
should be at work a half hour early. *Id.,* 50:6-51:13;
127:4-128:8; 129:9-12. Wilbur also testified that he
complained to his shop steward. *Id.* at 17:11-23;
55:17-25. Wilbur was laid off from Gray on April 4,
2002. *Id.* at 35:4-10.

At issue here is:
• Whether the FLSA preempts Plaintiffs' state com-
mon law claims.
• Whether the Labor Management Relations Act
preempts all of Plaintiffs' claims.
• Whether Plaintiff Wilbur's FLSA and New Jersey
Wage and Hour Law claims are time-barred.

The Court finds that the FLSA does preempt
Plaintiffs' state common law claims, the Labor Man-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                  Page 2
Not Reported in F.Supp.2d, 2006 WL 42368 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

agement Relations Act does not preempt Plaintiffs'
FLSA action and Wilbur's Wage and Hour Law
claims are time-barred.

This Court has jurisdiction over this case pursuant to
28 U.S.C. §§ 1331 & 1337(a) and supplemental juris-
diction over the remaining New Jersey statutory and
common-law claims pursuant to 28 U.S.C. § 1367.

**II. Fraud and Misrepresentation Claims Preempted by
FLSA**

**\*2** Counts three through six-Plaintiffs' fraud and neg-
ligent misrepresentation causes of action based on
Gray's alleged affirmative misrepresentation and fail-
ure to disclose-are derived completely from Plaintiffs'
overtime claims. Defendant argues that these counts
are therefore preempted by the FLSA. The Court
agrees.

Although the law is unsettled as to whether the FLSA
preempts state common law causes of action, most
courts have held that claims directly covered by the
FLSA (such as overtime), must be brought under the
FLSA. *See e.g., Chen v. Street Beat Sportswear Inc.,*
364 F.Supp.2d 269 (E.D.N.Y.2005). Courts that have
considered this issue analyze whether the FLSA and
common law claims are grounded in the same facts.
*Petras v. Johnson,* No. 92 CIV. 8298(CSH), 1993
WL 228014, at \*3 (S.D.N.Y. June 22, 1993) is in-
structive.

In *Petras,* which is similar to this case, the plaintiff
alleged "fraud on the ground that the defendants
knowingly and with intent to misrepresent and de-
ceive the plaintiff made false representations to him
to lead him to believe that he was not entitled to over-
time compensation." *Id.* The court held that plaintiff's
allegations of fraud "lies simply in concealing
plaintiff's rights under the FLSA" and that the FLSA
was the exclusive remedy for overtime payments. *Id.;
see also Alexander v. Vesta Ins. Group, Inc.,* 147
F.Supp.2d 1223, 1240-41 (N.D.Ala.2001) (holding
plaintiffs could not merely recast "FLSA claims as
common law claims" to recover damages not avail-
able under the FLSA); *Johnston v. Davis Sec., Inc.,*
217 F.Supp.2d 1224, 1227-28 (D.Utah 2002) (finding
that plaintiff's common law claims, including gross

negligence and negligent misrepresentation, were
preempted under the FLSA because they were based
on same facts and circumstances).

Likewise, Plaintiffs' contentions that Defendants
"materially misrepresented" that its employees
"would be paid for overtime" and "concealed the fact
... that they [Defendant's employees] would be com-
pelled to work additional time without compensa-
tion" merely are based on Plaintiffs' overtime claims.
Am. Compl. ¶¶ 31,38,46,51. These claims are, there-
fore, preempted by the FLSA. [FN2]

> FN2. Because the Court has determined that
> these claims are preempted by the FLSA, the
> Court finds it unnecessary to address De-
> fendant's argument that the state common
> law claims are time-barred and that
> Plaintiffs have failed to state a prima facie
> case for these claims.

**III. Labor Relations Management Act Preemption**

Gray argues that Plaintiffs' entire action is prohibited
by the Labor Management Relations Act ("LMRA"),
which was designed to encourage employees to pro-
mote their interests collectively. Defendants contend
that Plaintiffs' claims are founded "directly on rights
created by a collective bargaining agreement." Gray
Memorandum of Law ("Gray Mem.") at 15. In *Bar-
rantine v. Arkansas-Best Freight System, Inc.,* 450
U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981),
however, the Supreme Court held that FLSA rights
cannot be abridged by contract or otherwise waived
because this would "nullify the purposes" of the stat-
ute and thwart the "legislative policies that the Act
was designed to effectuate. Moreover, the Court held
that congressionally granted FLSA rights take pre-
cedence over any conflicting provisions in a collect-
ively bargained compensation arrangement.

**\*3** Under the FLSA, covered employers may not em-
ploy any employee "for a workweek longer than forty
hours unless such employee receives compensation
for his employment ... at a rate not less than one and
one-half times the regular rate at which he is em-
ployed ." 29 U.S.C. § 207(a)(1). Plaintiffs' action is
wholly based on "overtime wages to which they are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                              Page 3
Not Reported in F.Supp.2d, 2006 WL 42368 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

entitled but have not received." Am. Compl. ¶ 4. The Supreme Court specifically stated in *Barrentine* that the complex questions of fact and law, "e.g., what constitutes the 'regular rate,' the 'workweek,' or 'principal' rather than 'preliminary or postliminary' activities are statutory questions properly resolved under the FLSA." *Barrantine*, 450 U.S. at 728.

Plaintiffs correctly assert that the case relied on by Gray is inapposite to this one. *Valdino v. Valley Engineers*, 903 F.2d 254 (3d Cir1990) involved the proper wage rate that should be applied to a worker, who claimed he should be compensated at the rate of a "journeyman" under the contract. The Third Circuit held that the LMRA preempted the FLSA where the plaintiff's claims "rest on interpretations of the underlying collective bargaining agreement ." *Id.* at 266. That is not the case here. Plaintiffs' claims are not based on an interpretation of the collective bargaining agreement with respect to the appropriate wage rate, but are based on their contention that they are entitled to overtime. Plaintiffs are not barred by the LMRA from pursuing these claims under the FLSA merely because its contractual and statutory rights arise from the same factual occurrence.

IV. Wilbur's FLSA and Wage and Labor Law Claims

*A. FLSA*

The statutory scheme of the FLSA presumes a two-year statute of limitations but provides for a longer, three-year period if a plaintiff can show that the defendant's violation of the FLSA has been "willful." 29 U.S.C. § 255(a). The Supreme Court in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), held that the term "willful" means "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."

Plaintiffs and Leo Dipasquale-a non-party witness-have testified that they repeatedly complained to their supervisors about not receiving overtime pay and nothing was ever done about it. Tabakman Dec., Moeck Dep., Ex. B. 40:7-42:25; Tabakman Dec., Dipasquale Dep., Ex. E. 36:25-39:24; 65:23-66:18. Plaintiff Moeck also testified that after he complained

about being required to work "free time" without pay, his supervisor informed him that "if [he or other employees] didn't want to do the time, to find a new job." Tabakman Dec., Moeck Dep., Ex. B, 26:24-27:1. Dipasquale further noted during his deposition that the policy requiring "free time" at Gray ended only a couple of weeks prior to his deposition. Dipasquale Dep., Ex. E. 68:22-69:7.

As the collective bargaining agreement governing Gray's relationship with union employees expressly follows the FLSA stating that [a]ll time worked in excess of eight hours shall be paid at the rate of time and one-half the applicable rate, the Court finds that Plaintiffs have raised a genuine issue of material fact that Gray's conduct was a "willful" violation of the FLSA. Therefore, the Court finds that since the amended complaint was filed on April 28, 2004 and Plaintiff Wilbur was laid off in April 2002, his FLSA claim is timely.[FN3]

> FN3. The courts uniformly have adopted the approach that under the FLSA "a separate cause of action accrued each payday when the [employer] excluded the overtime compensation claim." Although Plaintiffs Wilbur and Moeck may not be entitled to claims made prior to the three-year statutory period, Defendant Gray has not raised this argument and the Court is therefore reluctant to address it.

*B. Wage and Hour Law*

*4 A year after its enactment, the Wage and Hour Law was amended to add a two-year statute of limitations. *Troise v. Extel Commc'n., Inc.*, 345 N.J.Super. 231, 784 A.2d 748 (App.Div.2001). The Wage and Hour Law, however, does not contain a provision similar to the FLSA which makes an exception for willful conduct. Therefore, Wilbur's action is not timely with regard to the Wage and Hour Law.[FN4]

> FN4. Although Plaintiffs argue that the date Gray states Wilbur was laid off, April 4, 2002, is in dispute, Plaintiffs have provided no evidence to rebut the Defendant's evidence to show that this date is incorrect.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 42368 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

Plaintiffs' Memorandum of Law ("Pls.Mem.") at 9, n. 3.

Plaintiffs argue, however, that it is well-settled that the commencement of a class action tolls the statute of limitation as to all putative class members. Pls. Mem. at 9; (citing *Crown, Cork & Seal Co., Inc., v. Parker,* 462 U.S. 345, 353-54, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983)). Although Plaintiffs are correct in its assertion, commencement of an action as a class action suspends the applicable statute of limitations during the interim period *from commencement until refusal to certify the class. Ravitch v. Pricewaterhouse,* 793 A.2d 939 (Penn.2002) (emphasis added). The statute of limitations for Wilbur's Wage and Hour Law claim had already expired before the class action suit had even been filed, therefore, his claim cannot be tolled pursuant to this rule.

### V. Plaintiffs' Class Certification Motion

#### A. FLSA

Class actions under the FLSA are governed by 29 U.S.C. § 216(b). Unlike Federal Rule of Civil Procedure Rule 23, § 216(b) of the FLSA establishes an opt-in system for collective actions, mandating that "[n]o employee shall be a party plaintiff to any such action [under the FLSA] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

Under § 216(b), there are two threshold requirements for an action to proceed as a collective action: (1) class members must be "similarly situated" and (2) all members must affirmatively consent to join the action. *Goldman v. Radio Shack Corp.,* No. 2:03-CV-0032, 2003 U.S. Dist. LEXIS 7611 (E.D. Pa. April 17, 2001).

In the absence of Third Circuit or Supreme Court guidance on who are "similarly situated" employees under § 216(b), a two tier test has developed amongst district courts in the Third Circuit. *Id.* at * 20; *see also Morisky v. Public Serv. Elec. & Gas Co.,* 111 F.Supp.2d 493 (D.N.J.2000). At the "notice stage"-where the court determines whether notice should be given to potential class members-the

court's determination typically results in "conditional certification" of a representative class. *Morisky,* 111 F.Supp.2d at 497. At this stage, some courts have required nothing more than "substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Id.*[FN5] In the second stage, after the court has more evidence and the case is ready for trial, the court applies a stricter standard.

> FN5. Although Defendant's assert that the Court should apply the modest factual showing standard applied by some courts in the first stage, the Court finds it unnecessary to address this issue as Plaintiffs' have failed to satisfy the more lenient standard.

Even though court's have recognized that the notice stage, which this case is currently in, is a lenient standard, the Court finds that Plaintiffs have failed to meet this standard. Plaintiffs have provided little evidence that the class members that they seek to represent were the victims of a single policy, decision or plan.

*5 Plaintiffs have established that one supervisor, Shawn McCord, required his workers to work "free time." *See e.g.,* Tabakman Dec., DiPasquale Dep., Ex. E, 36:3-38:9, 45:17-19. Although Plaintiff Moeck mentions Ed Smock as another supervisor who had used the phrase "free time," Plaintiffs have failed to establish that other supervisors employed the same policies as McCord. Although Plaintiffs intend on representing "all employees of Gray Supply who have and are required by Gray Supply to work in excess of forty (40) hours," based on Plaintiffs' own testimony, practices and reporting requirements are different at each of the four "yards" where Plaintiffs and potential class members work. *See e.g.,* Tabakman Dec., Moeck Dep., Ex. B, 106:11-18. Plaintiffs further admit that at times they were allowed to drive directly to and from a project site. *See* Tabakman Dec., Moeck Dep., Ex. B, 70:20-71-9 (Moeck testified for at least six months he drove directly to and from his project site and was not entitled to overtime payments during that period). In addition, there was a call-in policy that at least DiPasquale was aware of, which allowed him to call into the office the night be-

Not Reported in F.Supp.2d                                                    Page 5
Not Reported in F.Supp.2d, 2006 WL 42368 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

fore and find out the location of his job so that he could go there directly, which kept him from having to work "free time." Tabakman Dec., DiPasquale Dep., Ex. E, 54;12-24.

Because of the many potential distinctions of each putative class member's claim, the Court finds that this case is not an appropriate one for class action certification, even at this early stage in the action. Based on the current evidence, the proposed class is not "similarly situated" or the victims of a single policy or plan. The Court also believes that this determination is consistent with § 216(b) of the FLSA's purpose, which was to limit private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions, therefore, the Court denies certification.

### B. Wage and Hour Law

Plaintiff Moeck's Wage and Hour Law claim is also not suitable for class action treatment. First, as discussed above, Congress created the opt-in procedure under the FLSA for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions. *Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 173, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Allowing Plaintiff Moeck to circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA would undermine Congress's intent to limit these types of claims to collective actions. *See McClain v. Leona's Pizzeria, Inc.,* 222 F.R.D. 574 (N.D.Ill.2004).

Second, under Federal Rule of Civil Procedure Rule 23, which governs other class action claims, Plaintiffs would have to meet the prerequisites of commonality and typicality, amongst other things. As discussed above, Plaintiffs have failed to show that common issues predominate over individual issues or that their claims are typical of others in the class. *Mulder v. PCS Health Systems, Inc.,* 216 F.R.D. 307 (D.N.J.2003).

### VI. Conclusion

*6 For the reasons stated in this Opinion, this Court

denies Defendant's motion for summary judgment on Count One, grants Defendant's motion for summary judgment on Count Two with regard to Plaintiff Wilbur and grants Defendant's motion for summary judgment on Counts Three, Four, Five and Six. The Court further denies Plaintiffs' motion for class certification.

An appropriate Order accompanies this Opinion.

D.N.J.,2006.
Moeck v. Gray Supply Corp.
Not Reported in F.Supp.2d, 2006 WL 42368 (D.N.J.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# **EXHIBIT B**
**Villanueva-Bazaldua v. TruGreen, et al.**
**Civil Action No. 06-185**

Westlaw.

Slip Copy                                                                         Page 1
Slip Copy, 2007 WL 922420 (W.D.Mich.)
**(Cite as: Slip Copy)**

Lemus Guerrero v. Brickman Group, LLC
W.D.Mich.,2007.
Only the Westlaw citation is currently available.
United States District Court,W.D. Michigan,Southern
Division.
Juan Raymundo LEMUS GUERRERO et al.,
Plaintiffs,
v.
BRICKMAN GROUP, LLC et al., Defendants.
**No. 1:05-CV-00357-DT.**

March 26, 2007.

Edward Tuddenham, New York, NY, Gregory J. Mc-
Coy, Ronald J. Vander Veen, Cunningham Dalman,
PC, Holland, MI, Teresa M. Hendricks, Michigan
Migrant Legal Assistance Project, Inc., Grand Rap-
ids, MI, for Plaintiffs.
David M. Foy, Berry Moorman, PC, Detroit, MI, for
Defendants.

**OPINION AND ORDER DENYING
PLAINTIFFS' "MOTION TO CONDITION-
ALLY CERTIFY FAIR LABOR STANDARD
ACT REPRESENTATIVE ACTION AND TO
AUTHORIZE NOTICE TO THE CLASS,"
GRANTING PLAINTIFFS' "MOTION FOR
CERTIFICATION OF A RULE 23 CLASS AC-
TION," AND GRANTING IN PART AND
DENYING IN PART DEFENDANTS' "MOTION
TO DISMISS AND/OR FOR SUMMARY JUDG-
MENT"**
ROBERT H. CLELAND, United States District
Judge.
*1 Pending before the court is Plaintiffs' "Motion to
Conditionally Certify Fair Labor Standards Act Rep-
resentative Action and to Authorize Notice to the
Class," Plaintiffs' "Motion for Certification of a Rule
23 Class Action," and Defendants Brickman Group,
L.L.C. and Brickman Acquisitions, LTD. d/b/a Lake-
wood Landscaping's (collectively "Lakewood's")
"Motion to Dismiss and/or Summary Judgment of
Plaintiffs' FLSA Collective Action and State Law
Claims." The court determines that no hearing is re-
quired. W.D. Mich. LR 7.1(d). For the reasons stated

below, the court will (1) deny Plaintiffs' motion for
FLSA certification, (2) grant Plaintiffs' motion for
Rule 23 certification and (3) grant in part and deny in
part Defendants' motion to dismiss.

**I. BACKGROUND**

Plaintiffs are Mexican nationals who traveled to
Michigan from Mexico to perform seasonal landscap-
ing work for Lakewood during the years 1999
through 2005. Lakewood obtained permission to im-
port these laborers pursuant to the federal govern-
ment's "H-2B" program. In their complaint, Plaintiffs
allege four causes of action: (1) violations of the Fed-
eral Fair Labor Standards Act ("FLSA"), 29 U.S.C. §
201, and the Working at Point Away from Home
Locality Act ("WPAFHLA"), Mich. Comp. Laws §
408.581, (3) Breach of Contract and (4) Unjust En-
richment. (*See* 2nd Am. Compl.)[FN1]

> FN1. Plaintiffs assert that their FLSA claim
> relates to the years 2003 through 2005 and
> their last three causes of action relate to the
> years 1999 through 2005. (*See* Pls.' Br. for
> FLSA Class Certification at 2.)

In their FLSA claim, Plaintiffs allege that they were
required to incur several employment-related ex-
penses in order to accept their jobs with Lakewood,
including "visa fees charged by the U.S. government,
recruitment fees charged by Lakewood's recruiter,
transportation costs getting from Mexico to Michigan
and back again, uniform costs, and housing costs."
(Pls.' Br. for FLSA Class Certification at 3; *see also*
Compl. at 7-9.) Plaintiffs allege that "these expenses
operated as *de facto* deductions from Plaintiffs' wages
for purposes of measuring compliance with the FLSA
and that, as a result of these deductions-which
amounted to more than $500 per worker-Lakewood's
H-2B workers failed to earn the minimum wage and
overtime premium mandated by the FLSA during
each work week." (Pls.' Br. for FLSA Class Certifica-
tion at 3.) Now before the court are Plaintiffs'
"Motion to Conditionally Certify Fair Labor Stand-
ards Act Representative Action and to Authorize No-
tice to the Class," Plaintiffs' "Motion for Certification

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of a Rule 23 Class Action," and Defendants' "Motion to Dismiss and/or for Summary Judgment."

## II. DISCUSSION

### A. Plaintiffs' Motion for FLSA Class Certification

Section 216(b) of the FLSA provides that a person may maintain an action on "behalf of himself ... and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). In other words, in order to proceed as a "collective action" pursuant to § 216(b), Plaintiffs must demonstrate that they are "similarly situated" to the employees they seek to notify of this suit. The FLSA provides for a two-year statute of limitations "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). In order for the named Plaintiffs to represent the interests of "similarly situated" employees, these "similarly situated" employees must "opt in" to the proceedings. *See Clougherty v. James Vernor Co.,* 187 F.2d 288, 290 (6th Cir.1951) ("[U]nder the Fair Labor Standards Act the plaintiff has no right without specific authorization to represent an employee not joined as a plaintiff.").

**\*2** In order to determine whether a plaintiff's motion for class certification should be granted, the court adopts the "two-stage class certification method." *Olivo v. GMAC Mortg. Corp.,* 374 F .Supp.2d 545, 547 (E.D.Mich.2004). "Under the first step of the two-stage method, the [c]ourt determines whether Plaintiffs have demonstrated other 'similarly situated' putative plaintiffs for 'notice' purposes." *Id.* at 547-48.
"If Plaintiffs are able to make this showing, the [c]ourt will authorize Plaintiffs to proceed with th[e] action as a 'collective action' and will allow Plaintiffs to notify putative class members of the pendency of this suit. This initial authorization has been called a 'conditional certification[,]' a certification conditioned upon Plaintiffs being able to satisfy the second step of the two-stage approach."

*Id.* at 548. "[U]nder the second step, following the close of discovery, defendants have the opportunity to file a motion challenging the initial determination to allow the case to proceed as a 'collective action,' and the [c]ourt applies a stricter standard to determine whether the putative class of plaintiffs are 'similarly situated' to the named Plaintiffs." *Id.* at 548, n. 2. Because the court will determine that Plaintiffs are not similarly situated parties, review under the second step is unnecessary.

### 1. Plaintiffs Do Not Meet the "Similarly Situated" Requirement

The first step in evaluating a motion to certify a FLSA collective action focuses on whether there are similarly situated putative plaintiffs for notice purposes. "With this step, [a] named plaintiff can show that the potential claimants are similarly situated 'by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.' " *Olivo,* 374 F.Supp.2d at 548 (internal citations omitted). Although the initial standard is "fairly lenient," Plaintiffs must " 'submit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exists.' " *Id.* (citation omitted). "Courts requiring a factual showing under the first step ... have considered 'factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; ... whether evidence of a widespread discriminatory plan was submitted; and whether as a matter of sound case management; ... a manageable class exists." *Id.* (citations omitted.) If this standard is met, "the [c]ourt will authorize Plaintiffs to proceed with [the] action as a 'collective action' and will allow Plaintiffs to notify putative class members of the pendency of the suit." *Id.*

Plaintiffs argue that they and the class they seek to represent are similarly situated "because they are all subject to Brickman's policy decision not to pay for, or reimburse, the various visa, recruitment, travel, uniform and rent expenses associated with accepting H-2B employment with Defendant." (Pls.' Mot. for FLSA Class Certification at 12.) Plaintiff argues that "because all of the class members incurred these ex-

Slip Copy                                                                                Page 3
Slip Copy, 2007 WL 922420 (W.D.Mich.)
(Cite as: Slip Copy)

penses for exactly the same reasons, the central legal question presented by this FLSA action-whether the expenses were 'primarily for the benefit and convenience' of the employer or the employee-is also common to each of the class members." (*Id.* at 13.)

*3 Defendants argue, on the other hand, that "Plaintiffs ... have failed to provide sufficient factual evidence, by affidavit, or otherwise, to demonstrate that they have personally incurred recruitment fees, travel costs, accommodation costs, and visa fees as a result of their employment with Lakewood." (*Id.* at 9.) Defendants point out that Plaintiffs have "not submitted any evidence of a widespread discriminatory plan." (*Id.*) Essentially, Defendants argue that Plaintiffs have not provided sufficient evidence to be certified as a class action. Defendants provide factual indicators of Plaintiffs' dissimilarity.

Defendants argue that Plaintiffs are not similarly situated because the "seven named Plaintiffs were paid at hourly rates varying from $6.85 per hour to $12.00 per hour." (McGinness Aff. at ¶ 4.) Defendants also assert that Plaintiff Artemio Coria-Castro was a supervisor, while the other named representative Plaintiffs were general laborers. (*Id.* at ¶ 5.) Defendants further contend that "Lakewood's supervisors and general laborers have different job duties, compensation rates, and employment benefits." (*Id.*) Defendants also allege that each of the named Plaintiffs worked only at the Benton Harbor/St. Joseph location, which employed approximately 15 H-2B workers in 2003, as compared to the other branch locations in Livonia and Troy, which employed approximately 108 H-2B workers in 2003 and approximately 369 H-2B workers in the 2004 and 2005 seasons. (*Id.* at ¶ 6.) Defendants aver that, by working on at the Benton Harbor/St. Joseph location, "the named representative Plaintiffs ... had different supervisors ... and were subject to varying work requirements." (*Id.* at ¶ 7.)

Defendants also assert that "Plaintiffs worked for Lakewood at varying times. Two of the named representative Plaintiffs commenced work for Lakewood in 2002, while the other five Plaintiffs did not commence their employment until 2003." (*Id.* at ¶ 8.) Defendants argue that "Plaintiffs did not work in 2004

or 2005-the years that most of the workers they seek to represent were employed." (Defs.' Resp. at 11; McGinness Aff. at ¶ 8.) Defendants also assert that "[s]ome of the named representative Plaintiffs were provided a uniform by Lakewood without any expense to the individual employee." (McGinness Aff. at ¶ 9.)

The court is persuaded that Plaintiffs are not similarly situated. Although each of the named Plaintiffs worked for Lakewood as an H-2B worker (*see* McGinness Dep. at ¶ 4), Plaintiffs have presented only Personnel Action Forms, Earnings Statements, and Applications for Alien Employment Certification concerning Plaintiffs. (Pls.' Mot. for FLSA Class Certification at Exs. 5-13, 15, 20, and 22.) This evidence is insufficient. The court has "a responsibility to assure that there is some factual basis for plaintiffs' claims of class-wide discrimination before judicial approval of the sending of notice is granted." *See Severtson v. Phillips Beverage Co.,* 137 F.R.D. 264, 267 (D.Minn.1991). Although it is not binding authority, the court observes that the *Severtson* court also held that "[a] factual showing [wa]s particularly appropriate in th[e] case given that defendants have challenged the allegations of the complaint by submitting affidavits and deposition testimony tending to show that no widespread practice of discrimination exists at the defendant companies." *Id.* Although a "modest factual showing" may be "sufficient to demonstrate that [the named plaintiffs] and the potential plaintiffs together were victims of a common policy or plan that violated the law," *Olivo,* 374 F.Supp.2d at 548, Plaintiffs here have submitted not even that modest showing of evidence to be certified as a class. Defendants by contrast, have presented substantial evidence that Plaintiffs are not similarly situated. The court finds that Plaintiffs are not similarly situated, and will therefore deny Plaintiffs' Motion for FLSA class certification.

### 2. Statute of Limitations

*4 Defendants also raise the timeliness of Plaintiffs' proposed collective FLSA representative action. The FLSA provides a two-tiered statute of limitations, imposing a two-year statute of limitations for "ordinary" violations and a three-year statute of limitations for

"willful" violations. [FN2] 29 U.S.C. § 255(a). Plaintiffs allege that "Defendants' failure to pay wage[s] in compliance with the Fair Labor Standards Act was willful." [FN3] (2nd Am. Compl. at ¶ 46.) Defendants assert that any alleged violations were not willful. [FN4] (Defs.' Br. at 13.)

> FN2. If the two-year ordinary limitations period applies in this case, Plaintiffs would be procedurally precluded from class certification. However, if the three-year willful limitations period applies, Plaintiffs would fall within the limitations period.

> FN3. Defendants allege that "Plaintiffs Complaint falls far short of pleading any other facts that would met the willful standard." (Defs.' Br. at 14.) The court cannot agree. Plaintiffs did adequately plead willfulness in their complaint. (Am. Compl. at ¶ 46.) See Fed.R.Civ.P. 8(a)(2) (providing that a complaint need include only "a short plain statement of the claim"); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (emphasizing the simple pleading standard, and stating that it "applies to all civil actions, without exceptions"); DaMassia v. Duane Reade, Inc. ., 2005 WL 1214337 (S.D.N.Y.2005) (applying Swierkiewicz to a pleading of wilfulness under the FLSA). The court expresses no view concerning whether the record, for purposes of Rule 56, contains sufficient evidence of willfulness.

> FN4. An employer willfully violates the FLSA when it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

Because the court has already denied FLSA class certification, the timeliness issue is moot, and even if the longer three-year period applied, Plaintiffs would not be similarly situated for purposes of the FLSA. The court therefore need not at this juncture reach the

thorny questions involved with Defendants' alleged wilful violations of the FLSA, which implicates other questions, e.g., the state of the Sixth Circuit law at the time and whether such determination is premature if made ahead of discovery aimed at Defendants' knowledge and behavior.

The court, however, is mindful that the statute of limitations may bar some or all of the individual FLSA claims. Because the parties have not fully briefed the issue, [FN5] the court will not decide it, although it may yet have to decide the wilfulness issue in the context of applying the statute of limitations to the individual claims.

> FN5. Defendants raise the issue in passing in a footnote of their reply brief, to which Plaintiffs had no opportunity to reply. (Defs.' Reply Br. at 2 n. 1.)

For certification of a class for the state claims, the court does not believe that its analysis below is affected in any appreciable way upon the timeliness of the individual FLSA claims. Defendants concede that at least three individually named Plaintiffs have individual FLSA claims. (Defs.' Reply Br. at 2 n. 1) As explained below, because Rule 23 requires a minimum of only one named representative to bring a class action, the door is open in this federal forum to a state class action if the relevant requirements are met and if at least one named Plaintiff has a viable federal claim, as Defendants have already conceded.

**B. The Court Has Subject Matter Jurisdiction over Plaintiffs' State Claims**

Before turning to Plaintiffs' motion for certification of a class for the state claims, the court must first determine that it has subject matter jurisdiction over those claims. It is axiomatic that federal courts are courts of limited jurisdiction must have subject matter jurisdiction over the claims to hear a case. As discussed, this suit is not appropriate for certification as an FLSA collective action. [FN6] To permit class certification pursuant to Rule 23, the court must ensure that it has subject matter jurisdiction over the claims of each individual plaintiff, including those members of the proposed class.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN6. Although the court has not decided the timeliness of each named Plaintiff's individual FLSA claims, Defendant concedes that at least three named Plaintiffs (Miranda, Roque and Avila) are "not barred." (Defs.' Reply Br. at 2 n. 1.)

The basic statutory grants of subject matter jurisdiction for federal courts are contained in 28 U.S.C. § 1331, which provides for "federal question" jurisdiction, and 28 U.S.C. § 1332, which provides for "diversity of citizenship" jurisdiction. A plaintiff properly invokes subject matter jurisdiction when he pleads a claim "arising under" the Federal Constitution or laws. 28 U.S.C. § 1331; *see Arbaugh v. Y & H Corp.,* 546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). This case presents, apart from federal claims arising under FLSA (which in turn creates supplemental jurisdiction over the claims not arising under federal law), state claims that independently invoke the court's diversity jurisdiction, as the parties are citizens of different states. As explained below, Plaintiffs' state claims also meet the amount in controversy requirement.

**\*5** In their Second Amended Complaint, Plaintiffs pray for relief equal to the amount of unpaid minimum wages and an equal amount as liquidated damages, attorneys' fees and interest. (Second Am. Compl. at 13.) The unpaid minimum wages are alleged to have "amounted to more than $500 per worker." (Pls.' Br. for FLSA Class Certification at 3.) Individually, this amount does not satisfy the jurisdictional requirement. However, courts have supplemental jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Sixth Circuit has held that 28 U.S.C. § 1367(a) overruled previous case law, such as *Zahn v. Int'l Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), which stated that class members may not aggregate their damages to achieve the requisite amount in controversy. *See Olden v. LaFarge Corp.,* 383 F.3d 495, 507 (6th Cir.2004) (stating "we hold today that *Zahn* has been overruled. Therefore, the class may aggregate damages and subject matter jurisdiction is proper."). Plaintiffs here are permitted

to aggregate their class damages to achieve supplemental jurisdiction for their state law claims.

Plaintiffs indicate a class size exceeding nine hundred individuals and seek relief in the form of at least $500 per plaintiff for lost wages pursuant to the state breach of contract claim. If each member of the smallest expected class size collected the minimum amount requested, with no additional damages or costs and fees, the amount in controversy is $450,000, easily exceeding the $75,000 requirement of the diversity jurisdiction statute. Therefore, because the proposed class of Plaintiffs' claims do arise from the same case and controversy, and because the aggregated amount in controversy exceeds $75,000, the court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Because Plaintiffs have satisfied both requirements pursuant to Rule 23, and because the court has subject matter jurisdiction over at least three of the individual Plaintiffs' claims, the court will grant Plaintiffs' Motion for Certification of a Rule 23 Class Action.

### C. Plaintiffs' Motion for Class Certification Pursuant to Rule 23

Plaintiffs filed a motion to certify their state law claims (counts II, III, and IV) as a class action pursuant to Federal Rule of Civil Procedure 23. (Pls.' Mot. for Rule 23 Certification at 2.) District courts must conduct a "rigorous analysis" into whether Rule 23 has been satisfied before certifying a class. *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). A class action may be maintained only if the proposed class satisfied all four prerequisites of Rule 23(a) and at least one of the requirements of Rule 23(b). *AmChem Prod. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The party seeking class certification bears the burden of establishing that the requirements of Rule 23 have been met. *See In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996). Though courts do have broad discretion in deciding if certification is proper, that discretion must be exercised within the framework of Rule 23. *Id.*

#### 1. Rule 23(a) Prerequisites

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 6
Slip Copy, 2007 WL 922420 (W.D.Mich.)
**(Cite as: Slip Copy)**

*6 Pursuant to Rule 23(a), one or more members of a class may sue as representatives parties on behalf of the entire class only if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Courts generally refer to these as the (1) numerosity, (2) commonality, (3) typicality and (4) adequacy of representation requirements. *See In re Am. Med. Systems,* 75 F.3d at 1079.

### a. Numerosity

There is no definite standard or number as to what size class satisfies the numerosity requirement. *See Roman v. Korson,* 152 F.R.D. 101, 105 (W.D.Mich.1993). Some courts have accepted as few as 18 to 25 members for certification, *id.,* although the modern trend is to require a minimum of around 40 members. *Rodriguez by Rodriguez v. Berrybrook Farms, Inc.,* 672 F.Supp. 1009, 1013 (W.D.Mich.1987) (citing *Moore's Federal Practice,* ¶ 23.05 [1], at 23-151; 13-155 (2d Ed.1985) (citing modern trend and noting number under 21 is usually insufficient, between 21 and 40 given mixed response and where numbers are over 40 and in excess of 100 always satisfactory)). In this case, Defendants applied for and received H-2B Alien Certification for 1,157 workers, and Plaintiffs estimate the proposed class consists of more than nine hundred members. (Pls.' Mot. for Rule 23 Class Certification at 4.) Additionally, Plaintiffs argue that the class members are geographically dispersed and lack sophistication. (*Id.* (citing *Rodriguez,* 672 F.Supp. at 1014 (stating that a lack of sophistication of non-English speaking migrant workers scattered through a number of states made joinder impracticable))). In a case such as this, where Plaintiff proposes almost one thousand class members, and additional factors make joinder impracticable, the numerosity prerequisite is met.

### b. Commonality and Typicality

The Supreme Court has recognized that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiffs' claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon,* 457 U.S. at 157, n. 13. While consideration of these requirements does overlap, the court notes that commonality refers traditionally to the group characteristics as a whole, while typicality refers to the individual characteristics of the named plaintiffs as they relate to the entire class. *See Prado-Steiman v. Bush,* 221 F.3d 1266, 1279 (11th Cir.2000). General factors relevant to commonality and typicality include: (1) the nature of the employment practices charged, (2) the uniformity or diversity of the employer's employment practices, (3) the uniformity or diversity of the class membership and (4) the nature of the employer's management organization. *See Stastny v. S. Bell Tel. & Tel. Co.,* 628 F.2d 267, 273-74 (4th Cir.1980).

*7 Plaintiffs argue that the "named plaintiffs meet the typicality requirement because they assert precisely the same claims as the members or the class." (Pls.' Mot. for Rule 23 Class Certification at 5.) In response, Defendants assert that "Plaintiffs have no claim for 1999-2001, nor 2004-2005 with respect to its H-2B practices, as the named Plaintiffs were not employees of Lakewood at these times." (Defs.' Resp. at 17.) Plaintiffs' state law claims, however, relate to the years 1999 *through* 2005. (*See* 2nd Am. Compl.) Moreover, Plaintiffs argue that the Application for Alien Certification included a certification that "the job opportunity's terms, conditions and occupational environment are not in contrary [sic] to Federal, State or Local Law." (*See id.* at ¶ 27.) It appears to the court that if Plaintiffs establish that this Certification includes an agreement to comply with the FLSA, the agreement would be enforceable as to the years 1999-2005. Further, the costs associated with travel from Mexico to Michigan are common to all members of the proposed class regardless of which specific years the workers had to travel. The named Plaintiffs can thus stand in the shoes of work-

ers who incurred the same costs and suffered the same alleged harm between 1999 and 2005. The court determines that Plaintiffs have met the requirements of commonality and typicality.

### c. Adequacy of Representation

The inquiry into the named plaintiffs' adequacy of representation focuses on two factors: the qualifications, experience and conduct of plaintiff's counsel and their interest, and involvement of the named plaintiffs in the litigation. *See Roman,* 152 F.R.D. at 106 (citation omitted). The interest of the named plaintiffs must not be antagonistic to those of the class members. *See Smith v. Babcock,* 19 F.3d 257, 265 n. 13 (6th Cir.1994). However, courts require that a conflict between the representative and the class must be a "fundamental one, going to the specific issues in controversy." *See Pickett v. Iowa Beef Processors,* 209 F.3d 1276, 1280 (11th Cir.2000).

Plaintiffs in this case are not seeking injunctive relief of a limited nature, such as reinstatement of their employment positions. Instead, Plaintiffs seek monetary damages. There are no antagonistic interests with regard to the relief sought. Additionally, the court has no reason to doubt the capability of the named Plaintiffs' counsel; to the contrary, the court finds that Plaintiffs' counsel has made a concise presentation of relevant legal issues and standards, and counsel has experience litigating this type of action. (See Pls.' Mot. for Rule 23 Class Certification at 6.) The court finds there is no indication that the named Plaintiffs would not vigorously prosecute the case effectively through their counsel.[FN7]

> FN7. In their reply brief, Defendants insinuate a lack of communication between Plaintiffs and their counsel, pointing to an incorrect residence listing for one named Plaintiff and a supposed refusal to produce named Plaintiffs residing in the United States for depositions. Defendants suggest that Plaintiffs' claim is "lawyer driven" and that the Plaintiffs are uninterested and uninvolved in the present case. (Defs.' Resp. at 20.) The court finds no basis at this time to accept these broad allegations. Additionally,

Defendants hint that Plaintiffs have little or no "understanding of the complaint and proceedings," and are therefore not "sufficiently interested in the case to ensure its vigorous prosecution." (*Id.* at 19.) It is common, however, for one's counsel to have a deeper understanding of the complaint and court proceedings, especially when the party himself is relatively unschooled in the American legal system (as are, sadly, many litigants who are native-born and locally-educated Americans). Plaintiffs are not inadequate for purposes of class action certification simply because they lack detailed understanding of practice and procedure in U.S. federal courts.

### 2. The Rule 23(b) Conditions

In addition to meeting each of the standards required by Rule 23(a), Plaintiffs must also satisfy one of the conditions under Rule 23(b). Fed.R.Civ.P. 23(b). Plaintiffs in this case attempt to satisfy Rule 23(b)(3). Certification under Rule 23(b)(3) is appropriate when:

**8** the court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the finding include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.* Plaintiffs provide numerous examples of the ways that questions of law and fact are common to the claim of each member of the proposed class. (*See* Pls.' Mot. for Rule 23 Class Certification at 7-11.) Defendants do not dispute this point. (Defs.' Resp. at 21.) Plaintiffs further state that "no individual claims, or unique ... claims are asserted." (Pls.' Mot. for Rule

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 8
Slip Copy, 2007 WL 922420 (W.D.Mich.)
**(Cite as: Slip Copy)**

23 Class Certification at 9.) Defendants again do not contest this point. (Defs.' Resp. at 21.) The court concludes that there are common questions, and that these questions predominate over any individual questions that may be presented.

The court must also consider whether the Rule 23 class is superior to other available methods of adjudication. In considering this question, courts generally ask if this is a situation where there exists "negative value suits," considering the remedies available and the costs of trial. *See Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 420 (5th Cir.1998). In addition, the court considers the four factors provided in Rule 23(b)(3) as stated above. In the instant case, the court finds that there is a relatively small amount in controversy per plaintiff, and that it would be inordinately expensive to conduct individual trials pursuing such releif. Therefore, the court finds that Plaintiffs have met the requirements of Rule 23(a) and Rule 23(b).

**D. Defendant's Motion to Dismiss and/or for Summary Judgment on Plaintiffs' FLSA Collective Action and State Law Claims**

**1. Unjust Enrichment**

Plaintiffs have stated a claim for unjust enrichment pursuant to Michigan law. Defendants argue that this claim should be dismissed for failure to state a claim. (Defs.' Mot. to Dismiss at 16.) First, Defendant argues that unjust enrichment is a claim based on implied contract, and that this claim directly contradicts another count of Plaintiffs' complaint which alleges that there was an express contract based on various writings. (*Id.* at 16-17.) Defendants cite to no authority to support their proposition, however, that one claim can be construed as an admission against another inconsistent claim. Instead, Rule 8(e)(2) of the Federal Rules of Civil Procedure makes it quite clear that inconsistency is acceptable in pleadings, since "[a] party may also state as many separate claims or defenses as the party has regardless of consistency." Fed.R.Civ.P. 8(e)(2). Courts have been unwilling to support a position advocated for by Defendants because "a policy which permits one claim to be invoked as an admission against an alternative or in-

consistent claim would significantly restrict, if not eliminate, the freedom to plead inconsistent claims provided by Rule 8(e)(2)." *Molsbergen v. United States,* 757 F.2d 1016, 1019 (9th Cir.1985). *See also Rodriguez-Suris v. Montesinos,* 123 F.3d 10, 20-21 (1st Cir.1997); *Henry v. Daytop Village, Inc.,* 42 F.3d 89, 95-96 (2d Cir.1994); *Indep. Enterp. v. Lozecki,* 103 F.3d 1165, 1175-76 (3d Cir.1997); *Babcock v. Wilcox Co. v. Parsons Corp.,* 430 F.2d 531, 536 (8th Cir.1970). Nor have Defendants argued that Michigan state law forbids inconsistent pleading. Accordingly, the court rejects Defendants' argument.

**\*9** Defendants also argue that Plaintiffs' claim for unjust enrichment must be dismissed as duplicative of Plaintiffs' FLSA claims. (*Id.* at 17.) The court disagrees, and notes that Defendants mischaracterize the holdings in the cases related to FLSA and unjust enrichment claims being brought in the same action. It is true that the Eastern District of Louisiana dismissed a plaintiff's unjust enrichment claim in *Basco v. Wal-Mart Stores, Inc.,* No. 00-3184, 2003 WL 21219026 (E.D.La. May 20, 2003). However, the court did so not because it was duplicative of a FLSA claim, but rather because "the nonexistence of any other remedy at law" is a necessary element of a successful claim for unjust enrichment under Louisiana law. *Id.* at 2. This is not the case under Michigan law, where it is well established that for an unjust enrichment claim, a "plaintiff must establish only (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit,* 256 Mich.App. 463, 666 N.W.2d 271 (Mich.Ct.App.2003) (citing *Barber v. SMH (US), Inc.,* 202 Mich.App. 366, 509 N.W.2d 791 (Mich.Ct.App.1993)). The nonexistence of any other remedy at law, a necessary element in Louisiana, is not required for success of a claim under Michigan law.

Defendants also cite *Hammond v. Lowe's Home Centers, Inc.,* 316 F.Supp.2d 975 (D.Kan.2004), where the court stated that, "as a general proposition, state law claims that merely seek to enforce the defined remedies of the FLSA are preempted." *Id.* at 979. This statement, however, derives from *Connor v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1399 (10th

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 9
Slip Copy, 2007 WL 922420 (W.D.Mich.)
**(Cite as: Slip Copy)**

Cir.1997), the authority of which is drawn from *Masters v. Daniel Int'l Corp.,* 917 F.2d 455, 457 (10th Cir.1990), which explicitly discusses preemption of common law claims by federal statutes, but limited to how the Kansas Supreme Court would decide an issue. This series of cases is not applicable to a claim under the state law of Michigan.

The final case Defendants cite, *Sorensen v. CHT Corp.,* Nos. 03-1609 and 03-7362, 2004 WL 442638 (N.D.Ill. March 10, 2004), refers almost exclusively to cases in which the common law claims consisted of exactly the same claims brought under FLSA, such as " 'negligent failure to pay overtime.' " *Id.* at *16-17 (citing *Nettles v. Techplan Corp.,* 704 F.Supp. 95, 100 (D.S.C.1988)). This is not the case with Plaintiffs' claims. The *Sorensen* court further cites *Johnston v. Davis Sec., Inc.,* 217 F.Supp.2d 1224, 1227-28 (D.Utah 2002) as authority for dismissing claims that are duplicative. *Sorensen,* 2004 WL 442628 at *7. However, *Johnston* relies on *Connor,* 121 F.3d at 1399, which considered only Kansas law. *Johnston,* 217 F.Supp.2d at 1227-28. Again, this case provides no assistance or guidance in interpreting the laws of the state of Michigan.

Defendants refer to no Michigan or Sixth Circuit case law stating that the Michigan common law claim of unjust enrichment is preempted by FLSA. The cases referred to by Defendant apply only to the states in which the cases were decided. The court will thus deny Defendant's motion to dismiss Plaintiff's claim for unjust enrichment.

### 2. The WPAFHLA and Breach of Contract Claims

*10 Plaintiff has alleged claims pursuant to Michigan law for violation of the WPAFHLA and breach of contract. The court has supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367(a) based upon the original jurisdiction of Plaintiffs' federal question arising under the FLSA. Defendant argues that because Plaintiffs' FLSA action was time-barred, the court should dismiss Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367(c) (3). Defendant cites authority stating that "if the federal claims are dismissed before trial ... the

state claims should be dismissed as well." *Taylor v. First of America-Wayne,* 973 F.2d 1284, 1287 (6th Cir.1992). The court will not dismiss Plaintiffs' remaining state law actions on this ground as the court has not dismissed Plaintiffs' FLSA claims entirely. Instead, the court will only deny Plaintiffs' Motion for class certification and the addition of more unnamed Plaintiffs pursuant to that statute. Defendant has not requested that the court dismiss Plaintiffs' individual FLSA claims, only that the court dismiss Plaintiffs' FLSA Collective Action. Because the court has not dismissed all individual FLSA claims, supplemental jurisdiction remains over the additional state law claims.

### III. CONCLUSION

IT IS ORDERED that Plaintiffs' "Motion to Certify FLSA Representative Action" [Dkt. # 44] is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' "Motion for Certification of a Rule 23 Class Action" [Dkt. # 46] is GRANTED. The court will issue a separate order defining the class.

IT IS FURTHER ORDERED that Defendants' "Motion to Dismiss and/or for Summary Judgment of Plaintiffs' FLSA Collective Action and State Law Claims" [Dkt. # 71] is GRANTED with respect to Plaintiffs' FLSA Collective Action and DENIED with respect to Plaintiffs' State law claims.

W.D.Mich.,2007.
Lemus Guerrero v. Brickman Group, LLC
Slip Copy, 2007 WL 922420 (W.D.Mich.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT C**
Villanueva-Bazaldua v. TruGreen, et al.
Civil Action No. 06-185

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1892527 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d)

**C**
West v. Border Foods, Inc.
D.Minn.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Minnesota.
Jonah WEST, individually, and behalf of all others
similarly situated, Plaintiffs,
v.
BORDER FOODS, INC., d/ba Pizza Hut, Inc., and
Sky Ventures, LLC, Defendants.
**Civil No. 05-2525 (DWF/RLE).**

June 12, 2006.
July 10, 2006.

Donald H. Nichols, Esq., Jill M. Novak, Esq.,
Michele R. Risher, Esq., Paul J. Lukas, Esq., Rach-
hana T. Srey, Esq., and Sarah M. Fleegel, Esq., Nich-
ols Kaster & Anderson, for Plaintiffs.
David P. Pearson, Esq., and Laura A. Pfeiffer, Esq., and
William A. McNab, Esq., for Defendants.

**ORDER ADOPTING THE REPORT AND RE-
COMMENDATION**
DONOVAN W. FRANK, District Judge.
**\*1** Based upon the Findings and Recommendation of
the United States Magistrate Judge Raymond L. Er-
ickson, and after an independent review of the files,
records and proceedings in the above-titled matter,
**IT IS ORDERED:**

1. That the Plaintiffs' Motion for Conditional Certi-
fication, Judicial Notice, and to Compel (Doc. No.
29) is **DENIED.**

2. That the Defendants' informal Motion to Stay Con-
sideration of the Plaintiffs' Motion for Conditional
Certification, Judicial Notice, and to Compel (Doc.
No. 34) is **DENIED,** as moot.

3. That the Defendants' Motion to Strike Interrogat-
ory Answers (Doc. No. 57) is **DENIED,** as moot.
RAYMOND L. ERICKSON, Chief Magistrate
Judge.

REPORT AND RECOMMENDATION

I. *Introduction*

This matter came before the undersigned United
States Magistrate Judge pursuant to a special assign-
ment, made in accordance with provisions of Title 28
U.S.C. § 636(b)(1)(B), upon the Plaintiffs' Motion for
Conditional Certification, Judicial Notice, and to
Compel, and the Defendant's Informal Motion to Stay
Consideration of the Plaintiffs' Motion for Condition-
al Certification, Judicial Notice, and to Compel. A
Hearing on the Motions was conducted on April 18,
2006, at which time, the Plaintiffs appeared by Don-
ald H. Nichols, and Michelle R. Fisher, Esqs., and the
Defendants appeared by David P. Pearson, Julie M.
Engbloom, and William A. McNab, Esqs.

For reasons which follow, we recommend that the
Plaintiffs' Motion for Conditional Certification, Judi-
cial Notice, and to Compel be denied, and that the
Defendants' informal Motion to Stay consideration of
the Motion be denied, as moot. We also recommend
that the Defendants' Motion to Strike be denied, as
moot.[FN1]

> FN1. While the Plaintiffs' Motion was under
> advisement, the Defendants filed a Motion
> to Strike certain averments that were made
> in the Plaintiffs' Interrogatory Answers
> which were submitted in support of the
> Plaintiffs' Motion for Conditional Certifica-
> tion, Judicial Notice, and to Compel. The
> Plaintiffs have not, as of yet, responded to
> the Defendants' Motion to Strike, and no
> Hearing was conducted on that Motion.
> Nevertheless, our recommended disposition
> of the Plaintiffs' Motion for Conditional
> Certification, Judicial Notice, and to Com-
> pel, would appear to render the Defendants'
> Motion moot, and accordingly, we recom-
> mend that the Motion be denied.

II. *Factual Background*

The Plaintiff Jonah West ("West") commenced this
action on behalf of himself, and others similarly situ-
ated, alleging that the Defendants violated the Fair

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 1892527 (D.Minn.)

(Cite as: Not Reported in F.Supp.2d)

Labor Standard Act ("FLSA"), *Title 29 U.S.C. §§ 201-219,* when they failed to pay him for his over-time hours. Specifically, West, who is a former shift manager at the Pizza Hut restaurants in Maplewood, and in Woodbury, Minnesota, alleges that he and oth-er similarly situated employees worked as shift man-agers at the Pizza Hut restaurants that were owned and operated by the Defendants, and that he, and oth-er similarly situated employees, worked in excess of forty (40) hours per week, without receiving full overtime compensation. *Amended Complaint,* at ¶¶ 6 and 7.

At the time that the Plaintiffs' Motion was filed, ten (10) persons, in addition to West, had "opted-in" to the suit. *Affidavit of Michele Fisher ("Fisher Aff."),* at ¶ 3. Of those persons, six (6) were determined by the Plaintiffs not be similarly situated, and either have withdrawn from the case, or have been asked to do so by the Plaintiffs. *Id.* The remaining five (5) Plaintiffs include: West; Erin Allram ("Allram"), who worked as a shift manager at the Defendants' Pizza Hut restaurant in Cottage Grove, Minnesota; Marshaire Cross ("Cross"), who worked at the De-fendants' Pizza Hut restaurants in Apple Valley, Min-nesota, and in St. Paul, Minnesota; Joseph Starks ("Starks"), who worked as a shift manager in the De-fendants' Pizza Hut restaurant in New Brighton, Min-nesota; and Stacy Dondelinger ("Dondelinger"), who worked as a shift manager in the Defendants' Pizza Hut restaurant in Columbia Heights, Minnesota.[FN2]

> FN2. Since the Plaintiffs' Motion was filed, two (2) other persons-Nakia Johnson, and Mike Sittler-have filed Notices of Consent, in which they expressed their willingness to join as Plaintiffs to the action. See, *Docket No. 37.* However, no information has been provided with respect to those persons, such as which restaurants they worked at, or the precise nature of their claims against the De-fendants.

*2 By their Motion, the Plaintiffs now seek condi-tional certification to proceed collectively, pursuant to Title 29 U.S.C. § 216(b). The Plaintiffs also seek to provide judicial notice of the action to all of the shift managers who have not joined in the action, and

who are employed by the Defendants at their Pizza Hut, and "combo" restaurants.[FN3] In order to effec-tuate the notice, the Plaintiffs have also requested that the Defendants be compelled to answer Request No. 1, of their First Set of Requests for the Production of Documents, which requests the following informa-tion:

> FN3. The Plaintiffs' request to include, with-in the putative class, shift managers at "combo" restaurants is apparently a refer-ence to restaurants which contain a Pizza Hut facility, in addition to another facility, such as a Taco Bell restaurant. Notably, the deposition testimony of Fred Burmer, who is the Vice President of Operations for the De-fendant Sky Ventures, LLC ("Sky Ven-tures"), reflects that Sky Ventures owns and operates one facility that contains both a Taco Bell, and a Pizza Hut restaurant, and that the employees of Taco Bell, at that loca-tion, are-like each of the Plaintiffs-paid by Sky Ventures. *Fisher Aff.,* Exh. 15, at pp. 30-31.

A list, in electronic and importable format, of all per-sons employed by Defendants as shift managers at any of Defendants' Pizza Hut locations from Septem-ber of 2002 to present, including their name, address, telephone number, dates of employment as a shift manager, location of employment, employee number, and social security number.

Given this factual backdrop, we proceed to the parties' Motions.

### III. *Discussion*

"The FLSA allows employees to bring a collective action 'for and in behalf of * * * themselves and oth-er employees similarly situated .' " *Frank v. Gold'n Plump Poultry, Inc.,* 2005 WL 2240336 at *2 (D.Minn., September 14, 2005), quoting Title 29 U.S.C. § 216(b). However, "[u]nlike class actions un-der Rule 23, '[n]o employee shall be a party to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.' " *Smith v. Heartland Automotive Services, Inc.,* 404 F.Supp.2d

Not Reported in F.Supp.2d                                                      Page 3
Not Reported in F.Supp.2d, 2006 WL 1892527 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

1144, 1149 (D.Minn.2005), quoting *Title 29 U.S.C. § 216(b)*. The process by which putative plaintiffs, in a FLSA collective action, are joined, is commonly referred to as the "opt-in" process, and Courts may facilitate that process by authorizing the named Plaintiffs in a FLSA action to transmit a notice to potential class members. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). However, "[t]hat power is to be exercised * * * only in 'appropriate cases,' and remains within the discretion of the district court." *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D.Minn.1991)("Severtson I").

"The fundamental inquiry in determining whether a collective action under [Section] 216(b) is appropriate is whether or not the plaintiffs are 'similarly situated.' " *Smith v. Heartland Automotive Services, Inc.*, 404 F.Supp.2d 1144, 1149-50 (D.Minn.2005). "Unfortunately, [Section] 216(b) does not define the term 'similarly situated,' and there is little circuit law on the subject." *Theissen v. General Electric Capital Corp.*, 267 F .3d 1095, 1102 (10th Cir.2001). In this District, like many other jurisdictions, the determination of whether plaintiffs are "similarly situated," is made by using a two-step process, which has recently been described as follows:
At the initial stage, the court determines whether the class should be conditionally certified for notification and discovery purposes. [*Kalish v. High Tech Institute, Inc.*, 2005 WL 1073645 at *1 (D. Minn., April 22,2005) ]. At this conditional certification stage, the plaintiffs need only come forward with evidence establishing a colorable basis for their claim that the putative class members were together the victims of a single decision, policy, or plan. *See, id.* at *2; *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D.Minn.1991)(Severtson I). That is, the plaintiffs must show that there is some factual basis beyond the mere averments in their complaint for the class allegations. Severtson I,137 F.R.D. at 267; *Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 278-79 (D. Minn.1992 (Severtson II). At the second stage-which comes after discovery is completed-the court uses a stricter standard for determining whether the putative class members are similarly situated and reconsiders whether the trial should proceed collectively or if it should be severed.

*3 Kalish, 2005 WL 1073645 at * 1. At the second stage, the court conducts a fact intensive inquiry of several factors, including: (1) the extent and consequence of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. See, Theissen, 267 F.3d at 1102-03.
*Frank v. Gold'n Plump Poultry, Inc.*, supra at *2; see, *Smith v. Heartland Automotive Services, Inc.*, supra at 1149-50; *Kalish v. High Tech Institute, Inc.*, 2005 WL 1073645 at *2-3 (D. Minn., April 22, 2005); see also *Theissen v. General Electric Capital Corp.*, supra at 1102-03; *Koren v. SUPERVALU, Inc.*, 2003 WL 1572002 at *15-16 (D.Minn., May 14, 2003).

Here, the parties have engaged in some discovery, such as the exchange of Interrogatories and Document Requests, and have taken the depositions of Barry Zelickson, Frank Burmer, and Julie Pung ("Pung"), who are each officers of the Defendant Sky Ventures, LLC ("Sky Ventures"), pursuant to Rule 30(b)(6), Federal Rules of Civil Procedure. However, the discovery process has not been completed and, as such, we analyze the Plaintiff's Motion under the initial stage of review.

At this stage, the Plaintiffs need only show that there is a "colorable basis" for their collective action, see, *Smith v. Heartland Automotive Services, Inc.*, supra at 1149, and that factual similarities or differences among the putative Plaintiffs are such that the case may be properly managed as a collective action. See, *Ray v. Motel 6 Operating Limited Partnership*, 1996 WL 938231 at *4 (D.Minn., March 18, 1996); see also, *Severtson v. Phillips Beverage Co.*, supra at 266 ("As a matter of sound case management, a court should, before [authorizing a notice], make a preliminary inquiry as to whether a manageable class exists."); see, e.g., *Diaz v. Electronics Boutique of America*, 2005 WL 2654270 at *5 (W.D.N.Y., October 17, 2005); *England v. New Century Financial Corp.*, 370 F.Supp.2d 504, 509 (M.D.La.2005).

"A colorable basis means that plaintiff must come forward with something more than the mere averments in its complaint in support of its claim."

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1892527 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d)

*Severtson v. Phillips Beverage Co.,* 141 F.R.D. 276, 278-79 (D.Minn.1992)("Severtson II"). This analysis "does not require th[e] court to make any findings of fact with respect to contradictory evidence presented by the parties nor does th[e] court need to make any credibility determinations with respect to the evidence presented." *Id.* However, "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry County School System,* 242 F.Supp.2d 1096, 1103 (M.D.Ala.2003), citing *Sheffield v. Orius Corp.,* 211 F.R.D. 411, 416 (D.Or.2002).

The Plaintiffs urge that conditional certification is proper because West, and each of the other "opt-in" Plaintiffs, are or were shift managers at Pizza Hut restaurants that were owned and operated by the Defendants; that each was classified as a "non-exempt employee" for the purposes of overtime eligibility; that each used the same computer system to track their time; that each was subject to the same corporate hierarchy; and that, pursuant to the practice of the Defendants, each was deprived of overtime pay.

*4 As factual support for their Motion, the Plaintiffs have presented the Interrogatory Answers of West, Starks, Dondelinger, Allram, and Cross. See, *Fisher Aff.,* at Exh. 17. As is pertinent to the present Motion, each of those persons was asked to "[d]escribe in detail all facts supporting, refuting or concerning your complaint that Defendants failed to pay you overtime compensation for all hours worked in excess of forty (40) hours per week," and to describe his or her responsibilities for recording work hours in the Defendants' Automated Timekeeping system. *Id.*

In response to the Interrogatory concerning the factual basis for his claim, West avers, as follows:
Defendant maintained a practice of requiring its hourly employees to work hours "off the clock." For example, Plaintiff's district managers, Jerry Wickery and Doug Pricket, told Plaintiff's manager Glenn Rowley that hours worked over forty hours per week were to be "off the clock." Mr. Rowley then conveyed that information to Plaintiff. Sometimes Mr. Rowley allowed a few hours of overtime pay to be recorded and paid. Plaintiff is also aware that this practice was occurring at other locations, including but not limited to the Maplewood, Cottage Grover, Stillwater, and Woodbury restaurants.

*Id.*

West further elaborates that he was responsible for clocking in and out daily; that he was instructed by Glenn Rowley, who was his manager, to delete hours for certain employees, who had worked in excess of forty (40) hours per week; and that he had worked approximately three (3) hours of overtime per week. In response to a Second Set of Interrogatories, West explained that his awareness of similar conduct at other stores was predicated on his knowledge that Jerry Wickery ("Wickery") was a district manager for several of the Defendants' restaurants, and West's experiences working at restaurants that had been managed by Wickery. Additionally, West reports that a shift manager at the Defendants' restaurant in Stillwater, Minnesota, who he identified as Corinna, had informed him that she had been required to work off the clock without overtime compensation. *Id.*

Similarly, Starks describes the factual basis for his claim, as follows:
Plaintiff worked on average 50 hours per week. Plaintiff was not fully compensated for his overtime hours worked because his restaurant managers, Ronda Gordmaker and Tony Martin, required him to work off the clock in order to keep labor costs as low as possible. At weekly performance meetings, his managers regularly stressed that they need to keep labor costs down. This resulted in shift managers being forced to work longer hours. Plaintiffs managers at times, told him to clock out before his shift was over and then paid him cash for staying the extra hours. In addition, Plaintiff's managers modified his hours worked in the timekeeping system. Finally, sometimes Plaintiff's managers clocked him into the timekeeping system but did not do so immediately upon him beginning his shift.

*5 Id.*

Starks further avers that he was required to enter his time into the Automated Timekeeping System, and that, on occasion, he modified his time in the system.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 5
Not Reported in F.Supp.2d, 2006 WL 1892527 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d)

*Id.*

Dondelinger's Interrogatory Answers contain the following description of the factual basis for her claim:
Plaintiff worked on average 42 hours per week. Plaintiff was not paid accurately for her overtime hours worked because the restaurant manager, Jennifer Bauer, recorded her hours inaccurately in the computer system. In addition, there were instances where Plaintiff's manager asked her to work off the clock and told her she would pay her cash out of the cash register if she worked a few extra overtime hours. She worked this overtime once or twice a month. Plaintiff believes that it was either the regional or district manager directing her boss to make her work overtime hours.

*Id.*

Additionally, Dondelinger avers that she was required to enter her time into the Automated Timekeeping System; that she modified her time on several occasions with her manager's approval; and that she was allowed to modify her time when she forgot to punch in or out at the beginning or end of a shift. *Id.*

According to Allram's Interrogatory Answers, the factual basis for her claim can be described, as follows:
Plaintiff worked on average 47 hours per week. Plaintiff was required by her manager to work off the clock a few times per month. It was Plaintiff's understanding that Pizza Hut only allowed her manager to pay the hourly employees for a specified number of hours per month. If Plaintiff or the other hourly employees' overtime hours exceeded the hours allocated to the manager, he would inform them that he would not pay them for those hours and required that they work off the clock. Plaintiff is not aware if anyone altered her records to further deny her pay for hours worked.

*Id.*

Allram further attests that she was required to enter her time in the Automated Timekeeping System, and that she did not make any modifications to the work hours that were entered into the system. *Id.*

Cross answered the Defendants' Interrogatory concerning the factual basis for her FLSA claim, as follows:
Plaintiff worked on average 52 hours per week. As a matter of corporate policy, Plaintiff's managers were required to meet a quota every month. Therefore, they were required to reduce the number of overtime hours because her managers, Bruce and Neil, modified her time records in the timekeeping system. She is not sure how often this occurred, but once the Plaintiff realized it was occurring (her co-workers, Jamie and Sabrina Baucou, were complaining about it happening to them also), she noticed that for approximately a three month period her hours listed on her pay statements were less than the total hours worked.

*Id.*

Cross further attested that she was allowed to modify her time records in the Automated Timekeeping System if she forgot to punch in or out at the beginning or end of a shift. *Id.*

*6 In addition to those Interrogatory Answers, the Plaintiffs submitted an anonymous letter, which was addressed to Pung, who is the Senior Human Resources Generalist for the Defendants, in which the author describes instances in which a number of the Defendants' employees at the Defendants' Hillcrest Pizza Hut restaurant in Maplewood, Minnesota, including West, were either required to work off-the-clock, or were denied overtime pay. *Id.* at Exh. 18. The Plaintiffs have also directed our attention to the deposition testimony of Pung, which reflects that an employee of the Defendants, at a Pizza Hut restaurant in either Brainerd or Baxter, Minnesota, had complained that a manager had adjusted his end times for when he finished his shifts. See, *Id.* Exh. 16, at p. 34.

The Defendants have challenged the admissibility of several of averments that have been presented by the Plaintiffs in support of their Motion. There is presently a split in the pertinent authority as to whether the Court may properly consider inadmissible hearsay in the context of a Motion for Conditional Certification. Compare, *Harrison v. McDonald's*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Corp.,* 411 F.Supp.2d 862, 865-66 (S.D.Ohio 2005)("[O]nly admissible evidence may be considered in connection with a [Section] 216(b) motion."), citing *Richards v. Computer Sciences Corp.,* 2004 WL 2211691 at * 1 (D.Conn., September 28, 2004), and *McElmurry v. U.S. Bank National Association,* 2004 WL 1675925 at * 10 (D.Or., July 27, 2004); *Clark v. Dollar General Corp.,* 2001 WL 878887 at *2 (M.D.Tenn., May 23, 2001), with *White v. MPW Industrial Services, Inc.,* 236 F.R.D. 363, 2006 WL 752554 at *4-5 (W.D.Tenn., March 21, 2006)(finding that hearsay evidence may properly be considered in the context of a Motion for Conditional Certification). The parties do not address this split in authority, and our independent research does not disclose any case law from this District, or from any Circuit Court of Appeals, which has addressed the propriety of considering hearsay evidence in the context of a Motion for Conditional Certification.

The resolution of this split in authority is not material to our Recommendation and, as such, we will assume, without deciding, that hearsay evidence may be considered in the context of a Motion for Conditional Certification. That being said, even under the more permissive line of authority, the averments made in support of a Motion for Conditional Certification must be based on personal knowledge, see, *White v. MPW Industrial Services, Inc.,* supra at *5, and "unsupported assertions of widespread violations are not sufficient to meet the Plaintiff's burden." See, *Freeman v. Wal-Mart Stores, Inc.,* 256 F.Supp.2d 941 (W.D.Ark.2003), citing *Haynes v. Singer Co., Inc.,* 696 F.2d 884, 887 (11th Cir.1983); *H & R Block, Ltd. v. Housden,* 186 F.R.D. 399, 400 (E.D.Tex.1999).

Eliminating those averments which are not based on personal knowledge, as well as those which are merely conclusory, the Plaintiffs' submissions establish that six (6) shift managers, who were employed by the same corporate entity, and who operated under the same timekeeping system, were required to work off-the-clock by their individual store managers.[FN4] Sky Ventures purportedly owns approximately eighty (80) Pizza Hut restaurants, and it employs approximately three (3) shift managers, and one (1) restaurant general manager, at each location. *Affidavit of Julie*

*Pung ("Pung Aff."),* at ¶ 2-3. As such, the Plaintiffs' showing demonstrates that six (6) of the potential class of approximately 240 shift managers, who are employed at Pizza Hut restaurants owned by the Defendants-2.5 per cent of the potential class-were allegedly required by their store managers to work off-the-clock. Such a limited sample of employees does not support the Plaintiffs' assertion of widespread violations resulting from a common policy or plan. See, e.g., *Harrison v. McDonald's Corp.,* supra at 870-71(averments from two (2) employees who claimed FLSA violations, out of a potential class of 300, were insufficient to allow for conditional certification); *Flores v. Lifeway Foods, Inc .,* 289 F.Supp.2d 1042, 1046 (N. D.Ill.2003)(evidence that demonstrated an employer's payment practices with respect to two (2) employees out of fifty (50) did not amount to "even a 'modest factual showing' of a common policy or plan.").

> FN4. Of course, if we were to accede to the view that "only admissible evidence may be considered in connection with a [Section] 216(b) motion," see, *Harrison v. McDonald's Corp.,* 411 F.Supp.2d 862, 865-66 (S.D.Ohio 2005), we would necessarily disregard West's averments that a shift manager at the Defendants' restaurant in Stillwater, Minnesota, who he identified as Corrina, told him that she had been required to work off-the-clock, as such an averment is plainly hearsay.

*7 The Defendants have also presented evidence which refutes the Plaintiffs' assertion that a centralized policy required shift managers to work off the clock. Specifically, the Defendants have submitted training materials which require employees to clock themselves in before they start work, and to clock themselves out when their shift is over. *Pung Aff.,* Exh. B, at SV000349. The Defendants have also submitted their Basic Management Training Program for Pizza Hut restaurants, which contains a memorandum entitled "Policy Bulletin 501." *Id.* at Exh. A. According to that policy, managers employed at the Defendants' Pizza Hut restaurants are prohibited from punishing an employee by cutting hours that were actually worked, or by asking, letting, or making employ-

Not Reported in F.Supp.2d                                                                                      Page 7
Not Reported in F.Supp.2d, 2006 WL 1892527 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d)

ees work after they clock out. Similarly, the manager on duty is also prohibited from improving shift labor by directing anyone not to clock in for a scheduled shift; by refusing to pay overtime that an employee earned; by moving overtime from one week to the next; by asking or requiring anyone to work off the clock; or by reducing actual hours worked in the company records. *Id.* Exh. B ., at SV000349-50. The Defendants further note that their Management Operations Manual requires that hourly employees be paid time and a half for overtime. *Id.* at Exh. C.

Since this case is at the initial stage of the certification inquiry, we need not make any factual determinations. However, neither the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if we were to overlook facts which generally suggest that a collective action is improper. See, *Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709 at *5 (E.D.La., July 2, 2004)("To create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for the same prior to certification would be an exercise in futility and wasted resources for all parties involved."); see, e.g., *Ray v. Motel 6 Operating Limited Partnership,* supra at *4. The plaintiffs, in *Ray,* who were assistant managers at the defendant's motels, sought to proceed collectively in their claim that the defendant had denied them overtime payments in violation of the FLSA. Specifically, the plaintiffs alleged that the defendants told assistant managers that the job would require overtime, but that they could not record more than forty (40) hours per week. In support of their requested certification, the plaintiffs submitted a number of affidavits concerning the defendant's alleged "plan" to deny them overtime payments.

In addressing the propriety of the conditional certification and notice, the Court recognized that the "[d]etermination of class status at the notice stage is often liberally authorized since the court has minimal evidence for analyzing the class." *Id.* However, the Court determined that, given the extensive facts before it, there was no need for discovery in order to determine whether certification was proper, and it ultimately found that the plaintiffs had failed to satisfy their burden that they were similarly situated for the

purposes of the FLSA. In so finding, the Court recognized that each of the plaintiffs who had "opted in" to the action were employed in the same position, pursuant to a similar management plan, as members of a management team which consisted of a manager and an assistant manager; that each of the plaintiffs were employed by the same corporate entity; and that the plaintiffs each alleged a common illegal plan to deprive them of overtime pay.

*8 However, the Court also noted the individualized nature of the plaintiffs' claims, as the plaintiffs worked at a minimum of thirty-nine (39) different properties, located in twenty (20) different States; the properties where the plaintiffs worked varied widely as to the number of rooms and budgets; and the amount of overtime hours varied among plaintiffs. The Court also observed as follows:
Moreover, the illegal overtime plan alleged by the Plaintiffs in the present action is not necessarily carried out through central management. First official written policy dictates that overtime will be paid in compliance with the FLSA. Second, if an illegal scheme exists at all, it is implemented on a decentralized level. Specifically, the approval of overtime is controlled by area supervisors. Further, in that Plaintiffs also allege that budget plans demonstrate a need for improper overtime, it is notable that the budgetary plans differ according to region and property. The evidence does not indicate that all the Plaintiffs sustained injury from one unlawful policy.

*Id.* at *4.

Under similar circumstances, Courts from other jurisdictions have determined that where an "off-the-clock" claim requires significant individual considerations, it may be inappropriate for conditional certification. See, *Diaz v. Electronics Boutique of America,* supra at *5(denying Motion for Conditional Certification upon the finding that the plaintiff's "allegations-viz., that he worked "off-the-clock" without compensation and that his timesheets were altered to delete overtime hours worked-are too individualized to warrant collective action treatment."), citing *Lawrence v. City of Philadelphia,* 2004 WL 945139 at *2 (E.D. Pa., April 29, 2004)(denying Motion for class certification where "off-the-clock"

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1892527 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d)

claim did not involve regularly scheduled hours that were worked by all members of the class, because "[t]he circumstances of those individual claims potentially vary too widely to conclude that * * * the Plaintiffs are similarly situated."); *England v. New Century Financial Corp.,* supra at 509 (finding conditional certification improper in a case where an "off-the-clock" claim involved a multitude of different managers at different locations, and where liability at one store location would not necessarily require a finding of liability at another location); *Basco v. Wal-Mart Stores, Inc.,* supra at *7.

In *Basco v. Wal-Mart Stores, Inc.,* supra at *7, the plaintiffs alleged "widespread occurrence of off-the-clock-work and unpaid overtime" at the defendant's stores in Louisiana. In support for their allegations, the plaintiffs presented testimony from a former store manager that six (6) persons worked off-the-clock at his store, and that he had previously been instructed to delete overtime hours from employees' time records. The plaintiffs also presented testimony from five (5) of the defendant's employees who claimed that they had worked more than forty (40) hours without receiving overtime compensation. *Id.* at *6.

**\*9** In response to the plaintiffs' submissions, the defendants presented evidence that the plaintiffs were, individually, responsible for punching themselves in and out, and that the defendant's official policy required payment for all working time. *Id.* at *7. As such, the defendants urged that "any deviations for [sic] that policy occurs on a manager-by-manager basis and associate-by-associate basis involving particular circumstances and anecdotal testimony." *Id.*

When presented with this information, the Court determined that certification was improper, reasoning as follows:
Simply put, plaintiffs seek to make a corporate policy to keep employee wage costs low sufficient proof to justify the creation of a class of all Wal-Mart employees that have not been properly paid overtime in the last three years. It is obvious from the discovery presented that this "policy" and its effects are neither homogenous nor lend themselves to collective inquiry. The effects of the policy as alleged are anec-

dotal, that is to say particularized. Plaintiffs' own witnesses demonstrate that the "policy" was not even uniformly or systematically implemented at any given store. While it is true that this "lesser" standard should not preclude certification, and "similarly situated" does not mean identically situated, plaintiffs have failed in their burden of proof to demonstrate identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency. For this reason the Court would deny the Motion to Certify Collective Action.

*Id.* at *7.[FN5]

> FN5. While the Court, in *Basco,* analyzed the plaintiffs' Motion for Class Certification under both the first and second stage of the two-step analysis, we have limited our discussion of that case to its analysis under the initial, less stringent standard.

The circumstances here are analogous to those which were present in *Ray* and *Basco,* in that the Plaintiffs were employed at different store locations, where different individual restaurant managers allegedly used varying means to deprive the Plaintiffs of proper compensation for his or her overtime hours. Furthermore, the nature of the asserted violation differ among the Plaintiffs; the number of uncompensated overtime hours that are being claimed range from two (2) to twelve hours (12) hours weekly, *Fisher Aff.* at Exh. 17; and, like both *Ray* and *Basco,* the alleged violations are contrary to the Defendants' official written policy, which precludes store managers from requiring employees to work off-the-clock, and requires payment of time and one-half for all overtime hours worked.

The burden on the Plaintiffs to establish that their case is "appropriate" for conditional certification and judicial notice "is not a difficult one." *Severtson II,* supra at 279. However, before subjecting an employer to the burdens of a collective action, the plaintiffs must establish a colorable basis for their claim that a manageable class of "similarly situated" plaintiffs exist. *Severtson I,* supra at 267. Considering the individualized nature of the alleged violations, along with the absence of evidence to support the Plaintiffs' con-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 9
Not Reported in F.Supp.2d, 2006 WL 1892527 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d)

clusory assertion of widespread violations, we find that the Plaintiffs have failed to demonstrate even a colorable basis that they were the victim of some common policy or plan, or that a manageable class exists, which would render a collective action appropriate. Therefore, we recommend that the Plaintiff's Motion for Conditional Certification, Judicial Notice, and to Compel be denied at this time.[FN6]

> FN6. A s noted, the Plaintiff's Motion to Compel seeks to require the Defendants to provide them with a list of all persons that were employed by the Defendants as shift managers at their Pizza Hut restaurants from September of 2002, until the present, and contact information for those individuals. The purpose of the requested information is to facilitate notice to potential putative plaintiffs. Since, we find that the Plaintiffs' claims are inappropriate for collective action, and notice, it necessarily follows that the information being sought is no longer pertinent to the Plaintiffs' claims. Furthermore, given our recommended disposition of the Plaintiffs' Motion to for Conditional Certification, Judicial Notice, and to Compel, we recommend that the Defendants' informal Motion to Stay consideration of that Motion be denied, as moot.

*10 During the time that the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel, was under advisement, the Defendants filed a Motion to Strike certain portions of the Plaintiffs' Interrogatories Answers that were submitted in support of the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel. The Defendants' Motion was predicated on depositions of the Plaintiffs, which commenced after the Hearing on the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel, and which the Defendants contend contain testimony that is contradictory to the information that was conveyed in the Plaintiffs' Interrogatory Answers. Since we have concluded that the Plaintiffs' Interrogatory Answers, as they were presented, fail to provide a basis for conditional certification, we further recommend that the Defendants' Motion to Strike be denied, as moot.

NOW, THEREFORE, It is-

RECOMMENDED:

1. That the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel [Docket No. 29] be denied.

2. That the Defendants' informal Motion to Stay Consideration of the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel [Docket No. 34] be denied, as moot.

That the Defendants' Motion to Strike Interrogatory Answers [Docket No. 57] be denied, as moot.

D.Minn.,2006.
West v. Border Foods, Inc.
Not Reported in F.Supp.2d, 2006 WL 1892527 (D.Minn.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

**Villanueva-Bazaldua v. TruGreen, et al.**
**Civil Action No. 06-185**

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
Basco v. Wal-Mart Stores, Inc.
E.D.La.,2004.
Only the Westlaw citation is currently available.
United States District Court,E.D. Louisiana.
Derrin BASCO, et al.
v.
WAL-MART STORES INC., et al.
No. Civ.A. 00-3184.

July 2, 2004.

Morris Bart, III, Morris Bart, PLC, Randy Jay Ungar, Kristi Ann Post, Ungar & Byrne, New Orleans, LA, Michael X. St. Martin, Conrad S. P. Williams, III, St. Martin & Williams, Houma, LA, Jim S. Adler, Jim S. Adler & Associates, John M. O'Quinn, Russell T. Lloyd, Stephen P. Agan, O'Quinn, Laminack & Pirtle, Houston, TX, Franklin D. Azar, Kenneth Pennywell, Franklin D. Azar & Associates, Aurora, CO, Gerald L. Bader, Jr., Renee B. Taylor, Bader & Associates, PC, Denver, CO, for Plaintiffs.
Teresa Buckner, Bossier City, LA, pro se.
Robert K. McCalla, Lawrence Joseph Sorohan, II, Fisher & Phillips, LLP, New Orleans, LA, for Defendants.

*ORDER AND REASONS*
DUVAL, J.
*1 Before the Court is Plaintiffs' Motion for FLSA Class Certification and to Approve Notice to All Similarly Situated Employees in Louisiana. Oral argument was held on March 18, 2004, with supplemental briefing ordered; the last memorandum was filed into the record on May 27, 2004. Having reviewed the extensive pleadings, memoranda, exhibits, deposition testimony and the relevant law, the Court finds that the motion is without merit.

BACKGROUND

This case was originally filed on September 5, 2000 by Derrin Basco, Dorothy English and Colby Lague in Civil District Court for the Parish of Orleans, Louisiana, individually and on behalf of all other similarly situated class members ("original plaintiffs"), against Wal-Mart Stores, Inc. (including all Louisiana Wal-Mart stores, Supercenters and Sam's Clubs) ("Wal-Mart"). The petition also

named Wal-Mart managers, James Banks, Chris Martin, Charles Lanclos, Charles Rinehart, Wayne Gordon and Pat Curan ("the individual defendants"), as well as all other store, club, district and regional managers for the past ten years. ("John Does"). The Louisiana claims against the individual employees were dismissed, and a Motion to Remand was denied on June 15, 2001. The procedural history of this case was been discussed at length in Magistrate Judge Roby's order allowing the Sixth Amended Complaint to be filed in this matter, *Basco v. Wal-Mart Stores, Inc.,* 2004 WL 574279 (E.D.La. March 19, 2004) and is incorporated herein. In addition, the factual and procedural history is further outlined in this Court's denial of a Motion for Class Certification on May 9, 2002. *Basco v. Wal-Mart Stores, Inc.,* 216 F.Supp.2d 592 (E.D.La.2002) which is incorporated herein as well. The United States Court of Appeals for the Fifth Circuit denied plaintiffs leave to appeal the denial of class certification on July 25, 2002.

On August 23, 2002, this matter was set for trial to commence on April 28, 2003. On January 24, 2003, defendants filed a Motion for Summary Judgment seeking dismissal of certain of plaintiffs' remaining claims based on prescription and all unjust enrichment claims. While that motion was pending, on February 27, 2003, four plaintiffs filed a Fourth Amended Complaint which asserted for the first time federal minimum wage and overtime violations pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201-219 ("FSLA").

A status conference was held on February 27, 2003, during which plaintiffs sought a continuance of the trial based on the new allegations. A proper motion was filed by plaintiffs on March 17, 2003, noting their desire to pursue their rights as a collective action under the FLSA which required discovery. The Court sought to have a conference to set this matter for trial; however, plaintiffs moved for continuance of the pretrial scheduling conference because "plaintiffs and defense counsel have agreed that there must be some discovery and motion practice undertaken in order to prepare the case for a hearing on Plaintiffs' motion to proceed as a collective action." (Doc. 103). Thus, the parties set out to do the necessary discovery to present to the Court the instant issue. Based on counsel's request, the hearing on the certification of the

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

collective action was set for January 15, 2004, with responses due on February 17, 2004 and a hearing on the matter set for March 4, 2004. No trial date was set at that time.

*2 A Fifth Amended Complaint was filed on November 11, 2003 which added 15 additional plaintiffs to this suit to flesh out the FLSA claims.[FN1] The hearing on the Motion for Certification was continued to March 18, 2004. As previously noted, after that hearing counsel requested additional time to file briefing on representative testimony which was completed on May 24, 2004.

> FN1. By virtue of the Sixth Amended Complaint, two plaintiffs were dropped and nine new plaintiffs were added. The Court has focused on those plaintiffs that were named in the Fifth Amended Complaint, that is at the time of the filing of this motion. The new plaintiffs do not change the analysis of the matter before the Court.

Plaintiffs' Motion for FLSA Class Certification and to Approve Notice to All Similarly Situated Employees in Louisiana

The Claims

Plaintiffs seek class certification to pursue claims under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 (hereinafter "FLSA"). Plaintiffs allege in the Fifth Amended Complaint that Wal-Mart pursues a pattern of conduct that results in (1) employees working off the clock, (2) employees being "locked-in" at night off-clock while waiting for management to let employees out, (3) and employees missing rest and meal breaks. Plaintiffs move the Court for an order (1) certifying this case as a collective action under § 216(b) of the FLSA, (2) approving the "Notice to Current and Former Wal-Mart and Sam's Club Hourly Employees in Louisiana" (Exh. No. 21 to this motion) which would then be sent to the approximately 100,000 employees to be identified, by (3) compelling Wal-Mart to answer Interrogatory No. 2 of Plaintiffs' Fourth Set of Interrogatories (Exh. No. 22 to this motion).

The "class" is defined in plaintiffs' suggested "Notice" as: any and all employees who are or have been, at any time within the past three (3) years: (a) Employed on an hourly

basis at a Wal-mart or Sam's Club store that was owned and operated by Wal-Mart Stores, Inc. in the State of Louisiana; and (b) Did not receive minimum or overtime wages as a result of the practices described in Paragraph 2(a).

Paragraph 2(a) states:This lawsuit alleges that Wal-Mart Stores, Inc. has violated the Act with regard to hourly workers as follows: (1) after clocking out after a shift, employees are required to work beyond their regular hourly schedules and are not paid for the time worked off the clock; (2) after clocking out for meal breaks, employees are required to perform work duties and are not paid for the time worked off the clock during their unpaid meal breaks; (e) employees are not permitted to take rest and meal breaks; and (4) managers have manipulated time and wage records to reduce amounts paid to Wal-Mart employees, including overtime pay.

(Plaintiffs' Memorandum in Support, Exh. 21).

Contained in Exhibit A is a list of the named plaintiffs FN2 in the Fifth Amended Complaint, the location of the relevant store where that person is employed, the time of employment, the job description and the claims made on behalf of that person.

> FN2. The claims of Teresa Buckner and Geneva Johnson-Heisler have been dismissed.

Exhibit A

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 3
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

| Name | Store Location | Time of Employment | Job Description | Claims |
|------|------|------|------|------|
| Regina Geason | Sam's Club No. 8221, Harvey | Feb. 1995-Feb.2 000 | audit/ inventory control | off clock/ lock-in/rest and meals |
| Betty Matthews | Wal-Mart No. 23, Ruston | June 1989-April 2001 | overnight stocker, photo processor | off clock/ lock-in/rest and meals |
| | | | demo coordinator, zone manager, | |
| | | | dept. manager | |
| K. Busby-Dunn | Wal-Mart No. 1206 Baton Rouge | Nov. 1999-June 2001 | lingerie dept. | off clock/ lock-in/rest and meals |
| Janet Clay * | Wal-Mart No. 376 Bossier City | Nov. 1999-May 2001 | cashier | no overtime pay |
| Merle Davis | Wal-Mart No. 839 Baton Rouge | Dec. 1992-July 2001 | cashier | no overtime pay/ lock-in/rest and meals |
| A. Dixon-Clark | Wal-Mart No. 1169 New Roads | ? ? | pharmacy dept. | off clock/ rest and meals |
| C. Edwards | Wal-Mart No. 489 Hammond | Oct. 2000-July 2001 | receiving dept. | off clock/ no overtime pay/rest and meals |
| C. Ferguson | Wal-Mart No. 2132 Baton Rouge | Sept. 1999-Sept. 2001 | grocery dept. | off clock/ no overtime pay |
| D. Gauthr- | Wal-Mart | April | stoker and | off clock/ |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                         Page 4
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

| eaux | No. 2132 Baton Rouge | 1998-Feb.2 001 | cashier | no overtime pay/rest and meals |
| Silas Handy [*] | Wal-Mart No. 376 Bossier City | 1997-2001 | ? ? ? | of f clock/ rest and meals |
| Linus Mayes | Wal-Mart No. 376 Bossier City | Aug.2000-2 001 | receiving dept. | off clock/ rest and meals |
| Fannie Mc-Claim | Wal-Mart No. 428 Zachery | March 2001-May2 001 | remodeling crew | off clock/ rest and meals |
| Alfred Scott | Wal-Mart No. 201 Plaquemine | Feb. 2000-Aug.2 001 | overnight stocker | off clock/ no overtime pay/rest and meals |
| Lee Slaughter | Sam's Club No. 8273 Shreveport | 1984 to present | grocery dept. | off clock/ rest and meals |
| Trinity Taylor | Wal-Mart No. 1206 Baton Rouge | Aug. 2000-June 2001 | hardware dept. | off clock/ rest and meals |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                  Page 5
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

**\*3** The claims as noted vary; not each plaintiff complains of all "illegal" activities. Plaintiffs contend that these practices have resulted in the violation of the minimum wage and overtime provisions of the FLSA.

### The FLSA and Collective Action Status

Section 207(a) of the FLSA requires covered employers to compensate non-exempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. 29 U.S.C. § 207(a); *Freeman v. Wal-Mart Stores, Inc.,* 256 F.Supp.2d 941, 943 (W.D.Ark.2003). An employee is authorized to bring an action on behalf of himself and other "similarly situated" employees. 28 U.S.C. § 216(b).[FN3] This type of action is meant to serve the interest of judicial economy and to aid in the vindication of plaintiffs' rights. *Id. citing Hoffman-LaRoche Inc. v. Sperling,* 439 U.S. 165, 170 (1989) (judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity). Thus, the inquiry before the Court is to determine whether the class as defined is "similarly situated."

> FN3. The Age Discrimination in Employment Act, 29 U.S.C. § 621, also explicitly incorporates section 16(b) of the FLSA, 29 U.S.C. § 216(b). *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1212 (5th Cir.1995). Thus, any discussion of this provision in the context of an ADEA claim is applicable to the case at bar.

In the seminal case *Mooney v. Aramco Services Co.,* 54 F.3d 1207 (5th Cir.1995), the United States Court of Appeals for the Fifth Circuit noted that are the two different tests that have been applied to make this determination-a two-step approach found in *Lusardi v. Xerox Corp.,* 122 F.R.D. 463, 465-66(D.N.J.1988) and the "Spurious Class Action" outlined in *Shushan v. University of Colorado,* 132 F.R.D. 263 (D.Colo.1990).

Under *Lusardi,* the trial court approaches the "similarly situated" inquiry via a two-step analysis. The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members.

Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If th claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-i.e. the original plaintiffs-proceed to trial on their individual claims.

**\*4** *Mooney* at 1213-14. Indeed, in *Lusardi,* the court considered the following factors to reach its decision to decertify the class at the second stage:(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the defendant] which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) the apparent absence of filings required by the ADEA prior to instituting suit.

*Mooney,* 54 F.3d at 1213 n. 7, *citing Lusardi,* 188 F.R.D. at 359; *Thiesen v. General Electric Capital Corp.,* 267 F.3d 1095, 1103 (10th Cir.2001) (using the first three criteria).

The second analysis is known as Spurious Class Action FN4

> FN4. *Bayles v. American Medical Response of Colorado,* 950 F.Supp. 1053 (D.Col.1996) identified three other analyses-all variations using a Rule 23analysis; however, in light of *Mooney,* the Court need not examine these other methods. "Litigation of Wage and Collective Actions" at

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                         Page 6
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

132.

The second line of cases is typified by *Shushan v. University of Colorado,* 132 F.R.D. 263 (D.Colo.1990). *Shushan* espouses the view that § 16(B) of the Fair Labor Standards Act (FLSA) merely breathes new life into the so-called "spurious" class action procedure previously eliminated from Fed.R.Civ.P. 23. Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA and ADEA context, but merely desired to limit the availability of Rule 23 class action relief under either Act. In application, the court determined that Congress intended the "similarly situated" inquiry to be co-extensive with Rule 23 class certification. In other words, the court looks at "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified. *Mooney,* 54 F.3d at 1214.[FN5] This approach has not been embraced as often as the one found in *Lusardi.*

> FN5. Both in *Mooney* and *Freeman,* the courts found it unnecessary to choose between the two tests. The courts found that based on the record before them that no matter which test was used a finding that the opt-in plaintiffs or potential opt-in plaintiffs were not similarly situated.

Given the direction of the Tenth and Eleventh Circuits and the great weight of district court authority, a consensus has been reached on how section 216(b) cases should be evaluated. It is clear that the two-step ad hoc approach is the preferred method for making the similarly situated analysis and that the similarly situated standard does not incorporate Rule 23 requirements. D. Bergen and L. Ho, "Litigation of Wage and Hour Collective actions under the Fair Labor Standards Act" 7 *Employee Rts. & Emp. Pol'y J.* 129, 134 (2003).[FN6] The authors continue:

> FN6. Rule 23, which is generally considered a "stricter" rule, *Garza v. Chicago Transit Authority,* 2001 WO 504036 (N.D.Ill. May 8, 2001) would require findings on numerosity, commonality, typicality and adequacy tests.

While the recent court of appeals opinions have clarified the standards and procedure for making the 'similarly

situated' determination, the district courts are still wrestling with the application of such standards. The similarly situated standard is evaluated differently depending on if the inquiry takes place when: (1) plaintiffs seek court-facilitated notice early in the litigation; or (2) discovery has closed or the defendant seeks to decertify a previously certified class propr to trial.
*Id.*

Based on the foregoing, the Court will employ the two-step approach found in *Lusardi.* However, in light of the substantial discovery that has occurred in this matter, the Court will consider the criteria for both the first and second steps in deciding whether it should certify this matter. At least one court has proceed directly to the second stage when "the parties do not dispute that discovery has been undertaken relating to the issues of certification of this action as a collective action." *Pfohl v. Farmers Ins. Group,* 2004 WL 554834 (C.D.Cal. March 1, 2004). Indeed, in the instant matter substantial discovery has occurred; the Court has heard the video deposition testimony of a substantial number of plaintiffs at the hearing on this matter and has independently reviewed written deposition testimony as well. This case, as demonstrated by its long procedural history, is not in a nascent stages. Thus, an application of the second criteria is called for.

**\*5** Because the aim of collective actions is to promote judicial economy, and substantial discovery has already been undertaken such that the Court can make an educated decision as to whether certifying this matter as a collective action would survive the decertification process, the ends of judicial economy and require the Court to make that enquiry at this stage. To create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for same prior to its certification would be an exercise in futility and wasted resources for all parties involved.

Similarly Situated

The Standard Employed

Plaintiffs bear the burden of establishing that they are similarly situated to the proposed class. *Pfohl v. Farmers Ins. Group,* 2004 WL 554834 (C.D. Cal. March 1, 2004, *citing White v. Osmose, Inc.,* 204 F.Supp.2d 1309, 1313 (M.D.Ala.2002). As stated by Judge Feldman in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 7
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

*Helmerich and Payne Intern'l Drilling Co.,* 1992 WL 91946 (E.D.La. April 16, 1992):

Similarly situated does not mean identically situated. *See Heagney [v. European American Bank,* 122 F.R.D., 515 (E.D.Wash.1989) ]; *Palmer v. Readers Digest Association,* 42 Fair Empl. Prac. 212, 213 (S.D.N.Y.1986); *Riojas [v. Seal Produce, Inc.* 82 F.R.D. 613, 617 (S.D.Tex.1979). Rather, an FLSA class determination is appropriate when there is "a demonstrated similarity among the individual situations ... some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Heagney, supra ....* Thus, a court can foreclose a plaintiff's right to proceed collectively only if "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Burt v. Manville Sales Corp.,* 116 F.R.D. 276, 277 (D.Colo.1987).

*Id.* at *2. This standard has been restated and further refined in *H & R Block, Ltd. v. Housden,* 186 F.R.D. 399 (E.D.Tex.1999):although the standard for satisfying the first step is lenient, ..., the court still requires at least "substantial allegations that the putative class members were together victims of a single decision, policy or plan infected by discrimination." courts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified ...; whether affidavits of potential plaintiffs were submitted ...; and whether evidence of a widespread discriminatory plan was submitted....

*Id.* at 400. Another district court has concluded "that while a united policy, plan or scheme of discrimination may not be required to satisfy the more liberal similarly situated requirement, some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency. *Barron v. Henry County School System,* 242 F.Supp.2d 1096 (M.D.Ala.2003), *citing Sheffield v. Orius Corp.,* 211 F.R.D. 411, 416 (D.Or.2002).

First Step-Facts or Legal Nexus that Binds so as to Create Judicial Efficiency

*6 In essence, plaintiffs' argument of their being "similarly situated" as all to Louisiana Wal-Mart employees who are not paid overtime rests on the alleged

"Wal-Mart mentality" of no overtime and strict budgeting of time and employee costs. To support this position, plaintiffs contend that Wal-Mart has engaged in a practice of limiting the amount of work its employees are allowed to perform on the clock during the week but not the amount of work they are required to do. They claim it is the result of a "Customer Service Scheduling System" which is a computer network used to monitor hours worked and control payroll costs at its individual stores on a daily basis-department-by-department and employee-by-employee. Plaintiffs rely on (1) the Customer Service Scheduling System; (2) evidence that hourly employees are not compensated for all of their work; and (3) bonus incentives for Store Managers.

(1) Customer Service Scheduling System

The Customer Service Scheduling System ("CSSS") is a computer program used to optimize the hours worked in relation to the historical needs of the business. It apparently creates "preferred hours" for each store which are determined as a percentage of historical and projected sales revenues. (Perrin Deposition pp. 5-10). These "preferred hours" are then used by store managers to create the "scheduled hours" for their stores. The store then tracks the "actual hours". Wal-Mart allegedly expects that payroll costs as a percentage of sales revenues be maintained at around 8%.

In addition there is a "Store Staffing Comparison by Day Report" to monitor Associates who may be working over or under their scheduled hours. There is also a "Associate Scheduling Review Report" which store managers can use to verify that the amount of wages scheduled is consistent with the budget.

Plaintiffs also provide evidence that they contend proves that (1) the computer prompts managers when they try to add shifts to obtain the District Managers approval for the addition, (2) the method by which the time clocks are "polled" and "finalized" shaved time off (which Wal-Mart vehemently denies), also (3) managers being "coached" on employee cost overruns.

(2) Hourly Employees Not Compensated for All of Their Work

(a) Off the Clock

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 8
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

Plaintiffs' counsel contends that plaintiffs were "often" required to work "off the clock. Reviewing the deposition testimony of the seven plaintiffs [FN7] however does not overwhelm the Court as evidence of a policy or practice, it appears to be extremely anecdotal-one manager requiring it as oppose to all, perhaps once or twice during the course of a plaintiff's work.

    FN7. Ferguson, Slaughter, Clark, McClain, Gauthreaux, Handy and Mayes.

    (b)working more than 40 hours-no overtime

Likewise, plaintiffs presented testimony of five employees complaining that they worked more than 40 hours without receiving overtime pay.

    (3) Bonus Incentives for Store Managers

In further support of this theory, plaintiffs contend that managers are awarded bonuses for keeping salary costs down and that as a result there is an added incentive for managers to have employees to work off the clock, contrary to Wal-Mart's written policies.

*7 Based on these policies and procedures, plaintiffs rely on examples of the effect of the application of these alleged practices to demonstrate why this matter should proceed as a collective action. Plaintiffs focus on the fact that there is evidence of "wide-spread occurrence of off-the-clock-work and unpaid overtime" which they say they've uncovered without much discovery. Plaintiffs note that they've found nine more individuals that they've included in a Sixth Amended Complaint that have been deposed and have testified to working off the clock or not being paid overtime.

Plaintiffs point to the testimony of a former store manager for Wal-Mart Store No. 803, Mr. Mitchell, in Bogalusa from July 2000 to July 2002, who claims that six people worked off the clock to "protect him". He also claims he was instructed to delete overtime from employees' time records in April or May of 2002. Mitchell names Charles Reinhardt and Donna Turpirtz as district managers who were making decisions that led him to be understaffed.

Nonetheless, Wal-Mart contends that even using the lenient standard, plaintiffs' request should be denied as plaintiffs have not identified a "single decision, policy or

plan" as set forth in *Mooney v. Aramco Serv. Co.,* 54 F.3d 1207, 1214 n. 8 (5th Cir.1995). It contends that the anecdotal, that is to say individual instances cited are not enough to support a finding of being "similarly situated." To that end they have provided a number of affidavits from managers explaining the process of scheduling that they are instructed to use and they are not under any circumstances to have workers work "off-clock". Wal-Mart specifically counters each exhibit showing that the inferences promoted by plaintiffs are ill-founded.

Wal-Mart further contends that in order to prove plaintiffs' case, the facts are too individualized to warrant this kind of procedure. First, the plaintiffs themselves are responsible for punching in and out. Wal-Mart's policy requiring payment for all working time and any deviations for that policy occurs on a manager-by-manager and associate-by-associate basis involving particular circumstances and anecdotal testimony. The Court notes that one of the most telling example of this principle was supported by the testimony of Mr. Gauthreaux who loved working in the meat department because he never was asked to be off-clock and had only been asked once to be off-clock; the testimony of Charles Ferguson supports the same conclusion.

Taking all of this into consideration, the Court must agree with Wal-Mart's characterization of the evidence presented. Simply put, plaintiffs seek to make a corporate policy to keep employee wage costs low sufficient proof to justify the creation of a class of all Wal-Mart employees that have not been properly paid overtime in the last three years. It is obvious from the discovery presented that this "policy" and its effects are neither homogeneous nor lend themselves to collective inquiry. The effects of the policy as alleged are anecdotal, that is to say particularized. Plaintiffs' own witnesses demonstrate that the "policy" was not even uniformly or systematically implemented at any given store. While it is true that this "lesser" standard should not preclude certification, and "similarly situated" does not mean identically situated, plaintiffs have failed in their burden of proof to demonstrate identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency. For this reason the Court would deny the Motion to Certify Collective Action. However, pretermitting that finding, the Court will now examine this matter using the more demanding second step. [FN8]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 9
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

FN8. The Court is not unaware that the two "step" inquiry somewhat collapses into one when a Court is faced with the plethora of evidence that was presented in this matter. Certainly the first "step" analysis is colored by the facts demonstrated-disparate factual and employment settings of the individual-and perhaps the Court should simply start at the second step as was done in the *Pfohl* case. Nonetheless, for purposes of appeal, the Court will go through the complete analysis.

Second Step-Disparate Settings, Disparate Defenses and Procedural

*8 Now, the Court will examine whether there are (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to Wal-Mart which appear to be individual to each plaintiff; and (3) fairness and procedural considerations that would make certification improper. "It would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman v. Wal-Mart Stores, Inc.,* 256 F.Supp.2d 941 (W.D.Ark.2003).

The Court finds that the evidence presented and outlined above further underscores the disparate factual and employment settings of the individual plaintiffs. These facts demonstrate that it would not be in the interest of judicial economy to certify the state-wide class of employees. A store locate in Northern Louisiana faces different pressures and sales dynamics than a store in Southern Louisiana. Such variances would be equally possible even within the New Orleans area from store to store. Furthermore, the breadth of the type of employees and departments would also have to be placed into the equation. In addition, it is clear that even within a given store, one manager in one department would react to the "policy" differently than in another department. (e.g.-Mr. Gauthreaux-working in the meat department versus working as a cashier).

Furthermore, Wal-Mart's potential defenses to any alleged FLSA overtime violations will require highly individualized evidence concerning each associate. As stated in *Mooney,* 54 F.3d 1213, n. 7 "the disparate individual de-

fenses asserted by [defendant] heightens the individuality of the claims and complicates the significant management problems." As Wal-Mart correctly noted, it would be entitled to:

(1) contest whether any off-the-clock work occurred and whether it resulted in nonpayment of FLSA overtime;
(2) argue specific defenses available under the FLSA that seem to require individual testimony particularly in reference as to what constitutes "work" under the FLSA;
(3) demonstrate its managers and supervisors did not know about the off-the-clock work and that plaintiffs failed to take advantage of Wal-mart's system for reporting time;
(4) demonstrate that plaintiffs' claims are barred by § 4 of the Portal to Portal Act, 29 U.S.C. § 254, as to all hours during which plaintiffs were engaged in activities that were preliminary or post-liminary to their principal activities;
(5) demonstrate that any off-the-clock work falls within the *de minimus* exception to the FLSA;
(6) demonstrate associates claims are barred by statute of limitations or technical defaults; and
(7) demonstrate that each manager acted in good faith and that liquidated damages are not appropriate.

These factors also support the finding that a collective action of this nature presents enormous manageability problems because there is no single decision, policy or plan at issue. The findings decertifying the collective action in *Lusardi* are equally appropriate here. The members of the proposed class come from different departments, groups, organizations, sub-organizations, units and local offices within the Wal-Mart organization. The potential opt-in plaintiffs performed different jobs at different geographic locations and were subject to different managerial requirements which occurred at various times as a result of various decisions by different supervisors made on a decentralized employee-by-employee basis. This case should not be certified; it would be an exercise in gross mismanagement of judicial and litigant time and money to certify the class as requested given the overwhelming evidence brought before the court.[FN9] Accordingly,

FN9. In *Thiebes v. Wal-Mart Stores, Inc.,* 1999 WL 1081357 (D. Oregon Dec. 1, 1999), the court allowed an FSLA action to proceed against Wal-Mart based on its findings at the First Stage and allowed the action to proceed for notice and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 10
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

discovery purposes. Using the less stringent standard, the court held that there were sufficient identifiable factual and legal bases that the potential plaintiffs were a victim of a common policy. Although not reported, it is this Court's understanding that ultimately the liability questions went to a jury which found in favor of the plaintiffs. Moreover, it is the Court's understanding that approximately 425 employees oped-in. There is no reported case addressing a motion for decertification after discovery had been completed. Because there has been substantial discovery in this case, this Court's analysis is based on a stricter standard in this instance.

**\*9** IT IS ORDERED that Plaintiffs' Motion for FLSA Class Certification and to Approve Notice to All Similarly Situated Employees in Louisiana is DENIED.

E.D.La.,2004.
Basco v. Wal-Mart Stores, Inc.
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Michael P. Kelly, hereby certify that a true and correct copy of Defendant's

Opposition to Plaintiff's Motion for Reconsideration of Motion to Conditionally Certify FLSA

Collective Action or Alternatively Amended Motion for Conditional Certification was served via

e-file on this 16th day of April, 2007, upon the following counsel of record:

> Vivian L. Rapposelli, Esquire
> Rapposelli & Gonzales
> 1300 Grant Ave., Suite 100
> Wilmington, DE 19806

/s/ Michael P. Kelly
Michael P. Kelly (DE Bar ID #2295)

ME1 5758839v.1