IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RAMON VILLANUEVA-BAZALDUA
individually and on behalf of others similarly
situated,

        Plaintiff

v.

TRUGREEN LIMITED PARTNERS and
TRUGREEN, INC.

        Defendants.

_____

CA 1:06-cv-00185-GMS

Class Action

## PLAINTIFF'S NOTICE OF
## FILING OF RED-LINED VERSION OF
## PROPOSED FIRST AMENDED COMPLAINT

Now comes Plaintiff and hereby gives notice of the filing of the attached red-lined version

of his proposed first amended complaint.  Plaintiff's motion for leave to file this proposed first

amended complaint was filed as D.I. 55.  In the red-lined version, material deleted from the

original complaint is struck out and new material is underlined.

Respectfully submitted,

/s/ Vivian Rapposelli
_____
Vivian L. Rapposelli
DE Bar No. 3204
Rapposelli & Gonzales
1300 Grant Ave., Suite 100
Wilmington, DE 19806
Tel: 302-652-8711

Edward Tuddenham
TX Bar No. 20282300
153 Upland Rd.
Cambridge, MA 02140
Tel: 617-576-2182

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

I certify that on this 24nd day of May, 2007, I served the foregoing document on Defendants by e-mailing it to the Defendant's attorneys as follows:

Michael P. Kelly          Mkelly@mccarter.com
McCarter & English
Citizens Bank Building
919 N. Market St.  18th Floor
Wilmington, Delaware 19801

Michael Banks          sbouchard@morganlewis.com
Sarah Bouchard
Morgan Lewis
1701 Market St.
Philadelphia, Pa. 19103

/s/ Vivian L. Rapposelli

_____

Vivian Rapposelli

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RAMON VILLANUEVA-BAZALDUA
individually and on behalf of others similarly
situated,

      Plaintiff,

v.                              CA1:06-CV-00185-GMS

TRUGREEN LIMITED PARTNERS,
TRUGREEN, INC. and JAMES VACCHIANO,

      Defendants.

_____/

FIRST AMENDED COMPLAINT

[1.  This is an action for damages resulting from Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. §201 et seq., breach of contract, fraud, and violation of the duty of good faith and fair dealing.   Plaintiff seeks damages on behalf of himself and all other similarly situated H-2B workers employed by Defendants.]

    1.      Plaintiff Ramon Villanueva brings this action to recover damages for injuries inflicted by Defendants TruGreen Limited Partnership ("TruGreen LP") and James Vacchiano. Defendant TruGreen, Inc. is sued in its capacity as general partner of TruGreen Limited Partnership.  As set forth below, Defendants TruGreen LP and Vacchiano devised and carried out a criminal scheme to defraud the U.S. Government and deprive vulnerable foreign workers of their lawful wages.

    2.      Plaintiff brings this action under the Federal Racketeer Influenced and Corrupt Organizations Act (RICO) to recover damages for the injuries suffered by Plaintiff and other H-

2B workers as a direct result of Defendant TruGreen LP's and Vacchiano's criminal racketeering activities.  Plaintiff also seeks relief for himself and other H-2B workers for violations of the Fair Labor Standards Act, 29 U.S.C. §201 et seq., breach of contract, fraud, promissory estoppel, and breach of the duty of good faith and fair dealing.

JURISDICTION

3.  [2]  This Court has subject matter jurisdiction over Plaintiff's s [Fair Labor Standards Act (FLSA)] federal claims pursuant to 28 U.S.C. § 1331 (federal question), 18 USC § 1962 (RICO), and 29 U.S.C. §216(b) (FLSA).

4. [3]  This Court has federal question jurisdiction over Plaintiff's state law claims. [contract claim pursuant to 28 U.S.C. §1331 (federal question).  4.  This Court has] and supplemental jurisdiction pursuant to 28 U.S.C. §1367 over all of Plaintiff's state law claims [breach of contract, fraud, and violation of the duty of good faith and fair dealing claims pursuant to 28 U.S.C. 1367.]

VENUE

5.    Venue is proper pursuant to 28 U.S.C. §1391(b) as a substantial part of the events giving rise to this action occurred within this district and Defendants are located, reside, or do business in this district.  Venue is also proper pursuant to 18 U.S.C. §§ 1965(a) and (b).

PARTIES

6.    Plaintiff Ramon Villanueva-Bazaldua is a resident of the Republic of Mexico.

7.    Defendant TruGreen Limited Partnership ("Trugreen LP") is a limited partnership organized under the laws of the State of Delaware.  Defendant TruGreen LP was referred to in Plaintiff's original complaint as TruGreen Limited Partners.  Based on Defendant TruGreen LP's

2

representation to the Court that its correct name is TruGreen Limited Partnership, Plaintiff has

corrected the name in this amended complaint.    TruGreen LP [It] may be served with process

through its registered agent, Corporation Trust Company, Corporation Trust Center, 1209

Orange St., Wilmington, Delaware 19801.

8.    Defendant TruGreen, Inc. is a corporation organized under the laws of the State of

Delaware.  It is sued in its capacity as general partner of TruGreen Limited Partnership liable for

the debts of the limited partnership.  It may be served with process through its registered agent,

Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington,

Delaware19801.

9.    Defendant James Vacchiano is Director of Human Resources for the Northeast

Division of TruGreen Companies, a group of companies owned and operated by Service Master.

The TruGreen Companies include Defendant TruGreen LP as well as TruGreen LandCare.

CLASS/COLLECTIVE ACTION ALLEGATIONS

10.  [9]Plaintiff brings his FLSA claims individually and as a collective action on behalf

of a class defined as "all H-2B workers employed by Defendant TruGreen Limited Partnership at

any time between 2003 and 2006."  Collective action treatment is appropriate because all

members of the class are similarly situated with respect to Defendant TruGreen LP's policy or

practice of not taking into account  the visa, processing, and transportation expenses incurred by

H-2B workers in determining whether such workers received the wages required by the FLSA.

Plaintiff's consent to sue form was attached to his original complaint.

11.    [10] Plaintiff brings his RICO, breach of contract, unjust enrichment,  promissory

estoppel and fraud [and duty of good faith and fair dealing claims] on behalf of himself and a

3

class defined as "all H-2B workers employed by Defendant TruGreen Limited Partnership at any time between 2003 and 2006."

12.    The classes defined in paragraphs 10 and 11 are [This class is] so numerous that joinder of all members is impracticable.  There are questions of law and fact common to the class; the claims of the named plaintiff are typical of the claims of the class; and the named plaintiff will fairly and adequately protect the interests of the class.   Certification of the class pursuant to Rule 23(b)(3) is appropriate because the questions of law and fact common to the class predominate over any questions affecting only individual members of the class.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy in that the individual members of the class have no interest in controlling the prosecution of separate actions; on information and belief, no other litigation has been commenced by the members of the class; it is desirable and more efficient to concentrate the litigation of these claims in one forum; and, no difficulties are likely to be encountered in the management of the class action.

FACTS

13.    [11] At all times relevant herein, Defendant TruGreen LP was a business entity engaged in interstate commerce.  It  provided landscaping services to customers in Delaware, Maryland, Pennsylvania, New Jersey, Virginia, and other states and operated as an 'enterprise engaged in commerce' as that phrase is defined in the FLSA, 29 U.S.C. § 203(s).

12. Each year since at least 2003,  Defendants have applied for permission to employ temporary foreign landscape workers pursuant to the federal governments H-2B visa program.

13.  Each year, in order to obtain permission to employ workers under the H-2B program,

4

Defendants submitted applications to the Department of Labor for certification of the need for temporary foreign workers ("labor certification") on forms ETA 750. In addition, Defendants submitted applications for H-2B visas to the Department of Citizenship and Immigration Services (CIS) on forms I-129.

14. In 2004, the forms ETA 750 and the forms I-129 filed by Defendants offered hourly wages of $10/hour, $15/hour overtime, and a work for the period March 1 through November 30, 2004.

15. On information and belief, the forms ETA 750 and forms I-129 filed by Defendant in 2003, 2005 and 2006 offered hourly wages at fixed dollar amount per hour and overtime equal to one and one-half times the stated hourly wage. On information and belief, the forms also offered work for the period March through November in each of those years.

16. Each year, in anticipation of receiving approval of their applications for H-2B visas, Defendants, through their agents, recruited workers in Mexico.

17. In 2004, Defendants, through their agent, LLS International S. de R.L. de C.V., recruited Plaintiff in Mexico with a promise $11.34 per hour and an overtime rate of $17.01 per hour. Defendants also represented to Plaintiff that he was required to work for the full term of the contract.

18. On information and belief, other Mexican H-2B workers recruited to work for Defendants in 2003, 2004, 2005 and 2006 were promised in Mexico that they would receive a fixed hourly rate of pay and overtime at one and one-half times that hourly rate of pay and were further told that they would be required to work for full term of the contract from March through November.

19.  Plaintiff relied upon the representations made to him in Mexico and incurred  various expenses obtaining his H-2B visa and traveling to the United States to work for Defendants. These expenses included, but were not limited to, the cost of obtaining a Mexican passport, a $100 visa application fee, a $100 visa issuance fee, a $6 border crossing fee, a $155 administrative fee paid to Defendants' agent for processing the visa paperwork, and transportation expenses from the point of recruitment to the place of work in the United States.

20.  On information and belief, other H-2B workers employed by Defendants during 2003, 2004, 2005 and 2006 relied on the promises made to them in Mexico and incurred similar visa, processing and transportation expenses in order to get to the United States to work for Defendants.

21.  Plaintiff had to pay for his return transportation to Mexico and, on information and belief, most, if not all, of the other H-2B workers employed by Defendants in 2003, 2004, and 2005 paid for their own return transportation to Mexico.  On information and belief, Defendants will require H-2B workers employed in 2006 to pay for their return transportation to Mexico.

22.  All of the expenses outlined in paragraphs 19, 20, and 21 were primarily for the benefit and convenience of Defendants.

23.  As a matter of practice or policy uniformly applied to all of their H-2B workers, Defendants did not take into account the expenses set forth in paragraphs 19 and 20 in determining whether  their H-B workers employed during the relevant time period received the wages required by the Fair Labor Standards Act during the first work week.

24.  As a matter of practice or policy uniformly applied to all of their H-2B workers employed during the relevant time period, Defendants did not take into account the expenses set

forth in paragraph 21 in determining whether their H-2B workers employed during the relevant time period received the wages required by the Fair Labor Standards Act during the worker's last week of work.  On information and belief, Defendants do not intend to take into account the expenses of return transportation in calculating the last week's wages of H-2B workers employed in 2006.

25.   The expenses outlined in paragraph 19 and 20 operated as *de facto* deductions from the first week's wages of Plaintiff and other H-2B workers causing them to earn less than the wages required by the Fair Labor Standards Act.

26.  The expenses outlined in paragraph 21 operated as *de facto* deductions from the last week's wages of Plaintiff and other H-2B workers causing them to earn less than the wages required by the Fair Labor Standards Act.

27.  Defendants' violations of the Fair Labor Standards Act were willful.

28.   Defendants had no intention of paying Plaintiff or other H-2B workers employed during the relevant time period the hourly and overtime wages promised in Defendants' applications to DOL and CIS or to H-2B workers in Mexico.  Nor did Defendants intend to employ Plaintiff or other H-2B workers for the full term of work promised to workers.  The representations made to Plaintiff and other H-2B workers regarding wages and the work term were fraudulent and designed for the purpose of inducing them to accept employment with Defendants.

29.  Once Plaintiff began work, Defendants paid him using a "Chinese overtime" system. Under this system, Plaintiff was paid a base wage of $450 per week.  This amount was divided by his total hours of work for the week to calculate a regular hourly rate of pay.  Plaintiff was

then paid one-half of that regular rate as an overtime premium for the hours he worked in excess of 40 in the week. As a result of this pay scheme, the more hours Plaintiff worked per week in excess of 40, the less he was paid per hour and the lower his overtime premium per hour. As a result of this scheme, Plaintiff earned less than the regular and overtime rates promised in Defendants visa applications and less than the rates promised to Plaintiff in Mexico.

30. On information and belief, Defendants other H-2B workers employed during the relevant time period were paid using a similar "Chinese overtime" method and did not receive the hourly and overtime rates promised in Defendants' applications to DOL and CIS or the rates promised to the H-2B workers in Mexico.

31. Defendants constructively terminated Plaintiff prior to the completion of his work contract by failing to pay him the promised wage.

32. On information and belief, Defendants wrongfully terminated or constructively terminated other H-2B workers employed during the relevant time period prior to the completion of their work contracts by, *inter alia*, paying them less than the wage rate promised in order to induce them to accept the job.

14. On information and belief, since at least 2003 Defendant TruGreen LP has engaged in a scheme to reduce its labor costs by fraudulently obtaining permission from the government to employ easily exploitable H-2B workers and by illegally underpaying such workers. This scheme was operated and managed on behalf of TruGreen LP by Defendant James Vacchiano.

15. The H-2B program enables employers to hire foreign workers to come to the U.S.

8

to perform temporary nonagricultural labor if qualified U.S. workers capable of performing such services or labor are not available.

16.    Visas issued under the H-2B program are made out to both the sponsoring employer and to the prospective worker.  The worker is bound to the sponsoring employer; if the employer terminates the employment relationship, the employer also terminates the H-2B workers' legal status in the United States.  H-2B workers are particularly vulnerable to exploitation by their sponsoring employers because they know that their sponsoring employers have the power to control their immigration status.

17.    To qualify for the H-2B program, an employer must submit an Application for Alien Employment Certification, Form ETA-750, to the U.S. Department of Labor (DOL) and the appropriate State Workforce Agency.    A single application may seek multiple visas as long as all of the workers are to perform the same job at the same wage rate in the same geographic area.  If workers are to perform different jobs, receive different wages, or work in different geographic areas, separate applications must be filed.

18.    DOL evaluates the ETA-750 to ensure that the offered work terms will not adversely affect similarly situated U.S. workers and to determine whether U.S. workers are available to fill the jobs described on the form.  Among other things, an employer must promise to pay at least the prevailing wage set for the job in the geographic area where the job is to be performed.  If the work terms are approved by DOL, the employer must advertise for U.S. workers at the approved work terms.  If sufficient U.S. workers cannot be found to accept the job through these recruitment efforts, DOL issues a "labor certification" certifying the need for the employment of the requested aliens.

19.     An employer who receives DOL labor certification then submits the certification to the Bureau of Citizenship and Immigration Services (CIS) along with a petition for a non-immigrant worker visa on form I-129.  CIS makes the final decision whether to grant the employer's visa application, weighing a number of factors including the local labor information provided the state labor agency and the DOL certification.

20.     If the Form I-129 is approved by the CIS, the employer sends notice of the approval to the U.S. Consulate in the country where the foreign workers selected by the employer reside.   The employer communicates to the Consulate the names of the foreign workers that it wants to receive its visas.  Department of State (DOS) employees at the Consulate interview the workers and if they are eligible, issues H-2B visas to them to work for the petitioning employer.

21.     The process for obtaining H-2B workers is complicated, requiring coordination of state and federal agencies as well as contact with workers and the U.S. consulate in a foreign country.  In the case of Defendant TruGreen LP, which filed applications in several different States each year, more than one state agency was involved.   Upon information and belief, the likelihood of a company obtaining H-2B visas without such professional assistance is small.

22.     Each year since at least 2003, Defendant TruGreen LP sought to participate in the H-2B program to reduce its labor costs. Defendant Vacchiano operated and managed the visa application process on behalf of TruGreen LP described below.

23.     Realizing the complicated nature of the visa application process, TruGreen LP contracted with Great Lakes Labor LLC to assist it with its H-2B visa applications and with the recruitment of the foreign workers.

24.    Great Lakes Labor LLC is a business entity engaged in interstate commerce.  On information and belief, it is owned and operated by Tracy Drus and maintains it principal office in Pinckney, Michigan.

25.    Each year from 2003 through 2006, Defendant TruGreen LP, with the assistance of Great Lakes Labor LLC, prepared and submitted numerous form ETA-750 applications for alien employment certification to State Workforce Agencies and DOL.  These forms were submitted by mail, fax, and/or common interstate carrier.  Separate forms were submitted for each locale where Defendant TruGreen LP sought to use foreign workers.  On information and belief Defendant TruGreen LP filed more than seven such applications each year between 2003 and 2006.  Many, if not all, of these forms were signed by Defendant Vacchiano.

26.    The ETA-750s submitted by TruGreen LP offered, *inter alia*: (1) straight hourly wage rates and overtime; (2) a guarantee that the worker would be paid at least the prevailing wage applicable to the job at the time the work commenced; (3) terms and conditions of work in compliance with Federal, State and local law; and (4) term employment generally running from the early spring until November 30.

27.    On information and belief TruGreen LP's ETA-750 forms misrepresented the number of workers that TruGreen LP needed, the jobs that would be performed by workers, the method of pay and hourly rates that would be paid, and the period for which workers would be employed.

28.    At the time the forms were submitted to State Workforce Agencies and DOL, TruGreen LP, Vacchiano, and Great Lakes Labor knew, or should have known, that TruGreen LP had fewer job openings than stated on the ETA-750s, that workers would be employed in

11

occupations different from those described on the ETA-750 forms, that workers would be paid lower wages than listed on the forms, and that workers would not be employed for the full term set forth on the ETA-750.

29.     For example, on or about October 30, 2003, Great Lakes Labor, on behalf of TruGreen LP, submitted a form ETA-750 for TruGreen LP's Newport, Delaware branch office. Plaintiff's visa was approved pursuant to this ETA-750.  The ETA-750 sought 14 workers to be employed in Delaware during 2004.  The form offered pay at a rate of $10/hour and $15/hour overtime and stated that the term of employment would run from March 1, 2004 through November 30, 2004.  Although Defendant Vacchiano signed this form under penalty of perjury, on information and belief, TruGreen LP did not have that many job openings in Newport, intended to pay workers using a "Specialist's Pay Plan" that resulted in lower hourly earnings than promised in the ETA-750, and did not intend to employ H-2B workers for the full term. The Specialist Pay Plan paid workers a fixed salary regardless of the number of hours they worked rather than a straight hourly wage as promised in the ETA-750.

30.     On information and belief, in order to secure approval of visas at a lower wage rate than required by law TruGreen LP, with the assistance of Great Lakes Labor, misrepresented to State Workforce Agencies and/or DOL the prevailing wages applicable to TruGreen LP's jobs and/or the information used to determine the applicable prevailing wages.  These fraudulent representations were submitted to State Workforce Agencies and/or DOL by telephone, fax, mail and/or common interstate carrier.

31.     For example, as part of the process of obtaining approval for 2004 ETA-750 for Newport, Delaware, TruGreen LP, with the assistance of Great Lakes Labor, represented that the

12

job code used to determine the prevailing wage for the Newport jobs was code 408.684.010 and/or that the prevailing wage applicable to the job at the time the application was filed was no more than $10/hour.   In fact, the applicable job code was 408.864.014 or the equivalent and the prevailing wage for the job at the time TruGreen's ETA-750 was filed was $11.94/hour.

31.     State Workforce Agencies and DOL reasonably relied on the representations made by TruGreen LP and Great Lakes Labor in approving lower prevailing wage rates for TruGreen LPs visa applications than should have been applied to those applications.

32.     On information and belief, TruGreen LP, Vacchiano, and Great Lakes Labor knew that the statements in TruGreen LP's visa applications, including the statements relating to the prevailing wage rates, were fraudulent and conspired together to submit those applications to the State Workforce Agencies and DOL.

34.     As part of the process of obtaining labor certification from DOL, Defendant TruGreen LP, with the assistance of Great Lakes Labor, caused advertisements for the jobs described in the ETA-750s (including the fraudulent terms of work) to be placed in newspapers and reported the results of those recruitment efforts to the State employment service agency for each area in which Defendant TruGreen LP sought to employ foreign workers.  The communications related to these advertisements were made by telephone, fax, mail, wire and/or common interstate carrier.

35.     On information and belief TruGreen LP, Vacchiano, and Great Lakes Labor knew, or should have known, that the advertisements described in paragraph 34 were fraudulent and conspired together to place those advertisements.

36.     Defendant TruGreen LP 's communications with Great Lakes Labor regarding the

preparation and filing of each year's form ETA-750s and supporting materials associated with those applications were carried out by telephone, fax, mail, wire, and/or common interstate carrier.

37.     Defendant TruGreen LP and Great Lake Labor's communications with DOL and State employment service agencies regarding its H-2B applications were carried out by telephone, fax, mail, wire and/or common interstate carrier.

38.     In reasonable reliance upon the representations in Defendant TruGreen LP's ETA-750 forms and supporting material, DOL granted Defendant TruGreen LP's labor certification applications for 2003, 2004, 2005 and 2006.  Those certifications were communicated by mail and/or common interstate carrier to Defendant TruGreen LP and Great Lakes Labor.

39.     Each year from 2003 through 2006, Defendant TruGreen LP, with the assistance of Great Lakes Labor, then submitted I-129 petitions, including the ETA-750s, to CIS by mail, fax or commercial interstate carrier.  One or more such I-129 petitions were filed for each approved form ETA-750.

40.     On information and belief Defendant TruGreen LP's I-129 petitions contained the same misrepresentations regarding the number of jobs, job duties, length of the job opportunity and the wage rates to be paid as were contained in the applications to DOL.

41.     On information and belief, TruGreen LP, Vacchiano and Great Lakes Labor were aware of the fraudulent representations in the I-129 petitions and conspired together to submit the fraudulent petitions to CIS.

42.     CIS reasonably relied upon the misrepresentations in Defendant TruGreen LP's I-

14

129 petitions in granting TruGreen LP permission to employ H-2B workers in Delaware,

Pennsylvania, New Jersey, Maryland, Virginia and other states in each year 2003 through 2006.

43.    Upon information and belief, the expertise provided by Great Lakes Labor was

critical to Defendant TruGreen LP's success in obtaining DOL and CIS approval of H-2B visas

in each of the years 2003 through 2006.

44.    Each year, Great Lakes Labor engaged the services of LLS International S. de

R.L. de C.V. (LLS), to assist with contacting and recruiting workers in Mexico to accept

Defendant TruGreen LP's H-2B visas and to assist with the processing of those workers through

the consulate in Monterrey, Mexico.

45.    LLS  is a Mexican corporation engaged in the business of assisting U.S.

employers with locating, recruiting and processing Mexican workers to work under H-2B visas.

On information and belief, LLS is owned and controlled by Jeffrey West.

46.    In each of the years 2003, 2004, 2005, and 2006, Great Lakes Labor, acting on

behalf of TruGreen LP, communicated to LLS work terms to be offered to H-2B workers

recruited for Defendant TruGreen LP.  On information and belief, these work terms, which were

set forth in written disclosure forms, fraudulently offered fixed hourly and overtime rates as well

as term employment for specified periods of time.  On information and belief, TruGreen LP

expected H-2B workers to rely on the terms of work offered in these disclosure forms and to act

upon them by coming to work for TruGreen LP.

47.    For example, LLS contacted Plaintiff on behalf of Defendant TruGreen LP in

February 2004.  In order to induce Plaintiff to accept an H-2B visa with Defendant TruGreen LP,

LLS, acting on instructions from Great Lakes Labor and Defendant TruGreen LP,  provided

Plaintiff with a disclosure form that fraudulently represented that he would be paid $11.34 per hour and $17.01 per hour overtime, would receive commissions, and that he would be employed for the term March 16, 2004 through November 15, 2004.   The disclosure forms LLS presented to Plaintiff also indicated that he could not leave his employment during that period of time without the permission of Defendant TruGreen LP and that, in the event he did leave his employment, he would be reported to CIS, his visa would be canceled and he would forfeit the possibility of returning to work the following year under the H-2B program.

48.    On information and belief, Defendant TruGreen LP, Vacchiano and Great Lakes Labor knew, or should have known, that the terms of work set forth in the disclosure documents provided to H-2B workers in Mexico misrepresented the actual terms of work that would be provided to workers when they commenced work for TruGreen LP.

49.    Communications between Defendant TruGreen LP, Great Lakes Labor, and LLS regarding the terms of work to be offered to H-2B workers, including Plaintiff, were conducted by wire, mail, commercial interstate carrier, and/or fax.

50.    Each H-2B worker employed by Defendant TruGreen LP during the relevant time period, including Plaintiff, entered into a contract of employment with TruGreen LP by signing the disclosure forms provided to him by LLS.  The terms of work set forth in Defendants' ETA-750 and I-129 visa petitions as well as all terms of work required by law to be provided to H-2B workers were incorporated into these contracts as a matter of law.

51.    After signing the disclosure forms, and in reasonable reliance upon the promises contained therein, H-2B workers, including Plaintiff, incurred various costs in order to get their visas and travel to the United States to begin working for Defendant TruGreen.   These costs

16

included, but were not limited to, the cost of a Mexican Passport, a visa application fee of $100, a visa issuance fee of $100, $155 in administrative expenses charged by LLS for assisting with the preparation and presentation of the worker's visa application, a $6 border crossing fee paid to CIS, and approximately $200 in transportation costs from the place of recruitment to Monterrey and from Monterrey to the job site in the United States.

52.    All of the costs described in paragraph 51 were "primarily for the benefit and convenience" of Defendant TruGreen LP as those that phrase is used in 29 C.F.R. §531.3(d)(1).

53.    Upon arrival in Delaware, Plaintiff regularly worked more than 40 hours per week. TruGreen LP refused to pay him in compliance with the disclosures accepted by Plaintiff in Mexico. Instead, TruGreen LP coerced Plaintiff into working under the "specialist compensation plan" scheme described above in paragraph 29. As a result of this method of pay, Plaintiff earned less than the hourly rates that Defendant TruGreen LP represented to DOL and CIS would be paid to H-2B workers employed in Delaware and less than the hourly rates that were promised to Plaintiff in Mexico when he accepted the job.

54.    On information and belief, the terms and conditions of work, including the wage rates, provided to other H-2B workers employed by Defendant TruGreen LP in the years 2003-2006 were different from, and less advantageous than, the terms and conditions of work promised by Defendant TruGreen LP in its applications to DOL and CIS and those set forth in the disclosure forms signed by the workers in Mexico.

55.    When Plaintiff complained about the wages he was paid, Defendant TruGreen LP made clear that it would not pay him in compliance with the offer made to him in Mexico.

56.    Defendant TruGreen LP constructively discharged Plaintiff from his job prior to

the end of the term of work offered to him by refusing to pay him in compliance with the promises made to Plaintiff in Mexico.

57.  On information and belief, Defendant TruGreen LP routinely discharged or constructively discharged H-2B workers prior to the end of their work terms.

58.    Plaintiff had to pay a portion of his return transportation to Mexico and, on information and belief, other H-2B workers employed by Defendant TruGreen LP in 2003, 2004, 2005 and 2006 paid for their own return transportation to Mexico.

59.    The return transportation expenses outlined in paragraph 58 were primarily for the benefit and convenience of Defendant TruGreen LP.

60.    As a matter of practice or policy uniformly applied to all of its H-2B workers, Defendant TruGreen LP did not take into account the expenses set forth in paragraphs 51 in determining whether its H-B workers received the wages required by the Fair Labor Standards Act during the first work week.

61.    As a matter of practice or policy uniformly applied to all of its H-2B workers, Defendant TruGreen LP did not take into account the expenses set forth in paragraph 58 in determining whether its H-2B workers received the wages required by the Fair Labor Standards Act during the worker's last week of work.

62.    The expenses outlined in paragraph 51 operated as *de facto* deductions from the first week's wages of Plaintiff and other H-2B workers causing them to earn less than the wages required by the Fair Labor Standards Act.

63.    The expenses outlined in paragraph 58 operated as *de facto* deductions from the last week's wages of Plaintiff and other H-2B workers causing them to earn less than the wages

required by the Fair Labor Standards Act.

      64.    Defendant TruGreen LP's violations of the Fair Labor Standards Act were willful.

## FIRST CAUSE OF ACTION

      65.    Plaintiff incorporates by reference the facts set forth in paragraphs 1-64 as if fully set forth at this point.

      66.    [33] The above facts constitute violations of the Fair Labor Standards Act, 29 U.S.C. §§206 and 207, by Defendant[s] TruGreen LP for which Plaintiff and similarly situated H-

2B workers are entitled to relief pursuant to 29 U.S.C. §216(b).

## SECOND CAUSE OF ACTION

      67.    Plaintiff incorporates by reference the facts set forth in paragraphs 1-64 as if fully set forth at this point.

      68.  [34] The above facts constitute breach of contract by Defendant[s] TruGreen LP for which Plaintiff and other H-2B workers are entitled to relief.

## THIRD CAUSE OF ACTION

      69.    Plaintiff incorporates by reference the facts set forth in paragraphs 1-64 as if fully set forth at this point.

      70.    [35]The above facts constitute fraud by Defendant[s] TruGreen LP for which Plaintiff and other H-2B workers are entitled to relief.

## FOURTH CAUSE OF ACTION

      71.    Plaintiff incorporates by reference the facts set forth in paragraphs 1-64 as if fully set forth at this point.

19

71.    [36] The above facts constitute violations of the covenant of good faith and fair dealing by Defendant[s] TruGreen LP for which Plaintiff and other H-2B workers are entitled to relief.

## FIFTH CAUSE OF ACTION

72.    Plaintiff incorporates by reference the facts set forth in paragraphs 1-64 as if fully set forth at this point.

74.    In the event that the work terms set forth in and/or incorporated in the disclosure forms signed by Plaintiff and other H-2B workers in Mexico are not contractually enforceable, Plaintiff and other H-2B workers performed the work they agreed to perform, Defendant TruGreen LP was enriched thereby and Plaintiff and other H-2B workers were impoverished in that they did not receive the terms promised in exchange for their work.  There was no justification for TruGreen LP's failure to comply with the terms of work promised.

75.    The above facts constitute unjust enrichment of TruGreen LP for which Plaintiff and other H-2B workers are entitled to damages.

## SIXTH CAUSE OF ACTION

76.    Plaintiff incorporates by reference the facts set forth in paragraphs 1-64 as if fully set forth at this point.

77.    In the event the promises made in and/or incorporated in the disclosure forms signed by Plaintiff and other H-2B workers are not contractually enforceable, they are enforceable under the doctrine of promissory estoppel and Plaintiff and other H-2B workers are entitled to damages for Defendant TruGreen LP's failure to comply with those promises.

## SEVENTH CAUSE OF ACTION
### (RICO violations by TruGreen LP)

20

78.    Plaintiff incorporates by reference the facts set forth in paragraphs 1-64 as if fully set forth at this point.

RICO Defendant

79.    At all times relevant herein Defendant TruGreen LP operated as a legal entity capable of holding a legal or beneficial interest in property and therefore was a "person" as defined by RICO, 18 U.S.C. § 1961(3).

RICO Enterprise

80.    Defendant TruGreen LP was associated with an "association-in-fact" enterprise consisting of TruGreen LP and Great Lakes Labor.  Alternatively the enterprise consisted of those entities and the TruGreen Companies.  This group of entities, although not a legal entity, was associated in fact and therefore an "enterprise" as defined in RICO, 18 U.S.C. §1961(a)(4).

81.    The legitimate purpose of the enterprise was to staff Defendant TruGreen LP with H-2B workers and profit from that staffing.

82.    The enterprise has an ascertainable decision-making structure with the Defendant TruGreen LP and the TruGreen Companies providing the information used to file the visa applications and Great Lakes Labor determining the wage rates to offer, directing and managing the visa application process, and directing the recruitment of H-2B workers in association with LLS, the recruiter in Mexico.  Great Lakes Labor provided critical knowledge of ways to manipulate the visa application process and helped to legitimize TruGreen LP's visa applications all of which was necessary for the fraudulent scheme to succeed.  As explained above, Defendant TruGreen LP could not successfully conduct its criminal worker exploitation scheme without the association-in-fact with  Great Lakes Labor that formed the enterprise.

83.    This association-in-fact enterprise was engaged in interstate and foreign commerce and/or its activities affected interstate commerce.  Among other things the association-in-fact utilized interstate mails to communicate with government agencies and provided workers for the business operations of TruGreen LP which affected interstate commerce.

84.    Defendant TruGreen LP operated and managed the enterprise through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c).

Predicate Racketeering Acts

84.    Defendant TruGreen LP knowingly and wilfully devised a scheme to defraud State Workforce Agencies, DOL, CIS and DOS for the purpose of depriving Plaintiff and other H-2B workers of the wages required by state and federal law and the contractual commitments made to workers in Mexico.

85.    In order to carry out this criminal worker exploitation scheme, Defendant TruGreen LP knowingly and willfully committed predicate racketeering offenses under RICO §1961(a)(B) including mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. §1343 and fraud in obtaining and using visas in violation of 18 U.S.C. §1546.

.    87.    As described above, Defendant TruGreen LP knowingly used the mails, telephone, common interstate carriers, and fax to communicate with Great Lakes Labor, State Workforce Agencies, DOL, CIS and DOS with the specific intent of executing and furthering this fraudulent scheme, in violation of 18 U.S.C. §§1341 and 1343.

88.    It was reasonably foreseeable to Defendant TruGreen LP that, in the course of carrying out its worker exploitation scheme, Great Lakes Labor and LLS would use the mails,

telephone, interstate common carrier, and fax to communicate with each other and to secure the approval of Defendant TruGreen LP's fraudulent H-2B visa applications by DOL, CIS and DOS in violation of 18 U.S.C. §§ 1341 and 1343. These communications furthered Defendant TruGreen LP's criminal worker exploitation scheme.

89.     Upon information and belief, State Workforce Agencies, DOL, CIS and DOS justifiably relied on the fraudulent labor certifications and I-129 petitions submitted by the enterprise on behalf of TruGreen LP and in giving their approval of Defendant TruGreen LP's applications to employ H-2B workers.

90.     Defendant TruGreen LP, Tracy Drus and Great Lakes Labor knowingly and repeatedly made false statements under penalty of perjury in visa applications and other documents required by the immigration laws and knowingly presented such applications and documents in violation of 18 U.S.C. §1546(a).

91.     Defendant TruGreen LP obtained and made use of H-2B visas knowing them to have been procured by means of the false statements and fraud in violation of 18 U.S.C. § 1546(a).

Pattern of Racketeering Activity

92.     The predicate acts of criminal racketeering activity described above constitute a "pattern of racketeering activity" as defined by RICO, 18 U.S.C. § 1961(5).  As described above, Defendant TruGreen LP, with the assistance of and in conspiracy with Great Lakes Labor, committed numerous acts of mail and wire fraud with respect to each fraudulent visa application filed between 2003 and 2006 and committed visa fraud with respect to hundreds of visas over at least a four year period

92.    The predicate acts of criminal racketeering activity described above were related in at least the following ways: They had common perpetrators, i.e. Defendant Vacchiano, TruGreen LP and Great Lakes Labor.  They each involved the same victims or group of victims, namely H-2B workers as well as State and Federal Government agencies.  They each had the same purpose (and result) of benefitting Defendant TruGreen LP and Great Lakes Labor.  And they were interrelated in that without the acts of mail, wire, and visa fraud, Defendant TruGreen LP would not have been able to exploit Plaintiff and other H-2B workers and deprive them of their lawful wages.

94.    Such acts of racketeering activity have been part of the Defendant TruGreen LP's regular way of doing business through the enterprise described above since at least 2003, implying a threat of continued criminal activity.

95.    The above facts establish that Defendant TruGreen LP violated RICO, 18 U.S.C. §1962 (c), by associating with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including repeated acts of mail fraud, wire fraud, and visa document fraud in violation of RICO, 18 U.S.C. § 1962(c).

96.    As a direct, intended and foreseeable result of the Defendant TruGreen LP's violations of RICO, through the conspiracy and criminal worker exploitation scheme described above, Plaintiff and other H-2B workers have suffered injury to their property, including the right to be paid contractual and lawful wages for their work.

97.    The criminal acts of mail fraud, wire fraud, and visa fraud committed by Defendant TruGreen LP were directly related to and were substantial factors in causing injury to

Plaintiff and other H-2B workers.

98.     Plaintiff and other H-2B workers are entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

EIGHTH CAUSE OF ACTION<br>(18 U.S.C. §1962(d) violation by TruGreen LP)

99.     Plaintiff incorporates by reference the facts set forth in paragraphs 1-98 as if fully set forth at this point.

100.    Defendant TruGreen LP and Great Lakes Labor conspired together to commit the RICO predicate acts described above in violation of RICO, 18 U.S.C. § 1962(d).

100.    As a direct, intended and foreseeable result of Defendant TruGreen LP's violation of RICO, 18 U.S.C. §§1962(c) and (d), Plaintiff and other H-2B workers have suffered injury to their property, including the right to be paid contractual and lawful wages for their work.

101.    The criminal acts of mail fraud, wire fraud, and visa document fraud committed by Defendant TruGreen LP were directly related to and were substantial factors in causing injury to Plaintiff and other H-2B workers.

102.    Plaintiff and other H-2B workers are entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

NINTH CAUSE OF ACTION<br>(18 U.S.C. §1962(c) by James Vacchiano)

RICO Defendant

103.    Plaintiff incorporates by reference the facts set forth in paragraphs 1-103 as if fully set forth at this point.

104.    At all times relevant herein Defendant James Vacchiano was an individual capable of holding a legal or beneficial interest in property and therefore was a "person" as defined by RICO, 18 U.S.C. § 1961(3).

RICO Enterprise

105.    Defendant James Vacchiano was associated with an "association-in-fact" enterprise as defined by 18 U.S.C. §1961(4) consisting of TruGreen LP and Great Lakes Labor.

107.    Alternatively James Vacchiano was associated with an "enterprise" as defined by 18 U.S.C. §1961(4) consisting of TruGreen LP.

108.    Defendant James Vacchiano operated and managed the enterprises described in paragraphs 106 and 107 through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c).

Predicate Racketeering Acts

109.    Defendant Vacchiano knowingly and wilfully devised a scheme to defraud DOL, CIS and DOS for the purpose of depriving Plaintiff and other H-2B workers of the wages required by state and federal law and the contractual commitments made to workers in Mexico.

110.    In order to perpetrate this criminal worker exploitation scheme, Defendant Vacchiano knowingly and willfully committed predicate racketeering offenses under RICO §1961(a)(B) including mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. §1343 and fraud in obtaining and using visas in violation of 18 U.S.C. §1546.

111.    As described above, Defendant Vacchiano knowingly used the mails, telephone, common interstate carriers, and fax to communicate with Great Lakes Labor, LLS, state employment service offices, DOL, CIS and DOS with the specific intent of executing and

furthering the worker exploitation scheme, in violation of 18 U.S.C. §§1341 and 1343.

111.    It was reasonably foreseeable to Defendant Vacchiano that, in the course of carrying out the worker exploitation scheme, TruGreen LP, Great Lakes Labor and LLS, would use the mails, telephone, interstate common carrier, and fax to communicate with each other and to secure DOL, CIS, and DOS' approval of Defendant TruGreen LP's fraudulent H-2B visa applications in violation of 18 U.S.C. §§ 1341 and 1343.  These communications furthered Defendant Vacchiano's criminal worker exploitation scheme.

113.    Upon information and belief, Defendant Vacchiano and Great Lakes Labor knowingly and repeatedly made false statements under penalty of perjury in visa applications and other documents required by the immigration laws and knowingly presented such applications and documents in violation of 18 U.S.C. §1546(a).

114.    Upon information and belief, DOL, CIS and DOS justifiably relied on the fraudulent ETA-750 and I-129 forms signed and/or approved by Defendant Vacchiano in giving their approval to TruGreen LP's applications to employ H-2B workers.

115.    As described above, Defendant Vacchiano obtained and made use of H-2B visas knowing them to have been procured by means of the false statements and fraud in violation of 18 U.S.C. § 1546(a).

Pattern of Racketeering Activity

116.    The predicate acts of criminal racketeering activity described above constitute a "pattern of racketeering activity" as defined by RICO, 18 U.S.C. § 1961(5).   As described above, Defendant Vacchiano, with the assistance of and in conspiracy with Great Lakes Labor, repeatedly committed the predicate acts of visa fraud involving hundreds of visas over at least a

four year period.  In addition, Defendant Vacchiano, with the assistance of Great Lakes Labor, repeatedly engaged in acts of mail and wire fraud to further the fraud upon the government and H-2B workers from 2003 through the present.

117.    The predicate acts of criminal racketeering activity described above were related in at least the following ways:  They had common perpetrators, i.e. Defendants Vacchiano on behalf of  TruGreen LP and Great Lakes Labor.  They each involved the same victims or group of victims, namely H-2B workers as well as the U.S. Government.  They each had the same purpose (and result) of benefitting Vacchiano, TruGreen LP and Great Lakes Labor at the expense of H-2B workers.  And they were interrelated in that without the acts of mail fraud, wire fraud, and document fraud in visas, Defendant Vacchiano would not have been able to exploit Plaintiff and other H-2B workers and deprive them of their lawful wages.

118.    Such acts of racketeering activity have been part of the Defendant Vacchiano's regular way of conducting the business of  Defendant TruGreen LP and the business of the enterprise-in-fact described in paragraph 106 above since at least 2003, implying a threat of continued criminal activity.

118.    As described above, Defendant Vacchiano violated RICO, 18 U.S.C. § 1962 (c) by associating with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including repeated acts of mail fraud, wire fraud, and visa document fraud in violation of RICO, 18 U.S.C. § 1962(c).

119.    As a direct, intended and foreseeable result of the Defendant Vacchiano's violations of RICO, through the conspiracy and criminal worker exploitation scheme described

above, Plaintiff and other H-2B workers have suffered injury to their property, including the

right to be paid contractual and lawful wages for their work.

121.    The criminal acts of mail fraud, wire fraud, and document fraud committed by

Defendant Vacchiano were directly related to and were substantial factors in causing injury to

Plaintiff and other H-2B workers.

122.    Plaintiff and other H-2B workers are entitled to relief, including treble damages

and attorneys fees pursuant to RICO, 18 USC §1962(d).

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a.  Allow Plaintiff to pursue his FLSA claims as a collective action and authorize Plaintiff

to issue notice of the right to opt-into this action to all similarly situated H-2B workers;

b.  Certify Plaintiffs RICO, breach of contract, fraud, unjust enrichment, and promissory

estoppel [and good faith and fair dealing] claims as a Rule 23(b)(3) class action on behalf of H-

2B workers employed by Defendant TruGreen LP during the period 2003 through 2006;

c.  Award Plaintiff and other H-2B workers employed by Defendant TruGreen LP treble

compensatory damages for Defendant TruGreen's and Vacchiano's violations of RICO;

d.  [c] Award Plaintiff and similarly situated H-2B workers their unpaid minimum wages,

regular wages and overtime as well as an equal amount of liquidated damages pursuant to 29

U.S.C. §216(b);

e.  [d] Award Plaintiff and other H-2B workers compensatory damages for Defendant

TruGreen LP's breach of contract; promissory estoppel; and unjust enrichment;

f.  [e] Award Plaintiff and other H-2B workers compensatory and punitive damages for

Defendant TruGreen LP's fraud;

g.  ~~[f]~~ Award Plaintiff [and other H-2B workers] compensatory damages for Defendant

TruGreen LP's violation of the covenant of good faith and fair dealing;

h. ~~[g]~~ Award Plaintiff his costs and reasonable attorneys fees;

i. ~~[h]~~Award Plaintiff such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Vivian L. Rapposelli

_____

Vivian L. Rapposelli
DE Bar No. 3204
Rapposelli & Gonzales
1300 Grant Ave.,  Suite 100
Wilmington, Delaware 19806
Tel: 302-652-8711

Edward Tuddenham
Tx Bar No. 20282300
153 Upland Rd.
Cambridge, Mass. 02140
Tel: 617-576-2182

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

I certify that on this 30th day of April, 2007, I served the foregoing document on Defendants by mailing it first class mail and by e-mailing it to the Defendant's attorneys as follows:

Michael P. Kelly          Mkelly@mccarter.com
McCarter & English
Citizens Bank Building
919 N. Market St.  18th Floor
Wilmington, Delaware 19801

Michael Banks          sbouchard@morganlewis.com

Sarah Bouchard
Morgan Lewis
1701 Market St.
Philadelphia, Pa. 19103                    /s/ Vivian L. Rapposelli

                                        Vivian L. Rapposelli



## RAPPOSELLI & GONZALES

### ATTORNEYS AT LAW

VIVIAN L. RAPPOSELLI, DE & PA

PETER J. GONZALES PA    ELIZABETH CORDEIRO-ROWE PA & NJ

vrapposelli@rglaw.us

May 25, 2007

The Honorable
Gregory M. Sleet
J. Caleb Boggs Federal Building
844 N. King St.
Room 4208, Lockbox 18
Wilmington, DE 19801

　　　Re: Villanueva v. TruGreen

Judge Sleet:

　　　Pursuant to local rules and your order of today, I am filing an original and copy of the enclosed "red-lined" version of Plaintiff's proposed first amended complaint.

　　　The proposed amended complaint necessarily had to be almost re-written in order to avoid repetition and because RICO allegations involve far more detailed facts and Fed.R.Civ.P. 9(b) requires those allegations to be plead with specificity.

　　　The deleted material is struck out and the new material is underlined.

　　　　　　　　　Respectfully submitted,


　　　　　　　　　VIVIAN L. RAPPOSELLI

VLR/cam

1300 GRANT AVE., SUITE 100, WILMINGTON, DE 19806  phone 302.652.8711  fax 302.652.8712

251 SOUTH CAMAC ST., PHILADELPHIA, PA 19107  phone 267.322.6776  fax 267.322.6775

WWW.RGLAW.US