# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

RAMON VILLANUEVA-BAZALDUA  )
individually and on behalf of other  )
similarly situated,       )  Civil Action No. 06-185 (GMS)
            )
     Plaintiff,    )
            )
    v.        )
            )
TRUGREEN LIMITED PARTNERS  )
and TRUGREEN, INC. d/b/a    )
TRUGREEN CHEMLAWN,    )
            )
     Defendants.   )

## TRUGREEN'S SUR-REPLY IN
## ITS OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

MCCARTER & ENGLISH, LLP
Michael P. Kelly (DE Bar ID #2295)
Daniel M. Silver (DE Bar ID #4758)
Renaissance Center
405 N. King Street, 8th Floor
Wilmington, DE  19801
(302) 984-6301
mkelly@mccarter.com
dsilver@mccarter.com


*Admitted Pro Hac Vice*
Michael L. Banks (PA I.D. #35052)
Sarah E. Bouchard (PA I.D. #77088)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5387/5077

Dated:  December 17, 2007    *Attorneys for TruGreen*

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................ ii

I.    INTRODUCTION ......................................................................................................... 1

II.   ARGUMENT................................................................................................................ 1

   A.   Plaintiff's Jurisdictional Arguments Confirm That Plaintiff Is Attempting To
        Legislate Change In H-2B Regulations Through A Rule 23 Class Action Device. ........... 1

        1.   Plaintiff counsel's attempt to maintain jurisdiction was rejected under
             nearly identical facts. ..................................................................................... 1

        2.   No "federal immigration legislation" exists to justify supplemental jurisdiction......... 3

   B.   Plaintiffs Efforts To Demonstrate The Elements Of Rule 23 Are Unavailing. ................... 5

        1.   Plaintiff has failed to define the putative class or the causes of action
             applicable to the class. ................................................................................... 5

        2.   The dearth of case law cited by Plaintiff in support of the state law
             class action claims is inapplicable here. ....................................................... 6

        3.   Plaintiff's RICO claims cannot be resolved on a class-wide basis............................ 7

III.  CONCLUSION............................................................................................................. 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anza v. Ideal Steel Supply Corp.,
 126 S. Ct. 1991 (2006)..............................................................................7

Broder v. Cablevision Systems Corp.,
 418 F.3d 187 (2d Cir. 2005)....................................................................4

Carnegie-Mellon University v. Cohill,
 484 U.S. 343 (1988).................................................................................1

Frederick County Fruit Growers Association v. Martin,
 968 F.2d 1265 (D.D.C. 1992) ..................................................................6

Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,
 545 U.S. 308 (2005)..................................................................................4

Holmes v. Securities Investor Protection Corp.,
 503 U.S. 258 (1992)..................................................................................7

Mid Atlantic Telecom, Inc. v. Long Distance Services, Inc.,
 18 F.3d 260 (4th Cir. 1994) .....................................................................8

Phoenix Bond & Indemnity Co. v. Bridge,
 477 F.3d 928 (7th Cir. 2007) ...................................................................8

Rose v. SLM Financial Corp.,
 Civ.A.No. 3:05CV445, 2007 WL 674319 (W.D.N.C. Feb. 28, 2007) ..........................4

Systems Management, Inc. v. Loiselle,
 303 F.3d 100 (1st Cir. 2002).....................................................................9

Yellow Bus Lines, Inc. v. Local Union 639,
 913 F.2d 948 (D.C. Cir. 1990)..................................................................8

## DOCKETED CASES

Guerrero v. Brickman Group, LLC,
 Case No. 1:05-cv-00357 (W.D. Mich.)..................................................1, 2

## FEDERAL STATUTES

29 C.F.R. § 778.118 ...................................................................................5

## I.  **INTRODUCTION**

The length of Plaintiff's Reply Brief in Support of Motion for Class Certification ("Reply") is hardly indicative of its merit.  To the contrary, Plaintiff's sole argument is that this Court should allow him to litigate in favor of creating new federal regulations for H-2B workers through the use of a Rule 23 class action device.  Congress, however, did not direct this Court or any other court to alter the H-2B regulations currently in effect, and therefore, no ripe controversy exists for adjudication of this matter through a class action.  Moreover, because this Court previously denied Plaintiff's request for conditional certification under the Fair Labor Standards Act ("FLSA"), no sufficiently significant federal claim or any other reason currently exists to justify supplemental jurisdiction over the putative state law class claims.[1]  As a result, this Court should decline to exercise supplemental jurisdiction with respect to the putative class, and allow this matter simply to proceed if at all as a "single plaintiff" action.

## II.  **ARGUMENT**

### A.  **Plaintiff's Jurisdictional Arguments Confirm That Plaintiff Is Attempting To Legislate Change In H-2B Regulations Through A Rule 23 Class Action Device.**

Plaintiff's efforts to turn state law claims of breach of contract, unjust enrichment, and fraud into federal questions should be seen for what they truly are – an eleventh hour tactical effort to avoid what otherwise is proper dismissal of his action on jurisdictional grounds.

#### 1.  **Plaintiff counsel's attempt to maintain jurisdiction was rejected under nearly identical facts.**

In Guerrero v. Brickman Group, LLC, a strikingly similar action brought by Plaintiff's counsel on behalf of H-2B workers in the Western District of Michigan (Case No. 1:05-cv-

---

[1]  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (identifying when a case "properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit at its early stages and only state-law claims remain").

00357), the plaintiffs initially premised their common law claims (as Plaintiff here) on company

documents, as well as the Department of Labor's ETA-750.[2]  On March 19, 2007, the Guerrero

court reversed itself regarding its initial grant of supplemental jurisdiction, explaining in words

equally applicable here:

> While Plaintiffs no doubt ground some of their theories of relief
> upon their view of federal immigration law, the court is mindful
> that it should not enter that fray without a solid jurisdictional basis.
> The court does not view ETA-750 or any other aspect of federal
> immigration law as a necessary and indispensable component of
> any of Plaintiffs' state law claims.  There is no allegation that the
> parties' contractual agreement included or by its own terms
> necessarily implicated any federal law or regulation.  The record is
> bereft of any explicit reference in the parties' contract to such law,
> and the court does not understand that law to enter that domain of
> its own force.

Guerrero v. Brickman Group, LLC, Case No. 1:05-cv-00357 (W.D. Mich.) (Docket No. 132, at

p. 6.)  With full knowledge of the Guerrero court's reasoning, Plaintiff's counsel now – six

months later – largely has abandoned the company documents (Employer Disclosure Affidavits)

as the purported contracts, focusing entirely on the federal ETA-750.[3]  However, those

superficial assertions do not cure the fundamental defects that were properly noted by the

Guerrero court – that is, there is nothing in TruGreen's Employer Disclosure Affidavits that

includes, references, or otherwise implicates the ETA-750 or any other federal governmental

filing.  Rather, those documents stand entirely on their own, and should be interpreted under the

various state laws applicable to each individual H-2B employee.  In short, no basis exists to

---

[2]     Contrary to Plaintiff's inexplicable misrepresentation in footnote 3 of the Reply Brief, the plaintiffs indeed premised their common law claims, at least in part, on the ETA-750.  See D.I. 123 (Employer's Motion for Reconsideration), at p. 10 (noting that, as here, state law claims require consideration of whether employer's "governmental filings" can create implied contract under state law).

[3]     Plaintiff's ever-changing position on the central document in this case is evident even in his Reply.  At one point, Plaintiff relegates the Employer Disclosure Affidavit to nothing more than "standard pre-employment forms that employers typically put in front of workers on their first day of work – forms with no bearing on the claims at issue here."  Reply (D.I. 79), at p. 19.  However, in a footnote, Plaintiff concedes that the Employer Disclosure Affidavit is a contract on which this action is premised.  See Reply (D.I. 79), at p. 23 n.12.

litigate various state law claims in one federal jurisdiction, particularly where the facts, claims, and relief are individualized.

### 2. No "federal immigration legislation" exists to justify supplemental jurisdiction.

Throughout Plaintiff's Reply, he makes numerous references to the "federal immigration legislation" that purportedly underlies this action. To the contrary, there is *no* "federal immigration legislation" at issue here, nor any interpretation of existing federal immigration legislation for H-2B workers. It is Plaintiff who, since the inception of this litigation, has attempted to *create* federal immigration legislation through the Court.

In his original and proposed amended Complaints, Plaintiff's focus regarding the purported breach of contract, unjust enrichment, and fraud on H-2B employees was on the "Employer Disclosure Affidavits" submitted to and signed by individuals in Mexico prior to their employment with TruGreen. See Complaint (D.I. 1), at ¶¶ 17, 18, 19, 28, 29, 32; Proposed First Amended Complaint (D.I. 55), at ¶¶ 46, 47, 48, 49, 51, 54. It is in these documents that Plaintiff alleges he was promised a particular wage that he allegedly was not paid. These documents have absolutely nothing to do with the Department of Labor or any federal legislation or regulation. They are not created by the federal government; they are not mandated by the federal government; they are not submitted to the federal government. In short, Plaintiff's claims of breach of contract, unjust enrichment, and fraud have absolutely nothing to do with the federal government or any federal legislation.[4]

The cases on which Plaintiff relies to demonstrate federal jurisdiction serve only to reinforce TruGreen's point. Most tellingly, every one of the immigration cases on which

---

[4]     In stark (and relevant) contrast, the federal ETA-750 never is given to or even reviewed by the individual employees.

3

Plaintiff relies relate to <u>H-2A regulations</u>.  None of them relate to H-2B employees such as those

employed by TruGreen, as the regulations governing H-2A visa status protect different types of

temporary alien workers.  Indeed, Plaintiff readily acknowledges that

> **[t]here is no H-2B regulation equivalent to [the H-2A**
> **regulations] which incorporates the terms of an H-2B visa**
> **application into a worker's contract.**[5]

Reply (D.I. 79), at p. 7.  However, Plaintiff incredibly suggests that this case is appropriate for

federal jurisdiction because "federal issues are hotly disputed in this case."  <u>Id.</u>  However, once

again, any dispute is solely of Plaintiff's creation.  If Plaintiff seeks the creation of H-2B

regulations equivalent to those contained in the H-2A regulations, the appropriate forum for him

to lobby is <u>Congress or the Department of Labor</u> – not the federal court in the District of

Delaware.

Similarly, each of the non-H-2A cases on which Plaintiff relies also further highlights

why this Court should not exercise supplemental jurisdiction over Plaintiff's state law claims.  In

<u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing</u>, 545 U.S. 308

(2005), the Supreme Court acknowledged exactly what TruGreen argues now – that the

purported federal issue allegedly implicated by state law claims must be "a *stated* federal issue,

*actually* disputed and substantial" in order for a court to exercise jurisdiction over state law

claims.  <u>Grable</u>, 545 U.S. at 314 (emphasis added).  There, the court was asked to interpret notice

requirements in the IRS regulations.  Here, even Plaintiff concedes that there are no H-2B

regulations to be interpreted.  As such, there is no (and cannot be any) "stated" or "actual"

federal issue implicated here.  Similarly, the courts in <u>Broder v. Cablevision Systems Corp.</u>, 418

F.3d 187 (2d Cir. 2005); <u>Rose v. SLM Financial Corp.</u>, Civ.A.No. 3:05CV445, 2007 WL 674319

---

[5]    Buried in a footnote, Plaintiff also acknowledges that the ETA-790 – the governmental filing for H-2A
employees – "contains additional work terms unique to the H-2A program."  <u>See</u> Reply (D.I. 79), at p. 5 n.2.

4

(W.D.N.C. Feb. 28, 2007) and every other case Plaintiff cited for this jurisdictional proposition were able to do what this Court cannot – point to a specific federal regulation or statute upon which to base jurisdiction over state law claims.

In short, Plaintiff's efforts to save federal jurisdiction over his state law claims are undermined by his own admission that there is no existing federal rule or regulation in dispute pertaining to H-2B workers upon which the Court can exercise jurisdiction over Plaintiff's state law claims. As a result, his claims can be dismissed on that basis alone.

### B.    Plaintiffs Efforts To Demonstrate The Elements Of Rule 23 Are Unavailing.

As in his initial moving papers, Plaintiff has offered nothing but superficial statements that the essential Rule 23 elements are satisfied. For the reasons set forth below, Plaintiff still has failed to meet his burden.

#### 1.    Plaintiff has failed to define the putative class or the causes of action applicable to the class.

Plaintiff's Reply intentionally muddies the waters as to who is in the putative class, or what the class members' actual claims will be under state or federal law. For example, although Plaintiff does not seek to represent the entire population of H-2B workers at TruGreen, it remains entirely unclear what members of the putative class are eligible for class treatment. For example, Defendants are left not knowing whether the purported class consists of:

- Certain H-2B employees who were lawfully paid under the FLSA under a fluctuating workweek analysis;[6]

- Certain H-2B employees who had higher hourly rates on their Employer Disclosure Affidavits than what they ultimately were paid due to individualized

---

[6] In an effort to suggest that damages actually exist, Plaintiff misleads this Court in stating that those paid under a fluctuating workweek arrangement were paid less than workers paid on a time and a half basis for hours over 40. In Plaintiff's calculations, however, Plaintiff deliberately failed to include commissions earned by workers on the fluctuating workweek plan when calculating the regular rate for overtime. See Reply, at p. 24; 29 C.F.R. § 778.118 (commissions included in calculating regular rate). By doing so, Plaintiff inaccurately suggests that the wages for workers under a fluctuating workweek arrangement are artificially lower than what they would be under a time and a half arrangement.

5

and specific changes in circumstances, such as failure to obtain certain licenses,
failure to earn sufficient commissions, or even seasonal issues affecting the
business and availability of work.

- Unknown and unidentified H-2B employees who earned less than the rate stated
on the Affidavits, and who purportedly did not have an agreement or
understanding to be paid according to the fluctuating workweek;[7] or

- Certain H-2B employees who earned more than the stated prevailing wage on the
ETA-750s but less than the Employer Disclosure Affidavits.

In short, it seems that even Plaintiff does not know whose rights he seeks to represent. Even

more disturbing, the Court is left to its own imagination to determine whether any of the

situations set forth above creates a cognizable cause of action under any law, whether state or

federal.

### 2.    The dearth of case law cited by Plaintiff in support of the state law class action claims is inapplicable here.

The few cases that Plaintiff does cite in support of class certification only serve to

reinforce why class certification is not appropriate here.  In Frederick County Fruit Growers

Association v. Martin, 968 F.2d 1265 (D.D.C. 1992), another H-2A case that has no applicability

to this action, the court permitted the action to proceed on a class basis where there was no

dispute that the employer paid an unlawfully low wage as compared to what the regulations

dictated.  Id. at 1276.  Here, there is nothing in the facts of record or even in Plaintiff's

characterization of the issues that suggests that the wages that TruGreen paid were, in fact,

"unlawfully low."  To the contrary, that is exactly what must be determined on an individualized

basis for all of Plaintiff's claims – (1) what the individual was promised; (2) what the individual

expected; (3) what the individual relied upon; (4) what the individual agreed to once working for

TruGreen; and (5) what other facts and circumstances existed that affected the individual's

---

[7]    Plaintiff has failed to identify any class member – through affidavit or otherwise – that would meet this
class definition.

compensation. It is those questions – not the general questions Plaintiff repeats – that are at the heart of the state law claims in this action and that undermine Plaintiff's request to proceed on a class-wide basis.

### 3.    Plaintiff's RICO claims cannot be resolved on a class-wide basis.

Plaintiff still has not addressed his lack of standing to assert a RICO claim, and for that reason alone, TruGreen again submits that the Court can strike this claim outright. Further, if the Court grants Plaintiff's Motion to File a First Amended Complaint (D.I. No. 55), the RICO claims set forth in the Amended Complaint still do not provide the necessary jurisdictional hook to proceed under Rule 23, as those RICO claims are ripe for a motion to dismiss. Those claims are subject to a number of significant substantive challenges, each of which would have to be briefed by the parties.

Most notably, the Supreme Court's decision in Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991 (2006), casts significant doubt on the viability of Plaintiff's claims. In Anza, the Court reaffirmed that in order to establish a RICO claim, the plaintiff must show direct causation between the activity and the injury. When, as here, the cause of the alleged harm (being paid wages lower than the stated or prevailing wage) is a set of actions distinct from the alleged RICO violation (allegedly "manipulating" the visa application process), no RICO claim can survive. Anza, 126 at 1996-97; see also Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268-69 (1992) (explaining that a RICO plaintiff who complains of "harm flowing merely from the misfortunes visited upon a third person by the defendant's acts" may not recover under RICO).

Further, Plaintiff has not demonstrated and cannot demonstrate what the alleged predicate acts are. At best, all that Plaintiff refers to are "ways to manipulate the visa application process" and an alleged "worker exploitation scheme." (D.I. 55, at ¶ 55.) However, there is absolutely

nothing of substance attributed to those hyperbolic characterizations. In the absence of any fraudulent acts, there can be no RICO claims. Further, in any event, TruGreen could not have "participated" in the conduct of the alleged enterprise's unlawful affairs as required under RICO. RICO applies only when a defendant exercises significant control over or within an enterprise intended to achieve the allegedly unlawful goals. Here, all that TruGreen is accused of is conducting its business with respect to its H-2B program – giving requested information to its experienced vendor in order to complete submissions to the federal government, none of which ever have been deemed by the Department of Labor to be unlawful or fraudulent. See, e.g., Yellow Bus Lines, Inc. v. Local Union 639, 913 F.2d 948 (D.C. Cir. 1990). In short, considering the highly tenuous RICO claims as settled at this juncture, particularly in the context of a class certification motion, is premature.

In any event, it still remains that Plaintiff's RICO claims are not appropriate for resolution on a class-wide basis. Once again, Plaintiff's generalized statements of law are entirely disconnected from the facts. First, Plaintiff disputes that reliance is an essential element of the underlying mail, wire, and visa fraud claims that serve as the basis for his RICO claims, citing "pass-through" cases in which competitors were permitted to assert RICO claims against other corporate entities even though the direct harm actually was perpetrated on unknowing customers. See, e.g., Mid Atlantic Telecom, Inc. v. Long Distance Servs., Inc., 18 F.3d 260 (4th Cir. 1994); Phoenix Bond & Indemnity Co. v. Bridge, 477 F.3d 928 (7th Cir. 2007). In these cases, the courts logically recognized that the intent of the fraudulent conduct was not intended to harm the customers – those directly harmed – but rather to skew competition and, therefore, the courts reasonably concluded that those competitors indirectly harmed by the loss of customers could proceed with their RICO claims. The same cannot be said here. By Plaintiff's

own characterization, TruGreen's purpose for filing the ETA-750s was exclusively regulatory. See Reply (D.I. 79), at p. 22 (noting that the purpose of ETA-750s is "to ensure that the wages of similarly employed U S workers are not adversely affected by the importation of foreign labor"). As a result, individual reliance on the ETA still must be shown, and must be proven for each individual claimant.

Further, none of the cases on which Plaintiff relies vitiates the foreseeability and proximate cause requirements as Plaintiff suggests. To the contrary, even in Systems Management, Inc. v. Loiselle, 303 F.3d 100 (1st Cir. 2002), the court permitted the RICO claims of workers to proceed because, *under the circumstances* – which included undeniable proof that the employer paid wages below that which he was representing to the contracting college – it was reasonably foreseeable that the workers would be harmed by the fraudulent conduct, which consisted of knowingly and intentionally paying workers below the prevailing wage (which TruGreen has not done). Here, the harm to H-2B workers is hardly foreseeable, as even Plaintiff testified that he agreed to be paid according to the fluctuating workweek upon his arrival in the United States, effectively changing the terms of employment to which he agreed prior to the inception of his employment. In these circumstances, there is no reason to subject TruGreen to class-wide litigation when highly individualized issues regarding the wages paid must be resolved for every claimant. Nothing Plaintiff offers in his Reply alters that conclusion.

In short, these RICO claims are nothing more than a post-Guerrero, eleventh-hour effort to find a jurisdictional hook. Taken together, there is no reason to permit Plaintiff to proceed with his RICO claims, including on a class-wide basis.

ME1 6991494v.1

## III.   CONCLUSION

For all of the reasons set forth above and in Defendant's Opposition to Plaintiff's Rule 23

Motion for Class Certification, Defendant TruGreen respectfully requests that Plaintiff's Motion

be denied in its entirety.

Respectfully submitted,

MCCARTER & ENGLISH, LLP

/s/ Daniel M. Silver
Michael P. Kelly (DE Bar ID #2295)
Daniel M. Silver (DE Bar ID # 4758)
Renaissance Center
405 N. King Street, 8th Floor
Wilmington, DE  19801
(302) 984-6301
mkelly@mccarter.com
dsilver@mccarter.com


*Admitted Pro Hac Vice*
Michael L. Banks (PA I.D. #35052)
Sarah E. Bouchard (PA I.D. #77088)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5387/5077

Dated:  December 17, 2007          *Attorneys for TruGreen*

ME1 6991494v.1

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JUAN RAYMUNDO LEMUS GUERRERO et al.,

       Plaintiffs,

v.                                                      Case No. 05-CV-00357

BRICKMAN GROUP, LLC et al.,

       Defendants.

_____/

### OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION, VACATING IN PART THE MARCH 26, 2007 ORDER AND DENYING CERTIFICATION OF A RULE 23 CLASS ACTION

Pending before the court is Defendants' Motion for Reconsideration of the court's March 26, 2007 opinion and order granting certification of a Rule 23 class action. The court has reviewed the briefs and determined that no hearing is required. W.D. Mich. LR 7.3(d), 7.4(b). For the reasons stated below, the court will (1) grant Defendants' motion for reconsideration, (2) vacate in part the court's opinion and order of March 26, 2007 and (3) deny Rule 23 certification for Plaintiffs' state law claims.

### I. BACKGROUND

Plaintiffs are Mexican nationals who traveled to Michigan from Mexico to perform seasonal landscaping work during the years 1999 through 2005. Defendant Lakewood obtained permission to import these laborers pursuant to the federal government's "H-2B" program. In their complaint, Plaintiffs allege four causes of action: (1) violations of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, (2) violations of the Working at Point Away from Home Locality Act ("WPAFHLA"), Mich. Comp. Laws §

408.581, (3) Breach of Contract and (4) Unjust Enrichment. (*See* 2nd Am. Compl.)[1]

In their FLSA claim, Plaintiffs allege that they were required to incur several employment-related expenses in order to accept their jobs with Lakewood, including "visa fees charged by the U.S. government, recruitment fees charged by Lakewood's recruiter, transportation costs getting from Mexico to Michigan and back again, uniform costs, and housing costs." (Pls.' Br. for FLSA Class Certification at 3; *see also* Compl. at 7-9.) Plaintiffs allege that "these expenses operated as *de facto* deductions from Plaintiffs' wages for purposes of measuring compliance with the FLSA and that, as a result of these deductions -- which amounted to more than $500 per worker -- Lakewood's H-2B workers failed to earn the minimum wage and overtime premium mandated by the FLSA during each work week." (Pls.' Br. for FLSA Class Certification at 3.)

In its March 26, 2007 order, the court found that the various Plaintiffs were not similarly situated and therefore denied certification for the FLSA claims. (3/26/07 Order at 4-7.) The court noted that at least a few individually named Plaintiffs had FLSA claims that survived, as Defendants conceded in their pleadings. (*Id.* at 10 n.6.) Regarding the state law claims, the court invoked its supplemental jurisdiction to aggregate Plaintiffs' damages to meet the amount in controversy requirement for federal diversity jurisdiction. (*Id.* at 9-17.) Defendants' instant motion challenges this aspect of the court's opinion.

---

[1] Plaintiffs assert that their FLSA claim relates to the years 2003 through 2005 and their last three causes of action relate to the years 1999 through 2005. (*See* Pls.' Br. for FLSA Class Certification at 2.)

Defendants argue that the court erred by aggregating the alleged damages of the named and unnamed Plaintiffs to meet the jurisdictional requirement of sufficient amount in controversy. (Defs.' Mot. at 11-13.) In response, Plaintiffs do not directly address this argument and instead claim that federal issues are embedded in their state law claims and that the court should thus exercise supplemental jurisdiction over the state law claims. (Pls.' Resp. at 6-17.)

## II. STANDARD

The court should grant a motion for reconsideration upon a showing of a palpable defect by which the court was misled and the correction of which would lead to a different outcome. W.D. Mich. LR 7.4(a).

## III. DISCUSSION

The court agrees that it erred when it aggregated Plaintiffs' alleged damages to establish diversity jurisdiction. Pursuant to the analysis below, correcting this palpable defect will result in a different disposition of Plaintiffs' request for Rule 23 certification. The court will therefore grant Defendants' motion for reconsideration.

The court relied on *Olden v. LaFarge Corp.*, 383 F.3d 495, 507 (6th Cir. 2004), for the proposition that damages may be aggregated to establish federal subject matter jurisdiction over a class action. The court no longer believes that *Olden* stands for such a proposition. It was undisputed in *Olden* that the named Plaintiffs met the jurisdictional requirement; the issue, rather, was whether the court should exercise supplemental jurisdiction over the unnamed Plaintiffs who did not meet the amount in controversy requirement. *Id.* at 499 ("The issue raised in this case is *whether each individual class member in a diversity class action must meet the $75,000 amount in controversy*

3

*requirement*, or whether the plaintiffs may aggregate their damages.") (emphasis added).

> At first blush . . . once could conclude . . . that *Olden* stands for the proposition that a class of plaintiffs need not have one individual satisfy the diversity requirement to establish original jurisdiction if the aggregate of all of the class claims meets the $75,000 statutory minimum. This, however, is an incorrect reading of *Olden.*

*Johnson v. Micron Technology, Inc.*, 354 F.Supp.2d 736, 741 (E.D. Mich. 2005). Further, the United States Supreme Court held that at least one plaintiff must meet the amount in controversy requirement for a federal court sitting in diversity to exercise supplemental jurisdiction over additional plaintiffs who fail to meet the requirement. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 549. Because it is clear in this case that none of the named Plaintiffs meet the amount in controversy requirement, the court has no diversity jurisdiction over Plaintiffs' state law claims.

Further, the court does not believe it would be appropriate under the circumstances to exercise supplemental jurisdiction over the state law claims. A district court may decline to exercise supplemental jurisdiction over related state law claims if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).[2]  Because some individual FLSA claims remain, subsection (3) is

inapplicable.  The court expresses no opinion concerning whether this case raises a

novel or complex issue of state law or whether there are other compelling reasons to

decline jurisdiction.  Regarding subsection (2), the court finds that the state law issues

substantially predominate over the remaining federal claims and therefore the high ratio

of state to federal claimants in this case counsel against the court exercising

supplemental jurisdiction.

Plaintiffs' state law claims consist of allegations of (1) violations of the Working at

Point Away from Hope Locality Act, Mich. Comp. Laws § 408.581, (2) breach of contract

and (3) unjust enrichment.  Despite Plaintiffs' arguments, the court does not believe that

any federal issues fundamentally permeate or subsume the two state law causes of

action.  Plaintiffs contend that their breach of contract claim is predicated upon terms in

the federal application for alien certification, known as ETA form 750 ("ETA-750"), and

therefore raises issues of federal law concerning the enforceability of ETA-750 and how

to construe it.  (Pls.' Resp. at 10.)  While Plaintiffs' complaint references ETA-750 in its

factual allegations, Count III (breach of contract) makes no mention of it as incorporated

into the various employment agreements between Plaintiffs and Defendants.  (Second

Am. Compl. at ¶¶ 26-27, 60-65.)  The same is true for Plaintiffs' claim of unjust

enrichment (Count IV).  ETA-750, further, is a form submitted by employers to the

---

[2]Because the court did not explicitly consider these factors in its previous order, it
rejects Plaintiffs' argument that Defendants' motion for reconsideration should be
denied as mere reargument of the supplemental jurisdiction issue.

federal government, and not a contract in the traditional sense between and employer and employee.

Plaintiffs rely upon *Grable & Sons Metal Products, Inc. v. Darue Engineering*, 545 U.S. 308, 314 (2005), to argue that their state claims are imbued with federal issues. *Grable* held that the national interest in providing a federal forum for federal tax litigation is substantial and supports the exercise of federal question jurisdiction over a state quiet title action that necessarily implicated the question of sufficiency of notice under the federal tax code. *Id.* at 310. *Grable* states a narrow exception and the court is not persuaded that Plaintiffs' state claims necessarily implicate any issues of federal law. While Plaintiffs no doubt ground some of their theories of relief upon their view of federal immigration law, the court is mindful that it should not enter that fray without a solid jurisdictional basis. The court does not view ETA-750 or any other aspect of federal immigration law as a necessary and indispensable component of any of Plaintiffs' state law claims. There is no allegation that the parties' contractual agreement included or by its own terms necessarily implicated any federal law or regulation. The record is bereft of any explicit reference in the parties' contract to such law, and the court does not understand that law to enter that domain of its own force. Accordingly, the court concludes that it should not exercise supplemental jurisdiction over the state law claims.

Moreover, there is a significant imbalance in numerosity between the state claims and the remaining individual federal claims. Were the court to uphold its certification of a Rule 23 class, the ratio of state law claimants to individual Plaintiffs with FLSA claims would be approximately 90 to 1. The court concludes that under the circumstances

state issues would predominate over the few remaining federal claims. In the absence of a significant overlap between the federal and state claims, the limited number of individual FLSA claims still pending before the court cannot serve as a conduit for hundreds of state law claims to be decided in federal court. For these reasons, the court is persuaded that Defendants have shown a palpable defect the correction of which will lead to a different outcome. The court therefore must vacate its Rule 23 certification of a class for the state law claims. The named Plaintiffs with viable FLSA claims are the sole Plaintiffs with a live controversy before the court.

### III. CONCLUSION

IT IS ORDERED that Defendants' "Motion for Reconsideration" [Dkt # 123] is GRANTED. With respect to the Rule 23 motion, the court's March 26, 2007 opinion and order is VACATED IN PART.

IT IS FURTHER ORDERED that Plaintiffs' "Motion for Certification of a Rule 23 Class Action" [Dkt. #46] is DENIED.

S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: August 17, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 17, 2007, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

# EXHIBIT B

Westlaw.

Slip Copy                                                                 Page 1

Slip Copy, 2007 WL 674319 (W.D.N.C.)
**(Cite as: Slip Copy)**

**C**
Rose v. SLM Financial Corp.
W.D.N.C.,2007.
Only the Westlaw citation is currently available.
United States District Court, W.D. North Carolina,
Charlotte Division.
Gary ROSE, on behalf of himself and all others
similarly situated, Plaintiff,
v.
SLM FINANCIAL CORP. and SLM Mortgage
Corporation-NC, Defendants.
**Civil Action No. 3:05CV445.**

Feb. 28, 2007.

Gary W. Jackson, The Jackson Law Group, PLLC,
Charlotte, NC, Michael G. Wimer, Arden, NC, for
Plaintiff.
Debbie Weston Harden, Meredith J. McKee,
Womble, Carlyle, Sandridge & Rice, PLLC,
Charlotte, NC, for Defendants.

**ORDER**
DAVID C. KEESLER, United States Magistrate
Judge.
**\*1 THIS MATTER IS BEFORE THE COURT**
on "Plaintiff's Motion to Remand" (Document No.
8), filed November 18, 2005. The parties have
consented to Magistrate Judge jurisdiction pursuant
to 28 U.S.C. § 636(c), and this motion is ripe for
disposition.

Having carefully considered the parties' arguments,
the pleadings, and the applicable authority
(including the Truth in Lending Act and the Real
Estate Settlement Procedures Act), and having
heard oral argument, the undersigned will *deny*
Plaintiff's Motion to Remand for the reasons
discussed below.

**I. *FACTUAL BACKGROUND AND
PROCEDURAL HISTORY***

Plaintiff filed this action on September 19, 2005, in
the General Court of Justice, Superior Court
Division of Mecklenburg County, North Carolina,
bringing claims for violation of North Carolina's
unfair and deceptive trade practices statute, breach
of the duty of good faith and fair dealing, and
breach of contract. Plaintiff also seeks certification
of a class action in connection with these claims.

Plaintiff's claims arise out of a mortgage loan
Plaintiff sought and obtained through Defendants.
In November 2002, Plaintiff applied for a mortgage
loan at Defendants' Asheville office. Plaintiff
alleges that Defendants made "certain written
disclosures to plaintiff about the interest rate on his
loan and about the commissions defendants would
receive as brokers of the loan."Complaint, ¶ 3. At
the closing of the loan, Plaintiff claims, Defendants
"unilaterally increased their commissions and fees,
without prior disclosure to Plaintiff, and without
Plaintiff's consent."Complaint, ¶ 4.

On October 21, 2005, Defendants timely removed
the case pursuant to 28 U.S.C. §§ 1331 and 1441,
asserting that Plaintiff's breach of contract claim
raises a federal question. On November 17, 2005,
Plaintiff filed a Motion to Remand and requested
attorney's fees and costs. Plaintiff's Motion has been
fully briefed and argued, and it is ripe for
disposition.

**II. *DISCUSSION***

Federal district courts "shall have original
jurisdiction of all civil actions arising under the
Constitution, laws, or treaties of the United States."
28 U.S.C. § 1331. A defendant is entitled to remove
a case brought in state court to federal court if the
plaintiff could have brought it in federal court
originally as a civil action "arising under" federal
laws. *Grable & Sons Metal Products, Inc. v. Darue
Engineering & Manuf.,* 545 U.S. 308, 312 (2005).
28 U.S.C. § 1441(a) provides:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 2

Slip Copy, 2007 WL 674319 (W.D.N.C.)
**(Cite as: Slip Copy)**

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

Under 28 U.S.C. § 1441(a), the existence of subject matter jurisdiction is a threshold issue. *Chris v. Tenet,* 221 F.3d 648, 655 (4th Cir.2000) (citation omitted) ("[T]he subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed."); *Darcangelo v. Verizon Comm., Inc.,* 292 F.3d 181, 186 (4th Cir.2002) ("In general, an action filed in state court may be removed to federal court only if it might have been brought in federal court originally").

**\*2** The party seeking federal jurisdiction-here, Defendants SLM Financial Corp. and SLM Mortgage Corporation-NC-has the burden of proving that subject matter jurisdiction exists. *See Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir.1999); *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991); *Norfolk Southern Ry. Co. v. Energy Development Corp.,* 312 F.Supp.2d 833, 835 (S.D.W.Va.2004). Absent a proper basis for subject matter jurisdiction, a removed case must be remanded to state court.*See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 96 (1998); *Jones v. American Postal Workers Union,* 192 F.3d 417, 422 (4th Cir.1999); *Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir .1999).

As explained in 2005 by the United States Supreme Court:
The provision for federal question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law (*e.g.,* claims under 42 U.S.C. § 1982). There is, however, another longstanding, if less frequently encountered, variety of federal "arising under" jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal question jurisdiction will lie

over state-law claims that implicate significant federal issues.

*Grable,* 545 U.S. at 312 (citing *Hopkins v. Walker,* 244 U.S. 486, 490-91 (1917)). Historically, federal courts used myriad (and, at times, seemingly contradictory) tests and methods of analysis to determine when jurisdiction lay over this narrow class of claims "arising under" federal law. Before *Grable,* the Circuits were split over whether *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804 (1986), required a federal cause of action to be stated on the face of a complaint as a prerequisite to the exercise of federal question jurisdiction.

*Grable* resolved this dispute, stating the appropriate test to be used in determining when federal question jurisdiction lies over a state-law claim:
Does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?

*Grable,* 545 U.S. at 312-13.

### A. *Does Plaintiff's breach of contract claim necessarily raise a federal issue?*

According to *Grable,* we must first determine whether Plaintiff's breach of contract claim necessarily raises a federal issue. On the face of his Complaint, Plaintiff alleges that Defendants made " *certain written disclosures* to plaintiff about the interest rate on his loan and about the commissions defendants would receive as the brokers of the loan. "Complaint, ¶ 3 (emphasis added). These "written disclosures," Plaintiff alleges, formed the basis of a contract to provide Plaintiff with a loan at "the disclosed interest rate" and "with payment of the disclosed fees."It was this contract, Plaintiff alleges, that was breached when Defendants "unilaterally increase[ed] the commissions and fees at or immediately prior to closing."Complaint, ¶¶ 50-51.

**\*3** Despite these and other references to the " written disclosures," Plaintiff did not attach any

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 674319 (W.D.N.C.)
**(Cite as: Slip Copy)**

such documents to his Complaint. Defendants attached to their Answer and to their Brief in Opposition to Plaintiff's Motion to Remand all of the "disclosures" that had been provided to Plaintiff within three days of his loan application, arguing that Plaintiff was relying on disclosures issued pursuant to the federal Truth in Lending Act (15 U.S.C. § 1601, *et seq.*) and the Real Estate Settlement Procedures Act (12 U.S.C. § 2601, *et seq.*). Although these documents were not attached to Plaintiff's Complaint, they are integral to his allegations and are deemed incorporated into his Complaint by reference. *Darcangelo v. Verizon Communications, Inc .,* 292 F.3d 181, 195 n. 5 (4th Cir.2002); *Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 618 (4th Cir.1999). Plaintiff has not disputed, either in his briefs or during oral argument, that he is relying on these written disclosures as the basis for his breach of contract claim.

In order for Plaintiff to succeed on his breach of contract claim, he must first establish that "the plaintiff and the defendant mutually agreed to the same material terms for doing or refraining from doing a particular thing."North Carolina Pattern Jury Instructions (Issue of Contract Formation). Here, Plaintiff argues that Defendants entered into a written contract with two material terms: Defendants would provide Plaintiff with a loan at a particular interest rate after payment of a particular " disclosed fee." Having reviewed the relevant documents, the Court concludes that Plaintiff will necessarily have to rely on one or both of the disclosures issued pursuant to federal law in order to establish the existence of a contract with these material terms.

The Truth in Lending Act, 15U.S.C. § 1601, *et seq.,* ("TILA") requires a mortgage lender or broker to disclose, *inter alia,* the "Annual Percentage Rate" (" APR") a borrower will pay in connection with a particular loan. 15 U.S.C. §§ 1638, 1639. Lenders and brokers also are required to issue a "good faith estimate" of the APR within three business days after receiving a consumer's written loan application on a purchase-money or construction mortgage. 12 C.F.R. 226.19(a)(1). Regardless of when the disclosures are made, TILA regulations expressly permit lenders and brokers to "make the disclosure

based on the best information reasonably available at the time," so long as the disclosure states "clearly that the disclosure is an estimate."12 C.F.R. 226.17(c). TILA, and the federal regulations promulgated thereunder, extensively regulate the form in which the disclosures are made and restrict the specific language a lender or broker may use therein.

Similarly, mortgage brokers are required under the Real Estate Settlement Procedures Act ("RESPA") and Regulation X to provide a "good faith estimate" of all commissions and fees a borrower is expected to pay in connection with obtaining a loan within three days of receiving an application. 24 C.F.R. § 3500.7. This Good Faith Estimate must include disclosures of all expected broker fees, " commissions," and similar charges. 24 C.F.R. § 3500.7.

**\*4** Plaintiff argues that the TILA disclosure and the Good Faith Estimate, issued within three days of Plaintiff's loan application pursuant to TILA and RESPA, form some substantial part of the contract on which his state law claim is based. As a result, Plaintiff's claim will necessarily require resolution of a federal issue: Can TILA disclosures and RESPA Good Faith Estimates-which Defendants were required to issue under federal law using federally mandated terms-form the basis of a contract? Thus, Plaintiff's claim raises an " important issue of federal law that sensibly belongs in federal court."*Compare Grable,* 545 U.S. at 315. This case involves "a controversy respecting the conclusion and effect of the [federal] laws."*Id.* at 316 (citing *Hopkins v. Walker,* 244 U.S. at 489).

**B.** *Is the federal issue "actually disputed" and " substantial" such that there is a serious federal interest in having the matter heard in federal court?*

Second, the Court must decide whether the federal issue raised by Plaintiff's breach of contract claim is "actually disputed" and "substantial," such that there is a serious federal interest in having the matter decided by a federal court.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                          Page 4

Slip Copy, 2007 WL 674319 (W.D.N.C.)
**(Cite as: Slip Copy)**

Together, TILA and RESPA form an important and extensive federal regulatory scheme intended to provide mortgage applicants with early information about the terms of the loans for which they apply. The stated purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid uninformed use of credit...."15 U.S.C. § 1601. It is for this reason that lenders and brokers often are required to issue TILA and RESPA disclosures *within three business days* after receiving a loan application-sometimes well before a potential borrower has been approved for any particular loan.

TILA and RESPA permit-and in some cases require-that these disclosures be issued as "estimates" in order to facilitate the disclosure of the information to borrowers early in the application process. Plaintiff's claim that these federally mandated disclosures constitute the basis of a written contract will require this Court to consider the construction and effect of TILA and RESPA to determine whether those statutes permit federally mandated "estimates" to be construed as such.

"The [arising under] doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues ."*Grable,* 545 U.S. at 312. Where a federal regulatory scheme requires private parties to undertake certain actions in order to comply with the law, the federal courts necessarily have a serious interest in examining the scope of liability that might arise as a result. Thus, the undersigned concludes that the issue of whether TILA and RESPA disclosures can form the basis of a contract is a serious federal interest that justifies federal jurisdiction.

**C. Will the exercise of federal jurisdiction disturb the congressionally approved balance of judicial responsibilities?**

**\*5** Finally, the Court must decide whether the exercise of federal jurisdiction in this case will upset the congressionally approved balance of judicial responsibilities between state and federal courts. Like *Grable,* this case presents the rare situation of a substantial, contested matter of federal law embedded in a state law claim. We are unaware of any significant number of cases in this or any other jurisdiction in which parties argue that federally mandated disclosures themselves form a contract. Thus, it appears to be the "rare case" where a loan applicant attempts to construe these federally mandated disclosures as enforceable written contracts. *Compare Grable,* 545 U.S. at 315 ("[B]ecause it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor."). Granting federal jurisdiction in this instance will not open the floodgates of federal court to all breach of contract claims or all claims relevant to TILA or RESPA.

### III. *CONCLUSION*

This case fits into the "slim category *Grable* exemplifies," and jurisdiction in federal court over this breach of contract claim is proper. *Cf. Empire Healthchoice v. McVeigh,* --- U.S. ----, 126 S.Ct. 2121, 2137 (2006). As a result, the Court has proper supplemental jurisdiction over Plaintiff's other state law claims for violation of North Carolina's § 75-1.1 and for breach of the duty of good faith and fair dealing. Based on the Court's finding that federal jurisdiction is proper, Plaintiff's request for attorney's fees and costs in connection with his Motion to Remand is moot.

**IT IS, THEREFORE, ORDERED** that "Plaintiff's Motion to Remand" (Document No. 8) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's request for fees and costs is **DENIED.**

**IT IS FURTHER ORDERED** that the parties conduct an Initial Attorneys' Conference and file a report of that conference along with a proposed case management plan, pursuant to Fed.R.Civ.P. 26(f)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 5

Slip Copy, 2007 WL 674319 (W.D.N.C.)
**(Cite as: Slip Copy)**

and L.R. 16.1(A), on or before **March 30, 2007.**

**SO ORDERED.**

W.D.N.C.,2007.
Rose v. SLM Financial Corp.
Slip Copy, 2007 WL 674319 (W.D.N.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Daniel J. Brown, hereby certify that on December 17, 2007, a true and correct copy of

*Trugreen's Sur-Reply In Its Opposition To Plaintiff's Motion For Class Certification* was served

upon counsel of record via CM/ECF Filing.

/s/Daniel J. Brown
Daniel J. Brown (DE Bar ID No. 4688)

11