## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RAMON VILLANUEVA-BAZALDUA individually and on behalf of other similarly situated, | ) ) ) ) | Civil Action No. 06-185 |
| Plaintiff, | ) ) | The Honorable Gregory M. Sleet |
| v. | ) ) ) | |
| TRUGREEN LIMITED PARTNERS and TRUGREEN, INC. d/b/a TRUGREEN CHEMLAWN, | ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' BRIEF IN SUPPORT OF ITS
## PARTIAL MOTION TO DISMISS PLAINTIFF'S RICO CLAIMS

**MCCARTER & ENGLISH, LLP**

/s/ Daniel M. Silver
Michael P. Kelly (DE Bar ID #2295)
mkelly@mccarter.com
Daniel M. Silver (DE Bar ID #4758)
dsilver@mccarter.com
McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300

*Admitted Pro Hac Vice*
Michael L. Banks (PA I.D. #35052)
Sarah E. Bouchard (PA I.D. #77088)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5387/5077

Dated: April 4, 2008                Attorneys for TruGreen

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.    INTRODUCTION ...................................................................................................... 1

II.   SUMMARY OF CLAIMS SUBJECT TO TRUGREEN'S MOTION TO DISMISS .......... 1

III.  ARGUMENT .......................................................................................................... 2

    A.   Plaintiff Lacks Standing To Pursue His RICO Claims. ......................................... 3

        **1.**   Plaintiff did not suffer any injury sufficient to establish RICO standing. ................... 3

        **2.**   Plaintiff cannot demonstrate the proximate causation necessary to confer standing under RICO. ............................................................................................................ 5

    B.   Plaintiff's RICO Claims Are Further Undermined By The Established Processes And Procedures Of The Federal And State Oversight Agencies. ............................................. 8

VI.   CONCLUSION ....................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

<u>Alexander v. Jenkins</u>,
    Civ. A. No. 89-4050, 1990 WL 98960 (E.D. Pa. July 13, 1990) ...................................5

<u>Anderson v. Ayling</u>,
    396 F.3d 265 (3d Cir. 2005) ...................................................................................3, 6

<u>Anza v. Ideal Steel Supply Corp.</u>,
    547 U.S. 451 (2006) ...............................................................................................8

<u>Azizi v. Thornburgh</u>,
    908 F.2d 1130 (2d Cir. 1990) ...............................................................................4

<u>Bealer v. Mutual Fire, Marine & Inland Ins. Co.</u>,
    242 Fed. Appx 802 (3d Cir. 2007) .......................................................................7

<u>Board of Regents v. Roth</u>,
    408 U.S. 564 (1972) ...............................................................................................4

<u>Bell Atlantic Corp. v. Twombly</u>,
    127 S. Ct. 1955 (2007) ...........................................................................................2

<u>Blue Line Coal Co. v. Equibank</u>,
    No. Civ. A. 87-6150, 1989 WL 63203 (E.D. Pa. June 12, 1989) .................................5

<u>Canyon County v. Syngenta Seeds, Inc.</u>,
    ___ F.3d ___, 2008 WL 746986 (9th Cir. Mar. 21, 2008) ............................................3

<u>Holmes v. Securities Investor Protection Corp.</u>,
    503 U.S. 258 (1992) ...............................................................................................5

<u>Johnson v. Hoffa</u>,
    196 Fed. Appx. 88 (3d Cir. 2006) .........................................................................5

<u>Maio v. Aetna, Inc.</u>,
    221 F.3d 472 (3d Cir. 2000) ...................................................................................3

<u>McLaughlin v. American Tobacco Co.</u>,
    ___ F.3d ___, 2008 WL 878627 (2d Cir. Apr. 3, 2008) .................................................6

<u>Mendoza v. Zirkle Fruit Co.</u>,
    No. CS-00-3024-FVS, 2000 WL 33225470 (E.D. Wash. Sept. 27, 2000),
    <u>rev'd on other grounds</u>, 301 F.3d 1163 ......................................................................7

Papasan v. Allain,
    478 U.S. 265 (1986)................................................................................2

Rehkop v. Berwick Healthcare Corp.,
    95 F.3d 285 (3d Cir. 1996).....................................................................7

Royal Siam Corp. v. Chertoff,
    484 F.3d 139 (1st Cir. 2007)..................................................................4

Sedima, S.P.R.L. v. Imrex Co.,
    473 U.S. 479 (1985)................................................................................3

Vavro v. Albers,
    No. 2:05CV321, 2006 WL 2547350 (W.D. Pa. Aug. 31, 2006),
    affd., 254 Fed. Appx. 134 (3d Cir. 2007) .............................................3

### DOCKETED CASES

### FEDERAL STATUTES

20 C.F.R. § 656.40...................................................................................9

### MISCELLANEOUS

William H. Rehnquist, Reforming Diversity Jurisdiction and Civil RICO,
    Address At the Eleventh Seminar on the Administration of Justice
    (April 7, 1989) in 21 St. Mary's L.J. 5, 9 (1989) ...........................................1

C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp...................................2

I.      **INTRODUCTION**

Plaintiff's RICO claims of mail, wire, and visa fraud are remarkably flimsy, and reveal a desperate strategy to salvage class claims in the face of two decisions by this Court declining to expand the scope of the case beyond the named parties.  By adding RICO claims to a much more basic wage and hour dispute with his former employer, Plaintiff is trying to do what former Chief Justice Rehnquist cautioned against – using civil RICO in a way that Congress never intended.  See William H. Rehnquist, Reforming Diversity Jurisdiction and Civil RICO, Address At the Eleventh Seminar on the Administration of Justice (April 7, 1989) in 21 St. Mary's L.J. 5, 9 (1989).

This matter is not appropriate for adjudication under RICO.  It is, if anything, a garden variety compensation dispute and should be litigated as such.  Indeed, Plaintiff does not even have standing to bring this claim, and he cannot demonstrate the requisite causation to proceed with his proposed RICO claims.  To permit his RICO claims to proceed would waste the resources of the Court and the parties on a failed legal theory.

II.     **SUMMARY OF CLAIMS SUBJECT TO TRUGREEN'S MOTION TO DISMISS**

The core issues in this case have been briefed previously in connection with Plaintiff's unsuccessful attempts to expand his wage and hour claims to include other immigrant workers, none of whom have chosen to join in the action.

In the Seventh, Eighth, and Ninth Counts of the First Amended Complaint, Plaintiff attempts to construct RICO claims to attack the process by which TruGreen hires employees from Mexico utilizing the government's H-2B visa program.  The crux of Plaintiff's RICO claims are set forth in the Seventh Count, in which Plaintiff alleges that TruGreen used the mails, wires, common carriers, and visa program (in association with third-party vendors who assist in identifying workers and submitting documents to the government) to "defraud State Workforce

Agencies, the DOL, CIS, and DOS."  Plaintiff then contends that this alleged conduct against

the federal and state agencies harmed the H-2B workers, who ultimately received the permits to

work for TruGreen in the United States pursuant to the government's program.  See Amended

Compl. ¶¶ 83-90.  Plaintiff goes even further in the Eighth Count, asserting a RICO conspiracy

claim under Section 1962(d).  Finally, in the Ninth Count, Plaintiff adds TruGreen's former Vice

President of Human Resources as a named Defendant to the alleged RICO claims, suggesting

that he intentionally and deliberately submitted false documentation to the relevant government

agencies and, therefore, participated in a "scheme" to defraud the government with TruGreen

and its vendors.  See Amended Compl. ¶¶ 105-121.  For the reasons set forth below, the Counts

fail and this Court should dismiss them.

## III.    **ARGUMENT**

While a complaint need not set forth every relevant fact that would support a claim for

relief, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).  Courts "are not bound

to accept as true a legal conclusion couched as a factual allegation."   Papasan v. Allain, 478 U.S.

265, 286 (1986).   Rather, plaintiffs must plead factual allegations sufficiently to raise a right to

relief above the speculative level.  See, e.g., 5 C. Wright & A. Miller, Federal Practice and

Procedure § 1216, pp. 235-236 (3d ed. 2004) ("[T]he pleading must contain something more ...

than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of

action").  Thus, even if Plaintiff asserts that a fraud and injury occurred, the Court is not

absolved from looking critically at the allegations.  Where (as here) a defendant can demonstrate

that the legal conclusions parading as factual allegations have no substance, the Court can and

should dismiss the Complaint pursuant to 12(b)(6).

A.    **Plaintiff Lacks Standing To Pursue His RICO Claims.**

To assert a civil RICO claim, a plaintiff first must satisfy the requirements of Section 1964(c), which has been referred to as the "standing" provision of RICO.  Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000).  A civil RICO plaintiff has standing only if "he has been injured in his business or property by the conduct constituting [the RICO] violation."  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (emphasis added).  Inherent in that analysis is (1) whether a plaintiff has alleged the requisite type of injury; and (2) whether the alleged RICO violations could have proximately caused the alleged injury.  See, e.g., Vavro v. Albers, No. 2:05CV321, 2006 WL 2547350, at *20 (W.D. Pa. Aug. 31, 2006) (dismissing RICO claims for lack of standing), affd., 254 Fed. Appx. 134 (3d Cir. 2007); Canyon County v. Syngenta Seeds, Inc., ___ F.3d ___, 2008 WL 746986 (9th Cir. Mar. 21, 2008) (affirming dismissal on same grounds).  Here, Plaintiff has not and cannot allege the requisite type of injury, and even if he could, he cannot establish that the alleged RICO violations could have proximately caused that harm.

1.    **Plaintiff did not suffer any injury sufficient to establish RICO standing.**

The Ninth Circuit Court of Appeals, which frequently decides RICO actions, has explained that "[t]o determine whether a plaintiff has sufficiently alleged that he has been 'injured in his business or property,' [courts] must examine carefully the nature of the asserted harm" Id. at *4.  In the Third Circuit, injuries to intangible property interests that are not capable of "concrete financial loss" are insufficient to establish RICO standing.  See Anderson v. Ayling, 396 F.3d 265, 271 (3d Cir. 2005).

Carefully examining the Amended Complaint and even accepting Plaintiff's allegations set forth in his First Amended Complaint as true for purposes of this Motion only, the only

parties allegedly harmed by TruGreen's alleged misconduct were the federal and state agencies and governments who issued and approved TruGreen's application to employ H-2B workers. Plaintiff concedes as much in his proposed Amended Complaint. Specifically, he acknowledges that the allegedly fraudulent forms were submitted only to federal and state agencies and solely for the purpose of obtaining permission to employ then-unidentified H-2B workers at allegedly lower prevailing wage rates. See Amended Complaint, at ¶¶ 32-42 (focusing exclusively on the harm and alleged fraud perpetuated on federal and state agencies).

What he seems to be saying, then, is that absent such representations to government agencies, H-2B visas would not have been available to TruGreen workers, and he would have lost the opportunity to accept seasonal employment on a voluntary basis in the United States. In other words, the alleged misrepresentations gave him a choice that he says he would otherwise have not enjoyed. Indeed, even Plaintiff acknowledged under oath that he had the opportunity to select employment with other employers, but that he chose to seek employment with TruGreen. See Deposition of Ramon Villanueva, dated October 5, 2006 ("Villanueva Dep."), at p. 43, attached as Exhibit A. That opportunity and choice to work for TruGreen in the United States is not a "harm" of any sort. It certainly is not the "concrete financial loss" required to have standing under RICO in this circuit, and Plaintiff's claims can be dismissed for this reason alone.[1]

---

[1]  To the extent Plaintiff claims that he had a property interest in obtaining an H-2B visa generally, that alleged injury still is insufficient to confer standing under RICO. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). Employers obtain permission to employ H-2B workers months in advance, almost invariably without knowledge of who the H-2B workers will be. In that abstract, Plaintiff cannot demonstrate any claim of entitlement to an H-2B visa. Cf. Azizi v. Thornburgh, 908 F.2d 1130, 1134 (2d Cir. 1990) (concluding that plaintiffs' had no right to an immigrant visa and, therefore, they did not have a property interest on which to pursue a due process claim); Royal Siam Corp. v. Chertoff, 484 F.3d 139, 148 (1st Cir. 2007) ("The mere fact that the agency . . . approved a specialty occupation visa petition on one occasion does not create an automatic entitlement to the approval of a subsequent petition for renewal of that visa.").

2.    **Plaintiff cannot demonstrate the proximate causation necessary to confer standing under RICO.**

Plaintiff attempts to avoid the inevitable conclusion that he lacks standing to assert a claim under RICO by conclusorily stating that the injury to his "property" is "the right to be paid contractual and lawful wages for their work." Amended Compl. ¶¶ 96, 101, 109, 117, 120. However, even this alleged injury is antithetical to RICO's standing provisions. As the Supreme Court explained in <u>Holmes v. Securities Investor Protection Corp.</u>, 503 U.S. 258 (1992), a RICO plaintiff is required to show that defendant's RICO violation was not only "a but for cause of his injury, but was the proximate cause as well." <u>Holmes</u>, 503 U.S. at 268. That is, RICO confers standing on a plaintiff only when the alleged injury "flow[s] from the commission of some or all of the predicate acts, not injury flowing from the pattern of such acts." <u>Alexander v. Jenkins</u>, Civ. A. No. 89-4050, 1990 WL 98960, at *4 (E.D. Pa. July 13, 1990). Derivative harm is not compensable under RICO; rather, a RICO plaintiff "must suffer direct injury in order to have standing." <u>See, e.g.</u>, <u>Blue Line Coal Co. v. Equibank</u>, No. Civ. A. 87-6150, 1989 WL 63203, at *3 (E.D. Pa. June 12, 1989). Even if an act is unlawful (such as failing to pay wages in accordance with federal and state law), that act does not confer standing under RICO even if that act was in furtherance of a broader RICO conspiracy. <u>Holmes</u>, 503 U.S. at 268. Rather, in order to survive a motion to dismiss, a plaintiff must be able to point to "an act that is independently wrongful <u>under RICO</u>," not simply an act that is independently wrongful. <u>Id.</u>; <u>see also</u> <u>Johnson v. Hoffa</u>, 196 Fed. Appx. 88, 91 (3d Cir. 2006) (affirming dismissal of complaint because Plaintiff lacked standing to assert RICO claim because his termination from employment – even

if allegedly in furtherance of a RICO conspiracy – was not "independently wrongful" under RICO).[2]

TruGreen does not concede that it, Mr. Vacchiano, or any of its third-party vendors engaged in any act of mail or wire fraud in connection with the H-2B program at any time. Quite to the contrary, the fraud allegations are not made in good faith and cannot be substantiated. If the RICO claims are not dismissed at the outset, the fraud allegations will easily be disproved.[3] Once again, however, the alleged misrepresentations had only one harm as to Plaintiff – granting TruGreen the opportunity to hire Plaintiff (and other H-2B employees). By Plaintiff's own allegations, the wages eventually paid to Plaintiff had absolutely nothing to do with TruGreen's prior representations to the government. Even if TruGreen later broke its promises to the government and to Plaintiff regarding the wages to be paid (as alleged), those lost wages resulted directly from those broken promises – not from the fraudulent misrepresentations made months earlier in connection with the H-2B visa applications. These intervening causes extinguish any proximate causation, and Plaintiff's RICO claims should be dismissed. See, e.g., Anderson, 396

---

[2]   The Second Circuit Court of Appeals confirmed this principle just days ago when it reversed a district court's decision to certify a class of smokers who alleged that tobacco companies committed fraud under RICO when they misrepresented through advertisements that "light" cigarettes were "healthier" than regular cigarettes, leading the putative class members to buy more light cigarettes at an increased cost. McLaughlin v. American Tobacco Co., ___ F.3d ___, 2008 WL 878627 (2d Cir. Apr. 3, 2008). As the appellate court recognized, and which is equally applicable here, "proof of misrepresentation-even widespread and uniform misrepresentation-only satisfies half the equation" under RICO. Id. at *4. From that premise, the court rejected certification under Rule 23, acknowledging that "reliance on the misrepresentation cannot be the subject of general proof. Individualized proof is needed to overcome the possibility that a member of the purported class purchased Lights for some other reason than the belief that Lights were a healthier alternative . . . ." Id.

[3]   In addition, Plaintiff will not be able to establish the requisite reliance to establish his fraud claims. For one, Plaintiff conceded at his deposition that he did not see, let alone rely on, the ETA-750 or any other governmental filing. (Villanueva Dep., p. 37 ("I only knew [about my compensation] what was on this paper [the Employer Disclosure Affidavit].").) Further, he admitted that notwithstanding the terms and conditions of employment (including that he would have to bear his own costs to travel to the United States), he accepted employment with TruGreen "because on the list it was the best salary." (Villanueva Dep., p. 43.) Thus, without regard to what TruGreen submitted to the government, even Plaintiff concedes that it had no bearing on his choice to accept employment with TruGreen. Similarly, he admitted under oath that "I have to recognize the fact that I didn't pay attention to [the documents in Mexico] in particular. Everyone was signing and so I signed." (Villanueva Dep., p. 41.)

F.3d at 270-71 (affirming dismissal of RICO claims for lack of standing because the lost wages resulting from the alleged RICO acts were, in part, "extremely indirect").

The Third Circuit's guidance in Rehkop v. Berwick Healthcare Corp., 95 F.3d 285 (3d Cir. 1996), is instructive. There, the plaintiff allegedly was fired for refusing to be party to a scheme to commit Medicare fraud. The appellate court affirmed the district court's dismissal of the Section 1962(c) claims for lack of standing because, if any entity was harmed by the acts of fraud, it was the state and federal agencies responsible for oversight of Medicare funds. Even though the plaintiff lost a job and the attendant wages, that harm was too far removed from the alleged RICO act – the Medicare fraud – to be sufficient to confer standing under RICO. The same is true here. If any entity was even arguably directly and proximately harmed by the alleged acts of fraud, it was the federal government and its H-2B visa program. Plaintiff's harm is, at best, removed from the alleged fraud and, as a matter of law, is insufficient to state a claim under RICO. See also Bealer v. Mutual Fire, Marine & Inland Ins. Co., 242 Fed. Appx 802, 805 (3d Cir. 2007) (dismissing RICO claims for lack of standing asserted by actuary who performed services on behalf of defendant because, even if defendant engaged in fraudulent acts alleged, actuary could not demonstrate actual harm or proximate causation of injuries simply because he lost his job).

In short, where, as here, the harm resulting from the alleged misconduct does not directly flow to the Plaintiffs, a RICO claim is futile for lack of causation. See, e.g., Mendoza v. Zirkle Fruit Co., No. CS-00-3024-FVS, 2000 WL 33225470, at *5-6 (E.D. Wash. Sept. 27, 2000) (dismissing RICO claim brought by agricultural workers to the extent RICO claim was based on alleged mail fraud in connection with fraudulent submission of I-9 forms because the harm from that act flowed to the government, not the individual employees), rev'd on other grounds, 301

F.3d 1163, 1167 n. 2 (9th Cir. 2002) (noting that plaintiffs voluntarily did not appeal district

court's decision that there can be no RICO claim predicated on allegedly sending forms falsely

verifying employment eligibility because no harm flowed to the employees).  As the Supreme

Court recognized in Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006), "the central question

[a court] must ask is whether the alleged violation led directly to the plaintiff's injuries."  Anza,

547 U.S. at 461.   As in Anza, if Plaintiff is correct about Defendant's alleged fraud perpetrated

on the federal and state government, those entities may wish to pursue appropriate remedies (the

claims of which would be frivolous, as set forth below), but Plaintiff cannot do so because the

purported misrepresentations did not directly or proximately cause him any harm.  Anza, 547

U.S. at 460.

> **B.    Plaintiff's RICO Claims Are Further Undermined By The Established**
> **Processes And Procedures Of The Federal And State Oversight Agencies.**

The final fatal flaw to Plaintiff's RICO claims is that they represent a fundamental

misunderstanding (or misrepresentation) of the process by which employers obtain the

opportunity to employ H-2B workers.  Contrary to Plaintiff's allegations of some conspiracy by

TruGreen and/or its vendors, the complaints that Plaintiff apparently have are with the

established processes of the Department of Labor and related state agencies.  Once again, to the

extent Plaintiff seeks to effectuate changes in those agencies, his efforts should not be in this

Court.

Foremost, neither the federal nor state governments blindly accept job codes submitted

by employers as Plaintiff suggests.  Rather, both the State Workforce Agency ("SWA") and the

Department of Labor's certifying officer have a duty to confirm, based on the job title and job

duties submitted by the employer,[4] that the proper job codes (and, therefore, prevailing wage) are used.  See generally 20 CFR § 656.40 (explaining how the State Workforce Agency reviews and approves employer requests for prevailing wage determinations).  Similarly, contrary to the second premise of Plaintiff's RICO claims, there is absolutely nothing that precludes an employer from seeking more H-2B visas than it ultimately will use.  Indeed, the very nature of the process is that these are prospective positions that must be requested months in advance of the anticipated start date.  Given this timing, as well as the looming annual H-2B cap, most employers knowingly request more H-2B visas than they believe, at the time, they may need.  The federal agency charged with overseeing the H-2B program is fully aware of this practice of employers requesting and obtaining approval for more H-2B workers than they ultimately need, as the agency knowingly approves 104,000 H-2B workers on an annual basis notwithstanding its stated cap of 66,000 H-2B workers who actually are permitted to work in the United States in any given year.

In short, Plaintiff's RICO conspiracy and fraud allegations against TruGreen are entirely misplaced.  To the extent Plaintiffs believe that the agencies charged with oversight have failed to establish adequate processes and procedures, his appropriate relief rests, if at all, with those agencies, not in civil litigation against TruGreen.  Without any legal basis to seek relief against TruGreen, Plaintiff's RICO claims should be dismissed as a matter of law.

---

[4]    In Paragraph 31 of Plaintiff's First Amended Complaint, he makes reference to the 2004 ETA submitted by TruGreen for Newport, Delaware, suggesting that TruGreen somehow duped the SWA and DOL into using the job code (and corresponding prevailing wage) for "Landscaping and Groundskeeping Workers" (408.684.010) instead of the job code for "Pesticide Handlers, Sprayers, and Applicators" (408.684.014).  As is clear from that document submitted by TruGreen to both agencies (attached hereto as Exhibit B), TruGreen made abundantly clear the job title ("Lawn Care *Applicator*") and the job duties ("[a]pply pesticides, herbicides, fungicides, or insecticides, to lawns using sprayers, seeders, spreaders, aerators").  Thus, it is the determination of the agencies regarding the appropriate prevailing wage – not TruGreen's conduct – with which Plaintiff takes issue.

VI.    __CONCLUSION__

For all of the reasons set forth above, Defendants respectfully request that Plaintiff's

RICO claims be dismissed, with prejudice, from Plaintiff's First Amended Complaint.

Respectfully submitted,

**MCCARTER & ENGLISH, LLP**

/s/ Daniel M. Silver
Michael P. Kelly (DE Bar ID #2295)
mkelly@mccarter.com
Daniel M. Silver (DE Bar ID #4758)
dsilver@mccarter.com
McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE  19801
(302) 984-6300

*Admitted Pro Hac Vice*
Michael L. Banks (PA I.D. #35052)
Sarah E. Bouchard (PA I.D. #77088)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5387/5077

# EXHIBIT A

```
 1        IN  THE  UNITED  STATES  DISTRICT  COURT
                  DISTRICT  OF  DELAWARE
 2
 3   RAMON  VILLANUEVA,              :     CIVIL  ACTION
     Individually  and  all         :
 4   others  similarly              :
     situated,                      :
 5        Plaintiff                 :
                                    :
 6        vs.                       :        ORIGINAL
                                    :
 7   TRUGREEN  LIMITED              :
     PARTNERS  AND  TRUGREEN,       :
 8   INC.  d/b/a  TRUGREEN          :
     CHEMLAWN,                      :
 9        Defendants               :     NO.  06-185
10
                         - - - - - -
11               October  5,  2006
                         - - - - - -
12
                         Videotaped  Oral  Deposition
13   of  RAMON  VILLANUEVA,  held  in  the  law
     offices  of  Morgan  Lewis,  LLP,  1701
14   Market  Street,  12th  Floor,  Philadelphia,
     Pennsylvania  19103,  beginning  at
15   approximately  9:29  AM,  before  Ann  V.
     Kaufmann,  a  Registered  Professional
16   Reporter,  Certified  Realtime  Reporter,
     Approved  Reporter  of  the  U.S.  District
17   Court,  and  a  Notary  Public  of  the
     Commonwealth  of  Pennsylvania.
18
19                       - - - - - -
20
21
22        ESQUIRE  DEPOSITION  SERVICES
          1600  John  F.  Kennedy  Boulevard
23        Four  Penn  Center,  12th  Floor
          Philadelphia,  Pennsylvania   19103
24               (215)  988-9191
```

Ramon Villanueva

```
 1        Q.      There was no employee in
 2  Mexico from TruGreen, was there, that
 3  talked to you?
 4        A.      That's true, no.
 5        Q.      You said you did not know
 6  anyone who had worked previously for
 7  TruGreen?
 8        A.      That's true.
 9        Q.      What were you told before
10  you accepted the offer about
11  compensation and overtime?
12        A.      What's "compensation"?
13        Q.      The amount that you are
14  paid.
15        A.      I'm sorry.  Once again,
16  what was the question?
17        Q.      What were you told about
18  your pay and overtime pay before you
19  accepted?
20        A.      I only knew what was on
21  this paper.
22              MR. TUDDENHAM:  And, for the
23  record, the witness is indicating
24  Exhibit 2.
```

Ramon Villanueva

```
 1          A.        I don't know what to tell
 2    you because there were so many documents
 3    that I signed.
 4               Well, I have to recognize
 5    the fact that I didn't pay attention to
 6    them in particular.  Everybody was
 7    signing and so I signed.
 8          Q.        Were there some documents
 9    in Mexico that you may not have read as
10    well and just signed?
11          A.        Well, in Mexico the only
12    thing they gave me were these documents,
13    the ones that are marked No. 1 and 2 --
14    no, I'm sorry, just No. 2, so that's
15    easy to remember.
16          Q.        So those are the only two
17    documents that you signed in Mexico, the
18    ones that you just previously mentioned?
19          A.        Well, actually it was only
20    two documents, this document and another
21    document that I don't have here.  But
22    this was the only one I signed.
23               MS. BOUCHARD:  This is going
24    to be Exhibit 4.
```

Ramon Villanueva

1    that you are disputing now in your

2    lawsuit?

3         A.    May I speak to my

4    attorney?

5         Q.    Sure.

6               THE VIDEOGRAPHER:  Off tape

7    11:25.

8               (Recess.)

9               THE VIDEOGRAPHER:  Back on

10   the record 11:27

11              MS. BOUCHARD:  Could the

12   court reporter repeat the question

13   that's pending on the record?

14              (The court reporter read the

15   record as follows:

16              "QUESTION:  But those are

17   the costs that you are disputing now in

18   your lawsuit?")

19        A.    Yes.

20        Q.    Why did you take the job

21   with TruGreen even though you had to pay

22   those expenses?

23        A.    Well, because on the list

24   it was the best salary.  And the people

# EXHIBIT B

U.S. DEPARTMENT OF LABOR
Employment and Training Administration

## APPLICATION
### FOR
### ALIEN EMPLOYMENT CERTIFICATION

OMB Approval No. 44-R1301

**IMPORTANT: READ CAREFULLY BEFORE COMPLETING THIS FORM**

PRINT legibly in ink or use a typewriter. If you need more space to answer questions in this form, use a separate sheet, identify each answer with the number of the corresponding question. SIGN and DATE each sheet in original signature.

To knowingly furnish any false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a felony punishable by $10,000 fine or 5 years in the penitentiary, or both (18 U.S.C. 1001).

---

### PART A. OFFER OF EMPLOYMENT

| 1. Name of Alien (Family name in capital letter, First, Middle, Maiden) |
|---|
| (14) Unnamed H-2B Workers/Aliens |

| 2. Present Address of Alien (Number, Street, City and Town, State ZIP code or Province, Country) | 3. Type of Visa (if in U.S.) |
|---|---|
| N/A | N/A |

The following information is submitted as an offer of employment.

| 4. Name of Employer (Full name of Organization) | 5. Telephone |
|---|---|
| TruGreen Chemlawn | 302-992-9680 |

| 6. Address (Number, Street, City and Town, State ZIP code) |
|---|
| 1350 1st State Blvd. Newport, DE 19804 |

| 7. Address Where Alien Will Work (if different from item 6) |
|---|
| New Castle County |

| 8. Nature of Employer's Business Activity | 9. Name of Job Title | 10. Total Hours Per Week | | 11. Work Schedule (Hourly) | 12. Rate of Pay | |
|---|---|---|---|---|---|---|
| | | a. Basic | b. Overtime | | a. Basic | b. Overtime |
| Lawn maintenance | Lawn care applicator | 40 | 0 | 7:00 a.m. 5:00 p.m. | $ 10.00 per hour | $ 15.00 per hour |

| 13. Describe Fully the job to be Performed (Duties) |
|---|
| Apply pesticides, herbicides, fungicides, or insecticides to lawns using sprayers, seeders, spreaders, aerators. Entry level position. |

**14. State in detail the MINIMUM education, training, and experience for a worker to perform satisfactorily the job duties described in item 13 above.**

| | Grade School | High School | College | College Degree Required (specify) |
|---|---|---|---|---|
| EDU-CATION (Enter number of years) | 0 | 0 | 0 | N/A |
| | | | | Major Field of Study N/A |

| | No. Yrs. | No. Mos. | Type of Training |
|---|---|---|---|
| TRAIN-ING | 0 | 0 | N/A |

| | Job Offered | | Related Occupation | | Related Occupation (specify) |
|---|---|---|---|---|---|
| | Yrs. | Mos. | Yrs. | Mos. | N/A |
| EXPERI-ENCE | 0 | 0 | 0 | 0 | |

**15. Other Special Requirements**

None.

| 16. Occupational Title of Person Who Will Be Alien's Immediate Supervisor | ► Field Manager | 17. Number of Employees Alien Will Supervise ► 0 |
|---|---|---|

◄ ENDORSEMENTS (Make no entry in section - for Government use only)

**Date Forms Received**

| L.O. | S.O. |
|---|---|
| R.O. | N.O. |
| Ind. Code | Occ. Code |
| Occ. Title | |

Replaces MA 7-50A, B and C (Apr. 1970 edition) which is obsolete.

ETA 750 (Oct. 1979)

**TRU03991**

| 18. COMPLETE ITEMS ONLY IF JOB IS TEMPORARY | | | 19. IF JOB IS UNIONIZED (Complete) | |
|---|---|---|---|---|
| a. No. of Openings To Be Filled By Aliens Under Job Offer | b. Exact Dates You Expect To Employ Alien | | a. Number of Local | b. Name of Local |
| | From | To | | |
| 14 | 3/1/2004 | 11/30/2004 | | c. City and State |

**20. STATEMENT FOR LIVE-AT-WORK JOB OFFERS.** (Complete for Private Household ONLY)

| a. Description of Residence | | b. No. Persons residing at Place of Employment | | | | c. Will free board and private room not shared with any-one be provided? | ("X" one) |
|---|---|---|---|---|---|---|---|
| ("X" one) | Number of Rooms | Adults | Children | | Ages | | ☐ YES  ☐ NO |
| ☐ House | | | BOYS | | | | |
| ☐ Apartment | | | GIRLS | | | | |

**21. DESCRIBE EFFORTS TO RECRUIT U.S. WORKERS AND THE RESULTS.** (Specify Sources of Recruitment by Name)

```
- Newspaper/Classified Ads
- Employee Referrals
These efforts have all been unsuccessful in recruiting U.S. workers.
```

**22.** Applications require various types of documentation. Please read Part II of the instructions to assure that appropriate supporting documentation is included with your application.

**23. EMPLOYER CERTIFICATIONS**

By virtue of my signature below, I HEREBY CERTIFY the following conditions of employment.

a. I have enough funds available to pay the wage or salary offered the alien.

b. The wage offered equals or exceeds the prevailing wage and I guarantee that, if a labor certification is granted, the wage paid to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work.

c. The wage offered is not based on commissions, bonuses, or other incentives, unless I guarantee a wage paid on a weekly, bi-weekly, or monthly basis.

d. I will be able to place the alien on the payroll on or before the date of the alien's proposed entrance into the United States.

e. The job opportunity does not involve unlawful discrimination by race, creed, color, national origin, age, sex, religion, handicap, or citizenship.

f. The job opportunity is not:

(1) Vacant because the former occupant is on strike or is being locked out in the course of a labor dispute involving a work stoppage.

(2) At issue in a labor dispute involving a work stoppage.

g. The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law.

h. The job opportunity has been and is clearly open to any qualified U.S. worker.

**24. DECLARATIONS**

| DECLARATION OF EMPLOYER ➤ | Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury the foregoing is true and correct. | |
|---|---|---|
| SIGNATURE | | DATE 10/30/2003 |
| NAME (Type or Print) James A. Vacchiano | TITLE Region People Services Manager | |

| AUTHORIZATION OF AGENT OF EMPLOYER ➤ | I HEREBY DESIGNATE the agent below to represent me for the purposes of labor certification and I TAKE FULL RESPONSIBILITY for accuracy of any representations made by my agent. | |
|---|---|---|
| SIGNATURE OF EMPLOYER | | DATE 10/30/2003 |
| NAME OF AGENT (Type or Print) Great Lakes Labor | ADDRESS OF AGENT (Number, Street, City, State, ZIP code) PO Box 646 Pinckney, MI 48169 | |

TRU03992

OMB Approval No. 44-R1301

U.S. DEPARTMENT OF LABOR
Employment and Training Administration

## APPLICATION
## FOR
## ALIEN EMPLOYMENT CERTIFICATION

**IMPORTANT: READ CAREFULLY BEFORE COMPLETING THIS FORM**

PRINT legibly in ink or use a typewriter. If you need more space to answer questions in this form, use a separate sheet. Identify each answer with the number of the corresponding question. SIGN AND DATE each sheet in original signature.

To knowingly furnish any false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a felony punishable by $10,000 fine or 5 years in the penitentiary, or both (18 U.S.C. 1001).

**PART A. OFFER OF EMPLOYMENT**

| 1. Name of Alien (Family name in capital letter, First, Middle, Maiden) |
|---|
| (14) Unnamed H-2B Workers/Aliens |

| 2. Present Address of Alien (Number, Street, City and Town, State ZIP code or Province, Country) | 3. Type of Visa (if in U.S.) |
|---|---|
| N/A | N/A |

The following information is submitted as an offer of employment.

| 4. Name of Employer (Full name of Organization) | 5. Telephone |
|---|---|
| TruGreen Chemlawn | 302-992-9680 |

| 6. Address (Number, Street, City and Town, State ZIP code) |
|---|
| 1350 1st State Blvd.<br>Newport, DE 19804 |

| 7. Address Where Alien Will Work (if different from item 6) |
|---|
| New Castle County |

| 8. Nature of Employer's Business Activity | 9. Name of Job Title | 10. Total Hours Per Week | | 11. Work Schedule (Hourly) | 12. Rate of Pay | |
|---|---|---|---|---|---|---|
| | | a. Basic | b. Overtime | | a. Basic | b. Overtime |
| Lawn maintenance | Lawn care applicator | 40 | 0 | 7:00 a.m.<br>5:00 p.m. | $ 10.00 per hour | $ 15.00 per hour |

**13. Describe Fully the job to be Performed** (Duties)

Apply pesticides, herbicides, fungicides, or insecticides to lawns using sprayers, seeders, spreaders, aerators. Entry level position.

| 14. State in detail the MINIMUM education, training, and experience for a worker to perform satisfactorily the job duties described in item 13 above. | | | | 15. Other Special Requirements |
|---|---|---|---|---|
| EDU-CATION (Enter number of years) | Grade School | High School | College | None. |
| | 0 | 0 | 0 | College Degree Required (specify)<br>N/A |
| | | | | Major Field of Study<br>N/A |
| TRAIN-ING | No. Yrs.<br>0 | No. Mos.<br>0 | Type of Training<br>N/A | |
| EXPERI-ENCE | Job Offered | Related Occupation | Related Occupation (specify)<br>N/A | |
| | Number | | | |
| | Yrs. Mos.<br>0 0 | Yrs. Mos.<br>0 0 | | |

| 16. Occupational Title of Person Who Will Be Alien's Immediate Supervisor | ➤ Field Manager | 17. Number of Employees Alien Will Supervise ➤ 0 |
|---|---|---|

◄ ENDORSEMENTS (Make no entry in section - for Government use only)

| Date Forms Received | |
|---|---|
| L.O. | S.O. |
| R.O. | N.O. |
| Ind. Code | Occ. Code |
| Occ. Title | |

Replaces MA 7-50A, B and C (Apr. 1970 edition) which is obsolete.

ETA 750 (Oct. 1979)

TRU03981

| 18. COMPLETE ITEMS ONLY IF JOB IS TEMPORARY | | | 19. IF JOB IS UNIONIZED (Complete) | |
|---|---|---|---|---|
| a. No. of Openings To Be Filled By Aliens Under Job Offer | b. Exact Dates You Expect To Employ Alien | | a. Number of Local | b. Name of Local |
| | From | To | | |
| 14 | 2/24/2004 | 11/30/2004 | | c. City and State |

**20. STATEMENT FOR LIVE-AT-WORK JOB OFFERS** (Complete for Private Household ONLY)

| a. Description of Residence | | b. No. Persons residing at Place of Employment | | | | c. Will free board and private room not shared with anyone be provided? | ("X" one) | |
|---|---|---|---|---|---|---|---|---|
| ("X" one) | Number of Rooms | Adults | Children | Ages | | | ☐ YES | ☐ NO |
| ☐ House | | | BOYS | | | | | |
| ☐ Apartment | | | GIRLS | | | | | |

**21. DESCRIBE EFFORTS TO RECRUIT U.S. WORKERS AND THE RESULTS.** (Specify Sources of Recruitment by Name)

- Newspaper/Classified Ads
- Employee Referrals
These efforts have all been unsuccessful in recruiting U.S. workers.

22. Applications require various types of documentation. Please read Part II of the instructions to assure that appropriate supporting documentation is included with your application.

**23. EMPLOYER CERTIFICATIONS**

By virtue of my signature below, I HEREBY CERTIFY the following conditions of employment.

a. I have enough funds available to pay the wage or salary offered the alien.

b. The wage offered equals or exceeds the prevailing wage and I guarantee that, if a labor certification is granted, the wage paid to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work.

c. The wage offered is not based on commissions, bonuses, or other incentives, unless I guarantee a wage paid on a weekly, bi-weekly, or monthly basis.

d. I will be able to place the alien on the payroll on or before the date of the alien's proposed entrance into the United States.

e. The job opportunity does not involve unlawful discrimination by race, creed, color, national origin, age, sex, religion, handicap, or citizenship.

f. The job opportunity is not:

(1) Vacant because the former occupant is on strike or is being locked out in the course of a labor dispute involving a work stoppage.

(2) At issue in a labor dispute involving a work stoppage.

g. The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law.

h. The job opportunity has been and is clearly open to any qualified U.S. worker.

**24. DECLARATIONS**

DECLARATION OF EMPLOYER ▶ Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury the foregoing is true and correct.

| SIGNATURE *James A. Vacchiano* | DATE 10/22/2003 |
|---|---|
| NAME (Type or Print) James A. Vacchiano | TITLE Region People Services Manager |

AUTHORIZATION OF AGENT OF EMPLOYER ▶ I HEREBY DESIGNATE the agent below to represent me for the purposes of labor certification and I TAKE FULL RESPONSIBILITY for accuracy of any representations made by my agent.

| SIGNATURE OF EMPLOYER *James A Vacchiano* | DATE 10/22/2003 |
|---|---|
| NAME OF AGENT (Type or Print) Great Lakes Labor | ADDRESS OF AGENT (Number, Street, City, State, ZIP code) PO Box 646 Pinckney, MI 48169 |

TRU03982